**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Case No.:  19-20905 |
| The Diocese of Rochester, | Chapter 11 |
| Debtor. | |

| | |
|---|---|
| The Diocese of Rochester, | |
| Plaintiff, | |
| | Adversary Proceeding |
| | No.: 19-ap-02021 |
| v. | |
| The Continental Insurance Company, Certain Underwriters at Lloyd's, London, Certain London Market Companies, The Dominion Insurance Company Limited, Stronghold Insurance Company Limited, CX Reinsurance Company Limited, Markel International Insurance Company Limited, Tenecom Limited, National Surety Corporation, Interstate Fire & Casualty Company, Colonial Penn Insurance Company, and HDI Global Specialty SE, | |
| Defendants. | |

## NOTICE OF SUPPLEMENTAL EXHIBIT TO MOTION FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AGREEMENT WITH CERTAIN UNDERWRITERS AT LLOYD'S, LONDON, CERTAIN LONDON MARKET COMPANIES, INTERSTATE FIRE & CASUALTY COMPANY AND NATIONAL SURETY CORPORATION

**PLEASE TAKE NOTICE,** that on May 27, 2021, The Diocese of Rochester (the "Diocese"), by and through its undersigned counsel, filed with the United States Bankruptcy Court for the Western District of New York (the "Court") its *Motion for Entry of an Order Approving Settlement Agreement With Certain Underwriters At Lloyd's, London, Certain London Market Companies, Interstate Fire & Casualty Company and National Surety Corporation* (the "Settlement Motion") in the above-captioned Adversary Proceeding No. 19-ap-02021(the "Insurance Coverage Action").[1]

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Settlement Motion.

**PLEASE TAKE FURTHER NOTICE,** that pursuant to a request by the Official Committee of Unsecured Creditors, on June 17, 2021, the Diocese filed the Settlement Motion in the above-captioned Chapter 11 Case No. 19-20905.

**PLEASE TAKE FURTHER NOTICE,** that pursuant to the requirements of section 1.r.(i) and 1.aa.(i) of the Settlement Agreement and consistent with the Diocese's commitment in footnote 4 in the Motion, a fully-executed copy of the Settlement Agreement is attached hereto as **<u>Exhibit 1</u>**.

Dated: July 8, 2021                                          BOND, SCHOENECK & KING, PLLC

By: _____/s/ Stephen A. Donato_____
                                                                    Stephen A. Donato
                                                                    Charles J. Sullivan
                                                                    Grayson T. Walter
                                                                    One Lincoln Center
                                                                    Syracuse, NY 13202
                                                                    Telephone: (315) 218-8000
                                                                    Facsimile:  (315) 218-8100
                                                                    Emails:  sdonato@bsk.com
                                                                                    csullivan@bsk.com
                                                                                    gwalter@bsk.com

                                                                    *Attorneys for The Diocese of Rochester*

2

12729109.1
Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document , Page 2 of 172

# **EXHIBIT 1**

Fully-Executed Settlement Agreement

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (hereinafter the "**Agreement**") is made this 26th day of May, 2021, by and between the Diocese of Rochester ("**DOR**")[1] and the other "**DOR Entities**" on the one hand, and certain Underwriters at Lloyd's, London, and certain London Market Insurance Companies (collectively, "**London Market Insurers**"), and "**Interstate**" on the other hand (collectively with the London Market Insurers, "**LMI/Interstate**"). (The aforementioned parties are referred to hereinafter collectively as the "Parties" or individually as a "**Party**").

## WITNESSETH THAT:

WHEREAS, the "**CVA**" provided for a window for individuals to file civil claims for injury suffered as a result of sexual conduct that were otherwise time-barred;

WHEREAS, as a result of revival, pursuant to the CVA, of certain claims that were otherwise time-barred by the statute of limitations, "**Tort Claims**" were brought against certain DOR Entities;

WHEREAS, certain DOR Entities incurred, and may incur in the future, liabilities, expenses, and losses arising out of the Tort Claims;

WHEREAS, each London Market Insurer severally subscribed the "**LMI Insurance Policies**," and Interstate issued the "**Interstate Insurance Policies**," allegedly providing insurance to the DOR Entities;

WHEREAS, the LMI Insurance Policies listed on Attachment A-1, and the Interstate Insurance Policies listed on Attachment A-2, are property of DOR's bankruptcy estate;

WHEREAS, certain DOR Entities tendered "**Coverage Claims**" to the London Market Insurers and Interstate to seek insurance coverage for the Tort Claims;

WHEREAS, LMI/Interstate dispute the Coverage Claims;

WHEREAS, to address its liabilities for the Tort Claims, on the "**Petition Date**," DOR filed the "**Bankruptcy Case**" in the "**Bankruptcy Court**";

WHEREAS, on November 14, 2019, DOR filed the "**Insurance Coverage Action**," as an adversary proceeding in the Bankruptcy Court;

WHEREAS, several London Market Insurers and Interstate are named defendants in the Insurance Coverage Action, and dispute the substantive allegations and Coverage Claims asserted against them in the Insurance Coverage Action;

WHEREAS, on December 23, 2019, DOR filed the "**Mediation Motion**";

---

[1] Terms in bold, inside quotation marks, are defined in Section 1, Definitions.

WHEREAS, on March 10, 2020, the Bankruptcy Court (i) entered the "**Mediation Order**" approving the Mediation Motion, appointing the "**Mediator**"; and (ii) ordered the "**Mediation Parties**" to mediate the Tort Claims and the Coverage Claims;

WHEREAS, pursuant to the Bankruptcy Court's order, no defendant filed an Answer or otherwise responded in the Insurance Coverage Action;

WHEREAS, whether or not they (i) were subject to the Tort Claims; or (ii) asserted Coverage Claims against London Market Insurers or Interstate, the DOR Entities are settling with and releasing the "**LMI/Interstate Entities**" pursuant to this Agreement;

WHEREAS, it is the intention of the Parties that the DOR Entities shall sell, assign, and transfer (i) the LMI Insurance Policies to the London Market Insurers, and the London Market Insurers shall buy back the LMI Insurance Policies and pay the "**LMI Settlement Amount**" to DOR; and (ii) the Interstate Insurance Policies to Interstate, and Interstate shall buy back the Interstate Insurance Policies and pay the "**Interstate Settlement Amount**" to DOR;

WHEREAS, DOR shall pay the "**Settlement Amount**" to the "**Trust**" for the benefit of the "**Channeled Claimants**";

WHEREAS, it is the intention of the Parties that any and all "**Interests**" in or to the Subject Insurance Policies be extinguished, ended, and forever terminated;

WHEREAS, it is the intention of the Parties that (i) the DOR Entities shall (a) not retain any right, title, or Interest in or to the "**Subject Insurance Policies**"; and (b) release the LMI/Interstate Entities from all "**Released Claims**"; and (ii) none of the LMI/Interstate Entities shall have any remaining duty or obligation of any nature whatsoever to any DOR Entity except to the extent such duties or obligations may exist or hereafter arise with respect to the "**Modern-Day Policies**";

WHEREAS, subject to the Court entering the orders contemplated by this Agreement, each of the LMI/Interstate Entities will be protected by the "**Settling Insurer Supplemental Injunction**" and the "**Channeling Injunction**";

WHEREAS, DOR agrees to use commercially reasonable efforts to obtain the Settling Insurer Supplemental Injunction for the benefit of the "**Settling Insurers**," pursuant to the "**Plan**"; and

WHEREAS, by this Agreement, the Parties intend to adopt, by way of compromise, and without prejudice to or waiver of their respective positions in other matters, without further trial or adjudication of any issues of fact or law, and without LMI/Interstate's admission of liability or responsibility under the Subject Insurance Policies, a full and final settlement that releases and terminates all Interests of the LMI/Interstate Entities, and the DOR Entities, with respect to the Subject Insurance Policies, including all rights, obligations, and liabilities relating to the "**Barred Claims**" and the "**Enjoined Claims**," without prejudice to their respective positions on policy wordings or any other issues relating to the Insurance Coverage Action, the Coverage Claims, or otherwise.

2

## **AGREEMENTS:**

NOW, THEREFORE, in full consideration of the foregoing and of the mutual agreements herein contained, and intending to be legally bound, the Parties agree as follows:

**1.     Definitions**

The following definitions and the definitions used above apply to this Agreement as well as any exhibits or attachments hereto. Where the listed terms are further defined in the body of this Agreement, the definitions listed here nonetheless apply and shall serve to further explain the meaning of those terms. Each defined term stated in a singular form shall include the plural form, each defined term stated in plural form shall include the singular form, and each defined term stated in the masculine form or in the feminine form shall include the other. The words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation," and the phrase "relating to" means "with regard to, by reason of, based on, arising out of, relating to, or in any way connected with." (The words "include," "includes," and "including," and the phrase "relating to" are not capitalized herein.) This Agreement incorporates all attachments hereto to the same extent as if fully set forth herein. All references to "Sections" are references to sections of this Agreement unless otherwise specified.

### **a.     Abuse**

The term "**Abuse**" means (i) any actual, threatened, or alleged sexual conduct, misbehavior, abuse, or molestation, including a sexual offense as defined in New York Penal Law Section 130, incest as defined New York Penal Law Section 255, and use of a child in sexual performance as defined in New York Penal Law Section 263; (ii) indecent or lascivious behavior, undue familiarity, harassment, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm; (iii) contacts or interactions of a sexual nature; or (iv) assault, battery, corporal punishment, or other act of physical, psychological, or emotional abuse, humiliation, intimidation, or misconduct.

### **b.     Action**

The term "**Action**" means any lawsuit, proceeding, or other action in a court, or any arbitration.

### **c.     Affiliates**

The term "**Affiliates**" means all past, present, and future Persons that control, are controlled by, or are under control with, another Person, including parents, subsidiaries, merged Persons, holding Persons, and acquired Persons, or any predecessor to such Person.

### **d.     Agents**

The term "**Agents**" means all past and present employees, officers, directors, agents, shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy, Persons bound by monastic vows, volunteers, attorneys, claims handling administrators, and representatives of a Person, in their capacities as such.

3

### e.    Approval Order

The term "**Approval Order**" means an order entered by the Court, upon a hearing following Bankruptcy Notice, containing all of the following provisions but no provision that is contrary to or inconsistent with the following provisions. The wording of the Approval Order shall be mutually acceptable to DOR, LMI/Interstate, and Rev. Thomas P. Mull in his capacity as chair of the parish steering committee. The Approval Order shall contain provisions:

> (i)     finding that due and adequate notice of the DOR's request for approval of this Agreement has been provided to all creditors and parties in interest in the Bankruptcy Case;

> (ii)    approving this Agreement in its entirety, pursuant to Bankruptcy Code §§ 363(b), (f), and (m) and, if applicable, 105(a), and Bankruptcy Rules 6004 and 9019;

> (iii)   authorizing, subject to the occurrence of the Escrow Release Date, the sale of the LMI Insurance Policies to London Market Insurers, and the Interstate Insurance Policies to Interstate on the Escrow Release Date, free and clear of all Interests of all Persons, including all Interests, if any, arising under New York Insurance Law or any other applicable law, with all Interests in and to, and Claims against, the Subject Insurance Policies being fully extinguished without reservation as to the Settling Insurers;

> (iv)    ordering that all Claims against, and Interests in and to, the Subject Insurance Policies be fully extinguished without reservation as to the LMI/Interstate Entities and the DOR Entities, and channeled to a Trust upon the Plan Effective Date;

> (v)     ordering that all Barred Claims and other Interests that any Person, including CMS, might have in, or against, the Subject Insurance Policies, attach to the Settlement Amount;

> (vi)    authorizing and directing the Parties to perform their respective obligations under this Agreement; and

> (vii)   issuing the Bar Order, subject to, and effective upon, the occurrence of the Escrow Release Date.

The Approval Order shall be accompanied by the separately entered Settlement Approval Findings and Conclusions.

### f.    Bankruptcy Case

The term "**Bankruptcy Case**" means the bankruptcy case filed by DOR in the Bankruptcy Court, entitled *In re the Diocese of Rochester*, Case Number 19-20905.

### g.    Bankruptcy Code

The term "**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. § 101, *et seq.*

4

### h. Bankruptcy Court

The term "**Bankruptcy Court**" means the Bankruptcy Court for the Western District of New York.

### i. Bankruptcy Notice

The term "**Bankruptcy Notice**" means notice as required under Bankruptcy Rules 2002, 6004(a), and (c), and applicable local rules, sent to (i) all holders of Claims against the DOR Entities, including Tort Claims, or their attorneys, if any, who are known to the DOR Entities; (ii) the Official Committee of Unsecured Creditors; (iii) the Future Claims Representative (once appointed by the Court); (iv) all insurers of the DOR Entities that provide coverage for or are alleged to provide coverage for Tort Claims; (v) the Secretary of the Department of Health and Human Services ("**Secretary**"); (vi) CMS; (vii) the United States Attorney for the Western District of New York; (viii) all Persons who, in the opinion of any Party to this Agreement, might reasonably be expected to be affected by the transactions contemplated herein; and (ix) all other Persons as directed by the Court. Notice shall also be given by (a) publication in the national edition of either *The New York Times* or *USA Today*; and (b) local publication in the *Rochester Democrat & Chronicle*, or as the Court may otherwise direct.

### j. Bankruptcy Rules

The term "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as such may be amended from time to time.

### k. Bar Order

The term "**Bar Order**" means an order, which shall automatically become effective on the Escrow Release Date, barring, estopping, and permanently enjoining all Persons from asserting any Barred Claims against the LMI/Interstate Entities.

### l. Business Day

The term "**Business Day**" means any day that is not a Saturday, Sunday, or legal holiday in the State of New York or the United Kingdom.

### m. Channeling Injunction

The term "**Channeling Injunction**" means an order of the Court requiring all Channeled Claimants to assert their Channeled Claims against the Trust, and barring and permanently enjoining such claims against the DOR Entities and the Settling Insurers, pursuant to § 105 of the Bankruptcy Code.

### n. Claim

The term "**Claim**" means (a) a claim as that term is defined in § 101(5) of the Bankruptcy Code; or (b) any claim, interest, Action, assertion of right, complaint, cross-complaint, counterclaim, defense, liability, obligation, right, request, allegation, mediation, litigation, direct

action, administrative proceeding, cause of action, lien, debt, bill, indemnity, equitable indemnity, right of subrogation, equitable subrogation, injunctive relief, controversy, contribution, exoneration, covenant, agreement, promise, act, omission, trespass, variance, damages, judgment, compensation, set-off, reimbursement, restitution, cost, expense, loss, exposure, execution, attorneys' fee, obligation, encumbrances, order, affirmative defense, writ, demand, inquiry, request, directive, obligation, Proof of Claim in a bankruptcy proceeding or submitted to a trust established pursuant to the Bankruptcy Code, government claim or Action, settlement, and/or any liability whatsoever, whether past, present or future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, matured or unmatured, liquidated or unliquidated, direct, indirect or otherwise consequential, whether in law, equity, admiralty or otherwise, whether currently known or unknown, whether compromised, settled or reduced to a consent judgment, that may exist now or hereinafter for property damages, compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general and special damages), punitive damages, bodily injury, personal injury, public and private claims, or any other right to relief whether sounding in tort, contract, extra-contractual or bad faith, statute, strict liability, equity, nuisance, trespass, statutory violation, wrongful entry or eviction or other eviction or other invasion of the right of private occupancy, and any amounts paid in respect of any judgment, order, decree, settlement, contract, or otherwise. A Person who holds a Claim is a "**Claimant**". The term Claim includes all of the following:

(i)     **Barred Claims**

The term "**Barred Claims**" means all Claims enjoined by the Bar Order, which shall include all Channeled, Direct Action, and Released Claims.

(ii)     **Channeled Claims**

The term "**Channeled Claims**" means the claims channeled to the Trust, including all Tort and Indirect Claims against any DOR Entity or Settling Insurer, which are channeled to the Trust, and for which the Trust assumes liability, pursuant to the Plan.

(iii)     **Contribution Claims**

The term "**Contribution Claims**" means all Claims, most commonly expressed in terms of contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, allocation or reallocation, or reimbursement, or any other indirect or derivative recovery, by an Insurer against any LMI/Interstate Entity for the payment of money where such Insurer contends that it has paid more than its equitable or proportionate share of a Claim.

(iv)     **Coverage Claims**

The term "**Coverage Claims**" means all Claims under or relating to the Subject Insurance Policies or the rights and obligations thereunder, or the breach thereof, including Claims seeking insurance coverage.

6

### (v)  Direct Action Claims

The term "**Direct Action Claims**" means the same as Tort Claims, except that they are asserted against any LMI/Interstate Entity, instead of any DOR Entity or the Trust, for the recovery of insurance proceeds.

### (vi)  Enjoined Claims

The term "**Enjoined Claims**" means all Claims enjoined by the Settling Insurer Supplemental Injunction, which shall include all Barred, Contribution, Indirect, and Medicare Claims.

### (vii)  Extra-Contractual Claims

The term "**Extra-Contractual Claims**" means all Claims against the LMI/Interstate Entities (or any of them), arising from events or conduct prior to the date of this Agreement, seeking any type of relief other than coverage or benefits under the Subject Insurance Policies. "**Extra-Contractual Claims**" include Claims for compensatory, exemplary, or punitive damages, or attorneys' fees, interest, costs, or any other type of relief, alleging, with respect to (i) any of the Subject Insurance Policies; (ii) any Claim allegedly or actually covered under the Subject Insurance Policies; or (iii) the conduct of LMI/Interstate with respect to (i) and/or (ii): bad faith; failure to provide insurance coverage; failure or refusal to compromise and settle any Claim; failure to act in good faith; violation of any covenant or duty of good faith and fair dealing; violation of any state insurance codes, state surplus lines statutes or similar codes or statutes; violation of any unfair claims practices act or similar statute, regulation or code; any type of misconduct or any other act or omission of any type. The term "**Extra-Contractual Claims**" includes all Claims relating to LMI/Interstate's (i) handling of any request for insurance coverage for any Claim; (ii) conduct relating to the negotiation of this Agreement; and (iii) conduct relating to the settlement of any Coverage Claim.

### (viii)  Indirect Claims

The term "**Indirect Claims**" means Claims asserted by a Non-DOR Insurer, or any other Entity that is not an Insurer, for contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, allocation or reallocation, or reimbursement, or any other indirect or derivative recovery, on account of or with respect to any Claim relating to Abuse.

### (ix)  Medicare Claims

The term "**Medicare Claims**" means all Claims under MSP, including all Claims for reimbursement of payments made to Channeled Claimants who recover from the Trust.

### (x)  Released Claims

The term "**Released Claims**" means Coverage and Extra-Contractual Claims.

7

12436097.7

### (xi)     Tort Claims

(A) The term "**Tort Claims**" means all Claims against any DOR Entity or the Trust relating to, in whole or in part, directly or indirectly, Abuse that took place in whole or in part prior to the Plan Effective Date, including any such Claim seeking monetary damages or any other relief, under any theory of liability, including vicarious liability; *respondeat superior*; any fraud-based theory, including fraud in the inducement and fraudulent concealment; any negligence-based or employment-based theory, including negligent hiring, supervision, retention or misrepresentation; any other theory based on misrepresentation, concealment, or unfair practice; contribution; indemnity; public or private nuisance; or any other theory, including any theory based on public policy or any acts or failures to act by any DOR Entity or any other Person for whom any DOR Entity is allegedly responsible, including any such Claim asserted against any DOR Entity in connection with the Bankruptcy Case. The term "**Tort Claims**" includes Future Tort Claims; it does not include Contribution or Medicare Claims.

(B) The term "**Future Tort Claim**" means any Tort Claim that was (i) neither filed, nor deemed filed, in the Bankruptcy Case, by the Claims Filing Deadline, nor otherwise allowed by the Court prior to the Plan Effective Date and (ii) is held by an individual or class of individuals (a) who, at the time of the Claims Filing Deadline, was under a disability recognized by New York C.P.L.R. §208, or other applicable law suspending the running of the limitation period, if any, or (b) who was barred by a statute of limitations as of the Claims Filing Deadline, but is no longer barred by such statute of limitations for any reason, including the enactment of legislation.

### o.     Claims Filing Deadline

The term "**Claims Filing Deadline**" means August 13, 2020 at 11:59 P.M. (prevailing Eastern Time).

### p.     CMS

The term "**CMS**" means the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services, located at 7500 Security Boulevard, Baltimore, MD 21244-1850 and/or any other Agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA for reimbursement of Medicare Claims.

### q.     Committee

The term "**Committee**" means the Official Committee of Unsecured Creditors appointed in the Bankruptcy Case.

### r.     Conditions Precedent to Escrow Release

The term "**Conditions Precedent to Escrow Release**" means all of the following:

(i)     The Agreement shall have been executed by the Parties;

8

12436097.7
Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 11 of 172

(ii)     The Agreement shall have been approved by the Court;

(iii)    The Approval Order, as defined above, shall have been entered by the Court;

(iv)    The Approval Order shall have become a Final Order;

(v)     The London Market Insurers shall have deposited the LMI Settlement Amount and Interstate shall have deposited the Interstate Settlement Amount into the Escrow Account;

(vi)    The Confirmation Order, as defined below, has been entered by the Court;

(vii)   The Confirmation Order has become a Final Order;

(viii)  The Plan Effective Date has occurred; and

(ix)    The Escrow Agent has received the Escrow LMI Release Instruction and the Escrow Interstate Release Instruction.

**s.     <u>Confirmation Findings and Conclusions</u>**

The term "**Confirmation Findings and Conclusions**" means the findings of fact and conclusions of law required under §§ 1129(a), and, if applicable, 105(a) and 1129(b), of the Bankruptcy Code, which are to be entered concurrently with, but separately from, the Confirmation Order, as necessary to confirm the Plan and dismiss with prejudice the Insurance Coverage Action as against LMI/Interstate and National Surety Corporation, including the following:

(i)     This Agreement is the fruit of long-term negotiations amongst the Parties, which began in March 2020, following the Bankruptcy Court's entry of the Mediation Order;

(ii)    The Settlement Amount provides good and valuable consideration to DOR's bankruptcy estate, and enables distributions to the Channeled Claimants;

(iii)   This Agreement is therefore necessary to the Plan because it provides significant funding for the Plan;

(iv)    The Subject Insurance Policies are property of DOR's bankruptcy estate and are therefore subject to the *in rem* jurisdiction of the Court;

(v)     The Channeled Claims are within the jurisdiction of the Court because they seek property of DOR's bankruptcy estate;

(vi)    Because it would be impractical to divide the Subject Insurance Policies amongst DOR and the other DOR Entities, it was necessary for DOR to obtain the participation of the other DOR Entities in this Agreement;

9

(vii)     The DOR Entities, other than DOR, would not release their Interests in the Subject Insurance Policies unless they obtained the benefits of the Channeling Injunction, because to do so would have left them exposed to Tort Claims, whether or not such Claims be valid, and whether or not coverage exists under the Subject Insurance Policies for such Claims;

(viii)    Therefore, the Channeling Injunction is necessary to the Agreement;

(ix)     The Channeling Injunction is narrowly tailored because it requires only Channeled Claims against the DOR Entities and the Settling Insurers to be brought against the Trust;

(x)      The Coverage Claims are within the jurisdiction of the Bankruptcy Court because such claims could enhance the estate;

(xi)     LMI/Interstate required that DOR obtain the benefits of the Settling Insurer Supplemental Injunction, as a condition of entering into this Agreement and contributing the Settlement Amount;

(xii)    Therefore, the Settling Insurer Supplemental Injunction is necessary to this Agreement and the Plan;

(xiii)   The Settling Insurer Supplemental Injunction is narrowly tailored because it only enjoins the Enjoined Claims against the Settling Insurers;

(xiv)    LMI/Interstate are repurchasing the Subject Insurance Policies, pursuant to this Agreement.  LMI/Interstate are not purchasing any other assets of the DOR Entities and are not a continuation of the DOR Entities, nor engaging in a continuation of the DOR Entities' businesses.  LMI/Interstate shall not have any responsibility or liability with respect to any of the DOR Entities' other assets; and

(xv)     LMI/Interstate are not, and shall not be deemed to be, successors to the DOR Entities, or any of them, by reason of any theory of law or equity or as a result of the consummation of the transactions contemplated in this Agreement, the Plan, or otherwise. LMI/Interstate shall not assume, or be deemed to have assumed, any liabilities or other obligations of the DOR Entities.

**t.      Confirmation Order**

The term "**Confirmation Order**" means an order entered by the Court after a confirmation hearing upon Bankruptcy Notice confirming the Plan, in a form and substance as required by this Agreement, which order has not been stayed.  The wording of the Confirmation Order shall be mutually acceptable to DOR, LMI/Interstate, and Rev. Thomas P. Mull in his capacity as chair of the parish steering committee.  The Confirmation Order shall contain all of the following provisions but no provision that is contrary to or inconsistent with this Agreement:

(i)      confirming the Plan;

10

(ii)     specifically, and individually, ordering all Persons, as set forth in the Plan, to act or refrain from acting as specified in the Plan;

(iii)     incorporating the terms and provisions of the Bar Order as though fully set forth therein;

(iv)     ordering the Trustee to perform the obligations, if any, imposed upon the Trustee by this Agreement;

(v)     issuing the Channeling Injunction and the Settling Insurer Supplemental Injunction;

(vi)     discharging DOR from all Claims, including all Channeled Claims;

(vii)     ordering all Channeled Claimants with pending state court Actions against any DOR Entity to dismiss such Claims and assert them against the Trust for resolution pursuant to the Trust Agreement; and

(viii)     including the Reduction Clause set forth in Section 8, below.

The Confirmation Order shall be accompanied by the separately entered Confirmation Findings and Conclusions.

**u.     Court**

The term "**Court**" means the Bankruptcy Court, or the District Court, as applicable.

**v.     CVA**

The term "**CVA**" means the New York Child Victims Act, NY CPLR Section 214-G and all related civil and penal laws and statutes.

**w.     District Court**

The term "**District Court**" means the United States District Court for the Western District of New York.

**x.     DOR**

The term "**DOR**" means The Diocese of Rochester, which is the diocesan corporation formed pursuant to N.Y. Relig. Corp. Law § 90, together with the public juridic person of the Roman Catholic Diocese of Rochester, as now constituted or as it may have been constituted. Furthermore, in the event of any Action naming any Affiliate or Agent of DOR, such Action shall be considered an Action against DOR, the insurance coverage for which is released pursuant to Section 4 hereof.

**y.     DOR Entities**

The term "**DOR Entities**" means, in their capacity as such:

12436097.7

Case 2-19-02021-PRW,    Doc 149,    Filed 07/08/21,    Entered 07/08/21 19:17:02,
Description: Main Document  , Page 14 of 172

(i)     DOR;

(ii)    DOR's Affiliates;

(iii)   Any and all insureds, named insureds, additional insureds and other insureds, or Persons otherwise insured or allegedly insured under the Subject Insurance Policies, including schools and the DOR Parishes;

(iv)    Each of the Affiliates of the Persons identified in the foregoing subsections (i)-(iii);

(v)     Each of the successors and assigns of the Persons identified in the foregoing subsections (i)-(iv); and

(vi)    Each of the Agents of the Persons identified in the foregoing subsections (i)-(v).

The **"DOR Entities"** include each of the entities set forth on Attachment E to this Agreement.

An individual who perpetrated an act of Abuse that forms the basis for a Tort Claim is not a DOR Entity with respect to that Tort Claim.

**z.      DOR Parishes**

The term "**DOR Parishes**" means all past and present parishes of or in DOR, in their capacity as public juridic persons, together with each corresponding parish corporation formed pursuant to N.Y. Relig. Corp. Law § 90.

**aa.     Effective Date**

The term "**Effective Date**" means the day following the date on which all of the following have occurred: (i) all Parties have executed this Agreement and the Escrow Agreement; (ii) the Court has issued the Approval Order and the Settlement Approval Findings and Conclusion; and (iii) the Approval Order has become a Final Order.

**bb.     Entities' Release**

The term "**Entities' Release**" means the following:

(i)     The remising, release, covenant not to sue, and permanent discharge by the DOR Entities and any subsequently appointed trustee or representative acting for any DOR Entity, without further act by any Person, from and against all Released Claims that any DOR Entity ever had, now has, or hereafter may have, from the beginning of time to the Effective Date of: (1) the Interstate Entities; and (2) the respective heirs, executors, administrators, and reinsurers (as such) of any of the Persons identified in clause (1) hereof in their capacity as such; and

12

(ii)     The remising, release, covenant not to sue, and permanent discharge by the DOR Entities and any subsequently appointed trustee or representative acting for the DOR Entities, without further act by any Person, from and against all Released Claims that any DOR Entity ever had, now has, or hereafter may have, from the beginning of time to the Effective Date, of: (1) each paying London Market Insurer and its London Market Insurer Entities; (2) the respective heirs, executors, administrators, and reinsurers (as such) of any of the Persons identified in clause (1) hereof in their capacity as such.

(iii)     The Entities' Release shall not serve to release or discharge any obligations of any Person (or such Person's Affiliates) (a) that has not paid to the Trust such Person's full allocable share of the Settlement Amount pursuant to the terms of this Agreement, or (b) with respect to any Claims arising from or related to the Modern-Day Policies or Claims for breach of this Agreement.

### cc.     Equitas Entities

The term "**Equitas Entities**" means Equitas Limited, Equitas Reinsurance Limited, Equitas Holdings Limited, Equitas Policyholders Trustee Limited, and any other Person from time to time in the Equitas Group.

### dd.     Escrow Account

The term "**Escrow Account**" means the account established by the Escrow Agreement.

### ee.     Escrow Agent

The terms "**Escrow Agent**" means the original and any successor escrow agent appointed pursuant to the Escrow Agreement.

### ff.     Escrow Agreement

The term "**Escrow Agreement**" means a mutually acceptable escrow agreement executed by the Parties.

### gg.     Escrow Interstate Release Instruction

The term "**Escrow Interstate Release Instruction**" means a written direction to the Escrow Agent directing the release of the Interstate Settlement Amount to the Trust executed by DOR and Interstate.

### hh.     Escrow LMI Release Instruction

The term "**Escrow LMI Release Instruction**" means a written direction to the Escrow Agent directing the release of the LMI Settlement Amount to the Trust executed by DOR and LMI.

13

12436097.7
Case 2-19-02021-PRW,    Doc 149,    Filed 07/08/21,    Entered 07/08/21 19:17:02,
Description: Main Document , Page 16 of 172

### ii. __Escrow Payment__

The term "__Escrow Payment__" shall mean the Settlement Amount plus any accrued interest less Expenses.

### jj. __Escrow Release Date__

The term "Escrow Release Date" means the earliest date upon which all Conditions Precedent to Escrow Release have all occurred, *provided, however*, that if such date is not a Business Day, the Escrow Release Date shall be the next Business Day.

### kk. __Expenses__

The term "__Expenses__" means all reasonable fees, costs, and expenses incurred by the Escrow Account and Escrow Agent (in its capacity as such) pursuant to the Escrow Agreement, including all compensation paid to the Escrow Agent pursuant to the Escrow Agreement; all taxes paid pursuant to the Escrow Agreement; the costs and expenses incurred in preparing and circulating records and reports pursuant to the Escrow Agreement; fees and expenses of counsel pursuant to the Escrow Agreement; any amounts reserved pursuant to the Escrow Agreement for any of the foregoing; and any indemnification paid to the Escrow Agent pursuant to the Escrow Agreement.

### ll. __Final Order__

The term "__Final Order__" means an order as to which the time to appeal, petition for *certiorari*, petition for review, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, review, reargue, or rehear shall have been waived in writing in form and substance satisfactory to DOR and LMI/Interstate, and their counsel or, in the event that an appeal, *writ of certiorari*, petition for review, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* or review has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for *certiorari,* petition for review, or move for reargument or rehearing shall have expired; *provided, however,* that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a Final Order. For the avoidance of doubt, if the Plan is substantially consummated as defined in § 1101(2) of the Bankruptcy Code ("__Substantial Consummation__"), and any appeal of the Confirmation Order becomes equitably moot due to Substantial Consummation, the Confirmation Order shall be considered a Final Order as of the date that the order determining such appeal to be moot has become a Final Order.

### mm. __Future Claims Representative__

The term "__Future Claims Representative__" means an individual appointed by the Court to represent the interests of Future Tort Claimants.

**nn.** **Insurance Coverage Action**

The term "**Insurance Coverage Action**" means the case entitled *The Diocese of Rochester v. The Continental Insurance Company, et al.*, filed in the United States Bankruptcy Court, for the Western District of New York, as Adversary Proceeding Number 19-02021.

**oo.** **Insurers**

The term "**Insurers**" means the insurers of the DOR Entities, comprising the Settling Insurers and the Non-Settling Insurers.

**pp.** **Interests**

The term "**Interests**" means all Claims, including any "interests" as that term is used in 11 U.S.C. § 363, and other rights of any nature, whether at law or in equity, including all interests or other rights under New York Insurance Law or any other applicable law.

**qq.** **Interstate**

The term "**Interstate**" means Interstate Fire & Casualty Company.

**rr.** **Interstate Bill of Sale**

The term "**Interstate Bill of Sale**" means a fully executed bill of sale evidencing the sale, assignment, and transfer of the Interstate Insurance Policies to Interstate free and clear of all Interests of all Persons, including the Tort Claimants and the DOR Entities.

**ss.** **Interstate Escrow Balance**

The term "**Interstate Escrow Balance**" means the amount on deposit in the Escrow Account from time to time attributable to the contribution made to the Escrow Account by Interstate, plus all accrued interest thereon, less the pro-rata share of Expenses allocable thereto.

**tt.** **Interstate Entities**

The term "**Interstate Entities**" means:

(i) Interstate;

(ii) each of Interstate's Affiliates (including Fireman's Fund Insurance Company and National Surety Corporation);

(iii) each of the foregoing Persons' Agents; and

(iv) each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through, or in concert with them, in their capacities as such.

15

uu.     **Interstate Insurance Policies**

The term "**Interstate Insurance Policies**" means (i) all insurance policies listed in Attachment A-2 hereto; and (ii) all known and unknown insurance policies to the extent issued by any Interstate Entity on or prior to July 1, 1986 and providing insurance to any DOR Entity, *provided*, *however*, if an Interstate Insurance Policy that is not listed in Attachment A-2 was not issued to a DOR Entity (or such Person's Affiliates) but provides coverage to a DOR Entity, then it is an Interstate Insurance Policy only to the extent it insures a DOR Entity.

vv.     **Interstate Settlement Amount**

The term "**Interstate Settlement Amount**" means the net sum of Twenty Million United States Dollars ($20,000,000). Interstate shall pay the Interstate Settlement Amount pursuant to the terms of Section 2.

ww.     **[Reserved]**

xx.     **Lloyd's Underwriters**

The term "**Lloyd's Underwriters**" means:

(i)     All underwriters, members, or Names at Lloyds, London (including former underwriters, members, or Names) who through their participation in syndicates (including those identified on Attachment B) severally subscribed, each in his or her own proportionate share, one or more of the LMI Insurance Policies. Lloyd's Underwriters shall also include all Underwriters, members, or Names at Lloyd's, London (including former underwriters, members, and Names), whether or not they participated in the syndicates identified in Attachment B, who, through their participation in syndicates (including those identified on Attachment B) severally subscribed any of the LMI Insurance Policies in favor of any DOR Entity: (a) the existence of which has not presently been established; or (b) the existence of which has been established but as to which identities of Names, members, or syndicates are not presently known. Further, it is expressly understood that Persons are Lloyd's Underwriters only in their capacity as subscribers of the Subject Insurance Policies, and obtained through a London broker;

(ii)    All of the Agents of the Persons set forth in Section 1.xx.(i), and their respective predecessors and successors, if any, solely in such capacity; and

(iii)   All the respective heirs, executors, successors (including Equitas Insurance Limited ("**EIL**") to the extent EIL is a successor to any of the Persons identified in Section 1.xx.(i) with respect to the subject matter of this Agreement), assigns (including any administrator, receiver, trustee, personal representative, or equivalent appointee/s under relevant insolvency law), reinsurers, and retrocessionaires (as such) of any of the Persons identified in Section 1.xx.(i), if any, solely in their capacity as such.

(iv)    For the avoidance of doubt, the Underwriter Third-Party Beneficiaries, who receive certain specified benefits under this Agreement, are not Lloyd's Underwriters for the purpose of this definition.

16

**yy.**     <u>LMI/Interstate Entities</u>

The term "**LMI/Interstate Entities**" means, collectively, the London Market Insurer Entities and the Interstate Entities.

**zz.**     <u>LMI Bill of Sale</u>

The term "**LMI Bill of Sale**" means a fully-executed bill of sale evidencing the sale, assignment, and transfer of the LMI Insurance Policies to the London Market Insurers free and clear of all Interests of all Persons, including the Tort Claimants and the DOR Entities.

**aaa.**     <u>LMI Escrow Balance</u>

The term "**LMI Escrow Balance**" means the amount on deposit in the Escrow Account from time to time attributable to the aggregate contributions made to the Escrow Account by the London Market Insurers, plus all accrued interest thereon, less the pro-rata share of Expenses allocable thereto.

**bbb.**     <u>LMI Insurance Policies</u>

The term "**LMI Insurance Policies**" means (i) all insurance policies listed in Attachment A-1 hereto; and (ii) all known and unknown insurance policies to the extent subscribed by one or more of the London Market Insurers on or before July 1, 1993 in their capacity as London Market Insurers and providing insurance to any DOR Entity, *provided*, *however*, if an LMI Insurance Policy that is not listed in Attachment A-1 was not subscribed on behalf of a DOR Entity (or such Person's Affiliates) but provides coverage to a DOR Entity, then it is a LMI Insurance Policy only to the extent it insures the DOR Entity.

**ccc.**     <u>LMI Settlement Amount</u>

The term "**LMI Settlement Amount**" means the net sum of Fifteen Million United States Dollars ($15,000,000). Each London Market Insurer shall pay its several, respective, allocated share of the LMI Settlement Amount pursuant to the terms of Section 2. Each London Market Insurer's respective, allocated several share of the LMI Settlement Amount is set forth on Attachment D.

**ddd.**     **[Reserved]**

**eee.**     <u>London Market Companies</u>

The term "**London Market Companies**" means the companies doing business in the London insurance market, which severally subscribed, each in its own proportionate share, to one or more of the LMI Insurance Policies (such insurers are identified in Attachment B to this Agreement). London Market Companies shall also include those companies doing business in the London insurance market who subscribed any LMI Insurance Policies (a) the existence of which has not presently been established but which provided insurance to any DOR Entity; or (b) the existence of which has been established but the identity of such company as a subscribing insurer is not presently known. As used herein, London Market Companies shall mean, in their capacity

as such, the named corporate entity and all predecessors, successors, Affiliates, assigns, pool companies as such, and subsidiaries. It is further expressly understood that Persons are London Market Companies only in their capacity as a subscriber of the Subject Insurance Policies (as opposed to other insurance policies) subscribed by them in the London insurance markets (as opposed to insurance markets located elsewhere).

### fff. London Market Insurers

The term "**London Market Insurers**" means Lloyd's Underwriters and the London Market Companies. The London Market Insurers do not include any specific insurance company listed on Attachment C to this Agreement.

### ggg. London Market Insurer Entities

The term "**London Market Insurer Entities**" means, with respect to each London Market Insurer:

> (i) each of such London Market Insurer's Affiliates (except to the extent such Affiliates have independent obligations under this Agreement);

> (ii) each of the foregoing Persons' Agents; and

> (iii) each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through, or in concert with them, in their capacities as such.

### hhh. Mediation

The term "**Mediation**" means the mediation by the Mediation Parties, as ordered by the Bankruptcy Court, on March 10, 2020.

### iii. Mediation Parties

The term "**Mediation Parties**" means, collectively: (a) DOR; (b) each insurer named as a Defendant in the Insurance Coverage Action; (c) the Committee; (d) state court counsel for Tort Claimants; (e) the *ad hoc* committee of parishes and other parties-in-interest, including schools or other non-debtor Catholic entities located within the DOR, to the extent permitted or required by the Mediator.

### jjj. Mediation Motion

The term "**Mediation Motion**" means the Motion for Entry of an Order Referring this Adversary Proceeding to Mediation filed by the DOR in the Insurance Coverage Action.

### kkk. Mediation Order

The term "**Mediation Order**" means the Order Directing Mediation and Appointing Mediator filed by the DOR in the Insurance Coverage Action.

**lll.**    **Mediator**

The term "**Mediator**" means the Honorable Gregg W. Zive, United States Bankruptcy Judge.

**mmm. Medicare**

The term "**Medicare**" means Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq*., enacted July 1, 1966, including all subsequent amendments thereto.

**nnn.**    **Medicare Beneficiary**

The term "**Medicare Beneficiary**" means any individual who has received or is eligible to receive benefits under Medicare and is the holder of a Channeled Claim.

**ooo.**    **MSP or Medicare Secondary Payor Act**

The term "**Medicare Secondary Payor Act**" or "**MSP**" means 42 U.S.C. § 1395y *et seq*., or any other similar statute or regulation, and any related rules, regulations or guidance issued in connection therewith or amendments thereto.

**ppp.**    **MMSEA**

The term "**MMSEA**" means § 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L.110-173), which imposes reporting obligations on those Persons with payment obligations under the MSP.

**qqq.**    **Modern-Day Policies**

The term "**Modern-Day Policies**" means (i) policy Nos. 18W2012 and 18XS133 (July 1, 2018/19); 19W2012 and 19XS133 (July 1, 2019/20); 20W2012 and 20XS133 (July 1, 2020/21) subscribed by Lloyd's Underwriters and any Companies, together with (ii) any other insurance policies subscribed in favor of the DOR Entities by Lloyd's Underwriters and any Companies (a) on or after July 1, 1993, or (b) providing coverage on a claims-made basis where the applicable claim period has not expired as of the date of this Agreement.

**rrr.**    **Non-DOR Insurer**

The term "**Non-DOR Insurer**" means an insurer that does not fall into the definition of Insurer but insures a Person that is allegedly liable for Claims relating to Abuse.

**sss.**    **Non-Settling Insurer**

The term "**Non-Settling Insurer**" means any Person that has, or could be alleged to have, issued or subscribed an insurance policy providing coverage for Tort Claims, which Person has not settled its obligations under such policy.

19

**ttt.**     **Person**

The term "**Person**" means any individual or entity, including any corporation, limited liability company, partnership, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, proprietorship, association, joint stock company, joint venture, estate, trust, trustee, personal executor or personal representative, unincorporated association, or other entity, including any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof.

**uuu.**     **Petition Date**

The term "**Petition Date**" means September 12, 2019.

**vvv.**     **Plan**

The term "**Plan**" means a plan of reorganization proposed by DOR, after good-faith consultation with the LMI/Interstate Entities, which (a) contains all of the following provisions, but no provision that is contrary to or inconsistent with this Agreement; (b) allows all of the acts and transactions under, and envisioned by, this Agreement to occur with binding legal effect; (c) does not materially and adversely affect the rights, duties, or interests of the DOR Entities or the LMI/Interstate Entities under this Agreement; (d) includes all papers, exhibits, attachments, appendices, or other documents filed with or in support of the Plan and necessary for its implementation, and any documents relating to the establishment and operation of the Trust; and (e) shall include the following provisions:

(i)     incorporating this Agreement and the Escrow Agreement;

(ii)     specifying the terms of this Agreement and the Escrow Agreement shall control in the event of any conflict with the Plan or the Confirmation Order;

(iii)     prohibiting DOR from continuing to pursue the Insurance Coverage Action against the London Market Insurers, Interstate, and National Surety Corporation, requiring DOR to dismiss its Claims against London Market Insurers, Interstate, and National Surety Corporation in the Insurance Coverage Action, with prejudice, within fourteen (14) days after the Plan Effective Date, and prohibiting any DOR Entity from asserting any Coverage Claims against LMI/Interstate Entities;

(iv)     setting forth the Channeling Injunction and the Settling Insurer Supplemental Injunction;

(v)     establishing the Trust, appointing the Trustee, and binding both of them to perform those requirements imposed upon them by this Agreement;

(vi)     describing the role of the Future Claims Representative and seeking the continued appointment of the Future Claims Representative to continue in his duties;

(vii)     channeling all Channeled Claims to the Trust;

(viii)    denominating each of the LMI/Interstate Entities as Settling Insurers;

(ix)    requiring each Channeled Claimant receiving a payment from the Trust to sign a release of all Claims against the LMI/Interstate Entities and the DOR Entities;

(x)    providing that none of DOR Entities, the Trust, or the Settling Insurers will have any reporting obligations in respect of their contributions to the Trust, or in respect of any payments, settlements, resolutions, awards, or other Claim liquidations by the Trust, under the reporting provisions of MSP or MMSEA, and providing further, *verbatim*:

a.    It is the position of DOR that none of DOR Entities, the Trust, or the Settling Insurers will have any reporting obligations in respect of their contributions to the Trust, or in respect of any payments, settlements, resolutions, awards, or other Claim liquidations by the Trust, under the reporting provisions of MSP or MMSEA. Prior to making any payments to any claimants, the Trust shall seek a statement or ruling from the United States Department of Health and Human Services ("**HHS**") that none of the Trust, DOR Entities, or Settling Insurers has any reporting obligations under MMSEA with respect to payments to the Trust by the DOR Entities or Settling Insurers or payments by the Trust to Claimants. Unless and until there is definitive regulatory, legislative, or judicial authority (as embodied in a final non-appealable decision from the United States Court of Appeals for the Second Circuit or the United States Supreme Court), or written confirmation from HHS that none of the DOR Entities or the Settling Insurers has any reporting obligations under MMSEA with respect to any settlements, payments, or other awards made by the Trust or with respect to the contributions the DOR Entities and the Settling Insurers have made or will make to the Trust, the Trust shall, at its sole expense, in connection with the implementation of the Plan, act as a reporting agent for the DOR Entities and Settling Insurers, and shall timely submit all reports that would be required to be made by any DOR Entity or Settling Insurer under MMSEA on account of any Claims settled, resolved, paid, or otherwise liquidated by the Trust or with respect to contributions to the Trust, including reports that would be required if the payments to the Trust by a DOR Entity or Settling Insurer were determined to be made pursuant to "applicable plans" for purposes of MMSEA, or any DOR Entity or Settling Insurer were otherwise found to have MMSEA reporting requirements. The Trust, in its role as reporting agent for the DOR Entities and Settling Insurers, shall follow all applicable guidance published by CMS to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

b.    If the Trust is required to act as a reporting agent for any DOR Entity or Settling Insurer pursuant to Section 1.vvv.(x)a., the Trust shall provide a written certification to each DOR Entity and Settling Insurer within twenty-one (21) days following the end of each calendar quarter, confirming that all reports to CMS required by Section 1.vvv.(x)a. have been submitted in a timely fashion, and identifying (a) any reports that were rejected or otherwise identified as noncompliant by CMS, along with the basis for such rejection or noncompliance;

and (b) any payments to Medicare Beneficiaries that the Trust did not report to CMS.

c.      With respect to any reports rejected or otherwise identified as noncompliant by CMS, the Trust shall, upon request by any DOR Entity or Settling Insurer, promptly provide copies of the original reports submitted to CMS, as well as any response received from CMS with respect to such reports; *provided, however,* that the Trust may redact from such copies the Redacted Information. With respect to any such reports, the Trust shall reasonably undertake to remedy any issues of noncompliance identified by CMS, resubmit such reports to CMS, and, upon request by any DOR Entity or Settling Insurer, provide each DOR Entity and Settling Insurer copies of such resubmissions; *provided, however,* that the Trust may redact the Redacted Information. If the Trust is unable to remedy its noncompliance, the provisions of Section 1.vvv.(x)g. shall apply.

d.      If the Trust is required to act as a reporting agent for a DOR Entity or Settling Insurer pursuant to the provisions of Section 1.vvv.(x)a., with respect to each Channeled Claim of a Medicare Beneficiary paid by the Trust and not disclosed to CMS, the Trust shall, upon request by any DOR Entity or Settling Insurer, promptly provide the last four digits of the claimant's Social Security number, the year of the claimant's birth and any other information in the possession or control of the Trust that may be necessary in the reasonable judgment of any DOR Entity or Settling Insurer to satisfy their obligations, if any, under MMSEA, as well as the basis for the Trust's failure to report the payment. In the event any DOR Entity or Settling Insurer informs the Trust that it disagrees with the Trust's decision not to report a Claim paid by the Trust, the Trust shall promptly report the payment to CMS. All documentation relied upon by the Trust in making a determination that a payment did not have to be reported to CMS shall be maintained for a minimum of six (6) years following such determination.

e.      If the Trust is required to act as a reporting agent for any DOR Entity, or Settling Insurer pursuant to the provisions of Section 1.vvv.(x)a., the Trust shall make the reports and provide the certifications required by Sections 1.vvv.(x)a. and b. until such time as such DOR Entity or Settling Insurer determines, in its reasonable judgment, that it has no further legal obligation under MMSEA or otherwise to report any settlements, resolutions, payments, or liquidation determinations made by the Trust or contributions to the Trust. Furthermore, following any permitted cessation of reporting, or if reporting has not previously commenced due to the satisfaction of one or more of the conditions set forth in Section 1.vvv.(x)a., and if any DOR Entity or Settling Insurer reasonably determines, based on subsequent legislative, administrative, regulatory, or judicial developments, that reporting is required, then the Trust shall promptly perform its obligations under Sections 1.vvv.(x)a. and b.

f.      Section 1.vvv.(x)a. is intended to be purely prophylactic in nature, and does not imply, and shall not constitute an admission, that the DOR Entities and/or Settling Insurers have made payments pursuant to "applicable plans" within

the meaning of MMSEA, or that they have any legal obligation to report any acts undertaken by the Trust or contributions to the Trust under MMSEA or any other statute or regulation.

g.      If CMS concludes that reporting done by the Trust in accordance with Section 1.vvv.(x)a. is or may be deficient in any way, and has not been corrected to the satisfaction of CMS in a timely manner, or if CMS communicates to the Trust, any DOR Entity or Settling Insurer a concern with respect to the sufficiency or timeliness of such reporting, or there appears to any DOR Entity or Settling Insurer a reasonable basis for a concern with respect to the sufficiency or timeliness of such reporting or non-reporting based upon the information received pursuant to Section 1.vvv.(x)b., c., or d., or other credible information, then each DOR Entity and Settling Insurer shall have the right to submit its own reports to CMS under MMSEA, and the Trust shall provide to any Entity that elects to file its own reports such information in its possession or control as the electing party may reasonably require in order to comply with MMSEA, including the full reports filed by the Trust pursuant to Section 1.vvv.(x)a., without any redactions. The DOR Entities and Settling Insurers shall keep any information they receive from the Trust pursuant to this Section 1.vvv.(x) confidential and shall not use such information for any purpose other than meeting obligations under MMSEA.

h.      Notwithstanding any other provisions hereof, the Trust shall not be required to report as required by this Section 1.vvv.(x) until the Person on whose behalf the Trust is required to report shall have provided its Medicare Reporting Number, if one exists. Moreover, the Trust shall have no indemnification obligation under this Section 1.vvv.(x) to such Person for any penalty, interest, or sanction with respect to a Claim that may arise on account of such Person's failure timely to provide its Medicare Reporting Number, if one exists, to the Trust in response to a timely request by the Trust for such Medicare Reporting Number. However, nothing relieves the Trust from its reporting obligations with respect to each Person who provides the Trust with its Medicare Reporting Number. The Trust shall indemnify each DOR Entity and Settling Insurer for any failure to report payments to Medicare eligible Tort Claimants on behalf of Persons who have timely supplied Medicare Reporting Numbers, if any exists.

i.      Prior to remittance of funds to any Channeled Claimant or counsel therefor, the Trustee shall obtain in respect of any Channeled Claim a certification from the Claimant that said Claimant has or will provide for the payment and/or resolution of any obligations owing or potentially owing under MSP relating to such Channeled Claim. If the Trust receives no such certification, the Trust may withhold payment from any Claimant the funds sufficient to assure that all obligations owing or potentially owing under MSP relating to such Tort Claim are paid to CMS. The Trust shall provide a quarterly certification of its compliance with this Section 1.vvv.(x) to each DOR Entity and Settling Insurer, and permit reasonable audits by such Persons, no more often than annually, to confirm the Trust's compliance with this Section 1.vvv.(x). For the avoidance of doubt, the Trust shall be obligated to comply with the requirements of this Section 1.vvv.(x)

23

regardless of whether any DOR Entity or Settling Insurer elects to file its own reports under MMSEA pursuant to Section 1.vvv.(x)g.

j.        Compliance with the provisions of this Section 1.vvv.(x) shall be a material obligation of the Trust under the Plan, in favor of the DOR Entities and Settling Insurers under the Plan.

k.        The Trust shall defend, indemnify, and hold harmless the DOR Entities and Settling Insurers from any Medicare Claims reporting and payment obligations relating to its payment of Channeled Claims, including any obligations owing or potentially owing under MMSEA or MSP, and any Claims related to the Trust's obligations under Section 1.vvv.(x).

**www.  Plan Effective Date**

The term "**Plan Effective Date**" means the date on which the Plan by its terms becomes effective and binding upon DOR and all persons asserting Claims against DOR.

**xxx.    Redacted Information**

The term "**Redacted Information**" means names, Social Security numbers other than the last four digits, health insurance claim numbers, taxpayer identification numbers, employer identification numbers, mailing addresses, telephone numbers, and dates of birth of the Tort Claimants, and the names of the guardians, conservators, and/or other personal representatives, as applicable.

**yyy.    Reorganized Debtor**

The term "**Reorganized Debtor**" means DOR, on and after the Plan Effective Date.

**zzz.    Resolute**

The term "**Resolute**" means Resolute Management Services Ltd. (formerly known as Equitas Management Services Limited).

**aaaa.  Settlement Amount**

The term "**Settlement Amount**" means, collectively, the Interstate Settlement Amount and the LMI Settlement Amount.

**bbbb.  Settlement Approval Findings and Conclusions**

The term "**Settlement Approval Findings and Conclusions**" means findings of fact and conclusions of law pursuant to 11 U.S.C. §§ 363(b), (f), and (m) and Bankruptcy Rule 9019, entered concurrently with, but separately from, the Approval Order, as necessary for the Court to approve this Agreement, including the following:

12436097.7

(i)      DOR demonstrated sound business reasons for the settlement of its claims against LMI/Interstate in the Insurance Coverage Action and the implementation of such settlement through the sale of the LMI Insurance Policies to the London Market Insurers and the Interstate Insurance Policies to Interstate;

(ii)     The Parties mediated their disputes over the Tort Claims and the Coverage Claims pursuant to the Mediation Order, beginning in March 2020;

(iii)    In the Mediation, the Parties negotiated extensively, at arms-length, and in good faith.  London Market Insurers are purchasers in good faith of the LMI Insurance Policies and Interstate is a good faith purchaser of the Interstate Insurance Policies, within the meaning of Bankruptcy Code § 363(m), and are entitled to all of the protections of that statute;

(iv)    LMI/Interstate are *bona fide* good faith purchasers of the Subject Insurance Policies, for value;

(v)     The terms of the transactions contemplated by this Agreement, as well as the genesis and background of this Agreement, have been adequately disclosed to the Court;

(vi)    The terms and conditions of this Agreement (including the consideration to be realized by DOR's bankruptcy estate) are fair and reasonable;

(vii)   The transactions contemplated by this Agreement will benefit DOR's bankruptcy estate, its creditors and other stakeholders;

(viii)  The only potential holders of Interests in or against the Subject Insurance Policies are the DOR Entities and Persons who hold Claims against the DOR Entities, whose Claims might be covered by the Subject Insurance Policies;

(ix)    The DOR Entities are parties to this Agreement, and hence are deemed to have consented to the sale within the meaning of Bankruptcy Code § 363(f)(2);

(x)     The Barred Claims are subject to *bona fide* dispute, hence the Subject Insurance Policies may be sold free and clear of such Claims pursuant to § 363(f)(4);

(xi)    All holders of Claims against the Subject Insurance Policies could be compelled, in a legal or equitable Action, to accept a money satisfaction of such Claims, therefore the Subject Insurance Policies may be sold free and clear of such Claims pursuant to § 363(f)(5);

(xii)   The compromises and settlements embodied in the Agreement have been negotiated in good faith, and are reasonable, fair, and equitable;

(xiii)  In light of:

25

a.    the balance between the possible litigation success and the settlement's future benefits;

b.    the likelihood of complex and protracted litigation and the consequent inconvenience, expense, and delay;

c.    the interests of creditors, including the relative benefits to each class of creditors;

d.    whether other parties in interest support the settlement;

e.    the competency and experience of counsel supporting the settlement;

f.    the experience and knowledge of the bankruptcy judge reviewing the settlement;

g.    the nature and breadth of releases to be obtained by officers and directors; and

h.    the extent to which the settlement is the product of arm's length bargaining,

this Agreement is fair and equitable and within the range of reasonable settlement terms;

(xiv)    The LMI Settlement Amount is fair, adequate, and reasonable consideration for (a) the sale by the DOR Entities and the buy-back by the London Market Insurers of the LMI Insurance Policies; and (b) the Entities' Release;

(xv)    The Interstate Settlement Amount is fair, adequate, and reasonable consideration for (a) the sale by the DOR Entities and the buy-back by Interstate of the Interstate Insurance Policies; and (b) the Entities' Release;

(xvi)    DOR provided due and adequate notice of the (a) sale of the Subject Insurance Policies; (b) terms and conditions of this Agreement; and (c) the hearing before the Court to approve this Agreement and the sale of the Subject Insurance Policies, in accordance with Bankruptcy Rules 2002 and 6004 to all known and unknown Claimants, including by providing notice by publication to any Future Tort Claimants;

(xvii)    It would be impractical to divide the Subject Insurance Policies amongst the DOR Entities and the holders of Tort Claims, therefore, to realize the value of the Subject Insurance Policies for DOR's bankruptcy estate and the Tort Claimants requires the sale of the Subject Insurance Policies;

(xviii) The sale of the Subject Insurance Policies outside the ordinary course of business satisfies the requirements of Bankruptcy Code § 363(b);

26

(xix)    The sale of the Subject Insurance Policies free and clear of the Interests of all Persons satisfies the requirements of Bankruptcy Code § 363(f);

(xx)    To the extent any Claimant may have any legal or equitable right to assert a Claim either directly against the Subject Insurance Policies, which policies are being acquired by LMI/Interstate pursuant to this Agreement, or indirectly by asserting such Claim against any DOR Entity, such Claims are deemed to be (a) "interests" as that term is used in Bankruptcy Code § 363(f); and (b) "Interests" herein; and

(xxi)    The Agreement may be approved pursuant to Bankruptcy Rule 9019(a).

## cccc.    Settlement Payment Date

The term "**Settlement Payment Date**" means the day sixty (60) days after the Effective Date, *provided, however*, that if such date is not a Business Day, the Settlement Payment Date shall be the next Business Day.

## dddd.    Settling Insurer Supplemental Injunction

The term "**Settling Insurer Supplemental Injunction**" means an order of the Court enjoining all Enjoined Claims by all Persons who now, or in the future may, hold such Claims against the Settling Insurers, pursuant to Bankruptcy Code § 105 or other provision of the Bankruptcy Code or applicable law.

## eeee.    Settling Insurers

The term "**Settling Insurers**" means, collectively, the LMI/Interstate Entities, and all other insurers of the DOR Entities, which settle, after the Petition Date, claims for insurance coverage brought against them by any DOR Entity, and which obtain the protection of the Settling Insurer Supplemental Injunction.

## ffff.    Subject Insurance Policies

The term "**Subject Insurance Policies**" means, collectively, the Interstate Insurance Policies and the LMI Insurance Policies.

## gggg.    Termination Event

The term "**Termination Event**" means that the Court has entered an order that (i) is contrary to or inconsistent with the Approval Order, or that denies approval of this Agreement; (ii) is contrary to or inconsistent with the Confirmation Order, or that denies confirmation of the Plan; or (iii) confirms a plan of reorganization other than the Plan (an "**Inconsistent Order**"), and either (a) the Inconsistent Order has become a Final Order or (b) there was an appeal of the Inconsistent Order and eighteen months have elapsed from the date of the appeal and the Inconsistent Order has not been reversed or overturned by the appellate court.

27

### hhhh.  Trust

The term "**Trust**" means the trust to be established under the Plan, which will assume liability for, and be established, pursuant to the Plan and, if applicable, Bankruptcy Code § 105, to pay, in whole or in part, Channeled Claims.

### iiii.  Trust Agreement

The term "**Trust Agreement**" means, collectively, any agreement establishing the Trust and the requirements for its administration, and any agreement setting forth procedures for the Trust to pay Channeled Claims, filed as exhibits to the Plan, as may be amended, together with such additional documents as may be executed in connection with the Trust Agreement.

### jjjj.  Trustee

The term "**Trustee**" means the Person appointed to administer the Trust, in accordance with the terms of the Plan.

### kkkk.  Underwriter Third-Party Beneficiaries

The term "**Underwriter Third-Party Beneficiaries**" means:

(i)     Resolute and the Equitas Entities;

(ii)    Equitas Insurance Limited to the extent it is not a successor to the Persons identified in Section 1.kkkk.(i) with respect to the subject matter of this Agreement;

(iii)   Any Person from time to time retained by or on behalf of Lloyd's Underwriters to act as their claims handling agent and/or service provider, solely in such capacity;

(iv)    The past, present and future reinsurers and retrocessionaires of the Equitas Entities or any of them, including National Indemnity Company and any other Person from time to time controlled (whether directly or indirectly), by Berkshire Hathaway, Inc., that provides retrocessional reinsurance to any one or more of the Equitas Entities, solely in such capacity; and

(v)     All past, present and future trustees, officers, directors, employees, subsidiaries, affiliates, representatives, attorneys and agents of the Persons set forth in Sections 1.kkkk.(i) to (iv) (inclusive), if any, solely in such capacity; and,

(vi)    The respective heirs, executors, successors and assigns (including any administrator, receiver, trustee, personal representative, liquidator (provisional or otherwise), or equivalent appointee/s under relevant insolvency law), of any of the Persons identified in Sections 1.kkkk.(i) through (v) (inclusive) above, solely in their capacity as such.

28

12436097.7
Case 2-19-02021-PRW,  Doc 149,  Filed 07/08/21,  Entered 07/08/21 19:17:02,
Description: Main Document , Page 31 of 172

**2.** **Payment of the Settlement Amount**

a.      On the Settlement Payment Date, (i) each of the London Market Insurers shall deposit their respective, several, allocated shares of the LMI Settlement Amount into the Escrow Account; and (ii) Interstate shall deposit the Interstate Settlement Amount into the Escrow Account.

b.      No later than fourteen (14) days after the Plan Effective Date:

(i)      DOR and LMI shall execute and deliver the Escrow LMI Release Instruction to the Escrow Agent; and

(ii)      DOR and Interstate shall execute and deliver the Escrow Interstate Release Instruction to the Escrow Agent.

c.      On the Escrow Release Date, to effectuate the buy-back of the Subject Insurance Policies from the DOR Entities free and clear of the Interests of all Persons, pursuant to Section 363(b), (f) and (m), and Federal Rule of Bankruptcy Procedure 9019, in full and final settlement of all obligations under and relating to the Subject Insurance Policies, and in consideration of the sale of the foregoing to the Settling Insurers free and clear of all Interests of any Person, and the other releases provided herein:

(i)      the Escrow Agent shall pay the Escrow Payment to the Trust;

(ii)      DOR, on behalf of the DOR Entities, and the London Market Insurers shall jointly execute the LMI Bill of Sale; and

(iii)      DOR, on behalf of the DOR Entities, and Interstate shall jointly execute the Interstate Bill of Sale.

d.      If DOR or the Trust later agrees that Interstate or any individual London Market Insurer may make any payment on terms that differ from the foregoing, then the DOR shall offer the same payment terms to Interstate and/or all other London Market Insurers.  It is the purpose of this provision to ensure that Interstate and all London Market Insurers shall have the same payment terms.  Notwithstanding the foregoing, in the event of a payment default by Interstate or any of the London Market Insurers, DOR or the Trust may pursue, or decline to pursue, enforcement of such payment obligation against the defaulting Party in their sole discretion, and any failure to pursue or collect such payment shall not relieve any other Party of their respective payment obligations hereunder.

e.      Upon the occurrence of the Escrow Release Date:

(i)      the sale of the LMI Insurance Policies shall automatically be effective and binding and the transfer of the LMI Insurance Policies shall be deemed for all purposes to have occurred on the Escrow Release Date, with the intent that no Person other than LMI shall retain anything whatsoever with respect to the LMI Insurance Policies; and

(ii)     the sale of the Interstate Insurance Policies shall automatically be effective and binding and the transfer of the Interstate Insurance Policies shall be deemed for all purposes to have occurred on the Escrow Release Date, with the intent that no Person other than Interstate shall retain anything whatsoever with respect to the Interstate Insurance Policies.

f.      If, before the occurrence of the Escrow Release Date, a DOR Entity other than DOR becomes a debtor in a bankruptcy case or insolvency Action, under the Bankruptcy Code or otherwise, and Interstate, or any London Market Insurer, has not satisfied its respective several payment obligation arising hereunder, then Interstate or such London Market Insurer shall be excused from performance under this Agreement until such time as either (i) such DOR Entity obtains, subject to the limitations imposed by the Bankruptcy Code, and subject to the equitable powers of the court in which such Action is pending, an order from such court approving this Agreement under Bankruptcy Code § 363(b), (f), and (m) and Bankruptcy Rule 9019, authorizing the assumption by such DOR Entity (or any successor thereto) of this Agreement under Bankruptcy Code § 365 ("**Assumption**"), or in the event the insolvency case is proceeding under other law, shall obtain a similar order from the court overseeing the insolvency case approving this Agreement and confirming the binding effect thereof; (ii) DOR obtains an order in the Action compelling the Assumption; or (iii) DOR obtains an order from the Court determining the equitable portion of the Settlement Amount allocable to any interest the DOR Entity subject to such bankruptcy case or insolvency Action may have in the Subject Insurance Policies. Each DOR Entity agrees that in the event it files a bankruptcy or other insolvency Action, it will not present any Claim for payment under this Agreement or the Subject Insurance Policies to Interstate or any London Market Insurer, until the Assumption has been approved by an order of the applicable court and such order has become a Final Order or until its equitable share in the Settlement Amount has been established by order of the Court pursuant to clause (iii) above and such order has become a Final Order. LMI/Interstate agree to cooperate fully and provide commercially reasonable assistance to DOR and any DOR Entity in obtaining any of the orders contemplated in this Section 2(f).

**3.     <u>Several Liability</u>**

The obligations of Interstate and each London Market Insurer are several and not joint. The DOR Entities agree that neither Interstate, nor any London Market Insurer entitled to the benefits of this Agreement, shall be liable for any settlement amount allocable to any other Person. Accordingly, Interstate agrees to pay only the Interstate Settlement Amount and each identified London Market Insurer listed in Attachment B agrees to pay only its individual, respective, allocated share of the LMI Settlement Amount, which amount is set forth in Attachment D, as applicable. No DOR Entity shall seek to recover from Interstate any amount in excess of the Interstate Settlement Amount, or from any individual London Market Insurer an amount in excess of its stated, respective, allocated share of the LMI Settlement Amount, as set forth in Attachment D. Upon the Escrow Release Date, each DOR Entity shall be deemed to have released such Person pursuant to Section 4 of this Agreement.

**4.** **Mutual Releases**

**a.** **By DOR Entities**

     (i)    Upon the Escrow Release Date, the Entities' Release shall become immediately effective without further acts by any Person. Those London Market Insurers entitled to the Entities' Release but not identified on Attachment B to this Agreement, namely, those London Market Insurers that subscribed an LMI Insurance Policy either not presently known, or known but to which the identity of the subscribers is not presently known, shall be entitled to all of the terms of the Entities' Release and to the Indemnity set forth in Section 5 upon the Escrow Release Date.

     (ii)    It is the intention of the DOR Entities to reserve no rights or benefits whatsoever under or in connection with the Subject Insurance Policies other than the right to receive the Settlement Amount under this Agreement and to assure LMI/Interstate their peace and freedom from such Interests and from all assertions of rights in connection with such Interests, *provided, however,* the Entities' Release does not release, and nothing in this Agreement shall affect the right of the DOR Entities, or the Trust, as applicable, to assert and pursue, Claims against and to collect from insurers other than those released under the Entities Release, and no Claims are released with respect to such Persons.

     (iii)    Upon the Escrow Release Date, any and all rights, duties, responsibilities, and obligations of (a) Interstate created by or in connection with the Interstate Insurance Policies; and (b) London Market Insurers created by or in connection with the LMI Insurance Policies, are terminated. As of the Escrow Release Date, the DOR Entities shall have no insurance coverage under the Subject Insurance Policies. The Entities' Release shall operate as though Interstate had never issued the Interstate Insurance Policies and the London Market Insurers had never subscribed the LMI Insurance Policies.

     (iv)    Each DOR Entity signing this Agreement, is, among other things, (a) releasing all Released Claims, including Claims that it does not know or suspect to exist in its favor, which, if known by such DOR Entity, might have materially affected its settlement with LMI/Interstate, and (b) expressly waiving all rights it might have under any federal, state, local, or other law or statute that would in any way limit, restrict, or prohibit such general release.

     (v)    Except with respect to any material breach of any representation, warranty or covenant by LMI/Interstate set forth in this Agreement, each DOR Entity expressly assumes the risk that acts, omissions, matters, causes, or things may have occurred, which it does not know or does not suspect to exist. To the fullest extent permitted by applicable law, each DOR Entity hereby waives the terms and provisions of any statute, rule or doctrine of common law which either: (a) narrowly construes releases purporting by their terms to release claims in whole or in part based upon, arising from, or related to such acts, omissions, matters, causes or things; or (b) which restricts or prohibits the releasing of such Claims.

31

(vi)     Nothing in the foregoing shall release Interstate or the London Market Insurers from their obligations under this Agreement including the obligation to pay the Interstate Settlement Amount and the LMI Settlement Amount.

**b.     By LMI/Interstate**

(i)     Upon the Escrow Release Date, Interstate, each London Market Insurer, and any subsequently appointed trustee or representative acting for such London Market Insurer or Interstate shall be deemed to remise, release, covenant not to sue, and forever discharge each DOR Entity from and against all Claims relating to the Subject Insurance Policies, which Interstate and each such London Market Insurer ever had, now have or hereinafter may have, from the beginning of time to the Escrow Release Date.

(ii)     Each Person released under the Entities' Release shall reserve no rights or benefits whatsoever under or in connection with the Subject Insurance Policies.

(iii)     Except with respect to any material breach of any representation, warranty or covenant by any DOR Entity set forth in this Agreement, each London Market Insurer and Interstate expressly assumes the risk that acts, omissions, matters, causes, or things may have occurred, which it does not know or does not suspect to exist.  To the fullest extent permitted by applicable law, each London Market Insurer and Interstate hereby waives the terms and provisions of any statute, rule or doctrine of common law which either: (a) narrowly construes releases purporting by their terms to release Claims in whole or in part based upon, arising from, or related to such acts, omissions, matters, causes or things; or (b) which restricts or prohibits the releasing of such Claims.

**5.     Indemnification**

a.     From and after the Escrow Release Date, the Trust shall indemnify and hold harmless Interstate and the London Market Insurers in respect of any and all Enjoined Claims. This indemnification includes Claims made by Persons over whom the Trust does not have control, including the DOR Entities, former subsidiaries, predecessors in interest, sellers or purchasers of assets, or any other Person who asserts Claims against or under, or Interests in or to, the Subject Insurance Policies.

b.     LMI/Interstate shall have the right to defend, with counsel of their choice, all Claims identified under Section 5.a.  LMI/Interstate may begin the defense of any Claim upon receipt of such a Claim.  LMI/Interstate agree to notify the Trust as soon as practicable of Claims identified under Section 5.a. and of its choice of counsel.

c.     The Trust shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by LMI/Interstate in defending such Claims.  LMI/Interstate shall defend any such Claim in good faith.  In defense of any such Claim, LMI/Interstate may settle or otherwise resolve a Claim with the prior consent of the Trust, which consent shall not be unreasonably withheld.

d.     This indemnification and hold harmless undertaking (Sections 5.a., b., and c.) also extend to the benefit of the Underwriter Third-Party Beneficiaries, in their capacity as such, all of

32

which are third-party beneficiaries of the terms of this indemnification and hold harmless undertaking.

## 6. Bankruptcy Obligations

a.      DOR shall provide to LMI/Interstate an initial draft of the proposed form of Approval Order, Settlement Approval Findings and Conclusions, and Bar Order at least seven (7) days before DOR submits the foregoing for approval of this Agreement to the Court, so that LMI/Interstate may provide comments and suggestions.  In the event that DOR makes material revisions to any of the foregoing documents, then, as soon as possible, DOR shall provide a copy of such material revisions to LMI/Interstate.  LMI/Interstate reserve the right to object to, *inter alia*, (i) any proposed order that does not satisfy all of the requirements of the definition of Approval Order set forth in Section 1.e., or (ii) any proposed findings and conclusions that do not satisfy all of the requirements of the definition of Settlement Approval Findings and Conclusions set forth in Section 1.bbbb.

b.      DOR shall provide to LMI/Interstate an initial draft of the proposed form of Confirmation Order, and Confirmation Findings and Conclusions, at least fourteen (14) days before DOR submits the foregoing to the Court, so that LMI/Interstate may provide comments and suggestions.  In the event that DOR makes material revisions to any of the foregoing documents, then, as soon as possible, DOR shall provide a copy of such material revisions to LMI/Interstate. LMI/Interstate reserve the right to object to, *inter alia*, any proposed order that does not satisfy all of the requirements of the definition of Confirmation Order set forth in Section 1.t, or the definition of Bar Order set forth in Section 1.k or any proposed findings of fact and conclusions of law that do not satisfy all the requirements of the definition of Confirmation Findings and Conclusions in Section 1.s.

c.      DOR shall provide to LMI/Interstate a draft of any proposed plan of reorganization fourteen (14) days before DOR submits the foregoing to the Court, so that LMI/Interstate may provide comments and suggestions.  In the event that DOR makes material revisions to the proposed plan of reorganization, then, as soon as possible, DOR shall provide a copy of such material revisions to LMI/Interstate.  LMI/Interstate reserve the right to object to, *inter alia*, any proposed plan of reorganization that does not satisfy all of the requirements of the definition of Plan set forth in Section 1.vvv. (a "**Non-Compliant Plan**").  If DOR proposes a Non-Compliant Plan, then LMI/Interstate may contest such plan, and DOR shall not request a hearing date on confirmation of a Non-Compliant Plan less than thirty (30) days after the date such plan is filed in the Court.

d.      DOR will seek entry of the Confirmation Order, as set forth in Section 1.t., together with the Confirmation Findings and Conclusions, as set forth in Section 1.s., including any required findings and conclusions under the Bankruptcy Code.

e.      DOR shall serve Bankruptcy Notice of the initial hearing to approve this Agreement and on confirmation of the Plan and the time for filing objections thereto.  The proposed form of notice shall be submitted to LMI/Interstate for their review and comment no later than seven (7) days prior to the actual service of notice.  If the initial hearing to approve this Agreement or to confirm the Plan is adjourned, DOR shall not be required to provide Bankruptcy Notice of such

adjourned hearing and shall only be required to file a notice of such adjournment on the docket in the Bankruptcy Case and provide such other and further notice as the Court may direct.

f.      Upon the occurrence of the Plan Effective Date, DOR shall file a notice thereof on the docket in the Bankruptcy Case and shall serve a copy of such notice upon counsel for LMI/Interstate.

g.      In the event that any Person attempts to prosecute a Barred Claim or a Claim that, upon entry of the Approval Order, would be a Barred Claim,

(i)      against LMI/Interstate (or any of them) then promptly following notice from LMI/Interstate, DOR shall file a motion and supporting papers seeking an order from the Court, pursuant to Bankruptcy Code §§ 105(a) and/or 362(b), as applicable, staying such Claims until the Escrow Release Date, or, alternatively, this Agreement is terminated under Section 9.  However, if DOR is unable to obtain a stay of such Claim then LMI/Interstate shall, subject to the terms, conditions and any applicable limits and retentions of the Subject Insurance Policies, defend such Claims, and may either settle them (subject to DOR's prior written consent) or litigate them to judgment, and the applicable DOR Entities shall assist and cooperate fully with LMI/Interstate in such defense.  All amounts expended by LMI/Interstate in settlement or defense of such Claims pursuant to this Section 6.g.(i) shall, if paid before the occurrence of the Settlement Payment Date, reduce and be set off against the obligations of LMI/Interstate to pay the Settlement Amount set forth in this Agreement. For amounts expended by LMI/Interstate pursuant to this Section 6.g.(i) on or after the Settlement Payment Date, upon the Escrow Release Date, DOR shall cause the Escrow Agent to reimburse the London Market Insurers any and all such amounts up to the amount of the LMI Escrow Balance, and Interstate any and all such amounts up to the amount of the Interstate Escrow Balance.  If such amounts paid by the London Market Insurers exceed the LMI Escrow Balance, then DOR shall cause the Escrow Agent to reimburse the London Market Insurers the full LMI Escrow Balance, and if the amounts paid by Interstate exceed the Interstate Escrow Balance, DOR shall cause the Escrow Agent to reimburse Interstate the full Interstate Escrow Balance, and the terms and conditions of this Agreement shall remain in full force and effect without any further payment by the London Market Insurers or Interstate;

(ii)      against any DOR Entity, then promptly following notice from such DOR Entity, DOR shall file a motion and supporting papers seeking an order from the Court, pursuant to Bankruptcy Code §§ 105(a) and/or 362(b), as applicable, staying such Claims until the Escrow Release Date, or, alternatively, this Agreement is terminated under Section 9.  If the motion for the stay is not granted, the defendant DOR Entities shall defend such Claims and use their best efforts to prevent the entry of a default and LMI/Interstate shall assist and cooperate fully in such defense.  In such event, LMI/Interstate's obligations relating to such litigation shall be determined by, and subject to, the terms, conditions and any applicable limits and retentions of the Subject Insurance Policies.  All amounts paid by LMI/Interstate to indemnify a DOR Entity pursuant to this Section 6.g.(ii) shall, if paid before the occurrence of the Settlement Payment Date, reduce and be set off against the obligations of LMI/Interstate to pay the Settlement Amount set forth in this Agreement. For amounts expended by LMI/Interstate pursuant to this Section 6.g.(ii) on or after the

34

Settlement Payment Date, then upon the Escrow Release Date, DOR shall cause the Escrow Agent to reimburse the London Market Insurers any and all such amounts up to the amount of the LMI Escrow Balance, and Interstate any and all such amounts up to the amount of the Interstate Escrow Balance. If such amounts paid by the London Market Insurers exceed the LMI Escrow Balance, then DOR shall cause the Escrow Agent to reimburse the London Market Insurers the full LMI Escrow Balance, and if the amounts paid by Interstate exceed the Interstate Escrow Balance, DOR shall cause the Escrow Agent to reimburse Interstate the full Interstate Escrow Balance, and the terms and conditions of this Agreement shall remain in full force and effect without any further payment by the London Market Insurers or Interstate;

(iii)    and this Agreement is ultimately terminated, all amounts respectively paid by each London Market Insurer and/or Interstate pursuant to Section 6.g.(i) or (ii) shall be credited against their respective obligations under the Subject Insurance Policies and, if the Settlement Payment Date has occurred, DOR shall cause the Escrow Agent to reimburse the London Market Insurers the full LMI Escrow Balance, and reimburse Interstate the full Interstate Escrow Balance.

## 7.    **Representations and Warranties**

a.    DOR represents and warrants that the notice required under the definition of Bankruptcy Notice includes all Claimants whose names and addresses are known to DOR or are readily ascertainable.

b.    Each DOR Entity represents and warrants that it has the authority to execute this Agreement as its binding and legal obligation, subject in the case of DOR, to receiving Court approval of this Agreement.

c.    Interstate represents and warrants to DOR that (i) it has, and at all times prior to payment in full of the Interstate Settlement Amount will have, sufficient liquid assets to pay the Interstate Settlement Amount in full and (ii) it is not now, nor has it ever been, the subject of any bankruptcy or insolvency proceeding in any jurisdiction.

d.    Each London Market Insurer represents and warrants to DOR that (i) it has, and at all times prior to payment in full of its allocated portion of the LMI Settlement Amount as reflected on Attachment D will have, sufficient assets to pay its allocated portion of the LMI Settlement Amount in full and (ii) it is not now, nor has it ever been, the subject of any bankruptcy or insolvency proceeding in any jurisdiction.

e.    Each Party represents and warrants that the Persons signing this Agreement on its behalf are authorized to execute this Agreement.

f.    Each individual signing this Agreement on behalf of a Party represents and warrants that he or she has the right, power, legal capacity, and authority to enter into this Agreement on behalf of such Party and bind such Party to perform each of the obligations specified herein.

12436097.7

## 8. **Reduction Clause.**

The Plan shall provide substantially as follows:

a.   Litigation/Settlement Between an Alleged Insured or Tort Claimant and Non-Settling Insurers

(i)   In any Action, including the Insurance Coverage Action, involving a DOR Entity, the Reorganized Debtor, or the Trust (collectively, "**Alleged Insured**") or a Tort Claimant, as applicable, and one or more Non-Settling Insurers, where a Non-Settling Insurer has asserted, asserts, or could assert any Contribution Claim against an LMI/Interstate Entity, then any judgment or award obtained by such Alleged Insured or Tort Claimant against such Non-Settling Insurer shall be automatically reduced by the amount, if any, that such LMI/Interstate Entity is liable to pay such Non-Settling Insurer as a result of its Contribution Claim, so that the Contribution Claim is thereby satisfied and extinguished entirely ("**Reduction Amount**").  In any Action involving an Alleged Insured or Tort Claimant against a Non-Settling Insurer, where such an LMI/Interstate Entity is not a party, such Alleged Insured or Tort Claimant shall obtain a finding from that court or arbitrator(s), as applicable, of the Reduction Amount before entry of judgment against such Non-Settling Insurer.  In the event that such a reduction is not made as described above, then any Contribution Claim by any Non-Settling Insurer against any LMI/Interstate Entity shall be reduced by the Reduction Amount, as determined by the court or arbitrator(s) in which such Contribution Claim is filed.  LMI/Interstate shall be required to cooperate in good faith with DOR and/or the Trust to take commercially reasonable steps to defend against any Contribution Claim.  In the absence of such good faith cooperation, the Reduction Amount shall be zero.  In the event that application of the Reduction Amount eliminates the Non-Settling Insurer's Contribution Claim, then such Non-Settling Insurer shall fully reimburse LMI/Interstate Entities their costs and expenses, including legal fees, incurred in responding to the Contribution Claim Action, including all costs, expenses and fees incurred in seeking relief from the Court.

(ii)   If an Alleged Insured or Tort Claimant and a Non-Settling Insurer enter into an agreement settling one or more Claims relating to Abuse, such agreement shall include a provision whereby such Non-Settling Insurer releases Contribution Claims against LMI/Interstate so long as LMI/Interstate release Contribution Claims against such Non-Settling Insurer. If such settlement agreement fails to include such a release provision, and the Non-Settling Insurer has asserted, asserts, or could assert a Contribution Claim against an LMI/Interstate Entity, then any settlement amount in such settlement agreement shall be deemed automatically reduced by the Reduction Amount.  In such event, the settling parties shall obtain a finding from the applicable court or arbitrator(s) of the Reduction Amount.  If (a) the settlement agreement was entered into without litigation or arbitration such that no judge or arbitrator can determine the Reduction Amount, or (b) such a reduction is not otherwise made as described above, then any Contribution Claim by any Non-Settling Insurer against any of LMI/Interstate Entity shall be reduced by the Reduction Amount, as determined by the court or arbitrator(s) in which such Contribution Claim is filed.  LMI/Interstate shall be required to cooperate in good faith with DOR and/or the Trust to take commercially reasonable steps to defend against any Contribution Claim.  In

36

the absence of such good faith cooperation, the Reduction Amount shall be zero. In the event that the reduction eliminates the Non-Settling Insurer's Contribution Claim, then such Non-Settling Insurer shall fully reimburse the LMI/Interstate Entities their costs and expenses, including legal fees, incurred in responding to the Contribution Claim Action, including all costs, expenses and fees incurred in seeking relief from the Court.

b.  LMI/Interstate agree that they will not pursue any Contribution Claims that they might have against any insurer (a) whose Contribution Claim against LMI/Interstate is satisfied and extinguished entirely; or (b) that does not make a Contribution Claim against LMI/Interstate, or any of them. Notwithstanding the foregoing, if a Person pursues a Contribution Claim against Interstate or a London Market Insurer, then Interstate or such London Market Insurer shall be free to assert its Contribution Claims against such Person.

c.  The LMI/Interstate Entities shall be entitled to notice, pursuant to Section 21, of the initiation of any Action or settlement negotiations in which a Contribution Claim is asserted against any LMI/Interstate Entity which shall be given by (A) the Alleged Insured that is a party to such Action or settlement negotiations; or (B) if no Alleged Insured is such a party, the Non-Settling Insurer asserting such Contribution Claim.

d.  The Trust shall use its best efforts to obtain, from all Settling Insurers, agreements similar to those contained in this Section 8.

## 9.  **Termination of Agreement**

a.  The Parties may terminate this Agreement in writing upon mutual assent.

b.  Upon the occurrence of a Termination Event, each of DOR and LMI/Interstate may terminate this Agreement upon thirty (30) days' written notice to the other Parties, *provided, however* (i) such notice must be provided no later than forty-five (45) days following the applicable Termination Event, (ii) any notice terminating this Agreement issued by any of the London Market Insurers or Interstate as a result of a Termination Event shall, unless DOR agrees otherwise in writing, be effective to terminate this Agreement as to each and every one of the London Market Insurers and Interstate, and (iii) no Party shall have the right to terminate this Agreement on account of the occurrence (or alleged occurrence) of a Termination Event once the Escrow Release Date has occurred and the sale, assignment, and transfer of the Subject Insurance Policies pursuant to Section 2.c. of this Agreement has been consummated.

c.  Either DOR or LMI/Interstate may terminate this Agreement, at any time prior to the Escrow Release Date upon thirty (30) day's written notice to the other Parties if (i) any Person attempts to prosecute any Claim that could be covered under any of the Subject Insurance Policies or result in LMI/Interstate incurring costs chargeable against the Settlement Amount in accordance with the provisions of Section 6.g. of this Agreement, (ii) DOR has applied to the Court for entry of an order staying such Claims pursuant to 11 U.S.C. §§ 105 and 362, and (iii) the Court has not, within twenty-one (21) days of a hearing on such application, entered an order staying the further prosecution of such Claims, or any such order expires without extension or is overturned by an order on appeal which has become a Final Order.

37

d.    In the event of termination pursuant to this Section 9, unless the Parties agree otherwise in writing, this Agreement shall be void *ab initio* and all Parties shall retain all of their Interests relating to the Subject Insurance Policies as if this Agreement never existed; provided, however, that any amounts expended by LMI/Interstate pursuant to Section 6.g. of this Agreement shall be credited against the obligations of the London Market Insurers and Interstate under the Subject Insurance Policies, and within fourteen (14) days of termination, the Parties shall jointly direct the Escrow Agent to return the LMI Escrow Balance to the paying London Market Insurers and the Interstate Escrow Balance to Interstate.

## 10.    <u>Treatment of Perpetrators</u>

Nothing in this Agreement overrides the treatment in the Plan of individuals who perpetrated an act of Abuse that forms the basis for a Tort Claim.

## 11.    <u>Exclusion of religious orders, dioceses, and other archdioceses</u>

No religious orders, diocese or archdiocese, or any other Person, other than DOR and the entities listed on Attachment E, is a DOR Entity, except to the extent such Person is insured under the Subject Insurance Policies.

## 12.    <u>Reasonably Equivalent Value</u>

a.    This Agreement was bargained for and entered into in good faith and as the result of arms-length negotiations;

b.    Based on their respective independent assessments, with the assistance and advice of counsel, of the probability of success, the complexity, the delay in obtaining relief, and the expense of maintaining the Insurance Coverage Action, the payments received by the DOR Entities pursuant to this Agreement constitute a fair and reasonable settlement of the Released Claims;

c.    The payments and other benefits received under this Agreement by the DOR Entities constitute reasonably equivalent value for the Entities' Release, indemnity, and other benefits received by the LMI/Interstate Entities under this Agreement; and

d.    Subject to the occurrence of the Escrow Release Date, this Agreement constitutes a full and final resolution of all issues in the Insurance Coverage Action.

## 13.    <u>Confidentiality</u>

a.    Except as necessary to obtain approval of this Agreement in the Court, the Parties agree that all matters relating to the negotiation of this Agreement shall be confidential and are not to be disclosed except by order of court, or written agreement of the Parties, except that, provided recipients agree to keep such information confidential, this Agreement may be disclosed to: (i) reinsurers of LMI/Interstate directly or through intermediaries; (ii) outside auditors or accountants of any Party; (iii) representatives of a non-party insurer subscribing or allegedly subscribing one or more of the LMI Insurance Policies, which insurer is, has been or may become insolvent in the future, including any liquidators, provisional liquidators, scheme administrators, trustees, or

similarly empowered Persons acting for such insurer. This Agreement may also be disclosed, as required, to the Inland Revenue, the Internal Revenue Service or other U.S. or U.K. governmental authority that properly requires disclosure, or as otherwise required by law. The Parties acknowledge and agree that a copy of this Agreement will be publicly filed on the docket and provided to parties in interest in the Bankruptcy Case, without obligation of confidentiality or restrictions on further disclosure.

b.    In the event a private litigant, by way of document request, interrogatory, subpoena, or questioning at deposition or trial, attempts to compel disclosure of anything protected by this section from a Party, such Party shall decline to provide the requested information on the ground that this Agreement restricts such disclosure. In the event such private litigant seeks an order from any court or governmental body to compel such disclosure, or in the event that a court, government official, or governmental body (other than the Inland Revenue or Internal Revenue Service) requests or requires disclosure of anything protected by this paragraph, the Party from whom disclosure is sought shall promptly give written notice to the other Parties, and shall promptly provide copies of all notice papers, orders, requests, or other documents in order to allow each Party to take such protective steps as may be appropriate. Notice shall be made under this paragraph to the persons identified in Section 21.

c.    Material protected by this section shall be deemed to fall within the protection afforded compromises and offers to compromise by Rule 408 of the Federal Rules of Evidence and similar provisions of state law or state rules of court.

## 14.    Third-Party Beneficiaries

The Underwriter Third-Party Beneficiaries, the Trust, and the Trustee are intended third-party beneficiaries of this Agreement. Except as set forth in the preceding sentence, there are no other third-party beneficiaries of this Agreement.

## 15.    Co-operation

For a period of three (3) years following the Effective Date, the DOR Entities will undertake commercially reasonable acts, at the sole cost and expense of LMI/Interstate, to co-operate with LMI/Interstate in connection with their respective reinsurers, including responding to reasonable requests for information and meeting with representatives of reinsurers, *provided, however*, that the foregoing shall not require the DOR Entities to disclose any information which is subject to the attorney-client or other legally recognized privilege. Furthermore, the Parties shall use their reasonable best efforts and cooperate as necessary or appropriate to effect the transactions contemplated by this Agreement.

## 16.    Non-Prejudice and Construction of Agreement

a.    This Agreement is intended to be and is a compromise between the Parties and shall not be construed as an admission of coverage under the Subject Insurance Policies nor shall this Agreement or any provision hereof be construed as a waiver, modification, or retraction of the positions of the Parties with respect to the interpretation and application of the Subject Insurance Policies.

39

12436097.7
Case 2-19-02021-PRW,    Doc 149,    Filed 07/08/21,    Entered 07/08/21 19:17:02,
Description: Main Document  , Page 42 of 172

b.     This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions.  Accordingly, this Agreement does not reflect upon the Parties' views as to rights and obligations with respect to matters or Persons outside the scope of this Agreement.  This Agreement is without prejudice to positions taken by London Market Insurers and Interstate with regard to other insureds, and without prejudice with regard to positions taken by any DOR Entity with regard to other insurers.  Except for the express references to the Third-Party Beneficiaries, the Parties specifically disavow any intention to create rights in third parties under or in relation to this Agreement.

c.     This Agreement is the jointly drafted product of arms'-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed.  As such, no Party will assert that any ambiguity in this Agreement shall be construed against another Party.

d.     If any provision of the Plan, the Trust Agreement, or trust distribution procedures proposed thereunder conflicts with or is inconsistent with this Agreement in any way whatsoever, then the provisions of this Agreement shall control and take precedence. Neither the Plan nor the Trust Agreement shall be construed or interpreted to modify or affect any rights or obligations of LMI/Interstate under this Agreement.

## 17.     <u>No Modification</u>

No change or modification of this Agreement shall be valid unless it is made in writing and signed by the Parties.  Any attempted change or modification in violation of this Section shall be void *ab initio*.

## 18.     <u>Preservation of Modern-Day Policies</u>

For avoidance of doubt, notwithstanding anything to the contrary set forth herein, nothing in this Agreement shall in any way limit, modify, or otherwise affect any rights, remedies, causes of action, or defenses of any Party with respect to the Modern-Day Policies.

## 19.     <u>Execution</u>

There will be three signed originals of this Agreement.

## 20.     <u>Governing Law</u>

This Agreement shall be governed by and shall be construed in accordance with the laws of New York.

## 21.     <u>Notices</u>

Unless another person is designated, in writing, for receipt of notices hereunder, notices to the respective Parties shall be sent to the Persons listed on Attachment F.

**22.** **Integration**

This Agreement, including the attachments, constitutes the entire Agreement amongst Interstate, the London Market Insurers, and the DOR Entities, with respect to the subject matter hereof, and supersedes all discussions, agreements and understandings, both written and oral, amongst the Parties with respect thereto.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement by their duly authorized representatives.

The London Market Insurers identified in Attachment B have respectively designated Clyde & Co US LLP, as their attorneys-in-fact for the limited purpose of executing this Agreement on their behalf with express authority to do so.

[Signature Pages Follow]

12436097.7
Case 2-19-02021-PRW,    Doc 149,    Filed 07/08/21,    Entered 07/08/21 19:17:02,
Description: Main Document  , Page 44 of 172

Signed: _____

The Diocese of Rochester

Name Printed: _Lisa M. Passero_____

Title: _CFO_____

Date: _May 26_____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7
Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 45 of 172

Signed: _Catalina J Sugayan_

London Market Insurers

Name Printed: _Catalina J. Sugayan, Clyde 'Co US LLP_

Title: _As limited attorney-in-fact for LMI_

Date: _May 26,_ 2021

Signed: _____

London Market Insurers

Name Printed: _____

Title: _____

Date: _____ 2021

*Signature page to Settlement and Release Agreement*

Signed: _____

Interstate Insurance Company

Name Printed: PAUL GinneTT

Title: CEO/ChiEF ClAims OFFicee - AZRA

Date: 5/27/ _____ 2021


Signed: _____

Interstate Insurance Company

Name Printed: _____

Title: _____

Date: _____ 2021

Signed: _Kevin E. McKenna_

The Cathedral Community of Rochester NY

Name Printed: _KEVIN E. MᶜKENNA_

Title: _RECTOR_

Date: _June 7, 2021_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7
Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 46 of 171

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 48 of 172

Signed: _William F. McGrath Jr._

Roman Catholic Parish of St. Frances Xavier Cabrini

Name Printed: _William F. McGrath Jr._

Title: _Pastor, Secretary/Treasurer_

Date: _June 9,_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Signed: _Rev. Robert J. Schrader_

Peace of Christ Roman Catholic Parish of Rochester, NY

Name Printed: _Rev. Robert J. Schrader_

Title: _Pastor_

Date: _June 5,_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-20021-PRW, Doc 1491, Filed 05/28/21, Entered 05/28/21 14:53:52, Description: Exhibit A - Settlement Agreement Page 28 of 171
Description: Main Document Page 50 of 172

Signed: *Fr. Anthony Mugavero*

The Church of the Holy Apostles, Rochester, N.Y.

Name Printed: FR ANTHONY MUGAVERO

Title: PASTOR

Date: JUNE 8, 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW,  Doc 99-1,  Filed 05/27/21,  Entered 05/27/21 14:53:50,
Case 2-19-02021-PRW, Exhibit A1-49 Settlement Agreement, Entered 07/03/21 19:17:02,
Description: Main Document , Page 51 of 172

Signed: _Raymond H. Fleming_

St. Monica Church of Rochester, N.Y.

Name Printed: _Raymond H. Fleming_

Title: _Secretary – Treasurer_

Date: _June 10,_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 50 of 171
Case 2-19-02021-PRW, Doc 449, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 52 of 172

Signed: _Rev. Gary Tyman_

St. Anne's Church of Rochester

Name Printed: _Rev. Gary Tyman_

Title: _pastor, sec.-treas._

Date: _12 June_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Exhibit A - Settlement Agreement, Page 51 of 171
Description: Main Document , Page 53 of 172

Signed: *Rev. John F. Loncle*

The Church of the Blessed Sacrament, Rochester, N.Y.

Name Printed: *Rev. John F. Loncle*

Title: *Pastor*

Date: *June 9,* 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 53 of 173

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 54 of 172

Signed: _Rev. John F. Loncle_

St. Boniface Church, Rochester, N.Y.

Name Printed: _Rev. John F. Loncle_

Title: _Pastor_

Date: _June 9,_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 53 of 71

Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document , Page 55 of 172

Signed: _Roman Caly_

St. Stanislaus Church of Rochester, N.Y.

Name Printed: FR ROMAN CALY

Title: PASTOR

Date: 6 /22 /2021 _____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Signed: *Raymond H. Fleming*

Immaculate Conception/St. Bridget, Rochester

Name Printed: *Raymond H. Fleming*

Title: *Secretary - Treasurer*

Date: *June 10,* 2021

*Signature page to Settlement and Release Agreement*

Signed: _Rev. Lance Gonyo_

Kateri Tekakwitha Roman Catholic Parish

Name Printed: _Rev. Lance Gonyo_

Title: _Pastor_

Date: _June 3_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW Doc 149 Filed 07/08/21 Entered 07/08/21 19:17:03 Description: Main Document Page 58 of 172

Case 2-19-02021-PRW Doc 99-1 Filed 05/27/21 Entered 05/27/21 14:53:50 Description: Exhibit A - Settlement Agreement Page 56 of 171

Signed: _John A Firpo_____

Church of St. Charles Borromeo

Name Printed: _JOHN A. Firpo_____

Title: _Pastor_____

Date: _June 7,_____ 2021

*Signature page to Settlement and Release Agreement*

Signed: *Raymond N. Fleming*

Emmanuel Church of the Deaf of the Diocese of
Rochester

Name Printed: Raymond H. Fleming

Title: Secretary – Treasurer

Date: June 10, 2021

Signed: *Rev. Gary Tyman*

St. George Roman Catholic Lithuanian Church, Inc.

Name Printed: Rev. Gary Tyman

Title: administrator, sec.-treas.

Date: 12 June 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW   Doc 99-1   Filed 05/27/21   Entered 05/27/21 14:53:50
Description: Exhibit A - Settlement Agreement   Page 59 of 171

Case 2-19-02021-PRW   Doc 149   Filed 07/08/21   Entered 07/08/21 19:17:02,
Description: Main Document , Page 61 of 172

Signed: _Rev DS-Cool_ (signature)

he Parish of the Holy Family, Gates, NY

Name Printed: _Rev Brian C. Cool_

Title: _Temporary Administrator_

Date: _June 29,_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7
Case 2-19-02021-PRW,    Doc 99-1,    Filed 05/27/21,    Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 60 of 171

Case 2-19-02021-PRW,    Doc 149,    Filed 07/08/21,    Entered 07/08/21 19:17:02,
Description: Main Document  , Page 62 of 172

Signed: _____

Holy Cross Church of Rochester, NY

Name Printed: _Very Rev. Wm. Coffas_

Title: _Pastor_

Date: _June 17,_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7
Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 61 of 171

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 63 of 172

Signed: _____

St. John the Evangelist Church Corp.

Name Printed: Reverend Peter Enyan-Boadu

Title: Pastor

Date: June 9th, 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 62 of 171
Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 64 of 172

Signed: *Lee P. Chase*

St. Lawrence Church of Rochester, N.Y.

Name Printed: *Lee P. Chase*

Title: *Pastor*

Date: *4 June* 2021

*Signature page to Settlement and Release Agreement*

Signed: _Frank A. Pettrone_

St. Mark's Church of Rochester, New York

Name Printed: FRANK A. PETTRONE

Title: Pastoral Administrator

Date: June 7, 2021

*Signature page to Settlement and Release Agreement*

Signed: *Rev. John F. Loncle*

St. Mary's Church Society, Inc.

Name Printed: *Rev. John F. Loncle*

Title: *Pastor*

Date: *June 9,* 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Exhibit A - Settlement Agreement Page 67 of 172

Description: Main Document , Page 67 of 172

Signed: *Rev. Gary Tyman*

Our Lady of Lourdes Church of Brighton

Name Printed: Rev. Gary Tyman

Title: pastor, sec.-treas.

Date: 12 June 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 66 of 171

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document, Page 68 of 172

Signed: _____

Our Mother of Sorrows Church

William G. Coffas

Name Printed: Very Rev. William G. Coffas

Title: Pastor

Date: June 17 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 67 of 171
Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 69 of 172

Signed: _[signature]_

St. Mary's French Church Society (a/k/a Our Lady of Victory)

Name Printed: FR. RONALD A. ANTINARELLI

Title: PASTOR

Date: 29 June 2021 2021

*Signature page to Settlement and Release Agreement*

12436097.7
Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 68 of 171

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 70 of 172

Signed: _Joseph A. Hart_____

Church of Our Lady Queen of Peace of Rochester,
N.Y.

Name Printed: _REV. JOSEPH A. HART_____

Title: _PASTOR / SECRETARY-TREASURER_____

Date: _7/6_____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Signed: _[signature]_____

Saint Pius X Church of Rochester NY

Name Printed: <u>Reverend Paul Bonacci</u>

Title: Parochial Administrator

Date: 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-20021-PRW, Doc 1491, Filed 07/08/21, Entered 07/08/21 14:53:50,
Description: Exhibit A - Settlement Agreement Page 72 of 171

Signed: _____*Jimmy*_____

St. Theodore's Church of Gates, N.Y.

Name Printed: *Rev. Frederick Asuming*

Title: *Parochial Administrator*

Date: _____6 / 9 /_____ 2021

*Signature page to Settlement and Release Agreement*

Signed: _Joseph A. Hart_

St. Thomas More Church of Rochester, N.Y.

Name Printed: _REV. JOSEPH A. HART_

Title: _PASTOR / SECRETARY-TREASURER_

Date: _7/6_ _____ 2021

*Signature page to Settlement and Release Agreement*

Signed: _Rev. Patrick L. Connor_

The Catholic Parish of Saints Isidore and Maria
Torriba

Name Printed: _Rev. Patrick L. CONNOR_

Title: _Pastor_

Date: _June 8,_ _____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7
Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 73 of 171
Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document , Page 75 of 172

Signed: _John hatbenge_

St. Alphonsus Catholic German Church

Name Printed: _Fr. Jhn Gathenya_

Title: _Pastor_

Date: _June 9th_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 74 of 171
Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 76 of 172

Signed: _____

St. Aloysius Church, Auburn, NY

Name Printed: _STEPHEN N. KARANI_

Title: _PASTOR_

Date: _7/7/_ 2021

*Signature page to Settlement and Release Agreement*

12438097.7

Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 75 of 171

Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 77 of 172

Signed: _John Gathenya_ (signature)

The Catholic Church of the Holy Family, Auburn, N.Y.

Name Printed: Fr. John Gathenya

Title: Pastor

Date: June 9th 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 76 of 171
Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 78 of 172

Signed: _Frank E. Lioi_

St. Mary's Catholic Church, Auburn, N.Y.

Name Printed: _FRANK E. LIOI_

Title: _PASTOR_

Date: _June 7_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 77 of 171

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 79 of 172

Signed: _Frank E Lici_____

Saints Mary and Martha Roman Catholic Parish
Cayuga County, NY

Name Printed: _FRANK E. LICI_____

Title: _PASTOR_____

Date: _June 7_____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7
Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 78 of 171

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 80 of 172

Signed: _John Gathenya_ (signature)

Sacred Heart Church of Auburn, N.Y.

Name Printed: Fr. John Gathenya

Title: Pastor

Date: June 9th_____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 79 of 171
Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 81 of 172

Signed: _John Gathenya_ (signature)

St. Ann's Church, Owasco, Cayuga County, N.Y.

Name Printed: _Fr. John Gathenya_

Title: _Pastor_

Date: _June 9th_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 80 of 171
Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 82 of 172

Signed: _William A. Moorby_

Good Shepherd Catholic Community, Aurora

Name Printed: _WILLIAM A. MOORBY_

Title: _PASTOR_

Date: _19 JUNE_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Case 2-19-02021-PRW, Exhibit A49 Settlement Agreement - Filed 07/08/21 19:17:02,
Description: Main Document , Page 83 of 172

Signed: _____

St. Agnes Church Society, Avon, N.Y.

Name Printed: Michael R Fowler

Title: Pastor

Date: 6/4/21 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:52,
Description: Exhibit A - Settlement Agreement, Page 82 of 171

Case 2-19-02021-PRW, Doc 146-1, Filed 07/08/21, Entered 07/08/21 13:37:02,
Description: Main Document 9, Page 84 of 172

Signed: *Rev. James P. Jaeger*

St. John Vianney Roman Catholic Parish, Steuben
County, NY

Name Printed: *Rev. JAMES P. JAEGER*

Title: *Pastor*

Date: *6/10/21* 2021

*Signature page to Settlement and Release Agreement*

Signed: *Rev. James P. Jaeger*

St. John Vianney Roman Catholic Parish, Steuben County, NY

Name Printed: *Rev. JAMES P. JAEGER*

Title: *Pastor*

Date: *6/10/21* 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50, Description: Exhibit A - Settlement Agreement, Page 83 of 171

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02, Description: Main Document, Page 85 of 172

Signed: *Rev Joseph P. McCaffrey*

Church of the Nativity of the Blessed Virgin Mary,
Brockport, N.Y.

Name Printed: *Rev. Joseph P. McCaffrey*

Title: *Pastor*

Date: *June 8* _____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Case 2-19-02021-PRW, Exhibit A4-Settlement Agreement, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 86 of 172

Signed: _Rev. John H. Hayes_
St. Martin De Porres

Name Printed: _Rev. John H. Hayes_

Title: _Pastor_

Date: _June 4_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 85 of 171
Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 87 of 172

Signed: _[signature]_

St. Benedict Roman Catholic Parish Ontario County,
NY

Name Printed: _REV. MICHAEL COSTIK_

Title: _PASTER_

Date: _6/11_ _____ 2021

*Signature page to Settlement and Release Agreement*

Signed: _Father Peter Van Lieshout_

St. Peter's Roman Catholic Parish, Ontario County

Name Printed: _Father Peter VanLieshout_

Title: _Pastor_

Date: _June 18,_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW,  Doc 99-1,  Filed 05/27/21,  Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 87 of 171

Case 2-19-02021-PRW,  Doc 149,  Filed 07/08/21,  Entered 07/08/21 19:17:02,
Description: Main Document  , Page 89 of 172

Signed: _J. Felicjan Sierotowicz_

St. Joseph the Worker Roman Catholic Parish, Wayne
County

Name Printed: _✓ FELICJAN SIEROTOWICZ_

Title: _Parochial Administrator_

Date: _21 JUNE_ 2021

*Signature page to Settlement and Release Agreement*

Signed: _William F. Laird_

St. Margaret's Church of Conesus Lake, Livonia, N.Y.

Name Printed: _Rev. William F. Laird_

Title: _Pastor_

Date: _6 July_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7
Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 89 of 171

Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 91 of 172

Signed: _Rev. Fr. Matthew F. Jones_

All Saints, Corning

Name Printed: _Rev. Fr. Matthew F. Jones_

Title: _Pastor_

Date: _June 11,_ 2021

_Signature page to Settlement and Release Agreement_

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 90 of 171

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 92 of 172

Signed: _x. Felijen Sierotowin_

The Church of St. John Fisher of the Town of Huron,
New York

Name Printed: _FELICJAN SIEROTOWICZ_

Title: _Parochial Administrator_

Date: _JULY 2_ 2021

*Signature page to Settlement and Release Agreement*

Signed: _Rev. William B. Leone_

Church of St. Jerome, East Rochester, N.Y.

Name Printed: _William B. Leone_

Title: _Priest/PASTOR_

Date: _June 21,_ _____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Exhibit A - Settlement Agreement, Page 92 of 171
Description: Main Document , Page 94 of 172

Signed: _Rev. Scott M Kubinski_

Saint Cecilia's Roman Catholic Church Society

Name Printed: _Rev Scott M Kubinski_

Title: _Pastor_

Date: _June 4_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 93 of 171

Case 2-19-02021-PRW, Doc 119, Filed 07/08/21, Entered 07/08/21 15:17:02,
Description: Main Document, Page 95 of 172

Signed: _Rev. Scott M Kubinski_

St. John the Baptist Catholic Church, Elmira, N.Y.

Name Printed: _Rev. Scott M Kubinski_

Title: _Pastor_

Date: _June 4_____ 2021

*Signature page to Settlement and Release Agreement*

Signed: _Rev. Scott M Kubinski_

Parish of the Most Holy Name of Jesus

Name Printed: _REV SCOTT M KUBINSKI_

Title: _PASTOR_

Date: _June 4_ 2021

*Signature page to Settlement and Release Agreement*

Signed: _An Peter C. Clifford_

Church of the Assumption, Fairport, N.Y.

Name Printed: _Fr Peter C. Clifford_

Title: _Temporary Administrator_

Date: _June 5,_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW,    Doc 99-1,    Filed 05/27/21,    Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 96 of 171

Case 2-19-02021-PRW,    Doc 149,    Filed 07/08/21,    Entered 07/08/21 19:17:02,
Description: Main Document  , Page 98 of 172

Signed: _Fr Peter C. Clifford_

Church of the Resurrection, Perinton, New York

Name Printed: _Fr Peter C Clifford_

Title: _Temporary Administrator_

Date: _June 5,_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 97 of 171
Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 99 of 172

Signed: _Fr. Peter C. Clifford_

Church of St. John of Rochester of Perinton, New
York

Name Printed: _Fr Peter C. Clifford_

Title: _Pastor_

Date: _June 5,_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7
Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 98 of 171
Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 100 of 172

Signed: _Fa- Daniel Ruiz_

The Church of the Holy Cross of Dryden, New York

Name Printed: _Father Daniel Ruz Sierra_

Title: _Pastor_

Date: _June 9, 2021_ 2021

*Signature page to Settlement and Release Agreement*

Signed: _____

St. Luke the Evangelist Roman Catholic Church
Society of Livingston County

Name Printed: *Rev. Bernard Dan*

Title: *Parochial Administrator*

Date: *June 6,* 2021

*Signature page to Settlement and Release Agreement*

Signed: _Thomas P. Mull_

Our Lady of Peace Roman Catholic Church of
Geneva, NY

Name Printed: _THOMAS P. MULL_

Title: _PASTOR_

Date: _JUNE 7,_ 2021

*Signature page to Settlement and Release Agreement*

Signed: _Rev. William A Moorby_

St. Hilary's Catholic Church, Genoa, N.Y.

Name Printed: _WILLIAM A. MOORBY_

Title: _PASTOR_

Date: _7/3_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Case 2-19-02021-PRW, Doc 14, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Exhibit A - Settlement Agreement, Page 104 of 172
Description: Main Document , Page 104 of 172

Signed: _Fr. Daniel Ruiz_

St. Anthony's Catholic Church of Groton, N.Y.

Name Printed: _Father Daniel Ruz–Sierra_

Title: _Pastor_

Date: _June 9, 2021_ 2021

Signed: _____

Church of the Holy Name, Groveland, N.Y.

Name Printed: *Rev. Bernard Dan*

Title: *Parochial Administrator — St. Luke*

Date: *July 7* _____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 104 of 171
Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 106 of 172

Signed: _____John F. Gagnier_____

The Church of St. Elizabeth Ann Seton, The Diocese
of Rochester, N.Y.

Name Printed: _____Rev. John F. Gagnier_____

Title: _____Parish Administrator_____

Date: _____June 3,_____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7
Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 105 of 171
Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 107 of 172

Signed: *Sister Sheila Stevenson, RSM*

Marianne Cope Roman Catholic Parish, Monroe
County NY

Name Printed: *SISTER SHEILA STEVENSON*

Title: *PASTORAL ADMINISTRATOR.*

Date: __6 / 3 / 2021__ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 106 of 171

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 108 of 172

Signed: _Rev. Joseph R. Catanise_

Church of St. Leo, Hilton, N.Y.

Name Printed: _Rev. Joseph R. Catanise_

Title: _Pastor_

Date: _June 4,_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 107 of 171

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 109 of 172

Signed: _William F. Laird_

St. Mary's Church of Honeoye Flats, N.Y (St. Mary - Our Lady of the Hills)

Name Printed: _William F. Laird_

Title: _Pastor_

Date: _5 June_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7
Case 2-19-02021-PRW,    Doc 99-1,    Filed 05/27/21,    Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 108 of 171

Case 2-19-02021-PRW,    Doc 149,    Filed 07/08/21,    Entered 07/08/21 19:17:02,
Description: Main Document  , Page 110 of 172

Signed: _____

St. Paul of the Cross Church, Honeoye Falls, N.Y.

Name Printed: __Michael G Fowler__

Title: __Pastor__

Date: __6/4/21__ 2021

*Signature page to Settlement and Release Agreement*

Signed: *[signature]*

Our Lady of the Valley

Name Printed: *Rev. Stanley Kacprzak*

Title: *Pastor*

Date: *June 7,* _____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50, Description: Exhibit A - Settlement Agreement, Page 110 of 171

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02, Description: Main Document , Page 112 of 172

Signed: *Christopher E. Linsler*

Church of St. Mary Our Mother, Horseheads, N.Y.

Name Printed: CHRISTOPHER E. LINSLER

Title: REVEREND / PASTOR

Date: JUNE 7, 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 111 of 171
Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 113 of 172

Signed: _____

St. Catherine of Siena Church

Name Printed: _Joseph_ _Marcoux_

Title: _Pastor_

Date: _06. 04._ _____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 112 of 171

Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 114 of 172

Signed: *Fr. Augustine Chumo*

The Immaculate Conception Church, Ithaca, N.Y.

Name Printed: *FR. AUGUSTINE K. CHUMO*

Title: *Pastor*

Date: *June 3rd* _____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7
Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Case 2-19-02021-PRW, Exhibit Doc A149ettleFiledtAgoeBmenat, Enteredo37ro8/21 19:17:02,
Description: Main Document  , Page 115 of 172

Signed: _Fr. Daniel Ruiz_ _____

All Saints Church ~~Corporation~~ of, Ludlowville, NY

Name Printed: _Father Daniel Ruz-Sierra_ _____

Title: _Pastor_ _____

Date: _June 9, 2021_ _____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Case 2-19-02021-PRW, Exhibit A-1 Settlement Agreement, Page 107 of 172 19:17:02,
Description: Main Document , Page 116 of 172

Signed: _____

St. Rose Roman Catholic Church

Name Printed: __Michael G Fowler__

Title: __Pastor__

Date: __6/4/21__ _____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW   Doc 99-1   Filed 05/27/21   Entered 05/27/21 14:53:50
Case 2-19-02021-PRW   Doc 149   Filed 07/08/21   Entered 07/08/21 19:17:02,
Description: Exhibit A - Settlement Agreement   Page 115 of 171
Description: Main Document , Page 117 of 172

Signed: *William F. Laird*

St. Matthew Catholic Church Society

Name Printed: William F. Laird

Title: Pastor

Date: 5 June 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50, Description: Exhibit A - Settlement Agreement, Page 116 of 171

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02, Description: Main Document , Page 118 of 172

Signed: _William T. Laird_

St. Michael's Church Society, Livonia Center, N.Y.

Name Printed: _Rev. William F. Laird._

Title: _Pastor_

Date: _6 July_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50, Description: Exhibit A - Settlement Agreement, Page 117 of 171

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02, Description: Main Document , Page 119 of 172

Signed: _Symon Peter Ntaiyia_

Parish of St. Katharine Drexel, Palmyra

Name Printed: Rev  SYMON PETER NTAIYIA

Title: Pastor

Date: June 18 _____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Case 2-19-02021-PRW   Exhibit A Settlement Agreement   Filed 07/08/21   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 120 of 172

Signed: _Rev. Robert Scott Bourcy_

St. Catherine's Roman Catholic Church, Mendon, NY

Name Printed: _Robert Scott Bourcy_

Title: _Pastor_

Date: _7 June_ 2021

*Signature page to Settlement and Release Agreement*

Signed: _Frank E. Lioi_ _(signature)_

St. Michael's Church, Montezuma, N.Y.

Name Printed: _FRANK E. LIOI_

Title: _PASTOR_

Date: _2 July_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 120 of 171

Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 122 of 172

Signed: *x. Felicjan Sierotowicz*

St. Michael's Church, Newark, N.Y.

Name Printed: *x. FELICJAN SIEROTOWICZ*

Title: *Parochial Administrator*

Date: *21 JUNE* 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 121 of 171
Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 123 of 172

Signed: *Rev. Michael G. Upson*

St. Christopher of Chili, New York

Name Printed: REV. MICHAEL G. UPSON

Title: PASTORAL ADMINISTRATOR

Date: JUNE 10 _____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW,  Doc 99-1,  Filed 05/27/21,  Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 122 of 171

Case 2-19-02021-PRW,  Doc 149,  Filed 07/08/21,  Entered 07/08/21 19:17:02,
Description: Main Document  , Page 124 of 172

Signed: Fr. Steven W. Lape

**St. Benedict's Mission Church of Odessa, New York**

Name Printed: Fr. Steven W. Lape

Title: Pastor

Date: June 8, 2021

The correct address for it is 304 Speedway, Odessa NY 14869

Signed: _Symon Peter Ntayia_

St. Maximilian Kolbe Catholic Church Society of
Wayne County

Name Printed: _SYMON PETER NTAYIA_

Title: _Pastor_

Date: _June 23_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 124 of 171

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 126 of 172

Signed: *Bernard M. Maloney*

The Parish of Mary, Mother of Mercy, Tompkins
County, New York

Name Printed: BERNARD M MALONEY

Title: *Pastor*

Date: *June 4* 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:59,
Description: Exhibit A - Settlement Agreement, Page 125 of 171

Case 2-19-02021-PRW, Doc 99-1, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document, Page 127 of 172

Signed: *Rev. Jeffrey R Galens*
Blessed Trinity, Owego

Name Printed: *Rev. Jeffrey R. Galens*

Title: *Secretary / Treasurer*

Date: *June 9,* 2021

*Signature page to Settlement and Release Agreement*

12436097.7
Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 126 of 171

Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 128 of 172

Signed: *Rev. Jeffrey R Galens*

St. Patrick's Roman Catholic Church Society of
Owego, N.Y.

Name Printed: Rev. Jeffrey R. Galens

Title: Secretary / Treasurer

Date: June 9, 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 127 of 171

Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 129 of 172

Signed: _____

St. Joseph's Catholic Church of Penfield, NY

Name Printed: _____JAMES A. SCHWARTZ_____

Title: _____PASTOR_____

Date: _____June 5,_____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW   Doc 99-1   Filed 05/27/21   Entered 05/27/21 14:53:50
Description: Exhibit A - Settlement Agreement   Page 128 of 171

Case 2-19-02021-PRW   Doc 149   Filed 07/08/21   Entered 07/08/21 19:17:02,
Description: Main Document , Page 130 of 172

Signed: _F. Leo Reinhardt_

**Our Lady of the Lakes Catholic Community**

Name Printed: _Fr. Leo Reinhardt_

Title: _Pastor_

Date: _June 5_ 2021

*Signature page to Settlement and Release Agreement*

12456087.7
Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 129 of 171

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 131 of 172

Signed: _____

St. Raphael's Church, Piffard, N.Y.

Name Printed: _Rev. Bernard Dan_

Title: _Parochial Administrator — St. Luke_

Date: _July 7_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50, Description: Exhibit A - Settlement Agreement, Page 130 of 171

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02, Description: Main Document , Page 132 of 172

Signed: _____

Church of the Transfiguration, Diocese of Rochester,
New York

Name Printed: _____ Michael J. Bausch_

Title: _____ Pastor_

Date: _____ 6/5/21_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7
Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 131 of 171
Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 133 of 172

Signed: _F. Mitdell zygaud_

St. Louis Church of Pittsford, N.Y

Name Printed: _FR. MITCHELL ZYGADLO_

Title: _PASTOR_

Date: _June 24,_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7
Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 132 of 171

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 134 of 172

Signed: _Peter B Mottola_

St. John the Evangelist Church Society, Spencerport,
N.Y.

Name Printed: _Peter B. Mottola_

Title: _Pastor_

Date: _June 4th_ 2021

_Signature page to Settlement and Release Agreement_

Signed: _____

St. Patrick's Church of Victor, N.Y.

Name Printed: FR. EDISON TAYAG

Title: Pastor

Date: June 8 , 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Case 2-19-02021-PRW, Doc 449, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Exhibit Settlement Agreement, Page 136 of 172
Description: Main Document , Page 136 of 172

Signed: _Rev James Fennessy_

St. Frances & St. Clare Roman Catholic Parish, Seneca
County, NY

Name Printed: _Rev James Fennessy_

Title: _Pastor_

Date: _June 10, 2021_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 135 of 171

Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 137 of 172

Signed: *Fr. Steven W. Lape*

**St. Mary's of the Lake Roman Catholic Church Society**

Name Printed: *Fr. Steven W. Lape*

Title: *Pastor*

Date: *June 8,* 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW    Doc 99-1    Filed 05/27/21    Entered 05/27/21 14:53:50

Case 2-19-02021-PRW,    Doc 149,    Filed 07/08/21,    Entered 07/08/21 19:17:02,
Description: Main Document  , Page 138 of 172

136

Signed: _____

**Holy Family Catholic Community**

Name Printed: _REV. STEPHEN N. KARANJI_

Title: _PASTOR_

Date: _06/7/_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7
Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 137 of 171

Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 139 of 172

Signed: _Timothy E. Horan_

The Roman Catholic Church of the Most Holy Trinity
at Webster, N.Y.

Name Printed: _TIMOTHY E. HORAN_

Title: _PASTOR_

Date: _June 11,_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 138 of 171
Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 140 of 172

Signed: _____

St. Paul's Roman Catholic Church of Webster, N.Y.

Name Printed: REV. FR. PAUL GITAU

Title: PASTOR

Date: July 2 2021

*Signature page to Settlement and Release Agreement*

12436097.7
Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 139 of 171

Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 141 of 172

Signed: _____
Church of the Holy Spirit of Penfield, N.Y.

Name Printed: _____JAMES A. SCHWARTZ_____

Title: _____PASTOR_____

Date: _____June 5, 2021_____

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 140 of 171

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 142 of 172

Signed: _____

Our Lady of the Snow, Weedsport

Name Printed: _____FRANK E. LIOI_____

Title: _____PASTOR_____

Date: _____June 7_____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7
Case 2-19-02021-PRW,   Doc 99-1,   Filed 05/27/21,   Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 141 of 171

Case 2-19-02021-PRW,   Doc 149,   Filed 07/08/21,   Entered 07/08/21 19:17:02,
Description: Main Document  , Page 143 of 172

Signed: _M____C_____

St. Joseph's Church of West Bloomfield

Name Printed: _Michael Costik_____

Title: _Pastor_____

Date: _7/2/2021_____ 2021

*Signature page to Settlement and Release Agreement*

12436097.7
Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 142 of 171

Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 144 of 172

Signed: _Rev Timothy Niven_

St. Rita's Church of West Webster, N.Y.

Name Printed: _Rev. Timothy Niven_

Title: _Pastor_

Date: _June 10_ 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW, Doc 99-1, Filed 05/27/21, Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 143 of 171
Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 145 of 172

Signed:    x. FELICJAN Sierotowin

Catholic Community of the Blessed Trinity of Wolcott, NY

Name Printed:  FELICJAN SIEROTOWICZ

Title:  Parochiel Administrator

Date:  21 JUNE    2021

*Signature page to Settlement and Release Agreement*

12436097.7

Case 2-19-02021-PRW,    Doc 99-1,    Filed 05/27/21,    Entered 05/27/21 14:53:50,
Description: Exhibit A - Settlement Agreement, Page 144 of 171
Case 2-19-02021-PRW,    Doc 149,    Filed 07/08/21,    Entered 07/08/21 19:17:02,
Description: Main Document , Page 146 of 172

Signed: ___Jack Balinsky___

Catholic Charities of the Diocese of Rochester

Name Printed: _Jack Balinsky_

Title: _Diocesan Director_

Date: _June 4, 2021_ 2021

*Signature page to Settlement and Release Agreement*

Signed: *Jane Sutter Brandt*

Rochester Catholic Press Association, Inc.

Name Printed: _Jane Sutter Brandt_

Title: _Treasurer_

Date: _____ June 23, 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Signed: _____

DePaul Community Services, Inc., the successor to DePaul
Mental Health Services, Inc. (f/k/a DePaul Clinic)

Name Printed: MARK H. FULLER

Title: PRESIDENT

Date: 6-29-2021 2021

*Signature page to Settlement and Release Agreement*

12436097.7

Signed: _____ *[signature]*

The Corporate Board of Education, Diocese of Rochester

Name Printed: _____ James M. Hopper

Title: _____ School Board Chairperson

Date: _____ 6/24/21 _____ 2021

*Signature page to Settlement and Release Agreement*

Signed: _Allynn Smith_____

Bishop Sheen Ecumenical Housing Foundation, Inc.

Name Printed: _Allynn Smith_____

Title: _Executive Director_____

Date: _July 1,_____ 2021

*Signature page to Settlement and Release Agreement*

Signed: _____

Charles Settlement House, Inc.

Name Printed: _Scott C. Benjamin_

Title: _Chief Executive Officer_

Date: _July 6,_ 2021

Signed: *Stephen Loughlin*

St. Bernard's School of Theology and Ministry

Name Printed: STEPHEN LOUGHLIN

Title: PRESIDENT, ST. BERNARD'S

Date: July 6, 2021

*Signature page to Settlement and Release Agreement*

124Case 2-19-02021-PRW, Doc 149, Filed 07/08/21, Entered 07/08/21 19:17:02,
Description: Main Document , Page 153 of 172

Signed: _____

Camp Stella Maris of Livonia, N.Y.

Name Printed: John Quinlivan _____

Title: Executive Director _____

Date: 6/4/2021 _____ 2021

*Signature page to Settlement and Release Agreement*

## SCHEDULE OF ATTACHMENTS TO

## SETTLEMENT AGREEMENT AND RELEASE

| | |
|---|---|
| Attachment A-1 | List of known LMI Insurance Policies |
| Attachment A-2 | List of known Interstate Insurance Policies |
| Attachment B | List of London Market Insurers |
| Attachment C | List of Insolvent Insurers |
| Attachment D | List of Solvent London Market Insurers allocated shares of the Settlement Amount |
| Attachment E | List of DOR Entities |
| Attachment F | Notice Names and Addresses |

# ATTACHMENT A-1

## Known LMI Insurance Policies

Package Policies – June 1, 1977 to July 1, 1988

    1) June 1, 1977 to May 1, 1980  SL 3209/SL 5227
    2) May 1, 1980 to July 1, 1983  SL 3675/SLC 5698
    3) July 1, 1983 to July 1, 1986  ISL 3090/ICO 4050
    4) July 1, 1986 to July 1, 1987  ISL 3410/ICO 5248
    5) July 1, 1987 to July 1, 1988  ISL 3861/ICO 5531

Excess Broad Form Liability Policies- June 1, 1978 to July 1, 1987

    1) June 1, 1978 to June 1, 1979  SL 3380/SLC 5400
    2) June 1, 1979 to May 1, 1980  SL 3556/SLC 5582
    3) May 1, 1980 to July 1, 1981  SL 3693/SLC 5715
    4) July 1, 1981 to July 1, 1983  SL 3830/SLC 5842
    5) July 1, 1983 to July 1, 1986  ISL 3092/ICO 4053
    6) July 1, 1986 to July 1, 1987  ISL 3643/ICO 5432
    7) July 1, 1987 to July 1, 1988  ISL 3809/ICO 5511

Combined Risk Dropdown Policies

    1) June 1, 1977 to June 1, 1980  SL 3210/SLC 5228
    2) May 1, 1980 to July 1, 1983  SL 3676/SLC 5699
    3) July 1, 1983 to July 1, 1986  ISL 3091/ICO 4051
    4) July 1, 1986 to July 1, 1987  ISL 3567/Unknown

Excess All Risk Policy

    1) June 1, 1977 to June 1, 1980  SL3211/SLC 5229
    2) July 1, 1985 to July 1, 1986  ISL 3568/ICO 5331

Also all other Policies subscribed by London Market Insurers issued to DOR and DOR Entities issued prior to July 1, 1993 subscribed by LMI including Excess Property Only, Drop-Down and Other.

**ATTACHMENT A-2**

**Known Interstate Insurance Policies**

| Issuing Company | Policy No. | Effective Dates |
|---|---|---|
| Interstate Fire & Casualty Company | 83-152618 | 9/01/78–6/01/79 |
| | | 6/01/79–5/01/80 |
| | | 5/01/80–7/01/81 |
| | | 7/01/81–7/01/82 |
| | 83-0169753 | 7/01/82–7/01/83 |
| | | 7/01/83–7/01/84 |
| | | 7/01/84–7/01/85 |
| | 83-0172442 | 7/01/85–7/01/86 |
| National Surety Corporation | XLX 139 53 94 | 7/01/83–7/01/84 |
| | XLX 139 52 65 | 7/01/84–7/01/85 |

# ATTACHMENT B

## List of London Market Insurers

1. Certain Underwriters at Lloyd's, London subscribing to Policy Nos. SL 3209 SL 3675, ISL 3090, ISL 3410, ISL 3861, SL 3380, SL 3556, SL 3693, SL 3830, ISL 3092, ISL 3643, ISL 3809, SL 3210, SL 3676, ISL 3091, ISL 3567 and all others issued prior to July 1, 1993.

2. Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of Excess Insurance Company Ltd)

3. RiverStone Insurance (UK) Limited (as successor in interest to Terra Nova Insurance Company Ltd.).

4. RiverStone Insurance (UK) Limited (as successor in interest to Sphere Drake Insurance Ltd.).

5. Sompo Japan Nipponkoa Insurance Company of Europe Limited (formerly known as The Yasuda Fire & Marine Insurance Company).

6. Dominion Insurance Company Ltd.

7. St. Katherine Insurance Company PLC

8. Assicurazioni Generali, T.S.

9. Taisho Marine & Fire Insurance Company (U.K.) Ltd.

10. Allianz International Insurance Company (U.K Ltd.)

## ATTACHMENT C

## <u>Insolvent Insurers</u>

1.  Bellafonte Insurance Company

2.  Pine Top Insurance Company, Ltd.

3.  CX Reinsurance Company Ltd. (formerly known as CNA Reinsurance of London, Ltd.)

4.  Stronghold Insurance Company Ltd.

5.  Sovereign Marine & General Insurance Company Limited

6.  Tokio Marine & Fire Insurance Company (U.K.) Ltd

7.  Storebrand Insurance Company (U.K. Ltd.)

8.  Heddington Insurance Company (U.K. Ltd.)

9.  North Atlantic Insurance Co. Ltd.

10. Mentor Insurance Co. (UK) Ltd.

# ATTACHMENT D

## Solvent London Market Insurer Shares of the Settlement Amount

| London Market Insurer | Amount |
|---|---|
| Certain Underwriters at Lloyd's, London | $13,562,289.88 |
| Excess Insurance Company Ltd. | $675,438.24 |
| Terra Nova Insurance Company Ltd. | $436,745.16 |
| Sphere Drake Insurance Ltd) | $209,004.56 |
| The Yasuda Fire & Marine Insurance Company | $116,517.18 |
| Dominion Insurance Company Ltd. | $1.00 |
| St. Katherine Insurance Company PLC | $1.00 |
| Assicurazioni Generali, T.S. | $1.00 |
| Taisho Marine & Fire Insurance Co. (U.K.) Ltd. | $1.00 |
| Allianz International Insurance Co. (U.K Ltd.) | $1.00 |
| **Net to Solvent LMI** | **$15,000,000.00** |

**ATTACHMENT E**

**<u>LIST OF DOR ENTITIES</u>**

| CATHOLIC ENTITY: | ADDRESS: |
|---|---|
| **The Cathedral Community of Rochester NY**; *successor in interest to the insurance rights of*:<br>• Sacred Heart Cathedral, Rochester, N.Y.<br>• The Holy Rosary Church of the City of Rochester, Monroe County, N.Y.<br>• Church of the Most Precious Blood | 296 Flower City Park, Rochester, NY 14615 |
| **Roman Catholic Parish of St. Frances Xavier Cabrini**; *successor in interest to the insurance rights of*:<br>• Our Lady of the Americas (*successor in interest to the insurance rights of* St. Francis Xavier Church; Church of the Most Holy Redeemer of Irondequoit, N.Y.; Our Lady of Mount Carmel Church, Rochester, N.Y.; Corpus Christi Church of Rochester, N.Y.)<br>• Light of Christ Roman Catholic Parish (*successor in interest to the insurance rights of* St. Philip Neri Church of Rochester, N.Y.; St. Andrews Roman Catholic Church of Rochester, N.Y.; Church of the Annunciation, Rochester, N.Y.)<br>• Church of Our Lady of Perpetual Help of Rochester<br>• St. Michael's Church of Rochester, N.Y. | 124 Evergreen St., Rochester, NY 14605 |
| **Peace of Christ Roman Catholic Parish of Rochester**, NY; *successor in interest to the insurance rights of*:<br>• St. Ambrose Church of Rochester;<br>• St. James Church of Rochester, N.Y.;<br>• St. John the Evangelist Church of Rochester, N.Y. | 25 Empire Blvd., Rochester, NY 14096 |
| **The Church of the Holy Apostles, Rochester, N.Y.**; *successor in interest to the insurance rights of*:<br>• St. Francis of Assisi Church of Rochester, N.Y.<br>• Church of the Holy Family, Inc.<br>• The Church of St. Anthony of Padua | 7 Austin St., Rochester, NY 14606 |
| **St. Monica Church of Rochester, N.Y.**; *successor in interest to the insurance rights of*:<br>• The Church of Our Lady of Good Counsel<br>• St. Augustine Church Corporation | 34 Monica St., Rochester, NY 14619 |

2

| | |
|---|---|
| • SS. Peter and Paul's Roman Catholic Church, Rochester, N.Y. | |
| **St. Anne's Church of Rochester** | 1600 Mount Hope Ave., Rochester NY 14620 |
| **The Church of the Blessed Sacrament, Rochester, N.Y.** | 259 Rutgers St., Rochester, NY 14607 |
| **St. Boniface Church, Rochester, N.Y.** | 330 Gregory St., Rochester, NY 14620 |
| **St. Stanislaus Church of Rochester, N.Y.**; *successor in interest to the insurance rights of*:<br>• St. Theresa of the Child Jesus Church, Bishop of Rochester | 34 Saint Stanislaus St., Rochester, NY 14621 |
| **Immaculate Conception/St. Bridget, Rochester**; *successor in interest to the insurance rights of*:<br>• The Immaculate Conception Church Society<br>• St. Bridget's Church | 445 Frederick Douglass St., Rochester, NY 14608 |
| **Kateri Tekakwitha Roman Catholic Parish**; *successor in interest to the insurance rights of*:<br>• Church of Christ the King, Rochester, N.Y.<br>• St. Cecilia Church, Irondequoit, N.Y.<br>• Church of St. Margaret Mary<br>• Church of St. Salome<br>• St. Thomas Roman Catholic Church | 445 Kings Highway S., Rochester, 14617 |
| **Church of St. Charles Borromeo**; *successor in interest to the insurance rights of*:<br>• Church of the Holy Name of Jesus of Rochester, New York | 3003 Dewey Ave., Rochester, NY 14616 |
| **Emmanuel Church of the Deaf of the Diocese of Rochester** | 34 Monica St., Rochester, NY 14619 |
| **St. George Roman Catholic Lithuanian Church, Inc.** | 150 Varinna Dr., Rochester, NY 14618 |
| **The Parish of the Holy Family, Gates, NY**; *successor in interest to the insurance rights of*:<br>• Church of the Holy Ghost<br>• St. Helen's Church of Gates, N.Y.<br>• Church of St. Jude of the Town of Gates. | 4100 Lyell Rd., Rochester, NY 14606 |
| **Holy Cross Church of Rochester, NY** | 4492 Lake Ave., Rochester, NY 14612 |
| **St. John the Evangelist Church Corp.** | 2400 Ridge Rd. W., Rochester, NY 14625 |
| **St. Lawrence Church of Rochester, N.Y.** | 1000 N. Greece Rd., Rochester, NY 14626 |
| **St. Mark's Church of Rochester, New York** | 54 Kuhn Rd., Rochester, NY 14612 |
| **St. Mary's Church Society, Inc.** | 15 South St., Rochester, NY 14607 |

3

| | |
|---|---|
| **Our Lady of Lourdes Church of Brighton** | 150 Varinna Dr., Rochester, NY 14618 |
| **Our Mother of Sorrows Church**; *successor in interest to the insurance rights of:*<br>• Our Lady of Mercy Church of Rochester, N.Y. | 5000 Mt. Read Blvd., Rochester, NY 14612 |
| **St. Mary's French Church Society** (a/k/a Our Lady of Victory) | 210 Pleasant St., Rochester, NY 14604 |
| **Church of Our Lady Queen of Peace of Rochester, N.Y.** | 601 Edgewood Ave., Rochester, NY 14618 |
| **St. Pius Tenth Church of Rochester, N.Y.** | 3032 Chili Ave, Rochester, NY 14624 |
| **St. Theodore's Church of Gates, N.Y.** | 168 Spencerport Rd., Rochester, NY 14606 |
| **St. Thomas More Church of Rochester, N.Y.** | 2617 East Ave., Rochester, NY 14610 |
| **The Catholic Parish of Saints Isidore and Maria Torriba**; *successor in interest to the insurance rights of:*<br>• St. Catherine Roman Catholic Church Society, Addison, N.Y.<br>• St. Stanislaus Church of Bradford, N.Y.<br>• St. Joseph's Roman Catholic Church of Campbell, N.Y. | 51 Maple St., Addison, NY 14801 |
| **St. Alphonsus Catholic German Church** | 10 S. Lewis Street, Auburn, NY 13021 |
| **St. Aloysius Church, Auburn, NY** | 85 N. St., Auburn, NY 13021 |
| **The Catholic Church of the Holy Family, Auburn, N.Y.** | 85 N. St., Auburn, NY 13021 |
| **St. Mary's Catholic Church, Auburn, N.Y.** | 15 Clark St., Auburn, NY 13021 |
| **Saints Mary and Martha Roman Catholic Parish Cayuga County, NY**; *successor in interest to the insurance rights of:*<br>• St. Francis of Assisi Italian Roman Catholic Church<br>• St. Hyacinth's Polish Roman Catholic Society Church | 299 Clark St., Auburn, NY 13021 |
| **Sacred Heart Church of Auburn, N.Y.** | 90 Melrose Rd., Auburn, NY 13021 |
| **St. Ann's Church, Owasco, Cayuga County, N.Y.** | Main St., Owasco, NY 13130 |
| **Good Shepherd Catholic Community, Aurora**; *successor in interest to the insurance rights of:*<br>• St. Patrick's Church of Aurora, N.Y.<br>• St. Joseph's Catholic Church of Cayuga, N.Y.<br>• Our Lady of the Lake Church Corporation, King Ferry<br>• St. Patrick's Catholic Church of Moravia, Cayuga County, N.Y.<br>• St. Bernard's Catholic Church<br>• St. Michael's Church of Union Springs, N.Y. | 299 Main St., Aurora, NY 13026 |

4

12436097.7

| | |
|---|---|
| • St. Isaac Jogues' Chapel | |
| **St. Agnes Church Society, Avon, N.Y.** | 108 Prospect St., Avon, NY 14414 |
| **St. John Vianney Roman Catholic Parish, Steuben County, NY**; *successor in interest to the insurance rights of:*<br>• St. Mary's Catholic Church Society of Bath, N.Y.<br>• St. Gabriel's Catholic Church Society of Hammondsport, N.Y. | 32 E Morris St., Bath, NY 14810 |
| **Church of the Nativity of the Blessed Virgin Mary, Brockport, N.Y.**; *successor in interest to the insurance rights of:*<br>• Newman Oratory of Brockport, New York | 152 Main St., Brockport, NY 14420 |
| **St. Martin De Porres**; *successor in interest to the insurance rights of:*<br>• Catholic Church of St. Vincent DePaul of Churchville, N.Y.<br>• St. Columba's Church, Caledonia, N.Y.<br>• St. Mary of the Assumption Church, Scottsville, N.Y.<br>• St. Patrick's Church, Mumford, N.Y. | 198 North St., Caledonia, NY 14423 |
| **St. Benedict Roman Catholic Parish Ontario County, NY**; *successor in interest to the insurance rights of:*<br>• St. Mary's Church Corp., Canandaigua, N.Y.<br>• St. Bridget's Church of East Bloomfield, N.Y. | 95 N. Main St., Canandaigua, NY 14424 |
| **St. Peter's Roman Catholic Parish, Ontario County**; *successor in interest to the insurance rights of:*<br>• St. Felix's Church, Inc.<br>• St. Francis Church<br>• St. Dominic Roman Catholic Church Society | 12 Hibbard Ave., Clifton Springs, NY 14432 |
| **St. Joseph the Worker Roman Catholic Parish, Wayne County**; *successor in interest to the insurance rights of:*<br>• St. John the Evangelist Roman Catholic Church<br>• St. Michael's Church Society, Inc., Lyons, N.Y.<br>• St. Patrick's Roman Catholic Church, Savannah, N.Y. | 43 W. DeZeng St., Clyde, NY 14433 |
| **St. Margaret's Church of Conesus Lake, Livonia, N.Y.** | P.O. Box 77, Livonia, NY 14487 |
| **All Saints, Corning**; *successor in interest to the insurance rights of:*<br>• The Church of St. Mary's of Corning, N.Y. | 222 Dodge Ave., Corning, NY 14830 |

5

| | |
|---|---|
| <ul><li>St. Patrick's Catholic Church, Corning, N.Y.</li><li>St. Vincent De Paul's Roman Catholic Church Society Inc., Corning, N.Y.</li><li>Church of the Immaculate Heart of Mary of Painted Post</li></ul> | |
| **The Church of St. John Fisher of the Town of Huron, New York** | 11956 Washington St., Wolcott, NY 14590 |
| **Church of St. Jerome, East Rochester, N.Y.** | 207 S. Garfield St., East Rochester, NY 14445 |
| **Saint Cecilia's Roman Catholic Church Society** | 1010 Davis St., Elmira, NY 14901 |
| **St. John the Baptist Catholic Church, Elmira, N.Y.** | 1010 Davis St., Elmira, NY 14901 |
| **Parish of the Most Holy Name of Jesus**; *successor in interest to the insurance rights of:*<ul><li>St. Mary's Roman Catholic Church Society</li><li>Blessed Sacrament Roman Catholic Church of Elmira, NY ( *successor in interest to the insurance rights of* St. Anthony's Church of Elmira, N.Y.; St. Patrick's Roman Catholic Church of Elmira, N.Y.; Saint Peter and Paul's Church, Inc.)</li><li>Christ the Redeemer Roman Catholic Parish of Elmira, NY (*successor in interest to the insurance rights of* Our Lady of Lourdes Church of Elmira, New York; St. Casimir's Roman Catholic Church Society, Elmira, N.Y.; Saint Charles Borromeo Roman Catholic Church, Elmira Heights, N.Y.)</li></ul> | 1010 Davis St., Elmira, NY 14901 |
| **Church of the Assumption, Fairport, N.Y.** | 20 East Ave., Fairport, NY 14450 |
| **Church of the Resurrection, Perinton, New York** | 283 Hamilton Rd., Fairport, NY 14450 |
| **Church of St. John of Rochester of Perinton, New York** | 8 Wickford Way, Fairport, NY 14450 |
| **The Church of the Holy Cross of Dryden, New York** | 375 George Rd., Freeville, NY 13068 |
| **St. Luke the Evangelist Roman Catholic Church Society of Livingston County**; *successor in interest to the insurance rights of:*<ul><li>St. Mary's Roman Catholic Church, Geneseo, N.Y., Livingston County</li><li>Thomas Aquinas Roman Catholic Church of Moscow, Livingston County, N.Y.</li></ul> | 13 North St., Geneseo, NY 14454 |

Case 2-19-02021-PRW    Doc 149    Filed 07/08/21    Entered 07/08/21 19:17:02,    Description: Main Document   , Page 166 of 172

| | |
|---|---|
| • St. Patrick's Church Society of Mt. Morris, New York<br>• Church of the Holy Angels of Nunda, N.Y.<br>• St. Lucy's Church, Retsof, N.Y | |
| **Our Lady of Peace Roman Catholic Church of Geneva, NY**; *successor in interest to the insurance rights of:*<br>• Church of St. Francis DeSales<br>• St. Stephen's Roman Catholic Church, Inc. of Geneva, N.Y. | 130 Exchange St., Geneva, NY 14456 |
| **St. Hilary's Catholic Church, Genoa, N.Y.** | 299 Main St., Aurora, NY 13026 |
| **St. Anthony's Catholic Church of Groton, N.Y.** | 312 Locke Rd., Groton, NY 13073 |
| **Church of the Holy Name, Groveland, N.Y.** | 13 North St., Geneseo, NY 14454 |
| **The Church of St. Elizabeth Ann Seton, The Diocese of Rochester, N.Y.** | P.O. Box 149, Hamlin, NY 14464 |
| **Marianne Cope Roman Catholic Parish, Monroe County NY**; *successor in interest to the insurance rights of:*<br>• Guardian Angels Church of Rochester, New York<br>• Church of the Good Shepherd, Henrietta, N.Y.<br>• St. Joseph's Catholic Society of Rush, N.Y. | 3318 E. Henrietta Rd., Henrietta, NY 14467 |
| **Church of St. Leo, Hilton, N.Y.** | 167 Lake Ave., Hilton, NY 14468 |
| **St. Mary's Church of Honeoye Flats, N.Y (St. Mary - Our Lady of the Hills)** | 8961 Main St., Honeoye, NY 14471 |
| **St. Paul of the Cross Church, Honeoye Falls, N.Y.** | 31 Monroe St., Honeoye Falls, NY 14472 |
| **Our Lady of the Valley**; *successor in interest to the insurance rights of:*<br>• St. Joachim's Roman Catholic Church<br>• St. Ann's Roman Catholic Church<br>• St. Ignatius Loyola Church of Hornell, N.Y.<br>• St. Mary's Roman Catholic Church | 27 Erie Ave., Hornell, NY 14843 |
| **Church of St. Mary Our Mother, Horseheads, N.Y.** | 816 W. Broad St., Horseheads, NY 14845 |
| **St. Catherine of Siena Church** | 302 Saint Catherine Circle, Ithaca, NY 14850 |
| **The Immaculate Conception Church, Ithaca, N.Y.** | 113 N. Geneva St., Ithaca, NY 14850 |
| **All Saints Church Corporation, Ludlowville, NY** | 347 Ridge Rd., Lansing, NY 14882 |
| **St. Rose Roman Catholic Church** | 1985 Lake Ave., Lima, NY 14485 |
| **St. Matthew Catholic Church Society**; *successor in interest to the insurance rights of:* | P.O. Box 77, Livonia, NY 14487 |

7

12436097.7

| | |
|---|---|
| • St. William's Church Society, Conesus, N.Y. <br> • St. Joseph's Catholic Church Society of Livonia, N.Y. | |
| **St. Michael's Church Society, Livonia Center, N.Y.** | 8961 Main St., Honeoye, NY 14471 |
| **Parish of St. Katharine Drexel, Palmyra**; *successor in interest to the insurance rights of:* <br> • St. Patrick's Church of Macedon, N.Y. <br> • St. Gregory's Roman Catholic Church of Marion, N.Y. <br> • Roman Catholic Church of St. Anne, Palmyra, N.Y. 14522 | 52 Main St., Macedon, NY 14502 |
| **St. Catherine's Roman Catholic Church, Mendon, NY** | 26 Mendon-Ionia Rd., Mendon, NY 14506 |
| **St. Michael's Church, Montezuma, N.Y.** | 2667 Hamilton St., Weedsport, NY 13166 |
| **St. Michael's Church, Newark, N.Y.** | 401 S. Main St., Newark, NY 14513 |
| **St. Christopher of Chili, New York** | 3350 Union St., North Chili, NY 14514 |
| **St. Benedict's Mission Church of Odessa, New York** | 169 Speedway, Odessa, NY 14869 |
| **St. Maximilian Kolbe Catholic Church Society of Wayne County**; *successor in interest to the insurance rights of:* <br> • St. Mary's of the Lake Roman Catholic Church Society <br> • Church of the Epiphany, Sodus, N.Y. <br> • Church of St. Rose of Lima, Sodus Point, N.Y. | 5823 Walworth Rd., Ontario, NY 14519 |
| **The Parish of Mary, Mother of Mercy, Tompkins County, New York**; *successor in interest to the insurance rights of:* <br> • St. Francis Solanus Church, Interlaken, N.Y. <br> • Holy Cross Church <br> • St. James the Apostle Church of Trumansburg, N.Y. | PO Box 337, Ovid, NY 14521 |
| **Blessed Trinity, Owego**; *successor in interest to the insurance rights of:* <br> • St. Margaret Mary's Roman Catholic Church of Apalachin, N.Y. <br> • St. Francis Roman Catholic Church <br> • St. John the Evangelist Roman Catholic Church <br> • St. Pius the Tenth Church, Van Etten, N.Y. <br> • St. James the Apostle, Roman Catholic Church Society of Waverly, N.Y. | 300 Main St., Owego, NY 13827 |

8

| | |
|---|---|
| **St. Patrick's Roman Catholic Church Society of Owego, N.Y.** | 300 Main St., Owego, NY 13827 |
| **St. Joseph's Catholic Church of Penfield, NY** | 43 Gebhardt Rd., Penfield, NY 14526 |
| **Our Lady of the Lakes Catholic Community**; *successor in interest to the insurance rights of:*<br>• St. Andrew's Church of Dundee<br>• St. Januarius Roman Catholic Church<br>• St. Michael's Church of Penn Yan, N.Y.<br>• St. Patrick's Catholic Church, Prattsburg, N.Y.<br>• St. Mary's Church, Rushville, N.Y.<br>• St. Theresa's Church, Stanley, N.Y. | 210 Keuka St., Penn Yan, NY 14527 |
| **St. Raphael's Church, Piffard, N.Y.** | 13 North St., Geneseo, NY 14454 |
| **Church of the Transfiguration, Diocese of Rochester, New York** | 50 W Bloomfield Rd., Pittsford, NY 14534 |
| **St. Louis Church of Pittsford, N.Y.** | 60 S. Main St., Pittsford, NY 14534 |
| **St. John the Evangelist Church Society, Spencerport, N.Y.** | 55 Martha St., Spencerport, NY 14559 |
| **St. Patrick's Church of Victor, N.Y.** | 115 Maple Ave., Victor, NY 14564 |
| **St. Frances & St. Clare Roman Catholic Parish, Seneca County, NY**; *successor in interest to the insurance rights of:*<br>• St. Mary's Church, Waterloo, N.Y.<br>• St. Patrick's Church of Seneca Falls, N.Y. | 25 Center St., Waterloo, NY 13165 |
| **St. Mary's of the Lake Roman Catholic Church Society** | P.O. Box 289, Watkins Glen, NY 14891 |
| **Holy Family Catholic Community**; *successor in interest to the insurance rights of:*<br>• St. Pius V Church Society, Cohocton, N.Y.<br>• St. Mary's Church<br>• The Church of the Sacred Heart of Jesus, Perkinsville, N.Y.<br>• St. Joseph's Roman Catholic Church Corp., Wayland, N.Y. | 206 Fremont St., Wayland, NY 14572 |
| **The Roman Catholic Church of the Most Holy Trinity at Webster, N.Y.** | 1460 Ridge Rd., Webster, NY 14580 |
| **St. Paul's Roman Catholic Church of Webster, N.Y.** | 783 Hard Rd., Webster, NY 14580 |
| **Church of the Holy Spirit of Penfield, N.Y.** | 1355 Hatch Rd., Webster, NY 14580 |
| **Our Lady of the Snow, Weedsport**; *successor in interest to the insurance rights of:*<br>• St. Patrick's Roman Catholic Church of Cato, N.Y.<br>• St. John's Church, Port Byron, N.Y. 13140 | 2667 Hamilton St., Weedsport, NY 13166 |

| | |
|---|---|
| • St. Joseph's Catholic Church of Weedsport, N.Y. | |
| **St. Joseph's Church of West Bloomfield** | 95 N. Main St., Canandaigua, NY 14424 |
| **St. Rita's Church of West Webster, N.Y.** | 1008 Maple Dr., West Webster, NY 14580 |
| **Catholic Community of the Blessed Trinity of Wolcott, NY**; *successor in interest to the insurance rights of:*<br>• St. Mary Magdalen Church, Wolcott, N.Y.<br>• St. Thomas the Apostle Roman Catholic Church of Red Creek<br>• St. Jude | 11956 Washington St., Wolcott, NY 14590 |
| **Catholic Charities of the Diocese of Rochester** | 1150 Buffalo Rd., Rochester, NY 14624 |
| **Rochester Catholic Press Association, Inc.** | 1150 Buffalo Rd., Rochester, NY 14624 |
| **DePaul Mental Health Services, Inc. f/k/a DePaul Clinic** | 1931 Buffalo Rd., Rochester, NY 14624 |
| **The Corporate Board of Education, Diocese of Rochester** | 1150 Buffalo Rd., Rochester, NY 14624 |
| **Bishop Sheen Ecumenical Housing Foundation, Inc.** | 150 French Rd., Rochester, NY 14618 |
| **Charles Settlement House, Inc.** | 445 Jay St., Rochester, NY 14611 |
| **St. Bernard's School of Theology and Ministry** | 120 French Rd., Rochester, NY 14618 |
| **Camp Stella Maris of Livonia, N.Y.** | 4395 East Lake Rd., Livonia, NY 14487 |

10

## ATTACHMENT F

## <u>NOTICE NAMES AND ADDRESSES</u>

DOR:                              The Diocese of Rochester
1150 Buffalo Road
Rochester, New York 14624
Attention:  Lisa M. Passero, Chief Financial Officer

With copies to:               Bond, Schoeneck & King, PLLC
One Lincoln Center
Syracuse, New York 13202
Attn:   Stephen A. Donato
          Charles J. Sullivan
          Grayson T. Walter

-and-

Blank Rome LLP
1825 Eye Street NW
Washington, D.C. 20006
Attn:   James R. Murray
          James S. Carter

DOR Parishes:            Woods Oviatt Gillman, LLP
1900 Bausch & Lomb Place
Rochester, NY 14604
Attention:  Timothy P. Lyster

LONDON MARKET INSURERS

For Resolute Management Services
Limited:                    Martin Futter, Esq. LLB (Hons)  PGDip (LPC)

Account Manager
Resolute Management Services Ltd.
London Underwriting Centre
4th Floor, 8 Fenchurch Place
London EC3M 4AJ
England
Tel: +44 (0) 207 342 2455

For Company Leader:       Mr. Steve Dodson
Head of Claims

|  | Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of Excess Insurance Company Ltd and/or London & Edinburgh Insurance Company Ltd (as successor to London & Edinburgh General Insurance Company Ltd))<br>1 Alie St.<br>London E1 8DE<br>England<br>Tel: +44 (0) 207 265 5031 |
|---|---|
| With copies to: | Catalina J. Sugayan, Esq.<br>Clyde & Co US LLP<br>55 West Monroe Street<br>Suite 3000<br>Chicago, IL 60603<br>Tel: 312.635.6917<br><br>Russell W. Roten, Esq.<br>Duane Morris LLP<br>865 South Figueroa Street<br>Suite 3100<br>Los Angeles, CA 90017-5450<br>Tel: 213.689.7439 |
| INTERSTATE | Marc Orloff<br>Allianz Resolution Management<br>1465 North McDowell Boulevard, Suite 100<br>Petaluma, CA 94954<br>Tel: 415-899-3744 |
| With copies to: | Moss & Barnett, P.A.<br>150 South Fifth Street<br>Suite 1200<br>Minneapolis, MN 55402<br>Attn: Charles E. Jones, Esq.<br><br>Rivkin Radler LLP<br>926 RXR Plaza<br>Uniondale, NY 11556<br>Attn: Peter McNamara, Esq. |