**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: <br><br> The Diocese of Rochester, <br><br>                 Debtor. | Case No. 19-20905 <br><br> Chapter 11 |
| The Diocese of Rochester, <br><br>                 Plaintiff, <br><br> v. <br><br> The Continental Insurance Company, Certain Underwriters at Lloyd's, London, Certain London Market Companies, The Dominion Insurance Company Limited, Stronghold Insurance Company Limited, CX Reinsurance Company Limited, Markel International Insurance Company Limited, Tenecom Limited, National Surety Corporation, Interstate Fire & Casualty Company, Colonial Penn Insurance Company, and HDI Global Specialty SE, <br><br>                 Defendants. | Adversary Proceeding <br> No.: 19-ap-02021 |

### THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' MOTION TO INTERVENE IN ADVERSARY PROCEEDING NO. 19-02021

The Official Committee of Unsecured Creditors (the "**Committee**") of The Diocese of Rochester, New York, the above-captioned debtor and debtor in possession (the "**Debtor**"), hereby moves (the "**Motion**") to intervene in the adversary proceeding captioned *The Diocese of Rochester* v. *The Continental Insurance Co., et al.*, Adversary Proceeding No. 19-ap-02021 (the "**Adversary Proceeding**"), pursuant to section 1109(b) of chapter 11 of title 11 of the United

1

States Code (the "**Bankruptcy Code**") and Rule 7024 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. Venue for this matter is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are section 1109 of the Bankruptcy Code and Bankruptcy Rule 7024.

## BACKGROUND

3. On September 12, 2019 (the "**Petition Date**"), the Debtor commenced a voluntary case (the "**Case**") under chapter 11 of the Bankruptcy Code. The Debtor is authorized to continue to operate its business and remain in possession of its properties as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in this Case.

4. On September 24, 2019, the United States Trustee for Region 2 appointed the Committee pursuant to section 1102 of the Bankruptcy Code. The Committee consists of nine individuals who were sexually abused as minors by perpetrators for whom the Debtor was responsible. *See Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 68].

5. The Child Victims Act ("**CVA**") modified the statute of limitations and created a one-year "window" during which victims of child sex abuse whose claims may have been time-barred may commence a timely civil action.

6. The Debtor asserts that from the opening of the CVA's one-year window on August 14, 2019, through the Petition Date, multiple claims and lawsuits have been filed against the Debtor

stemming from the sexual abuse of survivors. *See Adversary Proceeding Complaint*, Case No. 19-02021, Docket No. 1, ¶¶ 2–3.

7. On November 14, 2019, the Diocese filed an adversary complaint against twelve insurers seeking a declaratory judgment of "the rights, duties, and liabilities of the parties pursuant to the terms of certain insurance policies and damages." *Id.*, ¶ 1

8. At issue in the Adversary Proceeding is the availability of the Debtor's many decades of insurance policies, including both primary and excess coverage, to compensate the survivors of sexual abuse. *See id.*, ¶ 22.

9. The interests of the survivors in obtaining redress for their grievous injuries will therefore be directly and substantially affected by the recovery to be obtained from the liability insurers that are defendants in the Adversary Proceeding.

10. Although the interests of the Committee and the Debtor may be aligned regarding insurance issues in some respects, conflicts of interest also exist between the interests of the Committee and its constituents and the interests of the Debtor with respect to the subject matter of this litigation. For example, the Debtor disputes the validity of many of the child sexual abuse claims in the State Court Actions, including, among other arguments, its contention that the claims (i) were not timely filed; (ii) allege abuse perpetrated by individuals over whom the Diocese does not exercise control; (iii) allege abuse at facilities over which the Diocese does not exercise control; (iv) allege abuse at churches that are not affiliated with the Diocese or the Catholic Church; (v) allege abuse by third parties associated with non-Diocesan entities; (vi) allege claims for which plaintiffs are unlikely to satisfy the requisite burden of proof; and (vii) allege abuse for which liability is questionable or for which potential damages are limited. *See Motion for Entry of an Order Approving Settlement Agreement With Certain Underwriters at Lloyd's, London, Certain*

*London Market Companies, Interstate Fire & Casualty Company and National Surety Corporation* [Case No. 19-02021, Docket No. 99, ¶ 20] (the "**9019 Motion**").

11. A conflict of interest also exists between the Committee and the Debtor with respect to the disposition of the litigation, by settlement or otherwise, in that (1) the Debtor has a dramatically lower view of the value of the State Court Actions; and (2) the Debtor has, objectively, an incentive to recover only as much as it believes will be necessary to confirm a plan of reorganization, with or without the consent of the Committee and creditors, whereas the Committee and its constituents have an interest in maximizing the defendant insurers' coverage obligations. Such divergent interests have resulted in conflicting litigation positions. Given the crucial nature of the insurance assets to the recovery for the abuse survivors, the Committee, on behalf of those survivors, has a compelling interest in this Adversary Proceeding.

## ARGUMENT

**A. The Committee Has an Unconditional Right to Intervene in the Adversary Proceeding under Rule 24(a)(1) of the Federal Rules of Civil Procedure and Section 1109(b) of the Bankruptcy Code**

12. Under the settled law of this Circuit, the Committee has an absolute right to intervene in the Adversary Proceeding.

13. Pursuant to Federal Rule of Civil Procedure 24(a)(1), a court must permit anyone to intervene who "is given an unconditional right to intervene by a federal statute." Section 1109(b) of the Bankruptcy Code confers such an unconditional right on creditors' committees. *See* 11 U.S.C. § 1109(b) ("A party in interest, including . . . a creditors' committee . . . may raise and may appear and be heard on any issue in a case under this chapter.").

14. The Second Circuit has held that this language grants to all parties in interest— including creditors' committees—an *unconditional* right to intervene. *See In re Caldor Corp.*, 303

F.3d 161, 176 (2d Cir. 2002); *see also In re Smart World Techs., LLC*, 423 F.3d 166, 181 (2d Cir. 2005) ("In *Caldor*, this court held that § 1109(b) provides parties in interest with 'an unconditional right to intervene' in adversary proceedings under chapter 11, pursuant to Fed. R. Civ. P. 24(a)(1)."); *In re Calpine Corp.*, 354 B.R. 45, 48 (Bankr. S.D.N.Y. 2006), *aff'd*, 365 B.R. 401 (S.D.N.Y. 2007) ("[*Caldor*] found that pursuant to section 1109(b) of the Bankruptcy Code parties in interest have 'an unconditional right to intervene' in adversary proceedings. . . ."); *In re Adelphia Commc'ns Corp.*, 285 B.R. 848, 853–54 (Bankr. S.D.N.Y. 2002) ("[T]he Second Circuit [in *Caldor*] determined that section 1109(b) is applicable in adversary proceedings as it is in cases under the Bankruptcy Code, and hence that 'a statute of the United States confers an unconditional right to intervene,' within the meaning of Fed. R. Civ. P. 24(a)(1).'").

15. Recently, in a factually similar case, the United States Bankruptcy Court for the Southern District of New York granted the Official Committee of Unsecured Creditors of the Roman Catholic Diocese of Rockville Centre, New York's (the "**DRVC Committee**") motion to intervene in the insurance adversary proceeding, finding that the DRVC Committee had a right to "intervene unconditionally" in the proceeding. *Order Granting Motion of the Official Committee of Unsecured Creditors to Intervene in Adversary Proceeding No. 20-01227*, Adv. Pro. Case No. Case No. 20-AP-01227, Docket No. 38 ("The Committee is authorized, pursuant to Section 1109 of the Bankruptcy Code and Bankruptcy Rule 7024 of the Bankruptcy Rules, to intervene unconditionally in the Adversary Proceeding, subject to [certain] limitations.").

16. As the bankruptcy court explained at the hearing on the DRVC Committee's intervention motion: "Under applicable Second Circuit law, the Committee has a right to intervene. Even if the Committee didn't have an absolute right to intervene, I can think of no stronger case in which it's appropriate for the Committee to intervene in this adversary proceeding. They're

5

entitled to participate." *Declaration of Ilan D. Scharf in Support of the Official Committee of Unsecured Creditors' Motion to Intervene in Adversary Proceeding No. 19-AP-02021*, ¶ 5, Ex. A (12-9-20 Transcript at 21:6-10).

17. Accordingly, the Committee should be afforded the unconditional right to intervene in this Adversary Proceeding.

**B. The Committee Also Has an Unqualified Right to Intervene Under Rule 24(a)(2) of the Federal Rules of Civil Procedure**

18. As explained above, pursuant to section 1109(b) of the Bankruptcy Code and Federal Rule 24(a)(1), the Committee has an unconditional right to intervene in the Adversary Proceeding. However, even in the absence of that absolute right, the Committee should still be entitled to intervene in the Adversary Proceeding pursuant to Federal Rule 24(a)(2).

19. The operative language of Federal Rule 24(a)(2) provides that "[o]n timely motion, the court must permit anyone to intervene who: (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2).

20. Here, there is a "practical matter" in this case that may impede the creditors of the Debtor from protecting their interests in the Adversary Proceeding unless the Committee is permitted to intervene. While the Debtor has fiduciary obligations to its creditors in addition to its self-interest, as a "practical matter" it may be difficult to satisfy both sets of interests with respect to the Adversary Proceeding, because the Debtor has competing interests with creditors in the prosecution and settlement of the Adversary Proceeding.

21. As the survivors of the sexual abuse perpetrated by Diocesan clergy and others sanctioned by the Debtor, the Committee's constituents are the intended beneficiaries of the

liability coverage contemplated in the insurance policies that are at issue in the Adversary Proceeding. Given that the insurance policies are assets of the bankruptcy estate, the Committee and all similarly situated creditors have an interest in the disposition of those assets. Particularly, the Committee has an interest in the judicial determination of the coverage obligation as it relates to the liability portion of the policies.

22. As noted above, although the interests of the Committee and the Debtor may be aligned with respect to some of the insurance issues, conflicts of interest also exist between the interests of the Committee and its constituents and the interests of the Debtor with respect to the subject matter of this litigation. For instance, the Debtor denies the validity of many of the State Court Actions. Additionally, the Debtor has competing considerations with respect to any settlement as it may balance the interests of the survivors in the insurance recoveries, against the Debtor's desire to emerge from bankruptcy as soon as possible and focus on its mission. In short, the Debtor's litigation strategy and settlement positions may not benefit, or insufficiently benefit, the intended beneficiaries of the insurance policies, the survivors.

23. The Diocese's recent 9019 Motion epitomizes these competing interests. In the 9019 Motion, the Diocese requested approval of a settlement with two of its insurers that would have required those insurers to contribute an average per claim settlement amount of only $220,000. *See* 9019 Motion, ¶ 27. As the Committee explained in its opposition papers and at the July 9, 2021 hearing, the Committee believes that this amount is not even remotely acceptable as fair compensation to the sexual abuse survivors for their terrible injuries.

24. The Committee therefore has a strong interest in this Adversary Proceeding as it likely represents the largest source of potential recovery for its constituency. Thus, unless the Committee is a party to the Adversary Proceeding, the Committee's ability to protect the rights of

creditors cannot be ensured.

**CONCLUSION**

For the reasons set forth above, the Committee respectfully requests entry of an order (a) authorizing the Committee to intervene in the Adversary Proceeding (a proposed form of order is attached hereto) and (b) granting the Committee such other and further relief as the Court deems just, fair, and equitable.

Dated: July 13, 2021

Respectfully submitted,

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Draft*
James I. Stang (admitted *pro hac vice*)
Ilan D. Scharf
Iain Nasatir
James Hunter
Brittany Michael
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile: (212) 561-7777
Email: jstang@pszjlaw.com
ischarf@pszjlaw.com
inasatir@pszjlaw.com
jhunter@pszjlaw.com
bmichael@pszjlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

**BURNS BOWEN BAIR LLP**

/s/ Timothy W. Burns
Timothy W. Burns (admitted *pro hac vice*)
Jesse J. Bair (admitted *pro hac vice*)
One South Pinckney St., Suite 930
Madison, Wisconsin 53703

608-286-2808
tburns@bbblawllp.com
jbair@bbblawllp.com

*Special Insurance Counsel to the Official Committee of Unsecured Creditors of The Diocese of Rochester*