**<u>Exhibit A</u>**

LMI Settlement Agreement

<u>**SETTLEMENT AGREEMENT AND RELEASE**</u>

This Settlement Agreement and Release (hereinafter the "**Agreement**") is made this ___th day of May, 2022, by and between the Diocese of Rochester ("**DOR**")[1] and the other "**DOR Entities**" on the one hand, and certain Underwriters at Lloyd's, London, and certain London Market Insurance Companies (collectively, "**London Market Insurers**"). (The aforementioned parties are referred to hereinafter collectively as the "Parties" or individually as a "**Party**").

<u>**WITNESSETH THAT:**</u>

WHEREAS, the "**CVA**" provided for a window for individuals to file civil claims for injury suffered as a result of sexual conduct that were otherwise time-barred;

WHEREAS, as a result of revival, pursuant to the CVA, of certain claims that were otherwise time-barred by the statute of limitations, "**Tort Claims**" were brought against certain DOR Entities;

WHEREAS, certain DOR Entities incurred, and may incur in the future, liabilities, expenses, and losses arising out of the Tort Claims;

WHEREAS, each London Market Insurer severally subscribed the "**Subject Insurance Policies**," allegedly providing insurance to the DOR Entities;

WHEREAS, the Subject Insurance Policies listed on Attachment A are property of DOR's bankruptcy estate;

WHEREAS, certain DOR Entities tendered "**Coverage Claims**" to the London Market Insurers to seek insurance coverage for the Tort Claims;

WHEREAS, London Market Insurers dispute the Coverage Claims;

WHEREAS, to address its liabilities for the Tort Claims, on the "**Petition Date**," DOR filed the "**Bankruptcy Case**" in the "**Bankruptcy Court**";

WHEREAS, on November 14, 2019, DOR filed the "**Insurance Coverage Action**," as an adversary proceeding in the Bankruptcy Court;

WHEREAS, several London Market Insurers are named defendants in the Insurance Coverage Action, and dispute the substantive allegations and Coverage Claims asserted against them in the Insurance Coverage Action;

WHEREAS, on December 23, 2019, DOR filed the "**Mediation Motion**";

---

[1] Terms in bold, inside quotation marks, are defined in Section 1, Definitions.

WHEREAS, on March 10, 2020, the Bankruptcy Court (i) entered the "**Mediation Order**" approving the Mediation Motion, appointing the "**Mediator**"; and (ii) ordered the "**Mediation Parties**" to mediate the Tort Claims and the Coverage Claims;

WHEREAS, pursuant to the Bankruptcy Court's order, no defendant filed an Answer or otherwise responded in the Insurance Coverage Action;

WHEREAS, whether or not they (i) were subject to the Tort Claims; or (ii) asserted Coverage Claims against London Market Insurers, the DOR Entities are settling with and releasing the "**LMI Entities**" pursuant to this Agreement;

WHEREAS, it is the intention of the Parties that the DOR Entities shall sell, assign, and transfer the Subject Insurance Policies to the London Market Insurers, and the London Market Insurers shall buy back the Subject Insurance Policies and pay the "**Settlement Amount**" to DOR;

WHEREAS, DOR shall pay the "**Settlement Amount**" to the "**Trust**" for the benefit of the "**Channeled Claimants**";

WHEREAS, it is the intention of the Parties that any and all "**Interests**" in or to the Subject Insurance Policies be extinguished, ended, and forever terminated;

WHEREAS, it is the intention of the Parties that (i) the DOR Entities shall (a) not retain any right, title, or Interest in or to the "**Subject Insurance Policies**"; and (b) release the LMI Entities from all "**Released Claims**"; and (ii) none of the LMI Entities shall have any remaining duty or obligation of any nature whatsoever to any DOR Entity;

WHEREAS, subject to the Court entering the orders contemplated by this Agreement, each of the LMI Entities will be protected by the "**Settling Insurer Supplemental Injunction**" and the "**Channeling Injunction**";

WHEREAS, DOR agrees to use commercially reasonable efforts to obtain the Settling Insurer Supplemental Injunction for the benefit of the "**Settling Insurers**," pursuant to the "**Plan**"; and

WHEREAS, by this Agreement, the Parties intend to adopt, by way of compromise, and without prejudice to or waiver of their respective positions in other matters, without further trial or adjudication of any issues of fact or law, and without London Market Insurers' admission of liability or responsibility under the Subject Insurance Policies, a full and final settlement that releases and terminates all Interests of the LMI Entities, and the DOR Entities, with respect to the Subject Insurance Policies, including all rights, obligations, and liabilities relating to the "**Barred Claims**" and the "**Enjoined Claims**," without prejudice to their respective positions on policy wordings or any other issues relating to the Insurance Coverage Action, the Coverage Claims, or otherwise.

## AGREEMENTS:

NOW, THEREFORE, in full consideration of the foregoing and of the mutual agreements herein contained, and intending to be legally bound, the Parties agree as follows:

14009673.7

## 1. __Definitions__

The following definitions and the definitions used above apply to this Agreement as well as any exhibits or attachments hereto. Where the listed terms are further defined in the body of this Agreement, the definitions listed here nonetheless apply and shall serve to further explain the meaning of those terms. Each defined term stated in a singular form shall include the plural form, each defined term stated in plural form shall include the singular form, and each defined term stated in the masculine form or in the feminine form shall include the other. The words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation," and the phrase "relating to" means "with regard to, by reason of, based on, arising out of, relating to, or in any way connected with." (The words "include," "includes," and "including," and the phrase "relating to" are not capitalized herein.) This Agreement incorporates all attachments hereto to the same extent as if fully set forth herein. All references to "Sections" are references to sections of this Agreement unless otherwise specified.

### a. __Abuse__

The term "__Abuse__" means (i) any actual, threatened, or alleged sexual conduct, misbehavior, abuse, or molestation, including a sexual offense as defined in New York Penal Law Section 130, incest as defined New York Penal Law Section 255, and use of a child in sexual performance as defined in New York Penal Law Section 263; (ii) indecent or lascivious behavior, undue familiarity, harassment, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm; (iii) contacts or interactions of a sexual nature; or (iv) assault, battery, corporal punishment, or other act of physical, psychological, or emotional abuse, humiliation, intimidation, or misconduct.

### b. __Action__

The term "__Action__" means any lawsuit, proceeding, or other action in a court, or any arbitration.

### c. __Affiliates__

The term "__Affiliates__" means all past, present, and future Persons that control, are controlled by, or are under control with, another Person, including parents, subsidiaries, merged Persons, holding Persons, and acquired Persons, or any predecessor to such Person.

### d. __Agents__

The term "__Agents__" means all past and present employees, officers, directors, agents, shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy, Persons bound by monastic vows, volunteers, attorneys, claims handling administrators, and representatives of a Person, in their capacities as such.

### e. __Approval Order__

The term "__Approval Order__" means an order entered by the Court, upon a hearing following Bankruptcy Notice, containing all of the following provisions but no provision that is

14009673.7

contrary to or inconsistent with the following provisions. The wording of the Approval Order shall be mutually acceptable to DOR, London Market Insurers, and Rev. Thomas P. Mull in his capacity as chair of the parish steering committee. The Approval Order shall contain provisions:

(i)       finding that due and adequate notice of the DOR's request for approval of this Agreement has been provided to all creditors and parties in interest in the Bankruptcy Case;

(ii)       approving this Agreement in its entirety, pursuant to Bankruptcy Code §§ 363(b), (f), and (m) and, if applicable, 105(a), and Bankruptcy Rules 6004 and 9019;

(iii)       authorizing, subject to the occurrence of the Escrow Release Date, the sale of the Subject Insurance Policies to London Market Insurers on the Escrow Release Date, free and clear of all Interests of all Persons, including all Interests, if any, arising under New York Insurance Law or any other applicable law, with all Interests in and to, and Claims against, the Subject Insurance Policies being fully extinguished without reservation as to the Settling Insurers;

(iv)       ordering that all Claims against, and Interests in and to, the Subject Insurance Policies be fully extinguished without reservation as to the LMI Entities and the DOR Entities, and channeled to a Trust upon the Plan Effective Date;

(v)       ordering that all Barred Claims and other Interests that any Person, including CMS, might have in, or against, the Subject Insurance Policies, attach to the Settlement Amount;

(vi)       authorizing and directing the Parties to perform their respective obligations under this Agreement; and

(vii)       issuing the Bar Order, subject to, and effective upon, the occurrence of the Escrow Release Date.

The Approval Order shall be accompanied by the separately entered Settlement Approval Findings and Conclusions.

**f.       Bankruptcy Case**

The term "**Bankruptcy Case**" means the bankruptcy case filed by DOR in the Bankruptcy Court, entitled *In re the Diocese of Rochester*, Case Number 19-20905.

**g.       Bankruptcy Code**

The term "**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. § 101, *et seq*.

14009673.7

### h.     Bankruptcy Court

The term "**Bankruptcy Court**" means the Bankruptcy Court for the Western District of New York.

### i.     Bankruptcy Notice

The term "**Bankruptcy Notice**" means notice as required under Bankruptcy Rules 2002, 6004(a), and (c), and applicable local rules, sent to (i) all holders of Claims against the DOR Entities, including Tort Claims, or their attorneys, if any, who are known to the DOR Entities; (ii) the Official Committee of Unsecured Creditors; (iii) the Future Claims Representative (once appointed by the Court); (iv) all insurers of the DOR Entities that provide coverage for or are alleged to provide coverage for Tort Claims; (v) the Secretary of the Department of Health and Human Services ("**Secretary**"); (vi) CMS; (vii) the United States Attorney for the Western District of New York; (viii) all Persons who, in the opinion of any Party to this Agreement, might reasonably be expected to be affected by the transactions contemplated herein; and (ix) all other Persons as directed by the Court. Notice shall also be given by (a) publication in the national edition of either *The New York Times* or *USA Today*; and (b) local publication in the *Rochester Democrat & Chronicle*, or as the Court may otherwise direct.

### j.     Bankruptcy Rules

The term "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as such may be amended from time to time.

### k.     Bar Order

The term "**Bar Order**" means an order, which shall automatically become effective on the Escrow Release Date, barring, estopping, and permanently enjoining all Persons from asserting any Barred Claims against the LMI Entities.

### l.     Business Day

The term "**Business Day**" means any day that is not a Saturday, Sunday, or legal holiday in the State of New York or the United Kingdom.

### m.     Channeling Injunction

The term "**Channeling Injunction**" means an order of the Court requiring all Channeled Claimants to assert their Channeled Claims against the Trust, and barring and permanently enjoining such claims against the DOR Entities and the Settling Insurers, pursuant to § 105 of the Bankruptcy Code, which states, *verbatim*, unless the London Market Insurers and DOR agree to modified language:

**Channeling Injunction Preventing Prosecution of Channeled Claims Against Protected Parties and Settling Insurers.**

(a) In consideration of the undertakings of the Protected Parties and Settling Insurers under the Plan, their contributions to the Trust, and other consideration, and pursuant to their respective settlements with the Debtor and to further preserve and promote the agreements between and among the Protected Parties and Settling Insurers, and to supplement where necessary the injunctive effect of the discharge as provided in Sections 524 and 1141 of the Bankruptcy Code, and pursuant to and pursuant to Sections 105 and 363 of the Bankruptcy Code:

1. any and all Channeled Claims are channeled into the Trust and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts established under the Plan and the Trust Agreement as the sole and exclusive remedy for all holders of Channeled Claims;

2. all Persons who have held or asserted, hold or assert, or may in the future hold or assert, any Channeled Claims, are hereby permanently stayed, enjoined, barred and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim against the Protected Parties or Settling Insurers, including:

   (i) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Channeled Claim against any of the Protected Parties or Settling Insurers or against the property of any of the Protected Parties or Settling Insurers;

   (ii) enforcing, attaching, collecting, or recovering, or seeking to accomplish any of the preceding, by any manner or means, from any of the Protected Parties or Settling Insurers, or the property of any of the Protected Parties or Settling Insurers, any judgment, award, decree, or order with respect to any Channeled Claim against any of the Protected Parties or Settling Insurers;

   (iii) creating, perfecting, or enforcing, or seeking to accomplish any of the preceding, any lien of any kind relating to any Channeled Claim against any of the Protected Parties or Settling Insurers, or the property of the Protected Parties or Settling Insurers;

   (iv) asserting, implementing, or effectuating any Channeled Claim of any kind against:

      1. any obligation due any of the Protected Parties or Settling Insurers;

      2. any of the Protected Parties or Settling Insurers; or

      3. the property of any of the Protected Parties or Settling Insurers.

6

> (v) taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan; and
>
> (vi) asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against an obligation due to any of the Protected Parties, the Settling Insurers, or the property of any of the Protected Parties or the Settling Insurers.

**The Channeling Injunction is an integral part of the Plan and is essential to the Plan's consummation and implementation. It is intended that the channeling of the Channeled Claims as provided in this Section ___ shall inure to the benefit of the Protected Parties and Settling Insurers. In a successful action to enforce the injunctive provisions of this Section in response to a willful violation thereof, the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing**.

### n.   Claim

The term "**Claim**" means (a) a claim as that term is defined in § 101(5) of the Bankruptcy Code; or (b) any claim, interest, Action, assertion of right, complaint, cross-complaint, counterclaim, defense, liability, obligation, right, request, allegation, mediation, litigation, direct action, administrative proceeding, cause of action, lien, debt, bill, indemnity, equitable indemnity, right of subrogation, equitable subrogation, injunctive relief, controversy, contribution, exoneration, covenant, agreement, promise, act, omission, trespass, variance, damages, judgment, compensation, set-off, reimbursement, restitution, cost, expense, loss, exposure, execution, attorneys' fee, obligation, encumbrances, order, affirmative defense, writ, demand, inquiry, request, directive, obligation, Proof of Claim in a bankruptcy proceeding or submitted to a trust established pursuant to the Bankruptcy Code, government claim or Action, settlement, and/or any liability whatsoever, whether past, present or future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, matured or unmatured, liquidated or unliquidated, direct, indirect or otherwise consequential, whether in law, equity, admiralty or otherwise, whether currently known or unknown, whether compromised, settled or reduced to a consent judgment, that may exist now or hereinafter for property damages, compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general and special damages), punitive damages, bodily injury, personal injury, public and private claims, or any other right to relief whether sounding in tort, contract, extra-contractual or bad faith, statute, strict liability, equity, nuisance, trespass, statutory violation, wrongful entry or eviction or other eviction or other invasion of the right of private occupancy, and any amounts paid in respect of any judgment, order, decree, settlement, contract, or otherwise.   A Person who holds a Claim is a "**Claimant**".   The term Claim includes all of the following:

### (i)   Barred Claims

The term "**Barred Claims**" means all Claims enjoined by the Bar Order, which shall include all Channeled, Direct Action, and Released Claims.

14009673.7

### (ii) Channeled Claims

The term "**Channeled Claims**" means the claims channeled to the Trust, including all Tort, Direct Action, Extra-Contractual, Medicare, and Indirect Claims against any DOR Entity or Settling Insurer, which are channeled to the Trust, and for which the Trust assumes liability, pursuant to the Plan.

### (iii) Contribution Claims

The term "**Contribution Claims**" means all Claims, most commonly expressed in terms of contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, allocation or reallocation, or reimbursement, or any other indirect or derivative recovery, by an Insurer against any LMI Entity for the payment of money where such Insurer contends that it has paid more than its equitable or proportionate share of a Claim against a DOR Entity.

### (iv) Coverage Claims

The term "**Coverage Claims**" means all Claims under or relating to the Subject Insurance Policies or the rights and obligations thereunder, or the breach thereof, including Claims seeking insurance coverage.

### (v) Direct Action Claims

The term "**Direct Action Claims**" means the same as Tort Claims, except that they are asserted against any LMI Entity, instead of any DOR Entity or the Trust, for the recovery of insurance proceeds.

### (vi) Enjoined Claims

The term "**Enjoined Claims**" means all Claims enjoined by the Settling Insurer Supplemental Injunction, which shall include all Barred, Contribution, Indirect, and Medicare Claims.

### (vii) Extra-Contractual Claims

The term "**Extra-Contractual Claims**" means all Claims against the LMI Entities (or any of them), arising from events or conduct prior to the date of this Agreement, seeking any type of relief other than coverage or benefits under the Subject Insurance Policies. "**Extra-Contractual Claims**" include Claims for compensatory, exemplary, or punitive damages, or attorneys' fees, interest, costs, or any other type of relief, alleging, with respect to (i) any of the Subject Insurance Policies; (ii) any Claim allegedly or actually covered under the Subject Insurance Policies; or (iii) the conduct of London Market Insurers with respect to (i) and/or (ii): bad faith; failure to provide insurance coverage; failure or refusal to compromise and settle any Claim; failure to act in good faith; violation of any covenant or duty of good faith and fair dealing; violation of any state insurance codes, state surplus lines statutes or similar codes or statutes; violation of any unfair claims practices act or similar statute, regulation or code; any type of misconduct or any other act or omission of

any type. The term "**Extra-Contractual Claims**" includes all Claims relating to London Market Insurers' (i) handling of any request for insurance coverage for any Claim; (ii) conduct relating to the negotiation of this Agreement; and (iii) conduct relating to the settlement of any Coverage Claim.

(viii)    **Indirect Claims**

The term "**Indirect Claims**" means Claims against a DOR Entity or a Settling Insurer, asserted by a Non-DOR Insurer, or any other Entity that is not an Insurer, for contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, allocation or reallocation, or reimbursement, or any other indirect or derivative recovery, on account of or with respect to any Claim relating to Abuse.

(ix)    **Medicare Claims**

The term "**Medicare Claims**" means all Claims by CMS, and/or any other agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA and pursuing Claims under MSP, relating to any payments in respect of any Tort Claims, including Claims for reimbursement of payments made to Tort Claimants who recover or receive any distribution from the Trust, and Claims relating to reporting obligations..

(x)    **Released Claims**

The term "**Released Claims**" means Coverage and Extra-Contractual Claims.

(xi)    **Tort Claims**

(A) The term "**Tort Claims**" means all Claims relating to Abuse that took place in whole or in part prior to the Plan Effective Date for which a DOR Entity is allegedly responsible, including any such Claim seeking monetary damages or any other relief, under any theory of liability, including vicarious liability; *respondeat superior*; any fraud-based theory, including fraud in the inducement and fraudulent concealment; any negligence-based or employment-based theory, including negligent hiring, supervision, retention or misrepresentation; any other theory based on a duty, fiduciary duty, pattern and/or practice, misrepresentation, concealment, or unfair practice; contribution; indemnity; public or private nuisance; or any other theory, including any theory based on public policy or any acts or failures to act by any DOR Entity or any other Person for whom any DOR Entity is allegedly responsible, including any such Claim asserted against any DOR Entity in connection with the Bankruptcy Case. The term "**Tort Claims**" includes Future Tort Claims; it does not include Contribution or Medicare Claims.

(B) The term "**Future Tort Claim**" means any Tort Claim that was (i) neither filed, nor deemed filed, in the Bankruptcy Case, by the Claims Filing Deadline, nor otherwise allowed by the Court prior to the Plan Effective Date; and (ii) is held by an individual (a) who, at the time of the Claims Filing Deadline, was (x) under a disability recognized by New York C.P.L.R. §208, or other applicable law suspending the running of the limitation

period, if any, or (y) barred by a statute of limitations, but is no longer barred by such statute of limitations for any reason, including the enactment of legislation.

**o.    Claims Filing Deadline**

The term "**Claims Filing Deadline**" means August 13, 2020, at 11:59 P.M. (prevailing Eastern Time).

**p.    CMS**

The term "**CMS**" means the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services, located at 7500 Security Boulevard, Baltimore, MD 21244-1850 and/or any other Agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA for reimbursement of Medicare Claims.

**q.    Committee**

The term "**Committee**" means the Official Committee of Unsecured Creditors appointed in the Bankruptcy Case.

**r.    Conditions Precedent to Escrow Release**

The term "**Conditions Precedent to Escrow Release**" means all of the following:

(i)    The Agreement shall have been executed by the Parties;

(ii)    The Agreement shall have been approved by the Court;

(iii)    The Approval Order, as defined above, shall have been entered by the Court;

(iv)    The Approval Order shall have become a Final Order;

(v)    The London Market Insurers shall have deposited the Settlement Amount into the Escrow Account;

(vi)    The Confirmation Order, as defined below, has been entered by the Court;

(vii)    The Confirmation Order has become a Final Order;

(viii)    The Plan Effective Date has occurred; and

(ix)    The Escrow Agent has received the Escrow Release Instruction.

**s.    Confirmation Findings and Conclusions**

The term "**Confirmation Findings and Conclusions**" means the findings of fact and conclusions of law required under §§ 1129(a), and, if applicable, 105(a) and 1129(b), of the

Bankruptcy Code, which are to be entered concurrently with, but separately from, the Confirmation Order, as necessary to confirm the Plan and dismiss with prejudice the Insurance Coverage Action as against London Market Insurers, including the following:

(i)      This Agreement is the fruit of long-term negotiations amongst the Parties, which began in March 2020, following the Bankruptcy Court's entry of the Mediation Order;

(ii)      The Settlement Amount provides good and valuable consideration to DOR's bankruptcy estate, and enables distributions to the Channeled Claimants;

(iii)      This Agreement is therefore necessary to the Plan because it provides significant funding for the Plan;

(iv)      The Subject Insurance Policies are property of DOR's bankruptcy estate and are therefore subject to the *in rem* jurisdiction of the Court;

(v)      The Channeled Claims are within the jurisdiction of the Court because they seek property of DOR's bankruptcy estate;

(vi)      Because it would be impractical to divide the Subject Insurance Policies amongst DOR and the other DOR Entities, it was necessary for DOR to obtain the participation of the other DOR Entities in this Agreement;

(vii)      The DOR Entities, other than DOR, would not release their Interests in the Subject Insurance Policies unless they obtained the benefits of the Channeling Injunction, because to do so would have left them exposed to Tort Claims, whether or not such Claims be valid, and whether or not coverage exists under the Subject Insurance Policies for such Claims;

(viii)      Therefore, the Channeling Injunction is necessary to the Agreement;

(ix)      The Channeling Injunction is narrowly tailored because it requires only Channeled Claims against the DOR Entities and the Settling Insurers to be brought against the Trust;

(x)      The Coverage Claims are within the jurisdiction of the Bankruptcy Court because such claims could enhance the estate;

(xi)      The London Market Insurers required that DOR obtain the benefits of the Settling Insurer Supplemental Injunction, as a condition of entering into this Agreement and contributing the Settlement Amount;

(xii)      Therefore, the Settling Insurer Supplemental Injunction is necessary to this Agreement and the Plan;

(xiii)      The Settling Insurer Supplemental Injunction is narrowly tailored because it only enjoins the Enjoined Claims against the Settling Insurers;

14009673.7

(xiv)   The London Market Insurers are repurchasing the Subject Insurance Policies, pursuant to this Agreement.  The London Market Insurers are not purchasing any other assets of the DOR Entities and are not a continuation of the DOR Entities, nor engaging in a continuation of the DOR Entities' businesses.  The London Market Insurers shall not have any responsibility or liability with respect to any of the DOR Entities' other assets; and

(xv)   The London Market Insurers are not, and shall not be deemed to be, successors to the DOR Entities, or any of them, by reason of any theory of law or equity or as a result of the consummation of the transactions contemplated in this Agreement, the Plan, or otherwise.  The London Market Insurers shall not assume, or be deemed to have assumed, any liabilities or other obligations of the DOR Entities.

**t.    Confirmation Order**

The term "**Confirmation Order**" means an order entered by the Court after a confirmation hearing upon Bankruptcy Notice confirming the Plan, in a form and substance as required by this Agreement, which order has not been stayed.  The wording of the Confirmation Order shall be mutually acceptable to DOR, the London Market Insurers, and Rev. Thomas P. Mull in his capacity as chair of the parish steering committee.  The Confirmation Order shall contain all of the following provisions but no provision that is contrary to or inconsistent with this Agreement:

(i)     confirming the Plan;

(ii)    specifically, and individually, ordering all Persons, as set forth in the Plan, to act or refrain from acting as specified in the Plan;

(iii)   incorporating the terms and provisions of the Bar Order as though fully set forth therein;

(iv)    ordering the Trustee to perform the obligations, if any, imposed upon the Trustee by this Agreement;

(v)     issuing the Channeling Injunction and the Settling Insurer Supplemental Injunction;

(vi)    discharging DOR from all Claims, including all Channeled Claims;

(vii)   ordering all Channeled Claimants with pending state court Actions against any DOR Entity to dismiss such Claims and assert them against the Trust for resolution pursuant to the Trust Agreement; and

(viii)  including the Reduction Clause set forth in Section 8, below.

The Confirmation Order shall be accompanied by the separately entered Confirmation Findings and Conclusions.

14009673.7

### u.      Court

The term "**Court**" means the Bankruptcy Court, or the District Court, as applicable.

### v.      CVA

The term "**CVA**" means the New York Child Victims Act, NY CPLR Section 214-G and all related civil and penal laws and statutes.

### w.      Defense and Indemnity Costs

The term "Defense and Indemnity Costs" means all amounts expended by the London Market Insurers or the DOR Entities in settlement, defense, or indemnity of Claims, pursuant to Sections 6.e.(i) or (ii).

### x.      District Court

The term "**District Court**" means the United States District Court for the Western District of New York.

### y.      DOR

The term "**DOR**" means The Diocese of Rochester, which is the diocesan corporation formed pursuant to N.Y. Relig. Corp. Law § 90, together with the public juridic person of the Roman Catholic Diocese of Rochester, as now constituted or as it may have been constituted. Furthermore, in the event of any Action naming any Affiliate or Agent of DOR, such Action shall be considered an Action against DOR, the insurance coverage for which is released pursuant to Section 4 hereof.

### z.      DOR Entities

The term "**DOR Entities**" means, in their capacity as such:

(i)      DOR;

(ii)     DOR's Affiliates;

(iii)    Any and all insureds, named insureds, additional insureds and other insureds, or Persons otherwise insured or allegedly insured under the Subject Insurance Policies, including schools and the DOR Parishes;

(iv)     Each of the Affiliates of the Persons identified in the foregoing subsections (i)-(iii);

(v)      Each of the successors and assigns of the Persons identified in the foregoing subsections (i)-(iv); and

(vi)     Each of the Agents of the Persons identified in the foregoing subsections (i)-(v).

The **"DOR Entities"** include each of the Persons set forth on Attachment E to this Agreement.

An individual who perpetrated an act of Abuse that forms the basis for a Tort Claim is not a DOR Entity with respect to that Tort Claim.

**aa.** **DOR Parishes**

The term **"DOR Parishes"** means all past and present parishes of or in DOR, in their capacity as public juridic persons, together with each corresponding parish corporation formed pursuant to N.Y. Relig. Corp. Law § 90.

**bb.** **Effective Date**

The term "**Effective Date**" means the day following the date on which all of the following have occurred: (i) all Parties have executed this Agreement and the Escrow Agreement; (ii) the Court has issued the Approval Order and the Settlement Approval Findings and Conclusion; and (iii) the Approval Order has become a Final Order.

**cc.** **Entities' Release**

The term "**Entities' Release**" means the following:

(i) The remising, release, covenant not to sue, and permanent discharge by the DOR Entities and any subsequently appointed trustee or representative acting for the DOR Entities, without further act by any Person, from and against all Released Claims that any DOR Entity ever had, now has, or hereafter may have, from the beginning of time to the Effective Date, of: (1) each paying London Market Insurer and its LMI Entities; (2) the respective heirs, executors, administrators, and reinsurers (as such) of any of the Persons identified in clause (1) hereof in their capacity as such.

(ii) The Entities' Release shall not serve to release or discharge any obligations of any Person (or such Person's Affiliates) that has not paid to the Trust such Person's full allocable share of the Settlement Amount pursuant to the terms of this Agreement.

**dd.** **Equitas Entities**

The term "**Equitas Entities**" means Equitas Limited, Equitas Reinsurance Limited, Equitas Holdings Limited, Equitas Policyholders Trustee Limited, and any other Person from time to time in the Equitas Group.

**ee.** **Escrow Account**

The term "**Escrow Account**" means the account established by the Escrow Agreement.

**ff.** **Escrow Agent**

The terms "**Escrow Agent**" means the original and any successor escrow agent appointed pursuant to the Escrow Agreement.

**gg.**     **Escrow Agreement**

The term "**Escrow Agreement**" means a mutually acceptable escrow agreement executed by the Parties.

**hh.**     **Escrow Release Instruction**

The term "**Escrow Release Instruction**" means a written direction to the Escrow Agent directing the release of the Escrow Payment to the Trust executed by DOR and London Market Insurers.

**ii.**     **Escrow Payment**

The term "**Escrow Payment**" shall mean the Settlement Amount, plus any accrued interest, less Expenses, and less any Defense and Indemnity Costs incurred by the London Market Insurers and DOR Entities pursuant to Section 6.e.

**jj.**     **Escrow Release Date**

The term "**Escrow Release Date**" means the earliest date upon which all Conditions Precedent to Escrow Release have all occurred, *provided, however*, that if such date is not a Business Day, the Escrow Release Date shall be the next Business Day.

**kk.**     **Expenses**

The term "**Expenses**" means all reasonable fees, costs, and expenses incurred by the Escrow Account and Escrow Agent (in its capacity as such) pursuant to the Escrow Agreement, including all compensation paid to the Escrow Agent pursuant to the Escrow Agreement; all taxes paid pursuant to the Escrow Agreement; the costs and expenses incurred in preparing and circulating records and reports pursuant to the Escrow Agreement; fees and expenses of counsel pursuant to the Escrow Agreement; any amounts reserved pursuant to the Escrow Agreement for any of the foregoing; and any indemnification paid to the Escrow Agent pursuant to the Escrow Agreement.

**ll.**     **Final Order**

The term "**Final Order**" means an order as to which the time to appeal, petition for *certiorari*, petition for review, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, review, reargue, or rehear shall have been waived in writing in form and substance satisfactory to DOR and the London Market Insurers, and their counsel or, in the event that an appeal, *writ of certiorari*, petition for review, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* or review has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for

*certiorari,* petition for review, or move for reargument or rehearing shall have expired; *provided, however,* that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a Final Order. For the avoidance of doubt, if the Plan is substantially consummated as defined in § 1101(2) of the Bankruptcy Code ("**Substantial Consummation**"), and any appeal of the Confirmation Order becomes equitably moot due to Substantial Consummation, the Confirmation Order shall be considered a Final Order as of the date that the order determining such appeal to be moot has become a Final Order.

### mm.   Future Claims Representative

The term "**Future Claims Representative**" means an individual appointed by the Court to represent the interests of Future Tort Claimants.

### nn.   HHS

The term "**HHS**" means the United States Department of Health and Human Services.

### oo.   Insurance Coverage Action

The term "**Insurance Coverage Action**" means the case entitled *The Diocese of Rochester v. The Continental Insurance Company, et al.*, filed in the United States Bankruptcy Court, for the Western District of New York, as Adversary Proceeding Number 19-02021.

### pp.   Insurers

The term "**Insurers**" means the insurers of the DOR Entities, comprising the Settling Insurers and the Non-Settling Insurers.

### qq.   Interests

The term "**Interests**" means all Claims, including any "interests" as that term is used in 11 U.S.C. § 363, and other rights of any nature, whether at law or in equity, including all interests or other rights under New York Insurance Law or any other applicable law.

### rr.   Lloyd's Underwriters

The term "**Lloyd's Underwriters**" means:

(i)    All underwriters, members, or Names at Lloyds, London (including former underwriters, members, or Names) who through their participation in syndicates (including those identified on Attachment B) severally subscribed, each in his or her own proportionate share, one or more of the Subject Insurance Policies. Lloyd's Underwriters shall also include all Underwriters, members, or Names at Lloyd's, London (including former underwriters, members, and Names), whether or not they participated in the syndicates identified in Attachment B, who, through their participation in syndicates (including those identified on Attachment B) severally subscribed any of the Subject Insurance Policies in favor of any DOR Entity: (a) the existence of which has not presently

been established; or (b) the existence of which has been established but as to which identities of Names, members, or syndicates are not presently known. Further, it is expressly understood that Persons are Lloyd's Underwriters only in their capacity as subscribers of the Subject Insurance Policies, and obtained through a London broker;

(ii)     All of the Agents of the Persons set forth in Section 1.xx.(i), and their respective predecessors and successors, if any, solely in such capacity; and

(iii)     All the respective heirs, executors, successors (including Equitas Insurance Limited ("**EIL**") to the extent EIL is a successor to any of the Persons identified in Section 1.xx.(i) with respect to the subject matter of this Agreement), assigns (including any administrator, receiver, trustee, personal representative, or equivalent appointee/s under relevant insolvency law), reinsurers, and retrocessionaires (as such) of any of the Persons identified in Section 1.xx.(i), if any, solely in their capacity as such.

(iv)     For the avoidance of doubt, the Underwriter Third-Party Beneficiaries, who receive certain specified benefits under this Agreement, are not Lloyd's Underwriters for the purpose of this definition.

**ss.     LMI Bill of Sale**

The term "**LMI Bill of Sale**" means a fully-executed bill of sale evidencing the sale, assignment, and transfer of the Subject Insurance Policies to the London Market Insurers free and clear of all Interests of all Persons, including the Tort Claimants and the DOR Entities.

**tt.     LMI Entities**

The term "**LMI Entities**" means, with respect to each London Market Insurer:

(i)     each of such London Market Insurer's Affiliates (except to the extent such Affiliates have independent obligations under this Agreement);

(ii)     each of the foregoing Persons' Agents; and

(**iii**)     each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through, or in concert with them, in their capacities as such.

**uu.     LMI Escrow Balance**

The term "**LMI Escrow Balance**" means the amount on deposit in the Escrow Account from time to time attributable to the aggregate contributions made to the Escrow Account by the

London Market Insurers, plus all accrued interest thereon, less the *pro rata* share of Expenses allocable thereto.

### vv.  **London Market Companies**

The term "**London Market Companies**" means the companies doing business in the London insurance market, which severally subscribed, each in its own proportionate share, to one or more of the Subject Insurance Policies (such insurers are identified in Attachment B to this Agreement). London Market Companies also include those companies doing business in the London insurance market who subscribed any Subject Insurance Policies (a) the existence of which has not presently been established but which provided insurance to any DOR Entity; or (b) the existence of which has been established but the identity of such company as a subscribing insurer is not presently known. As used herein, London Market Companies shall mean, in their capacity as such, the named corporate entity and all predecessors, successors, Affiliates, assigns, pool companies as such, and subsidiaries. Persons are London Market Companies only in their capacity as a subscriber of the Subject Insurance Policies (as opposed to other insurance policies) subscribed by them in the London insurance markets (as opposed to insurance markets located elsewhere).

### ww.  **London Market Insurers**

The term "**London Market Insurers**" means Lloyd's Underwriters and the London Market Companies. The London Market Insurers do not include any specific insurance company listed on Attachment C to this Agreement.

### xx.  **Mediation**

The term "**Mediation**" means the mediation by the Mediation Parties, as ordered by the Bankruptcy Court, on March 10, 2020.

### yy.  **Mediation Parties**

The term "**Mediation Parties**" means, collectively: (a) DOR; (b) each insurer named as a Defendant in the Insurance Coverage Action; (c) the Committee; (d) state court counsel for Tort Claimants; (e) the *ad hoc* committee of parishes and other parties-in-interest, including schools or other non-debtor Catholic entities located within the DOR, to the extent permitted or required by the Mediator.

### zz.  **Mediation Motion**

The term "**Mediation Motion**" means the Motion for Entry of an Order Referring this Adversary Proceeding to Mediation filed by the DOR in the Insurance Coverage Action.

### aaa.  **Mediation Order**

The term "**Mediation Order**" means the Order Directing Mediation and Appointing Mediator filed by the DOR in the Insurance Coverage Action.

### bbb. Mediator

The term "**Mediator**" means the Honorable Gregg W. Zive, United States Bankruptcy Judge.

### ccc. Medicare

The term "**Medicare**" means Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq*., enacted July 1, 1966, including all subsequent amendments thereto.

### ddd. Medicare Beneficiary

The term "**Medicare Beneficiary**" means any individual who has received or is eligible to receive benefits under Medicare and is the holder of a Channeled Claim.

### eee. MSP or Medicare Secondary Payor Act

The term "**Medicare Secondary Payor Act**" or "**MSP**" means 42 U.S.C. § 1395y *et seq*., or any other similar statute or regulation, and any related rules, regulations or guidance issued in connection therewith or amendments thereto.

### fff. MMSEA

The term "**MMSEA**" means § 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L.110-173), which imposes reporting obligations on those Persons with payment obligations under the MSP.

### ggg. Non-DOR Insurer

The term "**Non-DOR Insurer**" means an insurer that insures a Person allegedly liable for Claims relating to Abuse, but who does not fall into the definition of Insurer.

### hhh. Non-Settling Insurer

The term "**Non-Settling Insurer**" means any Person that has, or could be alleged to have, issued or subscribed an insurance policy providing coverage for Tort Claims, which Person has not settled its obligations under such policy.

### iii. Person

The term "**Person**" means any individual or entity, including any corporation, limited liability company, partnership, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, proprietorship, association, joint stock company, joint venture, estate, trust, trustee, personal executor or personal representative, unincorporated association, or other entity, including any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof.

14009673.7

### jjj.  Petition Date

The term "**Petition Date**" means September 12, 2019.

### kkk.  Plan

The term "**Plan**" means a plan of reorganization proposed by DOR, after good-faith consultation with the LMI Entities, which (a) contains all of the following provisions, but no provision that is contrary to or inconsistent with this Agreement; (b) allows all of the acts and transactions under, and envisioned by, this Agreement to occur with binding legal effect; (c) does not materially and adversely affect the rights, duties, or interests of the DOR Entities or the LMI Entities, under this Agreement; (d) includes all papers, exhibits, attachments, appendices, or other documents filed with or in support of the Plan and necessary for its implementation, and any documents relating to the establishment and operation of the Trust; and (e) shall include the following provisions:

      (i)      incorporating this Agreement and the Escrow Agreement;

      (ii)      specifying the terms of this Agreement and the Escrow Agreement shall control in the event of any conflict with the Plan or the Confirmation Order;

      (iii)      prohibiting DOR from continuing to pursue the Insurance Coverage Action against the London Market Insurers; requiring DOR to dismiss its Claims against London Market Insurers in the Insurance Coverage Action, with prejudice, within fourteen (14) days after the Plan Effective Date; and prohibiting any DOR Entity from asserting any Coverage Claims against LMI Entities;

      (iv)      setting forth the Channeling Injunction and the Settling Insurer Supplemental Injunction;

      (v)      establishing the Trust, appointing the Trustee, and binding both of them to perform those requirements imposed upon them by this Agreement;

      (vi)      describing the role of the Future Claims Representative and seeking the continued appointment of the Future Claims Representative to continue in his duties;

      (vii)      channeling all Channeled Claims to the Trust;

      (viii)      denominating each of the LMI Entities as Settling Insurers;

      (ix)      requiring each Channeled Claimant receiving a payment from the Trust to sign a release of all Claims against the LMI Entities and the DOR Entities;

      (x)      providing that none of the DOR Entities, the Trust, or the Settling Insurers will have any reporting obligations in respect of their contributions to the Trust, or in respect of any payments, settlements, resolutions, awards, or other Claim liquidations by the Trust, under the reporting provisions of MSP or MMSEA, and providing further, *verbatim*:

a.      It is the position of DOR that none of DOR Entities, the Trust, or the Settling Insurers will have any reporting obligations in respect of their contributions to the Trust, or in respect of any payments, settlements, resolutions, awards, or other Claim liquidations by the Trust, under the reporting provisions of MSP or MMSEA. Prior to making any payments to any claimants, the Trust shall seek a statement or ruling from the HHS that none of the Trust, DOR Entities, or Settling Insurers has any reporting obligations under MMSEA with respect to payments to the Trust by the DOR Entities or Settling Insurers or payments by the Trust to Claimants.  Unless and until there is definitive regulatory, legislative, or judicial authority (as embodied in a final non-appealable decision from the United States Court of Appeals for the Second Circuit or the United States Supreme Court), or written confirmation from HHS that none of the DOR Entities or the Settling Insurers has any reporting obligations under MMSEA, with respect to any settlements, payments, or other awards made by the Trust or with respect to the contributions the DOR Entities and the Settling Insurers have made or will make to the Trust, the Trust shall, at its sole expense, in connection with the implementation of the Plan, act as a reporting agent for the DOR Entities and Settling Insurers, and shall timely submit all reports that would be required to be made by any DOR Entity or Settling Insurer under MMSEA on account of any Claims settled, resolved, paid, or otherwise liquidated by the Trust or with respect to contributions to the Trust, including reports that would be required if the payments to the Trust by a DOR Entity or Settling Insurer were determined to be made pursuant to "applicable plans" for purposes of MMSEA, or any DOR Entity or Settling Insurer were otherwise found to have MMSEA reporting requirements.  The Trust, in its role as reporting agent for the DOR Entities and Settling Insurers, shall follow all applicable guidance published by CMS to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

b.      If the Trust is required to act as a reporting agent for any DOR Entity or Settling Insurer pursuant to Section 1.uuu.(x)a., the Trust shall provide a written certification to each DOR Entity and Settling Insurer within twenty-one (21) days following the end of each calendar quarter, confirming that all reports to CMS required by Section 1.uuu.(x)a. have been submitted in a timely fashion, and identifying (a) any reports that were rejected or otherwise identified as noncompliant by CMS, along with the basis for such rejection or noncompliance; and (b) any payments to Medicare Beneficiaries that the Trust did not report to CMS.

c.      With respect to any reports rejected or otherwise identified as noncompliant by CMS, the Trust shall, upon request by any DOR Entity or Settling Insurer, promptly provide copies of the original reports submitted to CMS, as well as any response received from CMS with respect to such reports; *provided, however,* that the Trust may redact from such copies the Redacted Information. With respect to any such reports, the Trust shall reasonably undertake to remedy any issues of noncompliance identified by CMS, resubmit such reports to CMS, and, upon request by any DOR Entity or Settling Insurer, provide each DOR Entity and Settling Insurer copies of such resubmissions; *provided, however,* that the Trust

may redact the Redacted Information. If the Trust is unable to remedy its noncompliance, the provisions of Section 1.uuu.(x)g. shall apply.

d.     If the Trust is required to act as a reporting agent for a DOR Entity or Settling Insurer pursuant to the provisions of Section 1.uuu.(x)a., with respect to each Channeled Claim of a Medicare Beneficiary paid by the Trust and not disclosed to CMS, the Trust shall, upon request by any DOR Entity or Settling Insurer, promptly provide the last four digits of the claimant's Social Security number, the year of the claimant's birth and any other information in the possession or control of the Trust that may be necessary in the reasonable judgment of any DOR Entity or Settling Insurer to satisfy their obligations, if any, under MMSEA, as well as the basis for the Trust's failure to report the payment.  In the event any DOR Entity or Settling Insurer informs the Trust that it disagrees with the Trust's decision not to report a Claim paid by the Trust, the Trust shall promptly report the payment to CMS.  All documentation relied upon by the Trust in making a determination that a payment did not have to be reported to CMS shall be maintained for a minimum of six (6) years following such determination.

e.     If the Trust is required to act as a reporting agent for any DOR Entity, or Settling Insurer pursuant to the provisions of Section 1.uuu.(x)a., the Trust shall make the reports and provide the certifications required by Sections 1.uuu.(x)a. and b. until such time as such DOR Entity or Settling Insurer determines, in its reasonable judgment, that it has no further legal obligation under MMSEA or otherwise to report any settlements, resolutions, payments, or liquidation determinations made by the Trust or contributions to the Trust. Furthermore, following any permitted cessation of reporting, or if reporting has not previously commenced due to the satisfaction of one or more of the conditions set forth in Section 1.uuu.(x)a., and if any DOR Entity or Settling Insurer reasonably determines, based on subsequent legislative, administrative, regulatory, or judicial developments, that reporting is required, then the Trust shall promptly perform its obligations under Sections 1.uuu.(x)a. and b.

f.     Section 1.uuu.(x)a. is intended to be purely prophylactic in nature, and does not imply, and shall not constitute an admission, that the DOR Entities and/or Settling Insurers have made payments pursuant to "applicable plans" within the meaning of MMSEA, or that they have any legal obligation to report any acts undertaken by the Trust or contributions to the Trust under MMSEA or any other statute or regulation.

g.     If CMS concludes that reporting done by the Trust in accordance with Section 1.uuu.(x)a. is or may be deficient in any way, and has not been corrected to the satisfaction of CMS in a timely manner, or if CMS communicates to the Trust, any DOR Entity or Settling Insurer a concern with respect to the sufficiency or timeliness of such reporting, or there appears to any DOR Entity or Settling Insurer a reasonable basis for a concern with respect to the sufficiency or timeliness of such reporting or non-reporting based upon the information received pursuant to Section 1.uuu.(x)b., c., or d., or other credible information, then each

DOR Entity and Settling Insurer shall have the right to submit its own reports to CMS under MMSEA, and the Trust shall provide to any Entity that elects to file its own reports such information in its possession or control as the electing party may reasonably require in order to comply with MMSEA, including the full reports filed by the Trust pursuant to Section 1.uuu.(x)a., without any redactions. The DOR Entities and Settling Insurers shall keep any information they receive from the Trust pursuant to this Section 1.uuu.(x) confidential and shall not use such information for any purpose other than meeting obligations under MMSEA.

h.       Notwithstanding any other provisions hereof, the Trust shall not be required to report as required by this Section 1.uuu.(x) until the Person on whose behalf the Trust is required to report shall have provided its Medicare Reporting Number, if one exists. Moreover, the Trust shall have no indemnification obligation under this Section 1.uuu.(x) to such Person for any penalty, interest, or sanction with respect to a Claim that may arise on account of such Person's failure timely to provide its Medicare Reporting Number, if one exists, to the Trust in response to a timely request by the Trust for such Medicare Reporting Number. However, nothing relieves the Trust from its reporting obligations with respect to each Person who provides the Trust with its Medicare Reporting Number. The Trust shall indemnify each DOR Entity and Settling Insurer for any failure to report payments to Medicare eligible Tort Claimants on behalf of Persons who have timely supplied Medicare Reporting Numbers, if any exists.

i.       Prior to remittance of funds to any Channeled Claimant or counsel therefor, the Trustee shall obtain in respect of any Channeled Claim a certification from the Claimant that said Claimant has or will provide for the payment and/or resolution of any obligations owing or potentially owing under MSP relating to such Channeled Claim. If the Trust receives no such certification, the Trust may withhold payment from any Claimant the funds sufficient to assure that all obligations owing or potentially owing under MSP relating to such Tort Claim are paid to CMS. The Trust shall provide a quarterly certification of its compliance with this Section 1.uuu.(x) to each DOR Entity and Settling Insurer, and permit reasonable audits by such Persons, no more often than annually, to confirm the Trust's compliance with this Section 1.uuu.(x). For the avoidance of doubt, the Trust shall be obligated to comply with the requirements of this Section 1.uuu.(x) regardless of whether any DOR Entity or Settling Insurer elects to file its own reports under MMSEA pursuant to Section 1.uuu.(x)g.

j.       Compliance with the provisions of this Section 1.uuu.(x) shall be a material obligation of the Trust under the Plan, in favor of the DOR Entities and Settling Insurers under the Plan.

k.       The Trust shall defend, indemnify, and hold harmless the DOR Entities and Settling Insurers from any Medicare Claims reporting and payment obligations relating to its payment of Channeled Claims, including any obligations owing or potentially owing under MMSEA or MSP, and any Claims related to the Trust's obligations under Section 1.uuu.(x).

14009673.7

### lll.    **Plan Effective Date**

The term "**Plan Effective Date**" means the date on which the Plan by its terms becomes effective and binding upon DOR and all Persons asserting Claims against DOR.

### mmm. **Redacted Information**

The term "**Redacted Information**" means names, Social Security numbers other than the last four digits, health insurance claim numbers, taxpayer identification numbers, employer identification numbers, mailing addresses, telephone numbers, and dates of birth of the Tort Claimants, and the names of the guardians, conservators, and/or other personal representatives, as applicable.

### nnn.    **Reorganized Debtor**

The term "**Reorganized Debtor**" means DOR, on and after the Plan Effective Date.

### ooo.    **Resolute**

The term "**Resolute**" means Resolute Management Services Ltd. (formerly known as Equitas Management Services Limited).

### ppp.    **Settlement Amount**

The term "**Settlement Amount**" means the net sum of Sixteen Million, Six Hundred Fifty Thousand United States Dollars ($16,650,000). Each London Market Insurer shall pay its several, respective, allocated share of the Settlement Amount pursuant to the terms of Section 2. Each London Market Insurer's respective, allocated several share of the Settlement Amount is set forth on Attachment D. The Settlement Amount is the consideration for the repurchase of the Subject Insurance Policies and for the Channeling and the Settling Insurer Supplemental Injunctions.

### qqq.    **Settlement Approval Findings and Conclusions**

The term "**Settlement Approval Findings and Conclusions**" means findings of fact and conclusions of law pursuant to 11 U.S.C. §§ 363(b), (f), and (m) and Bankruptcy Rule 9019, entered concurrently with, but separately from, the Approval Order, as necessary for the Court to approve this Agreement, including the following:

(i)     DOR demonstrated sound business reasons for the settlement of its Claims against London Market Insurers in the Insurance Coverage Action and the implementation of such settlement through the sale of the Subject Insurance Policies to the London Market Insurers;

(ii)     The Parties mediated their disputes over the Tort Claims and the Coverage Claims pursuant to the Mediation Order, beginning in March 2020;

(iii)     In the Mediation, the Parties negotiated extensively, at arms-length, and in good faith. London Market Insurers are purchasers in good faith of the Subject Insurance

Policies, within the meaning of Bankruptcy Code § 363(m), and are entitled to all of the protections of that statute;

(iv)     The London Market Insurers are *bona fide* good faith purchasers of the Subject Insurance Policies, for value;

(v)     The terms of the transactions contemplated by this Agreement, as well as the genesis and background of this Agreement, have been adequately disclosed to the Court;

(vi)     The terms and conditions of this Agreement (including the consideration to be realized by DOR's bankruptcy estate) are fair and reasonable;

(vii)     The transactions contemplated by this Agreement will benefit DOR's bankruptcy estate, its creditors and other stakeholders;

(viii)     The only potential holders of Interests in or against the Subject Insurance Policies are the DOR Entities and Persons who hold Claims against the DOR Entities, whose Claims might be covered by the Subject Insurance Policies;

(ix)     The DOR Entities are Parties, and hence are deemed to have consented to the sale within the meaning of Bankruptcy Code § 363(f)(2);

(x)     The Barred Claims are subject to *bona fide* dispute, hence the Subject Insurance Policies may be sold free and clear of such Claims pursuant to § 363(f)(4);

(xi)     All holders of Claims against the Subject Insurance Policies could be compelled, in a legal or equitable Action, to accept a money satisfaction of such Claims, therefore the Subject Insurance Policies may be sold free and clear of such Claims pursuant to § 363(f)(5);

(xii)     The compromises and settlements embodied in the Agreement have been negotiated in good faith, and are reasonable, fair, and equitable;

(xiii)     In light of:

a.     the balance between the possible litigation success and the settlement's future benefits;

b.     the likelihood of complex and protracted litigation and the consequent inconvenience, expense, and delay;

c.     the interests of creditors, including the relative benefits to each class of creditors;

d.     whether other parties in interest support the settlement;

14009673.7

e.    the competency and experience of counsel supporting the settlement;

f.    the experience and knowledge of the bankruptcy judge reviewing the settlement;

g.    the nature and breadth of releases to be obtained by officers and directors; and

h.    the extent to which the settlement is the product of arm's length bargaining,

this Agreement is fair and equitable and within the range of reasonable settlement terms;

(xiv)    The Settlement Amount is fair, adequate, and reasonable consideration for (a) the sale by the DOR Entities and the buy-back by the London Market Insurers of the Subject Insurance Policies; and (b) the Entities' Release;

(xv)    DOR provided due and adequate notice of the (a) sale of the Subject Insurance Policies; (b) terms and conditions of this Agreement; and (c) the hearing before the Court to approve this Agreement and the sale of the Subject Insurance Policies, in accordance with Bankruptcy Rules 2002 and 6004 to all known and unknown Claimants, including by providing notice by publication to any Future Tort Claimants;

(xvi)    It would be impractical to divide the Subject Insurance Policies amongst the DOR Entities and the holders of Tort Claims, therefore, to realize the value of the Subject Insurance Policies for DOR's bankruptcy estate and the Tort Claimants requires the sale of the Subject Insurance Policies;

(xvii)    The sale of the Subject Insurance Policies outside the ordinary course of business satisfies the requirements of Bankruptcy Code § 363(b);

(xviii)    The sale of the Subject Insurance Policies free and clear of the Interests of all Persons satisfies the requirements of Bankruptcy Code § 363(f);

(xix)    To the extent any Claimant may have any legal or equitable right to assert a Claim either directly against the Subject Insurance Policies, which policies are being acquired by London Market Insurers pursuant to this Agreement, or indirectly by asserting such Claim against any DOR Entity, such Claims are deemed to be (a) "interests" as that term is used in Bankruptcy Code § 363(f); and (b) "Interests" herein; and

(xx)    The Agreement may be approved pursuant to Bankruptcy Rule 9019(a).

14009673.7

### rrr. **Settlement Payment Date**

The term "**Settlement Payment Date**" means the day sixty (60) days after the Effective Date, *provided, however*, that if such date is not a Business Day, the Settlement Payment Date shall be the next Business Day.

### sss. **Settling Insurer Supplemental Injunction**

The term "**Settling Insurer Supplemental Injunction**" means an order of the Court enjoining all Enjoined Claims by all Persons who now, or in the future may, hold such Claims against the Settling Insurers, pursuant to Bankruptcy Code § 105 or other provision of the Bankruptcy Code or applicable law stating, *verbatim*, unless London Market Insurers and DOR agree to modified language:

**(a) Supplemental Injunction Preventing Prosecution of Claims Against Settling Insurers. Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and in consideration of the undertakings of the Settling Insurers pursuant to this Agreement, including London Market Insurers' purchase of insurance policies or Interests in insurance policies free and clear of all interests pursuant to Section 363(f) of the Bankruptcy Code:**

**1. Any and all Persons who have held, now hold or who may in the future hold any Interests (including all debt holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, Tort Claimants, perpetrators, and all others holding Interests of any kind or nature whatsoever, including those Claims released or to be released pursuant to the Insurance Settlement Agreements) against any of the Settling Insurers, or any other Person covered or allegedly covered under the Subject Insurance Policies, including (i) Claims relating to the Subject Insurance Policies, including Survivor Claims, Direct Action Claims, Indirect Claims, and Released Claims; (ii) the payment of any of the Claims identified in (i), including Contribution Claims and Medicare Claims; (iii) Extra-Contractual Claims; and (iv) Future Tort Claims, are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce or attempt to assert or enforce any such Interest against the Settling Insurers or the Subject Insurance Policies:**

**2. Commencing or continuing in any manner any action or other proceeding against the Settling Insurers or the property of the Settling Insurers;**

**3. Enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, award, decree or order against the Settling Insurers or the property of the Settling Insurers;**

**4. Creating, perfecting, or enforcing any lien of any kind against the Settling Insurers or the property of the Settling Insurers;**

> 5. Asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due the Settling Insurers or the property of the Settling Insurers; and
>
> 6. Taking any action, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan.

**For the avoidance of doubt, this Settling Insurer Supplemental Injunction bars the above-referenced actions against the Settling Insurers and the Subject Insurance Policies, but against no other Person or thing. The foregoing injunctive provisions are an integral part of this Plan and are essential to its implementation.**

### ttt.     Settling Insurers

The term "**Settling Insurers**" means, collectively, the LMI Entities, and all other insurers of the DOR Entities, which settle, after the Petition Date, Claims for insurance coverage brought against them by any DOR Entity, and which obtain the protection of the Settling Insurer Supplemental Injunction.

### uuu.     Subject Insurance Policies

The term "**Subject Insurance Policies**" means (i) all insurance policies listed in Attachment A hereto; and (ii) all known and unknown insurance policies to the extent subscribed by one or more of the London Market Insurers, on or before July 1, 1993, in their capacity as London Market Insurers and providing insurance to any DOR Entity, *provided*, *however*, if a Subject Insurance Policy that is not listed in Attachment A was not subscribed on behalf of a DOR Entity (or such Person's Affiliates) but provides coverage to a DOR Entity, then it is a Subject Insurance Policy only to the extent it insures the DOR Entity.

### vvv.     Termination Event

The term "**Termination Event**" means that (i) the Court has entered an order that (A) is contrary to or inconsistent with the Approval Order, or that denies approval of this Agreement; (B) is contrary to or inconsistent with the Confirmation Order, or that denies confirmation of the Plan; or (C) confirms a plan of reorganization other than the Plan (an "**Inconsistent Order**"), and either (X) the Inconsistent Order has become a Final Order or (Y) there was an appeal of the Inconsistent Order and eighteen months have elapsed from the date of the appeal and the Inconsistent Order has not been reversed or overturned by the appellate court; or (ii) any appellate court whose decisions are binding upon the Court issued a decision or order, before the Confirmation Order became a Final Order, that would prevent the entry or effectiveness of the Channeling Injunction or the Settling Insurer Supplemental Injunction. If the Parties disagree as to whether any such decision or order would prevent the entry or effectiveness of the said injunctions, the Parties shall ask the Court to decide the issue.

### www.  Trust

The term "**Trust**" means the trust to be established under the Plan, which will assume liability for, and be established, pursuant to the Plan and, if applicable, Bankruptcy Code § 105, to pay, in whole or in part, Channeled Claims.

### xxx.  Trust Agreement

The term "**Trust Agreement**" means, collectively, any agreement establishing the Trust and the requirements for its administration, and any agreement setting forth procedures for the Trust to pay Channeled Claims, filed as exhibits to the Plan, as may be amended, together with such additional documents as may be executed in connection with the Trust Agreement.

### yyy.  Trustee

The term "**Trustee**" means the Person appointed to administer the Trust, in accordance with the terms of the Plan.

### zzz.  Underwriter Third-Party Beneficiaries

The term "**Underwriter Third-Party Beneficiaries**" means:

(i)  Resolute and the Equitas Entities;

(ii)  Equitas Insurance Limited to the extent it is not a successor to the Persons identified in Section 1.zzz.(i) with respect to the subject matter of this Agreement;

(iii)  Any Person from time to time retained by or on behalf of Lloyd's Underwriters to act as their claims handling agent and/or service provider, solely in such capacity;

(iv)  The past, present and future reinsurers and retrocessionaires of the Equitas Entities or any of them, including National Indemnity Company and any other Person from time to time controlled (whether directly or indirectly), by Berkshire Hathaway, Inc., which provides retrocessional reinsurance to any one or more of the Equitas Entities, solely in such capacity; and

(v)  All past, present and future Agents of the Persons set forth in Sections 1.zzz.(i) to (iv), if any, solely in such capacity; and,

(vi)  The respective heirs, executors, successors and assigns (including any administrator, receiver, trustee, personal representative, liquidator (provisional or otherwise), or equivalent appointee/s under relevant insolvency law), of any of the Persons identified in Sections 1.zzz.(i) through (v) above, solely in their capacity as such.

14009673.7

## 2. **Payment of the Settlement Amount**

a. On the Settlement Payment Date, each of the London Market Insurers shall deposit their respective, several, allocated shares of the Settlement Amount into the Escrow Account.

b. No later than 14 days after all Conditions Precedent to Escrow Release set forth in Section 1.r.(i) through (viii) have been satisfied, DOR and London Market Insurers shall execute and deliver the Escrow Release Instruction to the Escrow Agent.

c. Upon the Escrow Agent's receipt of the Escrow Release Instruction, to effectuate the buy-back of the Subject Insurance Policies from the DOR Entities free and clear of the Interests of all Persons, pursuant to Section 363(b), (f) and (m), and Federal Rule of Bankruptcy Procedure 9019, in full and final settlement of all obligations under and relating to the Subject Insurance Policies, and in consideration of the sale of the foregoing to the Settling Insurers free and clear of all Interests of any Person, the entry of the Settling Insurer Supplemental Injunction and the other releases provided herein:

(i) the Escrow Agent shall pay the Escrow Payment to the Trust; and

(ii) DOR, on behalf of the DOR Entities, and the London Market Insurers shall jointly execute the LMI Bill of Sale.

d. If DOR or the Trust later agrees that any individual London Market Insurer may make any payment on terms that differ from the foregoing, then the DOR shall offer the same payment terms to all other London Market Insurers. It is the purpose of this provision to ensure that all London Market Insurers shall have the same payment terms. Notwithstanding the foregoing, in the event of a payment default by any of the London Market Insurers, DOR or the Trust may pursue, or decline to pursue, enforcement of such payment obligation against the defaulting Party in their sole discretion, and any failure to pursue or collect such payment shall not relieve any other Party of their respective payment obligations hereunder.

e. Upon the occurrence of the Escrow Release Date, the sale of the Subject Insurance Policies shall automatically be effective and binding and the transfer of the Subject Insurance Policies shall be deemed for all purposes to have occurred on the Escrow Release Date, with the intent that no Person other than London Market Insurers shall retain anything whatsoever with respect to the Subject Insurance Policies.

f. If, before the occurrence of the Escrow Release Date, a DOR Entity other than DOR becomes a debtor in a bankruptcy case or insolvency Action, under the Bankruptcy Code or otherwise, and any London Market Insurer has not satisfied its respective several payment obligation arising hereunder, then such London Market Insurer shall be excused from performance under this Agreement until such time as either (i) such DOR Entity obtains, subject to the limitations imposed by the Bankruptcy Code, and subject to the equitable powers of the court in which such Action is pending, an order from such court approving this Agreement under Bankruptcy Code § 363(b), (f), and (m) and Bankruptcy Rule 9019, authorizing the assumption by such DOR Entity (or any successor

thereto) of this Agreement under Bankruptcy Code § 365 ("**Assumption**"), or in the event the insolvency case is proceeding under other law, shall obtain a similar order from the court overseeing the insolvency case approving this Agreement and confirming the binding effect thereof; (ii) DOR obtains an order in the Action compelling the Assumption; or (iii) DOR obtains an order from the Court determining the equitable portion of the Settlement Amount allocable to any interest the DOR Entity subject to such bankruptcy case or insolvency Action may have in the Subject Insurance Policies. Each DOR Entity agrees that in the event it files a bankruptcy or other insolvency Action, it will not present any Claim for payment under this Agreement or the Subject Insurance Policies to any London Market Insurer, until the Assumption has been approved by an order of the applicable court and such order has become a Final Order or until its equitable share in the Settlement Amount has been established by order of the Court pursuant to clause (iii) above and such order has become a Final Order. London Market Insurers agree to cooperate fully and provide commercially reasonable assistance to DOR and any DOR Entity in obtaining any of the orders contemplated in this Section 2(f).

3. **Several Liability**

The obligations of each London Market Insurer are several and not joint. The DOR Entities agree that no London Market Insurer entitled to the benefits of this Agreement shall be liable for any settlement amount allocable to any other Person. Accordingly, each identified London Market Insurer listed in Attachment B agrees to pay only its individual, respective, allocated share of the Settlement Amount, which amount is set forth in Attachment D, as applicable. No DOR Entity shall seek to recover from any individual London Market Insurer an amount in excess of its stated, respective, allocated share of the Settlement Amount, as set forth in Attachment D. Upon the Escrow Release Date, each DOR Entity shall be deemed to have released such Person pursuant to Section 4 of this Agreement.

4. **Mutual Releases**

    a.    **By the DOR Entities**

    (i)    Upon the Escrow Release Date, the Entities' Release shall become immediately effective without further acts by any Person. Those London Market Insurers entitled to the Entities' Release but not identified on Attachment B to this Agreement, namely, those London Market Insurers that subscribed a Subject Insurance Policy either not presently known, or known but to which the identity of the subscribers is not presently known, shall be entitled to all of the terms of the Entities' Release and to the Indemnity set forth in Section 5 upon the Escrow Release Date.

    (ii)    It is the intention of the DOR Entities to reserve no rights or benefits whatsoever under or in connection with the Subject Insurance Policies other than the right to receive the Settlement Amount under this Agreement and to assure the London Market Insurers their peace and freedom from such Interests and from all assertions of rights in connection with such Interests, *provided, however,* the Entities' Release does not release, and nothing in this Agreement shall affect the right of the DOR Entities, or the Trust, as applicable, to assert and pursue, Claims against and to collect from insurers other than those

released under the Entities Release, and no Claims are released with respect to such Persons.

(iii)    Upon the Escrow Release Date, any and all rights, duties, responsibilities, and obligations of the London Market Insurers created by or in connection with the Subject Insurance Policies, are terminated.  As of the Escrow Release Date, the DOR Entities shall have no insurance coverage under the Subject Insurance Policies.  The Entities' Release shall operate as though the London Market Insurers had never subscribed the Subject Insurance Policies.

(iv)    Each DOR Entity signing this Agreement, is, among other things, (a) releasing all Released Claims, including Claims that it does not know or suspect to exist in its favor, which, if known by such DOR Entity, might have materially affected its settlement with London Market Insurers, and (b) expressly waiving all rights it might have under any federal, state, local, or other law or statute that would in any way limit, restrict, or prohibit such general release.

(v)    Except with respect to any material breach of any representation, warranty or covenant by the London Market Insurers set forth in this Agreement, each DOR Entity expressly assumes the risk that acts, omissions, matters, causes, or things may have occurred, which it does not know or does not suspect to exist.  To the fullest extent permitted by applicable law, each DOR Entity hereby waives the terms and provisions of any statute, rule or doctrine of common law which either: (a) narrowly construes releases purporting by their terms to release claims in whole or in part based upon, arising from, or related to such acts, omissions, matters, causes or things; or (b) which restricts or prohibits the releasing of such Claims.

(vi)    Nothing in the foregoing shall release the London Market Insurers from their obligations under this Agreement including the obligation to pay the Settlement Amount.

**b.    <u>By the London Market Insurers</u>**

(i)    Upon the Escrow Release Date, each London Market Insurer and any subsequently appointed trustee or representative acting for such London Market Insurer shall be deemed to remise, release, covenant not to sue, and forever discharge each DOR Entity from and against all Claims relating to the Subject Insurance Policies, which each such London Market Insurer ever had, now have or hereinafter may have, from the beginning of time to the Escrow Release Date.

(ii)    Each Person released under the Entities' Release shall reserve no rights or benefits whatsoever under or in connection with the Subject Insurance Policies.

(iii)    Except with respect to any material breach of any representation, warranty or covenant by any DOR Entity set forth in this Agreement, each London Market Insurer expressly assumes the risk that acts, omissions, matters, causes, or things may have occurred, which it does not know or does not suspect to exist.  To the fullest extent permitted by applicable law, each London Market Insurer hereby waives the terms and

provisions of any statute, rule or doctrine of common law which either: (a) narrowly construes releases purporting by their terms to release Claims in whole or in part based upon, arising from, or related to such acts, omissions, matters, causes or things; or (b) which restricts or prohibits the releasing of such Claims.

## 5.  **Indemnification**

a.  From and after the Escrow Release Date, the Trust shall indemnify and hold harmless the London Market Insurers in respect of any and all Channeled and Enjoined Claims. This indemnification includes Claims made by Persons over whom the Trust does not have control, including the DOR Entities, former subsidiaries, predecessors in interest, sellers or purchasers of assets, or any other Person who asserts Claims against or under, or Interests in or to, the Subject Insurance Policies.

b.  The London Market Insurers shall have the right to defend, with counsel of their choice, all Claims identified under Section 5.a. The London Market Insurers may begin the defense of any Claim upon receipt of such a Claim. The London Market Insurers agree to notify the Trust as soon as practicable of Claims identified under Section 5.a. and of its choice of counsel.

c.  The Trust shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by the London Market Insurers in defending such Claims. The London Market Insurers shall defend any such Claim in good faith. In defense of any such Claim, the London Market Insurers may settle or otherwise resolve a Claim with the prior consent of the Trust, which consent shall not be unreasonably withheld.

d.  This indemnification and hold harmless undertaking (Sections 5.a., b., and c.) also extend to the benefit of the Underwriter Third-Party Beneficiaries, in their capacity as such, all of which are third-party beneficiaries of the terms of this indemnification and hold harmless undertaking.

## 6.  **Bankruptcy Obligations**

a.  DOR shall file a motion under Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code, seeking entry of the Approval Order and the Settlement Approval Findings and Conclusions. DOR shall provide to the London Market Insurers an initial draft of the proposed form of Approval Order, Settlement Approval Findings and Conclusions, and Bar Order at least seven (7) days before DOR submits the foregoing for approval of this Agreement to the Court, so that the London Market Insurers may provide comments and suggestions. In the event that DOR makes material revisions to any of the foregoing documents, then, as soon as possible, DOR shall provide a copy of such material revisions to the London Market Insurers. The London Market Insurers reserve the right to object to, *inter alia*, (i) any proposed order that does not satisfy all of the requirements of the definition of Approval Order set forth in Section 1.e., or (ii) any proposed findings and conclusions that do not satisfy all of the requirements of the definition of Settlement Approval Findings and Conclusions set forth in Section 1.qqq.

14009673.7

b.     Unless the Court denies entry of the Approval Order or this Agreement is otherwise terminated pursuant to its terms, DOR shall file a Plan and seek entry of a Confirmation Order and the Confirmation Findings and Conclusions.  DOR shall provide to the London Market Insurers an initial draft of the proposed form of Confirmation Order, and Confirmation Findings and Conclusions, at least fourteen (14) days before DOR submits the foregoing to the Court, so that the London Market Insurers may provide comments and suggestions.  In the event that DOR makes material revisions to any of the foregoing documents, then, as soon as possible, DOR shall provide a copy of such material revisions to the London Market Insurers.  The London Market Insurers reserve the right to object to, *inter alia*, (i) any proposed order that does not satisfy all of the requirements of the definition of Confirmation Order set forth in Section 1.t, or the definition of Bar Order set forth in Section 1.k or any proposed findings of fact and conclusions of law that do not satisfy all the requirements of the definition of Confirmation Findings and Conclusions in Section 1.s.; and (ii) any proposed plan of reorganization that does not satisfy all of the requirements of the definition of Plan set forth in Section 1.kkk. ("**Non-Compliant Plan**"). If DOR proposes a Non-Compliant Plan, then The London Market Insurers may contest such plan, and DOR shall not request a hearing date on confirmation of a Non-Compliant Plan less than thirty (30) days after the date such plan is filed in the Court.

c.     DOR shall serve Bankruptcy Notice of the initial hearing to approve this Agreement and on confirmation of the Plan and the time for filing objections thereto.  The proposed form of notice shall be submitted to the London Market Insurers for their review and comment no later than seven (7) days prior to the actual service of notice.  If the initial hearing to approve this Agreement or to confirm the Plan is adjourned, DOR shall not be required to provide Bankruptcy Notice of such adjourned hearing and shall only be required to file a notice of such adjournment on the docket in the Bankruptcy Case and provide such other and further notice as the Court may direct.

d.     Upon the occurrence of the Plan Effective Date, DOR shall file a notice thereof on the docket in the Bankruptcy Case and shall serve a copy of such notice upon counsel for the London Market Insurers.

e.     In the event that any Person attempts to prosecute a Barred Claim or a Claim that, upon entry of the Approval Order, would be a Barred Claim:

(i)     against the London Market Insurers (or any of them) then promptly following notice from the London Market Insurers, DOR shall file a motion and supporting papers seeking an order from the Court, pursuant to Bankruptcy Code §§ 105(a) and/or 362(b), as applicable, staying such Claims until the Escrow Release Date, or, alternatively, this Agreement is terminated under Section 9.  However, if DOR is unable to obtain a stay of such Claim then the London Market Insurers shall, subject to the terms, conditions and any applicable limits and retentions of the Subject Insurance Policies, defend such Claims, and may either settle them (subject to DOR's prior written consent) or litigate them to judgment, and the applicable DOR Entities shall assist and cooperate fully with the London Market Insurers in such defense.

14009673.7

(ii)    against any DOR Entity, then promptly following notice from such DOR Entity, DOR shall file a motion and supporting papers seeking an order from the Court, pursuant to Bankruptcy Code §§ 105(a) and/or 362(b), as applicable, staying such Claims until the Escrow Release Date, or, alternatively, this Agreement is terminated under Section 9.  If the motion for the stay is not granted, the defendant DOR Entities shall defend such Claims and use their best efforts to prevent the entry of a default and the London Market Insurers shall assist and cooperate fully in such defense.  In such event, the London Market Insurers' obligations relating to such litigation shall be determined by, and subject to, the terms, conditions and any applicable limits and retentions of the Subject Insurance Policies.

(iii)    As to the London Market Insurers, all amounts expended by each London Market Insurer for Defense and Indemnity Costs (a) before the Settlement Payment Date shall be credited against such London Market Insurer's several, respective share of the Settlement Amount; and (b) after the Settlement Payment Date (i) if the Escrow Release Date occurs, shall be paid by the Escrow Agent from the LMI Escrow Balance to such London Market Insurer on the Escrow Release Date; or (ii) if the Agreement is terminated before the Escrow Release Date occurs, shall be credited to such London Market Insurer's several, respective obligations pursuant to the terms and conditions of the Subject Insurance Policies.

(iv)    As to the DOR Entities (a) if the Escrow Release Date occurs, then all amounts expended by each DOR Entity for Defense and Indemnity Costs shall be paid to such DOR Entity by the Escrow Agent; and (b) If the Escrow Release Date does not occur, then each DOR Entity shall retain their Coverage Claims, if any, arising from the payment of Defense and Indemnity Costs, pursuant to the terms and conditions of the Subject Insurance Policies.

7.    **Representations and Warranties**

a.    DOR represents and warrants that the notice required under the definition of Bankruptcy Notice includes all Claimants whose names and addresses are known to DOR or are readily ascertainable.

b.    Each DOR Entity represents and warrants that it has the authority to execute this Agreement as its binding and legal obligation, subject in the case of DOR, to receiving Court approval of this Agreement..

c.    Each London Market Insurer represents and warrants to DOR that (i) it has, and at all times prior to payment in full of its allocated portion of the Settlement Amount as reflected on Attachment D will have, sufficient assets to pay its allocated portion of the Settlement Amount in full and (ii) it is not now, nor has it ever been, the subject of any bankruptcy or insolvency proceeding in any jurisdiction.

d.    Each Party represents and warrants that the Persons signing this Agreement on its behalf are authorized to execute this Agreement.

e.    Each individual signing this Agreement on behalf of a Party represents and warrants that he or she has the right, power, legal capacity, and authority to enter into this Agreement on behalf of such Party and bind such Party to perform each of the obligations specified herein.

## 8.    Reduction Clause.

The Plan shall provide the following, *verbatim*, unless the London Market Insurers and DOR agree to modified language:

### a.    Litigation/Settlement Between an Alleged Insured or Tort Claimant and Non-Settling Insurers

(i)    The Channeling Injunction shall channel all Contribution Claims to the Trust.

(ii)    If, for any reason any court does not recognize the channeling of the Contribution Claims of Non-Settling Insurers to the Trust, or such Claims are not channeled for any reason, then the following shall apply:

(A)    The London Market Insurers shall retain their Contribution Claims, subject to the following provisions; provided, however, that:

(i)    The London Market Insurers shall not pursue any Contribution Claims against any Non-Settling Insurer (A) that asserts a Contribution Claim solely against the Trust; (B) whose Contribution Claim is satisfied and extinguished entirely by the application of this paragraph 8.a.(ii)(A), or (C) that does not assert a Contribution Claim against them;

(ii)    If a Non-Settling Insurer asserts its Contribution Claim only against the Trust, then the London Market Insurers and shall assign any Contribution Claims they may hold against such Non-Settling Insurer to the Trust, and the Trust shall be free to assert such Contribution Claims against such Non-Settling Insurer;

(iii)    If a Non-Settling Insurer releases its Contribution Claims, if any such exist, that it may have against a London Market Insurer, then such released London Market Insurer shall release its Contribution Claims against such releasing Non-Settling Insurer.

(iv)    If a Non-Settling Insurer asserts a Contribution Claim against any London Market Insurer, and

a.    the Trust fully indemnifies the London Market Insurers, then the London Market Insurers and shall assign their Contribution Claim to the Trust; or

b.    the Trust partially, but not fully, indemnifies the London Market Insurers for such Claim, then the London Market

36

Insurers shall retain their Contribution Claims and may assert them against the Non-Settling Insurer asserting the Contribution Claim against the London Market Insurers. Any recovery by the London Market Insurers exceeding the amount necessary to satisfy the Trust's full indemnity obligation plus litigation costs shall be turned over to the Trust.

(B) In any Action, including the Insurance Coverage Action, involving a DOR Entity, the Reorganized Debtor, or the Trust (collectively, "**Alleged Insured**") or a Tort Claimant, as applicable, and one or more Non-Settling Insurers, where a Non-Settling Insurer has asserted, asserts, or could assert any Contribution Claim against an LMI Entity, then any judgment or award obtained by such Alleged Insured or Tort Claimant against such Non-Settling Insurer shall be automatically reduced by the amount, if any, that such LMI Entity is liable to pay such Non-Settling Insurer as a result of its Contribution Claim, so that the Contribution Claim is thereby satisfied and extinguished entirely ("**Reduction Amount**"). In any Action involving an Alleged Insured or Tort Claimant against a Non-Settling Insurer, where such a LMI Entity is not a party, such Alleged Insured or Tort Claimant shall obtain a finding from that court or arbitrator(s), as applicable, of the Reduction Amount before entry of judgment against such Non-Settling Insurer. In the event that such a reduction is not made as described above, then any Contribution Claim by any Non-Settling Insurer against any LMI Entity shall be reduced by the Reduction Amount, as determined by the court or arbitrator(s) in which such Contribution Claim is filed. The London Market Insurers shall be required to cooperate in good faith with DOR and/or the Trust to take commercially reasonable steps to defend against any Contribution Claim. In the event that application of the Reduction Amount eliminates the Non-Settling Insurer's Contribution Claim, then such Non-Settling Insurer shall fully reimburse the LMI Entities their costs and expenses, including legal fees, incurred in responding to the Contribution Claim Action, including all costs, expenses and fees incurred in seeking relief from the Court.

(C) If an Alleged Insured or Tort Claimant and a Non-Settling Insurer enter into an agreement settling one or more Claims relating to Abuse, such agreement shall include a provision whereby such Non-Settling Insurer releases Contribution Claims against the London Market Insurers so long as the London Market Insurers release their Contribution Claims against such Non-Settling Insurer. If such settlement agreement fails to include such a release provision, and the Non-Settling Insurer has asserted, asserts, or could assert a Contribution Claim against a LMI Entity, then any settlement amount in such settlement agreement shall be deemed automatically reduced by the Reduction Amount. In such event, the settling parties shall obtain a finding from the applicable court or arbitrator(s) of the Reduction Amount. If (a) the settlement agreement was entered into without litigation or arbitration such that no judge or arbitrator can determine the Reduction Amount, or (b) such a reduction is not otherwise made as described above, then any Contribution Claim by any Non-Settling Insurer against any LMI Entity shall be

reduced by the Reduction Amount, as determined by the court or arbitrator(s) in which such Contribution Claim is filed. The London Market Insurers shall be required to cooperate in good faith with DOR and/or the Trust to take commercially reasonable steps to defend against any Contribution Claim by a Non-Settling Insurer. In the event that the reduction eliminates the Non-Settling Insurer's Contribution Claim, then such Non-Settling Insurer shall fully reimburse the LMI Entities their costs and expenses, including legal fees, incurred in responding to the Contribution Claim Action, including all costs, expenses and fees incurred in seeking relief from the Court.

b. **Application of the Reduction**

(i) To ensure that the reduction contemplated in this Section 8 is accomplished, the LMI Entities shall be entitled to: (i) notice, pursuant to Section 21, within a reasonable time of the initiation of any future Action against or future settlement negotiations with any Non-Settling Insurer, and periodic notices thereafter on at least an annual basis of the status of such Action or negotiations; (ii) the opportunity to participate in the Action or settlement negotiations, but only to the extent necessary to accomplish the reduction contemplated in this Section 8; (iii) the reasonable cooperation of the applicable Alleged Insured, at the sole cost and expense of the London Market Insurers, so that the LMI Entities can assert this Section as a defense in any Action against any of them for any Contribution Claim; and (iv) have the court or appropriate tribunal issue such orders as are necessary to effectuate the judgment, award, or settlement reduction in order to protect the LMI Entities from any Contribution Claim. The notice required above shall be given by (A) the Alleged Insured that is a party to such Action or settlement negotiations; or (B) if no Alleged Insured is such a party, the Non-Settling Insurer that is a party to such Action or settlement negotiations; or (C) if no Alleged Insured or Non-Settling Insurer is a party to such Action or settlement negotiations, the Tort Claimant bound by the Plan.

c. The Trust shall use commercially reasonable efforts to obtain, from all Settling Insurers, agreements similar to those contained in Section 8(a)(ii)(C).

d. The Trust shall use its best efforts to obtain, from all Settling Insurers, agreements similar to those contained in this Section 8.

9. **Termination of Agreement**

a. The Parties may terminate this Agreement in writing upon mutual assent.

b. Upon the occurrence of a Termination Event, each of DOR and the London Market Insurers may terminate this Agreement upon thirty (30) days' written notice to the other Parties, *provided, however* (i) such notice must be provided no later than forty-five (45) days following the applicable Termination Event, (ii) any notice terminating this Agreement issued by any of the London Market Insurers as a result of a Termination Event shall, unless DOR agrees otherwise in writing, be effective to terminate this Agreement as to each and every one of the London Market Insurers, and (iii) no Party shall have the right to terminate this Agreement on account of the occurrence (or alleged occurrence) of a

Termination Event once the Escrow Release Date has occurred and the sale, assignment, and transfer of the Subject Insurance Policies pursuant to Section 2.c. of this Agreement has been consummated.

  c.  DOR may terminate this Agreement at any time upon written notice to the London Market Insurers in the event the London market Insurers elect, pursuant to section 6.e.(iii), to set off against the Settlement Amount more than Five Hundred Thousand Dollars ($500,000) in Defense and Indemnity Costs.

  d.  In the event of termination pursuant to this Section 9, unless the Parties agree otherwise in writing, this Agreement shall be void *ab initio* and all Parties shall retain all of their Interests relating to the Subject Insurance Policies as if this Agreement never existed; provided, however, that any amounts expended by the London Market Insurers pursuant to Section 6.e. of this Agreement shall be credited against the obligations of the London Market Insurers under the Subject Insurance Policies, and within fourteen (14) days of termination, the Parties shall jointly direct the Escrow Agent to return the LMI Escrow Balance to the paying London Market Insurers.

## 10. Treatment of Perpetrators

  Nothing in this Agreement overrides the treatment in the Plan of individuals who perpetrated an act of Abuse that forms the basis for a Tort Claim.

## 11. Exclusion of religious orders, dioceses, and other archdioceses

  No religious orders, diocese or archdiocese, or any other Person, other than DOR and the entities listed on Attachment E, is a DOR Entity, except to the extent such Person is insured under the Subject Insurance Policies.

## 12. Reasonably Equivalent Value

  a.  This Agreement was bargained for and entered into in good faith and as the result of arms-length negotiations;

  b.  Based on their respective independent assessments, with the assistance and advice of counsel, of the probability of success, the complexity, the delay in obtaining relief, and the expense of maintaining the Insurance Coverage Action, the payments received by the DOR Entities pursuant to this Agreement constitute a fair and reasonable settlement of the Released Claims;

  c.  The payments and other benefits received under this Agreement by the DOR Entities constitute reasonably equivalent value for the Entities' Release, indemnity, and other benefits received by the LMI Entities under this Agreement; and

  d.  Subject to the occurrence of the Escrow Release Date, this Agreement constitutes a full and final resolution of all issues in the Insurance Coverage Action.

## 13. Confidentiality

a.      Except as necessary to obtain approval of this Agreement in the Court, the Parties agree that all matters relating to the negotiation of this Agreement shall be confidential and are not to be disclosed except by order of court, or written agreement of the Parties, except that, provided recipients agree to keep such information confidential, this Agreement may be disclosed to: (i) reinsurers of the London Market Insurers directly or through intermediaries; (ii) outside auditors or accountants of any Party; (iii) representatives of a non-party insurer subscribing or allegedly subscribing one or more of the Subject Insurance Policies, which insurer is, has been or may become insolvent in the future, including any liquidators, provisional liquidators, scheme administrators, trustees, or similarly empowered Persons acting for such insurer.  This Agreement may also be disclosed, as required, to the Inland Revenue, the Internal Revenue Service or other U.S. or U.K. governmental authority that properly requires disclosure, or as otherwise required by law.  The Parties acknowledge and agree that a copy of this Agreement will be publicly filed on the docket and provided to parties in interest in the Bankruptcy Case, without obligation of confidentiality or restrictions on further disclosure.

b.      In the event a private litigant, by way of document request, interrogatory, subpoena, or questioning at deposition or trial, attempts to compel disclosure of anything protected by this section from a Party, such Party shall decline to provide the requested information on the ground that this Agreement restricts such disclosure.  In the event such private litigant seeks an order from any court or governmental body to compel such disclosure, or in the event that a court, government official, or governmental body (other than the Inland Revenue or Internal Revenue Service) requests or requires disclosure of anything protected by this paragraph, the Party from whom disclosure is sought shall promptly give written notice to the other Parties, and shall promptly provide copies of all notice papers, orders, requests, or other documents in order to allow each Party to take such protective steps as may be appropriate.  Notice shall be made under this paragraph to the persons identified in Section 21.

c.      Material protected by this section shall be deemed to fall within the protection afforded compromises and offers to compromise by Rule 408 of the Federal Rules of Evidence and similar provisions of state law or state rules of court.

## 14. Third-Party Beneficiaries

The Underwriter Third-Party Beneficiaries, the Trust, and the Trustee are intended third-party beneficiaries of this Agreement.  Except as set forth in the preceding sentence, there are no other third-party beneficiaries of this Agreement.

## 15. Co-operation

For a period of three (3) years following the Effective Date, the DOR Entities will undertake commercially reasonable acts, at the sole cost and expense of the London Market Insurers, to co-operate with the London Market Insurers in connection with their respective reinsurers, including responding to reasonable requests for information and meeting with

representatives of reinsurers, *provided, however*, that the foregoing shall not require the DOR Entities to disclose any information which is subject to the attorney-client or other legally recognized privilege. Furthermore, the Parties shall use their reasonable best efforts and cooperate as necessary or appropriate to effect the transactions contemplated by this Agreement.

16.     **Non-Prejudice and Construction of Agreement**

a.     This Agreement is intended to be and is a compromise between the Parties and shall not be construed as an admission of coverage under the Subject Insurance Policies nor shall this Agreement or any provision hereof be construed as a waiver, modification, or retraction of the positions of the Parties with respect to the interpretation and application of the Subject Insurance Policies.

b.     This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions. Accordingly, this Agreement does not reflect upon the Parties' views as to rights and obligations with respect to matters or Persons outside the scope of this Agreement. This Agreement is without prejudice to positions taken by London Market Insurers with regard to other insureds, and without prejudice with regard to positions taken by any DOR Entity with regard to other insurers. Except for the express references to the Third-Party Beneficiaries, the Parties specifically disavow any intention to create rights in third parties under or in relation to this Agreement.

c.     This Agreement is the jointly drafted product of arms'-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed. As such, no Party will assert that any ambiguity in this Agreement shall be construed against another Party.

d.     If any provision of the Plan, the Trust Agreement, or trust distribution procedures proposed thereunder conflicts with or is inconsistent with this Agreement in any way whatsoever, then the provisions of this Agreement shall control and take precedence. Neither the Plan nor the Trust Agreement shall be construed or interpreted to modify or affect any rights or obligations of the London Market Insurers under this Agreement.

17.     **No Modification**

No change or modification of this Agreement shall be valid unless it is made in writing and signed by the Parties. Any attempted change or modification in violation of this Section shall be void *ab initio*.

18.     **Execution**

There will be three signed originals of this Agreement.

19.     **Governing Law**

This Agreement shall be governed by and shall be construed in accordance with the laws of New York.

14009673.7

**20.** <u>**Notices**</u>

Unless another person is designated, in writing, for receipt of notices hereunder, notices to the respective Parties shall be sent to the Persons listed on Attachment F.

**21.** <u>**Integration**</u>

This Agreement, including the attachments, constitutes the entire Agreement amongst the London Market Insurers and the DOR Entities, with respect to the subject matter hereof, and supersedes all discussions, agreements and understandings, both written and oral, amongst the Parties with respect thereto.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement by their duly authorized representatives.

The London Market Insurers identified in Attachment B have respectively designated Clyde & Co US LLP, as their attorneys-in-fact for the limited purpose of executing this Agreement on their behalf with express authority to do so.

[Signature Pages Follow]

14009673.7

Signed: _____

The Diocese of Rochester

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

London Market Insurers

Name Printed: _____

Title: _____

Date: _____ 2022


Signed: _____

London Market Insurers

Name Printed: _____

Title: _____

Date: _____ 2022

*Signature page to Settlement and Release Agreement*

Signed: _____

The Cathedral Community of Rochester NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Roman Catholic Parish of St. Frances Xavier Cabrini

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Peace of Christ Roman Catholic Parish of Rochester, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Church of the Holy Apostles, Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Monica Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Anne's Church of Rochester

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Church of the Blessed Sacrament, Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Boniface Church, Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Stanislaus Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Immaculate Conception/St. Bridget, Rochester

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Kateri Tekakwitha Roman Catholic Parish

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of St. Charles Borromeo

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Emmanuel Church of the Deaf of the Diocese of
Rochester

Name Printed: _____

Title: _____

Date: _____ 2022

*Signature page to Settlement and Release Agreement*

Signed: _____

St. George Roman Catholic Lithuanian Church, Inc.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Parish of the Holy Family, Gates, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Holy Cross Church of Rochester, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. John the Evangelist Church Corp.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Lawrence Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Mark's Church of Rochester, New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Mary's Church Society, Inc.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Our Lady of Lourdes Church of Brighton

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Our Mother of Sorrows Church

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

**St. Mary's French Church Society (a/k/a Our Lady of Victory)**

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of Our Lady Queen of Peace of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Pius Tenth Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Theodore's Church of Gates, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

*Signature page to Settlement and Release Agreement*

Signed: _____

St. Thomas More Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Catholic Parish of Saints Isidore and Maria
Torriba

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Alphonsus Catholic German Church

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Aloysius Church, Auburn, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Catholic Church of the Holy Family, Auburn,
N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Mary's Catholic Church, Auburn, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

*Signature page to Settlement and Release Agreement*

Signed: _____

Saints Mary and Martha Roman Catholic Parish
Cayuga County, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Sacred Heart Church of Auburn, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Ann's Church, Owasco, Cayuga County, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Good Shepherd Catholic Community, Aurora

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Agnes Church Society, Avon, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. John Vianney Roman Catholic Parish, Steuben
County, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of the Nativity of the Blessed Virgin Mary,
Brockport, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Martin De Porres

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Benedict Roman Catholic Parish Ontario County, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Peter's Roman Catholic Parish, Ontario County

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Joseph the Worker Roman Catholic Parish, Wayne
County

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Margaret's Church of Conesus Lake, Livonia, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

All Saints, Corning

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Church of St. John Fisher of the Town of Huron,
New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of St. Jerome, East Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Saint Cecilia's Roman Catholic Church Society

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. John the Baptist Catholic Church, Elmira, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Parish of the Most Holy Name of Jesus

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of the Assumption, Fairport, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of the Resurrection, Perinton, New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of St. John of Rochester of Perinton, New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Church of the Holy Cross of Dryden, New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Luke the Evangelist Roman Catholic Church
Society of Livingston County

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Our Lady of Peace Roman Catholic Church of
Geneva, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Hilary's Catholic Church, Genoa, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

*Signature page to Settlement and Release Agreement*

Signed: _____

St. Anthony's Catholic Church of Groton, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of the Holy Name, Groveland, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Church of St. Elizabeth Ann Seton, The Diocese
of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Marianne Cope Roman Catholic Parish, Monroe
County NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed:  _____

Church of St. Leo, Hilton, N.Y.

Name Printed:  _____

Title:  _____

Date:  _____ 2022

Signed: _____

St. Mary's Church of Honeoye Flats, N.Y (St. Mary -
Our Lady of the Hills)

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Paul of the Cross Church, Honeoye Falls, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Our Lady of the Valley

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of St. Mary Our Mother, Horseheads, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Catherine of Siena Church

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Immaculate Conception Church, Ithaca, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

All Saints Church Corporation, Ludlowville, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Rose Roman Catholic Church

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Matthew Catholic Church Society

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Michael's Church Society, Livonia Center, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Parish of St. Katharine Drexel, Palmyra

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Catherine's Roman Catholic Church, Mendon, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Michael's Church, Montezuma, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Michael's Church, Newark, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Christopher of Chili, New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Benedict's Mission Church of Odessa, New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Maximilian Kolbe Catholic Church Society of
Wayne County

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Parish of Mary, Mother of Mercy, Tompkins
County, New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Blessed Trinity, Owego

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Patrick's Roman Catholic Church Society of
Owego, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Joseph's Catholic Church of Penfield, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Our Lady of the Lakes Catholic Community

Name Printed: _____

Title: _____

Date: _____ 2022

*Signature page to Settlement and Release Agreement*

Signed: _____

St. Raphael's Church, Piffard, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of the Transfiguration, Diocese of Rochester, New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Louis Church of Pittsford, N.Y

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. John the Evangelist Church Society, Spencerport, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Patrick's Church of Victor, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Frances & St. Clare Roman Catholic Parish, Seneca County, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Mary's of the Lake Roman Catholic Church
Society

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Holy Family Catholic Community

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Roman Catholic Church of the Most Holy Trinity
at Webster, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Paul's Roman Catholic Church of Webster, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

*Signature page to Settlement and Release Agreement*

Signed: _____

Church of the Holy Spirit of Penfield, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Our Lady of the Snow, Weedsport

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Joseph's Church of West Bloomfield

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Rita's Church of West Webster, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Catholic Community of the Blessed Trinity of Wolcott, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Catholic Charities of the Diocese of Rochester

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Rochester Catholic Press Association, Inc.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

DePaul Community Services, Inc., the successor to DePaul
Mental Health Services, Inc. (f/k/a DePaul Clinic)

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Corporate Board of Education, Diocese of Rochester

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Bishop Sheen Ecumenical Housing Foundation, Inc.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Charles Settlement House, Inc.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Bernard's School of Theology and Ministry

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Camp Stella Maris of Livonia, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Name Printed: _____

Title: _____

Date: _____ 2022

## SCHEDULE OF ATTACHMENTS TO

## SETTLEMENT AGREEMENT AND RELEASE

| | |
|---|---|
| Attachment A | List of known Subject Insurance Policies |
| Attachment B | List of London Market Insurers |
| Attachment C | List of Insolvent Insurers |
| Attachment D | List of Solvent London Market Insurers allocated shares of the Settlement Amount |
| Attachment E | List of DOR Entities |
| Attachment F | Notice Names and Addresses |

# ATTACHMENT A-1

## Known Subject Insurance Policies

Package Policies – June 1, 1977 to July 1, 1988

1) June 1, 1977 to May 1, 1980   SL 3209/SL 5227
2) May 1, 1980 to July 1, 1983   SL 3675/SLC 5698
3) July 1, 1983 to July 1, 1986   ISL 3090/ICO 4050
4) July 1, 1986 to July 1, 1987   ISL 3410/ICO 5248
5) July 1, 1987 to July 1, 1988   ISL 3861/ICO 5531

Excess Broad Form Liability Policies- June 1, 1978 to July 1, 1987

1) June 1, 1978 to June 1, 1979   SL 3380/SLC 5400
2) June 1, 1979 to May 1, 1980   SL 3556/SLC 5582
3) May 1, 1980 to July 1, 1981   SL 3693/SLC 5715
4) July 1, 1981 to July 1, 1983   SL 3830/SLC 5842
5) July 1, 1983 to July 1, 1986   ISL 3092/ICO 4053
6) July 1, 1986 to July 1, 1987   ISL 3643/ICO 5432
7) July 1, 1987 to July 1, 1988   ISL 3809/ICO 5511

Combined Risk Dropdown Policies

1) June 1, 1977 to June 1, 1980   SL 3210/SLC 5228
2) May 1, 1980 to July 1, 1983   SL 3676/SLC 5699
3) July 1, 1983 to July 1, 1986   ISL 3091/ICO 4051
4) July 1, 1986 to July 1, 1987   ISL 3567/Unknown

Excess All Risk Policy

1) June 1, 1977 to June 1, 1980   SL3211/SLC 5229
2) July 1, 1985 to July 1, 1986   ISL 3568/ICO 5331

Also all other Policies subscribed by London Market Insurers issued to DOR and DOR Entities issued prior to July 1, 1993 subscribed by the London Market Insurers including Excess Property Only, Drop-Down and Other.

**ATTACHMENT B**

**List of London Market Insurers**

1. Certain Underwriters at Lloyd's, London subscribing to Policy Nos. SL 3209 SL 3675, ISL 3090, ISL 3410, ISL 3861, SL 3380, SL 3556, SL 3693, SL 3830, ISL 3092, ISL 3643, ISL 3809, SL 3210, SL 3676, ISL 3091, ISL 3567 and all others issued prior to July 1, 1993.

2. Catalina Worthing Insurance Ltd f/k/a HFPI (as Part VII transferee of Excess Insurance Company Ltd)

3. RiverStone Insurance (UK) Limited (as successor in interest to Terra Nova Insurance Company Ltd.).

4. RiverStone Insurance (UK) Limited (as successor in interest to Sphere Drake Insurance Ltd.).

5. Sompo Japan Nipponkoa Insurance Company of Europe Limited (formerly known as The Yasuda Fire & Marine Insurance Company).

6. Dominion Insurance Company Ltd.

7. St. Katherine Insurance Company PLC

8. Assicurazioni Generali, T.S.

9. Taisho Marine & Fire Insurance Company (U.K.) Ltd.

10. Allianz International Insurance Company (U.K Ltd.)

**ATTACHMENT C**

**<u>Insolvent Insurers</u>**

1. Bellafonte Insurance Company

2. Pine Top Insurance Company, Ltd.

3. CX Reinsurance Company Ltd. (formerly known as CNA Reinsurance of London, Ltd.)

4. Stronghold Insurance Company Ltd.

5. Sovereign Marine & General Insurance Company Limited

6. Tokio Marine & Fire Insurance Company (U.K.) Ltd

7. Storebrand Insurance Company (U.K. Ltd.)

8. Heddington Insurance Company (U.K. Ltd.)

9. North Atlantic Insurance Co. Ltd.

10. Mentor Insurance Co. (UK) Ltd.

# ATTACHMENT D

## Solvent London Market Insurer Shares of the Settlement Amount

| London Market Insurer | Amount |
|---|---|
| Certain Underwriters at Lloyd's, London | $15,057,285.67 |
| Excess Insurance Company Ltd. | $747,912.02 |
| Terra Nova Insurance Company Ltd. | $488,318.96 |
| Sphere Drake Insurance Ltd) | $226,240.55 |
| The Yasuda Fire & Marine Insurance Company | $130,237.80 |
| Dominion Insurance Company Ltd. | $1.00 |
| St. Katherine Insurance Company PLC | $1.00 |
| Assicurazioni Generali, T.S. | $1.00 |
| Taisho Marine & Fire Insurance Co. (U.K.) Ltd. | $1.00 |
| Allianz International Insurance Co. (U.K Ltd.) | $1.00 |
| **Net to Solvent London Market Insurers** | **$16,650,000.00** |

**ATTACHMENT E**

**<u>LIST OF DOR ENTITIES</u>**

| CATHOLIC ENTITY: | ADDRESS: |
|---|---|
| **The Cathedral Community of Rochester NY**; *successor in interest to the insurance rights of*:<br>• Sacred Heart Cathedral, Rochester, N.Y.<br>• The Holy Rosary Church of the City of Rochester, Monroe County, N.Y.<br>• Church of the Most Precious Blood | 296 Flower City Park, Rochester, NY 14615 |
| **Roman Catholic Parish of St. Frances Xavier Cabrini**; *successor in interest to the insurance rights of*:<br>• Our Lady of the Americas (*successor in interest to the insurance rights of* St. Francis Xavier Church; Church of the Most Holy Redeemer of Irondequoit, N.Y.; Our Lady of Mount Carmel Church, Rochester, N.Y.; Corpus Christi Church of Rochester, N.Y.)<br>• Light of Christ Roman Catholic Parish (*successor in interest to the insurance rights of* St. Philip Neri Church of Rochester, N.Y.; St. Andrews Roman Catholic Church of Rochester, N.Y.; Church of the Annunciation, Rochester, N.Y.)<br>• Church of Our Lady of Perpetual Help of Rochester<br>• St. Michael's Church of Rochester, N.Y. | 124 Evergreen St., Rochester, NY 14605 |
| **Peace of Christ Roman Catholic Parish of Rochester**, NY; *successor in interest to the insurance rights of*:<br>• St. Ambrose Church of Rochester;<br>• St. James Church of Rochester, N.Y.;<br>• St. John the Evangelist Church of Rochester, N.Y. | 25 Empire Blvd., Rochester, NY 14096 |
| **The Church of the Holy Apostles, Rochester, N.Y.**; *successor in interest to the insurance rights of*:<br>• St. Francis of Assisi Church of Rochester, N.Y.<br>• Church of the Holy Family, Inc.<br>• The Church of St. Anthony of Padua | 7 Austin St., Rochester, NY 14606 |
| **St. Monica Church of Rochester, N.Y.**; *successor in interest to the insurance rights of*:<br>• The Church of Our Lady of Good Counsel<br>• St. Augustine Church Corporation | 34 Monica St., Rochester, NY 14619 |

2

| | |
|---|---|
| • SS. Peter and Paul's Roman Catholic Church, Rochester, N.Y. | |
| **St. Anne's Church of Rochester** | 1600 Mount Hope Ave., Rochester NY 14620 |
| **The Church of the Blessed Sacrament, Rochester, N.Y.** | 259 Rutgers St., Rochester, NY 14607 |
| **St. Boniface Church, Rochester, N.Y.** | 330 Gregory St., Rochester, NY 14620 |
| **St. Stanislaus Church of Rochester, N.Y.**; *successor in interest to the insurance rights of*:<br>• St. Theresa of the Child Jesus Church, Bishop of Rochester | 34 Saint Stanislaus St., Rochester, NY 14621 |
| **Immaculate Conception/St. Bridget, Rochester**; *successor in interest to the insurance rights of*:<br>• The Immaculate Conception Church Society<br>• St. Bridget's Church | 445 Frederick Douglass St., Rochester, NY 14608 |
| **Kateri Tekakwitha Roman Catholic Parish**; *successor in interest to the insurance rights of*:<br>• Church of Christ the King, Rochester, N.Y.<br>• St. Cecilia Church, Irondequoit, N.Y.<br>• Church of St. Margaret Mary<br>• Church of St. Salome<br>• St. Thomas Roman Catholic Church | 445 Kings Highway S., Rochester, 14617 |
| **Church of St. Charles Borromeo**; *successor in interest to the insurance rights of*:<br>• Church of the Holy Name of Jesus of Rochester, New York | 3003 Dewey Ave., Rochester, NY 14616 |
| **Emmanuel Church of the Deaf of the Diocese of Rochester** | 34 Monica St., Rochester, NY 14619 |
| **St. George Roman Catholic Lithuanian Church, Inc.** | 150 Varinna Dr., Rochester, NY 14618 |
| **The Parish of the Holy Family, Gates, NY**; *successor in interest to the insurance rights of*:<br>• Church of the Holy Ghost<br>• St. Helen's Church of Gates, N.Y.<br>• Church of St. Jude of the Town of Gates. | 4100 Lyell Rd., Rochester, NY 14606 |
| **Holy Cross Church of Rochester, NY** | 4492 Lake Ave., Rochester, NY 14612 |
| **St. John the Evangelist Church Corp.** | 2400 Ridge Rd. W., Rochester, NY 14625 |
| **St. Lawrence Church of Rochester, N.Y.** | 1000 N. Greece Rd., Rochester, NY 14626 |
| **St. Mark's Church of Rochester, New York** | 54 Kuhn Rd., Rochester, NY 14612 |
| **St. Mary's Church Society, Inc.** | 15 South St., Rochester, NY 14607 |

14009673.7

| | |
|---|---|
| **Our Lady of Lourdes Church of Brighton** | 150 Varinna Dr., Rochester, NY 14618 |
| **Our Mother of Sorrows Church**; *successor in interest to the insurance rights of:*<br>• Our Lady of Mercy Church of Rochester, N.Y. | 5000 Mt. Read Blvd., Rochester, NY 14612 |
| **St. Mary's French Church Society** (a/k/a Our Lady of Victory) | 210 Pleasant St., Rochester, NY 14604 |
| **Church of Our Lady Queen of Peace of Rochester, N.Y.** | 601 Edgewood Ave., Rochester, NY 14618 |
| **St. Pius Tenth Church of Rochester, N.Y.** | 3032 Chili Ave, Rochester, NY 14624 |
| **St. Theodore's Church of Gates, N.Y.** | 168 Spencerport Rd., Rochester, NY 14606 |
| **St. Thomas More Church of Rochester, N.Y.** | 2617 East Ave., Rochester, NY 14610 |
| **The Catholic Parish of Saints Isidore and Maria Torriba**; *successor in interest to the insurance rights of:*<br>• St. Catherine Roman Catholic Church Society, Addison, N.Y.<br>• St. Stanislaus Church of Bradford, N.Y.<br>• St. Joseph's Roman Catholic Church of Campbell, N.Y. | 51 Maple St., Addison, NY 14801 |
| **St. Alphonsus Catholic German Church** | 10 S. Lewis Street, Auburn, NY 13021 |
| **St. Aloysius Church, Auburn, NY** | 85 N. St., Auburn, NY 13021 |
| **The Catholic Church of the Holy Family, Auburn, N.Y.** | 85 N. St., Auburn, NY 13021 |
| **St. Mary's Catholic Church, Auburn, N.Y.** | 15 Clark St., Auburn, NY 13021 |
| **Saints Mary and Martha Roman Catholic Parish Cayuga County, NY**; *successor in interest to the insurance rights of:*<br>• St. Francis of Assisi Italian Roman Catholic Church<br>• St. Hyacinth's Polish Roman Catholic Society Church | 299 Clark St., Auburn, NY 13021 |
| **Sacred Heart Church of Auburn, N.Y.** | 90 Melrose Rd., Auburn, NY 13021 |
| **St. Ann's Church, Owasco, Cayuga County, N.Y.** | Main St., Owasco, NY 13130 |
| **Good Shepherd Catholic Community, Aurora**; *successor in interest to the insurance rights of:*<br>• St. Patrick's Church of Aurora, N.Y.<br>• St. Joseph's Catholic Church of Cayuga, N.Y.<br>• Our Lady of the Lake Church Corporation, King Ferry<br>• St. Patrick's Catholic Church of Moravia, Cayuga County, N.Y.<br>• St. Bernard's Catholic Church<br>• St. Michael's Church of Union Springs, N.Y. | 299 Main St., Aurora, NY 13026 |

4

| | |
|---|---|
| • St. Isaac Jogues' Chapel | |
| **St. Agnes Church Society, Avon, N.Y.** | 108 Prospect St., Avon, NY 14414 |
| **St. John Vianney Roman Catholic Parish, Steuben County, NY**; *successor in interest to the insurance rights of:*<br>• St. Mary's Catholic Church Society of Bath, N.Y.<br>• St. Gabriel's Catholic Church Society of Hammondsport, N.Y. | 32 E Morris St., Bath, NY 14810 |
| **Church of the Nativity of the Blessed Virgin Mary, Brockport, N.Y.**; *successor in interest to the insurance rights of:*<br>• Newman Oratory of Brockport, New York | 152 Main St., Brockport, NY 14420 |
| **St. Martin De Porres**; *successor in interest to the insurance rights of:*<br>• Catholic Church of St. Vincent DePaul of Churchville, N.Y.<br>• St. Columba's Church, Caledonia, N.Y.<br>• St. Mary of the Assumption Church, Scottsville, N.Y.<br>• St. Patrick's Church, Mumford, N.Y. | 198 North St., Caledonia, NY 14423 |
| **St. Benedict Roman Catholic Parish Ontario County, NY**; *successor in interest to the insurance rights of:*<br>• St. Mary's Church Corp., Canandaigua, N.Y.<br>• St. Bridget's Church of East Bloomfield, N.Y. | 95 N. Main St., Canandaigua, NY 14424 |
| **St. Peter's Roman Catholic Parish, Ontario County**; *successor in interest to the insurance rights of:*<br>• St. Felix's Church, Inc.<br>• St. Francis Church<br>• St. Dominic Roman Catholic Church Society | 12 Hibbard Ave., Clifton Springs, NY 14432 |
| **St. Joseph the Worker Roman Catholic Parish, Wayne County**; *successor in interest to the insurance rights of:*<br>• St. John the Evangelist Roman Catholic Church<br>• St. Michael's Church Society, Inc., Lyons, N.Y.<br>• St. Patrick's Roman Catholic Church, Savannah, N.Y. | 43 W. DeZeng St., Clyde, NY 14433 |
| **St. Margaret's Church of Conesus Lake, Livonia, N.Y.** | P.O. Box 77, Livonia, NY 14487 |
| **All Saints, Corning**; *successor in interest to the insurance rights of:*<br>• The Church of St. Mary's of Corning, N.Y. | 222 Dodge Ave., Corning, NY 14830 |

| | |
|---|---|
| <ul><li>St. Patrick's Catholic Church, Corning, N.Y.</li><li>St. Vincent De Paul's Roman Catholic Church Society Inc., Corning, N.Y.</li><li>Church of the Immaculate Heart of Mary of Painted Post</li></ul> | |
| **The Church of St. John Fisher of the Town of Huron, New York** | 11956 Washington St., Wolcott, NY 14590 |
| **Church of St. Jerome, East Rochester, N.Y.** | 207 S. Garfield St., East Rochester, NY 14445 |
| **Saint Cecilia's Roman Catholic Church Society** | 1010 Davis St., Elmira, NY 14901 |
| **St. John the Baptist Catholic Church, Elmira, N.Y.** | 1010 Davis St., Elmira, NY 14901 |
| **Parish of the Most Holy Name of Jesus**; *successor in interest to the insurance rights of:*<ul><li>St. Mary's Roman Catholic Church Society</li><li>Blessed Sacrament Roman Catholic Church of Elmira, NY ( *successor in interest to the insurance rights of* St. Anthony's Church of Elmira, N.Y.; St. Patrick's Roman Catholic Church of Elmira, N.Y.; Saint Peter and Paul's Church, Inc.)</li><li>Christ the Redeemer Roman Catholic Parish of Elmira, NY (*successor in interest to the insurance rights of* Our Lady of Lourdes Church of Elmira, New York; St. Casimir's Roman Catholic Church Society, Elmira, N.Y.; Saint Charles Borromeo Roman Catholic Church, Elmira Heights, N.Y.)</li></ul> | 1010 Davis St., Elmira, NY 14901 |
| **Church of the Assumption, Fairport, N.Y.** | 20 East Ave., Fairport, NY 14450 |
| **Church of the Resurrection, Perinton, New York** | 283 Hamilton Rd., Fairport, NY 14450 |
| **Church of St. John of Rochester of Perinton, New York** | 8 Wickford Way, Fairport, NY 14450 |
| **The Church of the Holy Cross of Dryden, New York** | 375 George Rd., Freeville, NY 13068 |
| **St. Luke the Evangelist Roman Catholic Church Society of Livingston County**; *successor in interest to the insurance rights of:*<ul><li>St. Mary's Roman Catholic Church, Geneseo, N.Y., Livingston County</li><li>Thomas Aquinas Roman Catholic Church of Moscow, Livingston County, N.Y.</li></ul> | 13 North St., Geneseo, NY 14454 |

14009673.7

| | |
|---|---|
| • St. Patrick's Church Society of Mt. Morris, New York<br>• Church of the Holy Angels of Nunda, N.Y.<br>• St. Lucy's Church, Retsof, N.Y | |
| **Our Lady of Peace Roman Catholic Church of Geneva, NY**; *successor in interest to the insurance rights of:*<br>• Church of St. Francis DeSales<br>• St. Stephen's Roman Catholic Church, Inc. of Geneva, N.Y. | 130 Exchange St., Geneva, NY 14456 |
| **St. Hilary's Catholic Church, Genoa, N.Y.** | 299 Main St., Aurora, NY 13026 |
| **St. Anthony's Catholic Church of Groton, N.Y.** | 312 Locke Rd., Groton, NY 13073 |
| **Church of the Holy Name, Groveland, N.Y.** | 13 North St., Geneseo, NY 14454 |
| **The Church of St. Elizabeth Ann Seton, The Diocese of Rochester, N.Y.** | P.O. Box 149, Hamlin, NY 14464 |
| **Marianne Cope Roman Catholic Parish, Monroe County NY**; *successor in interest to the insurance rights of:*<br>• Guardian Angels Church of Rochester, New York<br>• Church of the Good Shepherd, Henrietta, N.Y.<br>• St. Joseph's Catholic Society of Rush, N.Y. | 3318 E. Henrietta Rd., Henrietta, NY 14467 |
| **Church of St. Leo, Hilton, N.Y.** | 167 Lake Ave., Hilton, NY 14468 |
| **St. Mary's Church of Honeoye Flats, N.Y (St. Mary - Our Lady of the Hills)** | 8961 Main St., Honeoye, NY 14471 |
| **St. Paul of the Cross Church, Honeoye Falls, N.Y.** | 31 Monroe St., Honeoye Falls, NY 14472 |
| **Our Lady of the Valley**; *successor in interest to the insurance rights of:*<br>• St. Joachim's Roman Catholic Church<br>• St. Ann's Roman Catholic Church<br>• St. Ignatius Loyola Church of Hornell, N.Y.<br>• St. Mary's Roman Catholic Church | 27 Erie Ave., Hornell, NY 14843 |
| **Church of St. Mary Our Mother, Horseheads, N.Y.** | 816 W. Broad St., Horseheads, NY 14845 |
| **St. Catherine of Siena Church** | 302 Saint Catherine Circle, Ithaca, NY 14850 |
| **The Immaculate Conception Church, Ithaca, N.Y.** | 113 N. Geneva St., Ithaca, NY 14850 |
| **All Saints Church Corporation, Ludlowville, NY** | 347 Ridge Rd., Lansing, NY 14882 |
| **St. Rose Roman Catholic Church** | 1985 Lake Ave., Lima, NY 14485 |
| **St. Matthew Catholic Church Society**; *successor in interest to the insurance rights of:* | P.O. Box 77, Livonia, NY 14487 |

14009673.7

| | |
|---|---|
| <ul><li>St. William's Church Society, Conesus, N.Y.</li><li>St. Joseph's Catholic Church Society of Livonia, N.Y.</li></ul> | |
| **St. Michael's Church Society, Livonia Center, N.Y.** | 8961 Main St., Honeoye, NY 14471 |
| **Parish of St. Katharine Drexel, Palmyra**; *successor in interest to the insurance rights of:*<ul><li>St. Patrick's Church of Macedon, N.Y.</li><li>St. Gregory's Roman Catholic Church of Marion, N.Y.</li><li>Roman Catholic Church of St. Anne, Palmyra, N.Y. 14522</li></ul> | 52 Main St., Macedon, NY 14502 |
| **St. Catherine's Roman Catholic Church, Mendon, NY** | 26 Mendon-Ionia Rd., Mendon, NY 14506 |
| **St. Michael's Church, Montezuma, N.Y.** | 2667 Hamilton St., Weedsport, NY 13166 |
| **St. Michael's Church, Newark, N.Y.** | 401 S. Main St., Newark, NY 14513 |
| **St. Christopher of Chili, New York** | 3350 Union St., North Chili, NY 14514 |
| **St. Benedict's Mission Church of Odessa, New York** | 169 Speedway, Odessa, NY 14869 |
| **St. Maximilian Kolbe Catholic Church Society of Wayne County**; *successor in interest to the insurance rights of:*<ul><li>St. Mary's of the Lake Roman Catholic Church Society</li><li>Church of the Epiphany, Sodus, N.Y.</li><li>Church of St. Rose of Lima, Sodus Point, N.Y.</li></ul> | 5823 Walworth Rd., Ontario, NY 14519 |
| **The Parish of Mary, Mother of Mercy, Tompkins County, New York**; *successor in interest to the insurance rights of:*<ul><li>St. Francis Solanus Church, Interlaken, N.Y.</li><li>Holy Cross Church</li><li>St. James the Apostle Church of Trumansburg, N.Y.</li></ul> | PO Box 337, Ovid, NY 14521 |
| **Blessed Trinity, Owego**, *successor in interest to the insurance rights of:*<ul><li>St. Margaret Mary's Roman Catholic Church of Apalachin, N.Y.</li><li>St. Francis Roman Catholic Church</li><li>St. John the Evangelist Roman Catholic Church</li><li>St. Pius the Tenth Church, Van Etten, N.Y.</li><li>St. James the Apostle, Roman Catholic Church Society of Waverly, N.Y.</li></ul> | 300 Main St., Owego, NY 13827 |

| | |
|---|---|
| **St. Patrick's Roman Catholic Church Society of Owego, N.Y.** | 300 Main St., Owego, NY 13827 |
| **St. Joseph's Catholic Church of Penfield, NY** | 43 Gebhardt Rd., Penfield, NY 14526 |
| **Our Lady of the Lakes Catholic Community**; *successor in interest to the insurance rights of:*<br>• St. Andrew's Church of Dundee<br>• St. Januarius Roman Catholic Church<br>• St. Michael's Church of Penn Yan, N.Y.<br>• St. Patrick's Catholic Church, Prattsburg, N.Y.<br>• St. Mary's Church, Rushville, N.Y.<br>• St. Theresa's Church, Stanley, N.Y. | 210 Keuka St., Penn Yan, NY 14527 |
| **St. Raphael's Church, Piffard, N.Y.** | 13 North St., Geneseo, NY 14454 |
| **Church of the Transfiguration, Diocese of Rochester, New York** | 50 W Bloomfield Rd., Pittsford, NY 14534 |
| **St. Louis Church of Pittsford, N.Y.** | 60 S. Main St., Pittsford, NY 14534 |
| **St. John the Evangelist Church Society, Spencerport, N.Y.** | 55 Martha St., Spencerport, NY 14559 |
| **St. Patrick's Church of Victor, N.Y.** | 115 Maple Ave., Victor, NY 14564 |
| **St. Frances & St. Clare Roman Catholic Parish, Seneca County, NY**; *successor in interest to the insurance rights of:*<br>• St. Mary's Church, Waterloo, N.Y.<br>• St. Patrick's Church of Seneca Falls, N.Y. | 25 Center St., Waterloo, NY 13165 |
| **St. Mary's of the Lake Roman Catholic Church Society** | P.O. Box 289, Watkins Glen, NY 14891 |
| **Holy Family Catholic Community**; *successor in interest to the insurance rights of:*<br>• St. Pius V Church Society, Cohocton, N.Y.<br>• St. Mary's Church<br>• The Church of the Sacred Heart of Jesus, Perkinsville, N.Y.<br>• St. Joseph's Roman Catholic Church Corp., Wayland, N.Y. | 206 Fremont St., Wayland, NY 14572 |
| **The Roman Catholic Church of the Most Holy Trinity at Webster, N.Y.** | 1460 Ridge Rd., Webster, NY 14580 |
| **St. Paul's Roman Catholic Church of Webster, N.Y.** | 783 Hard Rd., Webster, NY 14580 |
| **Church of the Holy Spirit of Penfield, N.Y.** | 1355 Hatch Rd., Webster, NY 14580 |
| **Our Lady of the Snow, Weedsport**; *successor in interest to the insurance rights of:*<br>• St. Patrick's Roman Catholic Church of Cato, N.Y.<br>• St. John's Church, Port Byron, N.Y. 13140 | 2667 Hamilton St., Weedsport, NY 13166 |

14009673.7

| | |
|---|---|
| • St. Joseph's Catholic Church of Weedsport, N.Y. | |
| **St. Joseph's Church of West Bloomfield** | 95 N. Main St., Canandaigua, NY 14424 |
| **St. Rita's Church of West Webster, N.Y.** | 1008 Maple Dr., West Webster, NY 14580 |
| **Catholic Community of the Blessed Trinity of Wolcott, NY**; *successor in interest to the insurance rights of:*<br>• St. Mary Magdalen Church, Wolcott, N.Y.<br>• St. Thomas the Apostle Roman Catholic Church of Red Creek<br>• St. Jude | 11956 Washington St., Wolcott, NY 14590 |
| **Catholic Charities of the Diocese of Rochester** | 1150 Buffalo Rd., Rochester, NY 14624 |
| **Rochester Catholic Press Association, Inc.** | 1150 Buffalo Rd., Rochester, NY 14624 |
| **DePaul Mental Health Services, Inc. f/k/a DePaul Clinic** | 1931 Buffalo Rd., Rochester, NY 14624 |
| **The Corporate Board of Education, Diocese of Rochester** | 1150 Buffalo Rd., Rochester, NY 14624 |
| **Bishop Sheen Ecumenical Housing Foundation, Inc.** | 150 French Rd., Rochester, NY 14618 |
| **Charles Settlement House, Inc.** | 445 Jay St., Rochester, NY 14611 |
| **St. Bernard's School of Theology and Ministry** | 120 French Rd., Rochester, NY 14618 |
| **Camp Stella Maris of Livonia, N.Y.** | 4395 East Lake Rd., Livonia, NY 14487 |

14009673.7

# ATTACHMENT F

## <u>NOTICE NAMES AND ADDRESSES</u>

DOR:         The Diocese of Rochester
              1150 Buffalo Road
              Rochester, New York 14624
              Attention:  Lisa M. Passero, Chief Financial Officer

With copies to:      Bond, Schoeneck & King, PLLC
              One Lincoln Center
              Syracuse, New York 13202
              Attn: Stephen A. Donato
                 Charles J. Sullivan
                 Grayson T. Walter

              -and-

              Blank Rome LLP
              1825 Eye Street NW
              Washington, D.C. 20006
              Attn: James R. Murray
                 James S. Carter

DOR Parishes:       Woods Oviatt Gillman, LLP
              1900 Bausch & Lomb Place
              Rochester, NY 14604
              Attention:  Timothy P. Lyster

## LONDON MARKET INSURERS

For Resolute Management Services  Martin Futter, Esq. LLB (Hons)  PGDip (LPC)
Limited:

              Account Manager
              Resolute Management Services Ltd.
              London Underwriting Centre
              4th Floor, 8 Fenchurch Place
              London EC3M 4AJ
              England
              Tel: +44 (0) 207 342 2455

For Company Leader:     Mr. Steve Dodson
              Head of Claims

Catalina Worthing Insurance Ltd f/k/a HFPI (as
Part VII transferee of Excess Insurance Company
Ltd and/or London & Edinburgh Insurance
Company Ltd (as successor to London &
Edinburgh General Insurance Company Ltd))
1 Alie St.
London E1 8DE
England
Tel: +44 (0) 207 265 5031

With copies to:                    Catalina J. Sugayan, Esq.
                                   Clyde & Co US LLP
                                   55 West Monroe Street
                                   Suite 3000
                                   Chicago, IL 60603
                                   Tel: 312.635.6917

                                   Russell W. Roten, Esq.
                                   Duane Morris LLP
                                   865 South Figueroa Street
                                   Suite 3100
                                   Los Angeles, CA 90017-5450
                                   Tel: 213.689.7439