**Exhibit B**

Underwriters Settlement Agreement

<u>**CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE**</u>

This Confidential Settlement Agreement and Release (hereinafter the "Agreement") is made this __ day of May, 2022, by and between the Diocese of Rochester ("**DOR**")[1] and the other "**DOR Entities**" on the one hand, and certain Underwriters at Lloyd's, London, HDI Global Specialty SE and Convex Insurance UK Limited (collectively "**Underwriters**") on the other hand. (The aforementioned parties are referred to hereinafter collectively as the "Parties" or individually as a "Party").

<u>**WITNESSETH THAT:**</u>

WHEREAS, the "**CVA**" provided for a window for individuals to file civil claims for injury suffered as a result of alleged sexual misconduct that were otherwise time-barred;

WHEREAS, as a result of revival, pursuant to the CVA, certain claims that were otherwise time-barred by the statute of limitations, "**Tort Claims**", were brought against certain DOR Entities;

WHEREAS, certain DOR Entities incurred, and may incur in the future, liabilities, expenses, and losses arising out of the Tort Claims;

WHEREAS, Underwriters severally subscribed to the "**Subject Insurance Policies**" allegedly providing insurance to the DOR Entities, including Primary Certificates that provided limited claims-made Sexual Misconduct Liability Coverage for periods effective since July 1, 2018;

WHEREAS, the Subject Insurance Policies are property of DOR's bankruptcy estate;

WHEREAS, certain DOR Entities tendered "**Coverage Claims**" to Underwriters seeking insurance coverage for the Tort Claims;

WHEREAS, Underwriters acknowledge that a few of the Coverage Claims potentially implicate the Sexual Misconduct Liability Coverage in some of the Subject Insurance Policies, but they dispute the Coverage Claims;

WHEREAS, to address its liabilities for the Tort Claims, on the "**Petition Date**", DOR filed the "**Bankruptcy Case**" in the "**Bankruptcy Court**";

WHEREAS, on November 14, 2019, DOR filed the "**Insurance Coverage Action**", as an adversary proceeding in the Bankruptcy Court;

WHEREAS, some of the Underwriters are named defendants in the Insurance Coverage Action, and dispute the substantive allegations and Coverage Claims asserted against them in the Insurance Coverage Action;

WHEREAS, on December 23, 2019, DOR filed the "**Mediation Motion**";

---

[1] Terms in bold and inside quotation marks are defined in Section 1. Definitions.

WHEREAS, on March 10, 2020, the Bankruptcy Court (i) entered the "**Mediation Order**" approving the Mediation Motion, appointing the "**Mediator**", and (ii) ordered the "**Mediation Parties**" to mediate the Tort Claims and the Coverage Claims;

WHEREAS, pursuant to the Bankruptcy Court's Mediation Order, no defendant filed an Answer or otherwise responded in the Insurance Coverage Action;

WHEREAS, whether or not they (i) were subject to the Tort Claims, or (ii) asserted Coverage Claims against Underwriters, the DOR Entities are settling with and releasing Underwriters pursuant to this Agreement;

WHEREAS, it is the intention of the Parties that Underwriters shall pay the "**Settlement Amount**" in exchange for: (i) a buy back of the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect through the "**Effective Date**",  free and clear of all "**Interests**" such that Underwriters shall have no remaining duties or obligations to the DOR and the DOR Entities of any nature whatsoever under these Policies' Sexual Misconduct Liability Coverages; and (ii) a full and final release that terminates all rights, obligations and liabilities of Underwriters with respect to or arising out of the Coverage Claims under the Subject Insurance Policies;

WHEREAS, DOR shall pay the Settlement Amount to the "**Trust**" for the benefit of the "**Channeled Claimants**";

WHEREAS, it is the intention of the Parties that any and all Interests in or to the Subject Insurance Policies with respect to or arising out of the Coverage Claims be extinguished, ended, and forever terminated;

WHEREAS, it is the intention of the Parties that the DOR Entities: (i) shall not retain any right, title, or Interest in or to the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect through the Effective Date; (ii) shall not retain any Interest in the Subject Insurance Policies with respect to or arising out of the Coverage Claims; and, (iii) release Underwriters from all "**Released Claims**";

WHEREAS, subject to the Court entering the orders contemplated by this Agreement, Underwriters will be protected by the "**Settling Insurer Supplemental Injunction**" and the "**Channeling Injunction**";

WHEREAS, DOR agrees to use commercially reasonable efforts to obtain the "**Settling Insurer Supplemental Injunction**" for the benefit of the "**Settling Insurers**", pursuant to the "**Plan**"; and

WHEREAS, by this Agreement, the Parties intend to adopt, by way of compromise, and without prejudice to or waiver of their respective positions in other matters, without further trial or adjudication of any issues of fact or law, and without Underwriters' admission of liability or responsibility under the Subject Insurance Policies, a full and final settlement that: (a) releases and terminates all Interests of Underwriters and the DOR Entities with respect to the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect though the Effective Date, including all rights, obligations and liabilities relating to the "**Barred Claims**" and the "**Enjoined Claims**," without prejudice to their respective positions on policy wordings or any

other issues relating to the Insurance Coverage Action, the Coverage Claims, or otherwise; and (b) releases and terminates all Interests of Underwriters and the DOR Entities under Subject Insurance Policies with respect to or arising out of the Coverage Claims.

**<u>AGREEMENTS:</u>**

NOW, THEREFORE, in full consideration of the foregoing and of the mutual agreements herein contained, and intending to be legally bound, the Parties agree as follows:

**1.**      **<u>Definitions</u>**

The following definitions and the definitions used above apply to this Agreement as well as any exhibits or attachments hereto. Where the listed terms are further defined in the body of this Agreement, the definitions listed here nonetheless apply and shall serve to further explain the meaning of those terms. Each defined term stated in a singular form shall include the plural form, each defined term stated in plural form shall include the singular form, and each defined term stated in the masculine form or in the feminine form shall include the other. The words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation," and the phrase "relating to" means "with regard to, by reason of, based on, arising out of, relating to, or in any way connected with." (The words "include," "includes," and "including," and the phrase "relating to" are not capitalized herein.) This Agreement incorporates all attachments hereto to the same extent as if fully set forth herein. All references to "Sections" are references to sections of this Agreement unless otherwise specified.

     **a.**      **<u>Abuse</u>**

The term "**Abuse**" means (i) any actual, threatened, or alleged sexual conduct, misbehavior, abuse, or molestation, including a sexual offense as defined in New York Penal Law Section 130, incest as defined New York Penal Law Section 255, and use of a child in sexual performance as defined in New York Penal Law Section 263; (ii) indecent or lascivious behavior, undue familiarity, harassment, pedophilia, ephebophilia, or sexually-related physical, psychological, or emotional harm; (iii) contacts or interactions of a sexual nature; or (iv) assault, battery, corporal punishment, or other act of physical, psychological, or emotional abuse, humiliation, intimidation, or misconduct.

     **b.**      **<u>Action</u>**

The term "**Action**" means any lawsuit, proceeding, or other action in a court, or any arbitration.

     **c.**      **<u>Affiliates</u>**

The term "**Affiliates**" means all past, present, and future Persons that control, are controlled by, or are under control with, another Person, including parents, subsidiaries, merged Persons, holding Persons, and acquired Persons, or any predecessor to such Person.

14080204.4

**d.** <u>**Agents**</u>

The term "**Agents**" means all past and present employees, officers, directors, agents, shareholders, principals, teachers, staff, members, boards, administrators, priests, deacons, brothers, sisters, nuns, other clergy, Persons bound by monastic vows, volunteers, attorneys, claims handling administrators, and representatives of a Person, in their capacities as such.

**e.** <u>**Approval Order**</u>

The term "**Approval Order**" means an order entered by the Court, upon a hearing following Bankruptcy Notice, containing all of the following provisions but no provision that is contrary to or inconsistent with the following provisions. The wording of the Approval Order shall be mutually acceptable to DOR, Underwriters, and Rev. Thomas P. Mull in his capacity as chair of the parish steering committee. The Approval Order shall contain provisions:

> (i) finding that due and adequate notice of the DOR's request for approval of this Agreement has been provided to all creditors and parties in interest in the Bankruptcy Case;
>
> (ii) approving this Agreement in its entirety, pursuant to Bankruptcy Code §§ 363(b), (f), and (m) and, if applicable, 105(a), and Bankruptcy Rules 6004 and 9019;
>
> (iii) authorizing the sale of the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect though the Effective Date, free and clear of all Interests of all Persons, including all Interests, if any, arising under New York Insurance Law or any other applicable law, with all Interests in and to, and Claims against, the Subject Insurance Policies being fully extinguished without reservation as to the Settling Insurers;
>
> (iv) ordering that all Tort Claims (along with any Contribution, Coverage, Direct Action, Extra-Contractual, Indirect, and Medicare Claims related thereto), against, and Interests in and to, the Subject Insurance Policies that were in effect through the Effective Date be fully extinguished without reservation as to Underwriters and the DOR Entities, and channeled to a Trust upon the Plan Effective Date;
>
> (v) ordering that all Barred Claims and other Interests in Tort Claims that any Person, including CMS, might have in, or against, the Subject Insurance Policies that were in effect through the Effective Date, attach to the Settlement Amount;
>
> (vi) authorizing and directing the Parties to perform their respective obligations under this Agreement; and
>
> (vii) issuing the Bar Order.

The Approval Order shall be accompanied by the separately entered Settlement Approval Findings and Conclusions.

      **f.**      <u>**Bankruptcy Case**</u>

The term "**Bankruptcy Case**" means the bankruptcy case filed by DOR in the Bankruptcy Court, entitled *In re the Diocese of Rochester*, Case Number 2-19-20905-PRW.

      **g.**      <u>**Bankruptcy Code**</u>

The term "**Bankruptcy Code**" means Title 11 of the United States Code, 11 U.S.C. § 101, *et seq*.

      **h.**      <u>**Bankruptcy Court**</u>

The term "**Bankruptcy Court**" means the Bankruptcy Court for the Western District of New York.

      **i.**      <u>**Bankruptcy Notice**</u>

The term "**Bankruptcy Notice**" means notice as required under Bankruptcy Rules 2002, 6004(a), and (c), and applicable local rules, sent to (i) all holders of Claims against the DOR Entities, including Tort Claims, or their attorneys, if any, who are known to the DOR Entities; (ii) the Official Committee of Unsecured Creditors; (iii) the Future Claims Representative (once appointed by the Court); (iv) all insurers of the DOR Entities that provide coverage for or are alleged to provide coverage for Tort Claims; (v) the Secretary of the Department of Health and Human Services ("**Secretary**"); (vi) CMS; (vii) the United States Attorney for the Western District of New York; (viii) all Persons who, in the opinion of any Party to this Agreement, might reasonably be expected to be affected by the transactions contemplated herein; and (ix) all other Persons as directed by the Court. Notice shall also be given by (a) publication in the national edition of either *The New York Times* or *USA Today*; and (b) local publication in the *Rochester Democrat & Chronicle*, or as the Court may otherwise direct.

      **j.**      <u>**Bankruptcy Rules**</u>

The term "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as such may be amended from time to time.

      **k.**      <u>**Bar Order**</u>

The term "**Bar Order**" means an order barring, estopping, and permanently enjoining all Persons from asserting any Barred Claims against Underwriters.

      **l.**      <u>**Business Day**</u>

The term "**Business Day**" means any day that is not a Saturday, Sunday, or legal holiday in the State of New York or the United Kingdom.

14080204.4

### m.     **Channeling Injunction**

The term "**Channeling Injunction**" means an order of the Court requiring all Channeled Claimants to assert their Channeled Claims against the Trust, and barring and permanently enjoining such claims against the DOR Entities and the Settling Insurers, pursuant to § 105 of the Bankruptcy Code, which states, *verbatim*, unless Underwriters and DOR agree to modified language:

**Channeling Injunction Preventing Prosecution of Channeled Claims Against Protected Parties and Settling Insurers.**

(a) **In consideration of the undertakings of the Protected Parties and Settling Insurers under the Plan, their contributions to the Trust, and other consideration, and pursuant to their respective settlements with the Debtor and to further preserve and promote the agreements between and among the Protected Parties and Settling Insurers, and to supplement where necessary the injunctive effect of the discharge as provided in Sections 524 and 1141 of the Bankruptcy Code, and pursuant to and pursuant to Sections 105 and 363 of the Bankruptcy Code:**

1. **any and all Channeled Claims are channeled into the Trust and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts established under the Plan and the Trust Agreement as the sole and exclusive remedy for all holders of Channeled Claims;**

2. **all Persons who have held or asserted, hold or assert, or may in the future hold or assert, any Channeled Claims, are hereby permanently stayed, enjoined, barred and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim against the Protected Parties or Settling Insurers, including:**

    (i) **commencing or continuing in any manner any action or other proceeding of any kind with respect to any Channeled Claim against any of the Protected Parties or Settling Insurers or against the property of any of the Protected Parties or Settling Insurers;**

    (ii) **enforcing, attaching, collecting, or recovering, or seeking to accomplish any of the preceding, by any manner or means, from any of the Protected Parties or Settling Insurers, or the property of any of the Protected Parties or Settling Insurers, any judgment, award, decree, or order with respect to any Channeled Claim against any of the Protected Parties or Settling Insurers;**

    (iii) **creating, perfecting, or enforcing, or seeking to accomplish any of the preceding, any lien of any kind relating to any Channeled Claim against any of the Protected Parties or Settling Insurers, or the property of the Protected Parties or Settling Insurers;**

14080204.4

       (iv) **asserting, implementing, or effectuating any Channeled Claim of any kind against:**

          1. **any obligation due any of the Protected Parties or Settling Insurers;**

          2. **any of the Protected Parties or Settling Insurers; or**

          3. **the property of any of the Protected Parties or Settling Insurers.**

       (v) **taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan; and**

       (vi) **asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against an obligation due to any of the Protected Parties, the Settling Insurers, or the property of any of the Protected Parties or the Settling Insurers.**

**The Channeling Injunction is an integral part of the Plan and is essential to the Plan's consummation and implementation. It is intended that the channeling of the Channeled Claims as provided in this Section ___ shall inure to the benefit of the Protected Parties and Settling Insurers. In a successful action to enforce the injunctive provisions of this Section in response to a willful violation thereof, the moving party may seek an award of costs (including reasonable attorneys' fees) against the non-moving party, and such other legal or equitable remedies as are just and proper, after notice and a hearing.**

      **n.**    <u>**Claim**</u>

The term "**Claim**" means (a) a claim as that term is defined in § 101(5) of the Bankruptcy Code; or (b) any claim, interest, Action, assertion of right, complaint, cross-complaint, counterclaim, defense, liability, obligation, right, request, allegation, mediation, litigation, direct action, administrative proceeding, cause of action, lien, debt, bill, indemnity, equitable indemnity, right of subrogation, equitable subrogation, injunctive relief, controversy, contribution, exoneration, covenant, agreement, promise, act, omission, trespass, variance, damages, judgment, compensation, set-off, reimbursement, restitution, cost, expense, loss, exposure, execution, attorneys' fee, obligation, encumbrances, order, affirmative defense, writ, demand, inquiry, request, directive, obligation, Proof of Claim in a bankruptcy proceeding or submitted to a trust established pursuant to the Bankruptcy Code, government claim or Action, settlement, and/or any liability whatsoever, whether past, present or future, known or unknown, asserted or unasserted, foreseen or unforeseen, fixed or contingent, matured or unmatured, liquidated or unliquidated, direct, indirect or otherwise consequential, whether in law, equity, admiralty or otherwise, whether currently known or unknown, whether compromised, settled or reduced to a consent judgment, that may exist now or hereinafter for property damages, compensatory damages (such as loss of consortium, wrongful death, survivorship, proximate, consequential, general and special damages), punitive damages, bodily injury, personal injury, public and private claims, or any other right to relief whether sounding in tort, contract, extra-contractual or bad faith, statute, strict liability, equity, nuisance, trespass, statutory violation, wrongful entry or eviction or other eviction or other invasion of the right of private occupancy, and any amounts paid in respect of any

14080204.4

judgment, order, decree, settlement, contract, or otherwise. A Person who holds a Claim is a "**Claimant**". The term Claim includes all of the following:

(i) **Barred Claims**

The term "**Barred Claims**" means all Claims enjoined by the Bar Order, which shall include all Channeled, Direct Action, and Released Claims.

(ii) **Channeled Claims**

The term "**Channeled Claims**" means the claims channeled to the Trust, including all Tort, Direct Action, Extra-Contractual, Medicare, and Indirect Claims against any DOR Entity or Settling Insurer, which are channeled to the Trust, and for which the Trust assumes liability, pursuant to the Plan.

(iii) **Contribution Claims**

The term "**Contribution Claims**" means all Claims, most commonly expressed in terms of contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, allocation or reallocation, or reimbursement, or any other indirect or derivative recovery, by an Insurer against Underwriters (or any of them) for the payment of money where such Insurer contends that it has paid more than its equitable or proportionate share of a Claim against a DOR Entity.

(iv) **Coverage Claims**

The term "**Coverage Claims**" means all Tort Claims (along with any Contribution, Direct Action, Extra-Contractual, Indirect, and Medicare Claims related thereto), under or relating to the Subject Insurance Policies that were in effect through the Effective Date, or the rights and obligations thereunder, or the breach thereof, including Claims seeking insurance coverage.

(v) **Direct Action Claims**

The term "**Direct Action Claims**" means the same as Tort Claims, except that they are asserted against Underwriters (or any of them), instead of any DOR Entity or the Trust, for the recovery of insurance proceeds.

(vi) **Enjoined Claims**

The term "**Enjoined Claims**" means all Claims enjoined by the Settling Insurer Supplemental Injunction, which shall include all Barred, Contribution, Indirect, and Medicare Claims.

(vii) **Extra-Contractual Claims**

The term "**Extra-Contractual Claims**" means all Claims against Underwriters (or any of them), arising from events or conduct prior to the date of this Agreement, seeking

any type of relief other than coverage or benefits under the Subject Insurance Policies. **"Extra-Contractual Claims"** include Claims for compensatory, exemplary, or punitive damages, or attorneys' fees, interest, costs, or any other type of relief, alleging, with respect to (i) any of the Subject Insurance Policies; (ii) any Claim allegedly or actually covered under the Subject Insurance Policies; or (iii) the conduct of Underwriters with respect to (i) and/or (ii): bad faith; failure to provide insurance coverage; failure or refusal to compromise and settle any Claim; failure to act in good faith; violation of any covenant or duty of good faith and fair dealing; violation of any state insurance codes, state surplus lines statutes or similar codes or statutes; violation of any unfair claims practices act or similar statute, regulation or code; any type of misconduct or any other act or omission of any type. The term **"Extra-Contractual Claims"** includes all Claims relating to Underwriters' (i) handling of any request for insurance coverage for any Claim; (ii) conduct relating to the negotiation of this Agreement; and (iii) conduct relating to the settlement of any Coverage Claim.

(viii)   **Indirect Claims**

The term **"Indirect Claims"** means Claims against a DOR Entity or a Settling Insurer, asserted by a Non-DOR Insurer, or any other Entity that is not an Insurer, for contribution, indemnity, equitable indemnity, subrogation, or equitable subrogation, allocation or reallocation, or reimbursement, or any other indirect or derivative recovery, on account of or with respect to any Claim relating to Abuse.

(ix)   **Medicare Claims**

The term **"Medicare Claims"** means all Claims by CMS, and/or any other agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA and pursuing Claims under MSP, relating to any payments in respect of any Tort Claims, including Claims for reimbursement of payments made to Tort Claimants who recover or receive any distribution from the Trust, and Claims relating to reporting obligations..

(x)   **Released Claims**

The term **"Released Claims"** means Coverage and Extra-Contractual Claims.

(xi)   **Tort Claims**

(A) The term **"Tort Claims"** means all Claims relating to Abuse that took place in whole or in part prior to the Plan Effective Date for which a DOR Entity is allegedly responsible, including any such Claim seeking monetary damages or any other relief, under any theory of liability, including: vicarious liability; *respondeat superior*; any fraud-based theory, including fraud in the inducement and fraudulent concealment; any negligence-based or employment-based theory, including negligent hiring, supervision, retention or misrepresentation; any other theory based on a duty, fiduciary duty, pattern and/or practice, misrepresentation, concealment, or unfair practice; contribution; indemnity; public or private nuisance; or any other theory, including any theory based on public policy or any acts or failures to act by any DOR Entity or any other Person for whom any DOR Entity is

9

allegedly responsible, including any such Claim asserted against any DOR Entity in connection with the Bankruptcy Case. The term "**Tort Claims**" includes Future Tort Claims; it does not include Contribution or Medicare Claims.

(B) The term "**Future Tort Claim**" means any Tort Claim that was (i) neither filed, nor deemed filed, in the Bankruptcy Case, by the Claims Filing Deadline, nor otherwise allowed by the Court prior to the Plan Effective Date; and (ii) is held by an individual (a) who, at the time of the Claims Filing Deadline, was (x) under a disability recognized by New York C.P.L.R. §208, or other applicable law suspending the running of the limitation period, if any, or (y) barred by a statute of limitations, but is no longer barred by such statute of limitations for any reason, including the enactment of legislation.

o.    **Claims Filing Deadline**

The term "**Claims Filing Deadline**" means August 13, 2020, at 11:59 P.M. (prevailing Eastern Time).

p.    **CMS**

The term "**CMS**" means the Centers for Medicare and Medicaid Services of the United States Department of Health and Human Services, located at 7500 Security Boulevard, Baltimore, MD 21244-1850 and/or any other Agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA for reimbursement of Medicare Claims.

q.    **Committee**

The term "**Committee**" means the Official Committee of Unsecured Creditors appointed in the Bankruptcy Case.

r.    **Confirmation Findings and Conclusions**

The term "**Confirmation Findings and Conclusions**" means the findings of fact and conclusions of law required under §§ 1129(a), and, if applicable, 105(a) and 1129(b), of the Bankruptcy Code, which are to be entered concurrently with, but separately from, the Confirmation Order, as necessary to confirm the Plan and dismiss with prejudice the Insurance Coverage Action as against Underwriters, including the following:

(i)    This Agreement is the fruit of long-term negotiations amongst the Parties, which began in March 2020, following the Bankruptcy Court's entry of the Mediation Order;

(ii)    The Settlement Amount provides good and valuable consideration to DOR's bankruptcy estate, and enables distributions to the Channeled Claimants;

(iii)    This Agreement is therefore necessary to the Plan because it provides significant funding for the Plan;

(iv)     The Subject Insurance Policies are property of DOR's bankruptcy estate and are therefore subject to the *in rem* jurisdiction of the Court;

(v)     The Channeled Claims are within the jurisdiction of the Court because they seek property of DOR's bankruptcy estate;

(vi)     Because it would be impractical to divide the Subject Insurance Policies amongst DOR and the other DOR Entities, it was necessary for DOR to obtain the participation of the other DOR Entities in this Agreement;

(vii)     The DOR Entities, other than DOR, would not release their Interests in the Subject Insurance Policies with respect to or arising out of the Coverage Claims unless they obtained the benefits of the Channeling Injunction, because to do so would have left them exposed to Tort Claims, whether or not such Claims be valid, and whether or not coverage exists under the Subject Insurance Policies for such Claims;

(viii)     Therefore, the Channeling Injunction is necessary to the Agreement;

(ix)     The Channeling Injunction is narrowly tailored because it requires only Channeled Claims against the DOR Entities and the Settling Insurers to be brought against the Trust;

(x)     The Coverage Claims are within the jurisdiction of the Bankruptcy Court because such claims could enhance the estate;

(xi)     Underwriters required that DOR obtain the benefits of the Settling Insurer Supplemental Injunction, as a condition of entering into this Agreement and contributing the Settlement Amount;

(xii)     Therefore, the Settling Insurer Supplemental Injunction is necessary to this Agreement and the Plan;

(xiii)     The Settling Insurer Supplemental Injunction is narrowly tailored because it only enjoins the Enjoined Claims against the Settling Insurers;

(xiv)     Underwriters are repurchasing the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect through the Effective Date, pursuant to this Agreement. Underwriters are not purchasing any other assets of the DOR Entities and are not a continuation of the DOR Entities, nor engaging in a continuation of the DOR Entities' businesses. Underwriters shall not have any responsibility or liability with respect to any of the DOR Entities' other assets; and

(xv)     Underwriters are not, and shall not be deemed to be, successors to the DOR Entities, or any of them, by reason of any theory of law or equity or as a result of the consummation of the transactions contemplated in this Agreement, the

Plan, or otherwise. Underwriters shall not assume, or be deemed to have assumed, any liabilities or other obligations of the DOR Entities.

**s.** **Confirmation Order**

The term "**Confirmation Order**" means an order entered by the Court after a confirmation hearing upon Bankruptcy Notice confirming the Plan, in a form and substance as required by this Agreement, which order has not been stayed. The wording of the Confirmation Order shall be mutually acceptable to DOR, Underwriters, and Rev. Thomas P. Mull in his capacity as chair of the parish steering committee. The Confirmation Order shall contain all of the following provisions but no provision that is contrary to or inconsistent with this Agreement:

(i) confirming the Plan;

(ii) specifically, and individually, ordering all Persons, as set forth in the Plan, to act or refrain from acting as specified in the Plan;

(iii) incorporating the terms and provisions of the Bar Order as though fully set forth therein;

(iv) ordering the Trustee to perform the obligations, if any, imposed upon the Trustee by this Agreement;

(v) issuing the Channeling Injunction and the Settling Insurer Supplemental Injunction;

(vi) discharging DOR from all Claims, including all Channeled Claims;

(vii) ordering all Channeled Claimants with pending state court Actions against any DOR Entity to dismiss such Claims and assert them against the Trust for resolution pursuant to the Trust Agreement; and

(viii) including the Reduction Clause set forth in Section 8, below.

The Confirmation Order shall be accompanied by the separately entered Confirmation Findings and Conclusions.

**t.** **Court**

The term "**Court**" means the Bankruptcy Court, or the District Court, as applicable.

**u.** **CVA**

The term "**CVA**" means the New York Child Victims Act, NY CPLR Section 214-G and all related civil and penal laws and statutes.

14080204.4

### v. **District Court**

The term "**District Court**" means the United States District Court for the Western District of New York.

### w. **DOR**

The term "**DOR**" means The Diocese of Rochester, which is the diocesan corporation formed pursuant to N.Y. Relig. Corp. Law § 90, together with the public juridic person of the Roman Catholic Diocese of Rochester, as now constituted or as it may have been constituted. Furthermore, in the event of any Action naming any Affiliate or Agent of DOR, such Action shall be considered an Action against DOR, the insurance coverage for which is released pursuant to Section 4 hereof.

### x. **DOR Entities**

The term "**DOR Entities**" means, in their capacity as such:

> (i)     DOR;

> (ii)     DOR's Affiliates;

> (iii)     Any and all insureds, named insureds, additional insureds and other insureds, or Persons otherwise insured or allegedly insured under the Subject Insurance Policies, including schools and the DOR Parishes;

> (iv)     Each of the Affiliates of the Persons identified in the foregoing subsections (i)-(iii);

> (v)     Each of the successors and assigns of the Persons identified in the foregoing subsections (i)-(iv); and

> (vi)     Each of the Agents of the Persons identified in the foregoing subsections (i)-(v).

The "**DOR Entities**" include each of the Persons set forth on Attachment A to this Agreement.

An individual who perpetrated an act of Abuse that forms the basis for a Tort Claim is not a DOR Entity with respect to that Tort Claim.

### y. **DOR Parishes**

The term "**DOR Parishes**" means all past and present parishes of or in DOR, in their capacity as public juridic persons, together with each corresponding parish corporation formed pursuant to N.Y. Relig. Corp. Law § 90.

### z.    **Effective Date**

The term "**Effective Date**" means the day following the date on which all of the following have occurred: (i) all Parties have executed this Agreement; (ii) the Court has issued the Approval Order and the Settlement Approval Findings and Conclusion; and (iii) the Approval Order has become a Final Order.

### aa.    **Entities' Release**

The term "**Entities' Release**" means the following:

(i)    The remising, release, covenant not to sue, and permanent discharge by the DOR Entities and any subsequently appointed trustee or representative acting for the DOR Entities, without further act by any Person, from and against all Released Claims that any DOR Entity ever had, now has, or hereafter may have, from the beginning of time to the Effective Date, of: (1) Underwriters; (2) the respective heirs, executors, administrators, and reinsurers (as such) of any of the Persons identified in clause (1) hereof in their capacity as such.

(ii)    The Entities' Release shall not serve to release or discharge any obligations of any Person (or such Person's Affiliates) (a) that has not paid to the Trust such Person's full allocable share of the Settlement Amount pursuant to the terms of this Agreement.

### bb.    **Final Order**

The term "**Final Order**" means an order as to which the time to appeal, petition for *certiorari*, petition for review, or move for reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, review, reargue, or rehear shall have been waived in writing in form and substance satisfactory to DOR and Underwriters, and their counsel or, in the event that an appeal, *writ of certiorari*, petition for review, or reargument or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or *certiorari* or review has been denied or from which reargument or rehearing was sought, and the time to take any further appeal, petition for *certiorari,* petition for review, or move for reargument or rehearing shall have expired; *provided, however,* that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure or any analogous rule under the Bankruptcy Rules may be filed with respect to such order shall not cause such order not to be a Final Order. For the avoidance of doubt, if the Plan is substantially consummated as defined in § 1101(2) of the Bankruptcy Code (hereafter "Substantial Consummation"), and any appeal of the Confirmation Order becomes equitably moot due to Substantial Consummation, the Confirmation Order shall be considered a Final Order as of the date that the order determining such appeal to be moot has become a Final Order.

### cc.    **Future Claims Representative**

The term "**Future Claims Representative**" means an individual appointed by the Court to represent the interests of Future Tort Claimants.

14080204.4

**dd.** <u>**HHS**</u>

The term "**HHS**" means the United States Department of Health and Human Services.

**ee.** <u>**Insurance Coverage Action**</u>

The term "**Insurance Coverage Action**" means the case entitled *The Diocese of Rochester v. The Continental Insurance Company, et al.*, filed in the United States Bankruptcy Court for the Western District of New York, as Adversary Proceeding Number 2-19-02021-PRW.

**ff.** <u>**Insurers**</u>

The term "**Insurers**" means the insurers of the DOR Entities, comprising the Settling Insurers and the Non-Settling Insurers.

**gg.** <u>**Interests**</u>

The term "**Interests**" means all Claims, including any "interests" as that term is used in 11 U.S.C. § 363, and other rights of any nature, whether at law or in equity, including all interests or other rights under New York Insurance Law or any other applicable law.

**hh.** <u>**Mediation**</u>

The term "**Mediation**" means the mediation by the Mediation Parties, as ordered by the Bankruptcy Court, on March 10, 2020.

**ii.** <u>**Mediation Parties**</u>

The term "**Mediation Parties**" means, collectively: (a) DOR; (b) each insurer named as a Defendant in the Insurance Coverage Action; (c) the Committee; (d) state court counsel for Tort Claimants; (e) the *ad hoc* committee of parishes and other parties-in-interest, including schools or other non-debtor Catholic entities located within the DOR, to the extent permitted or required by the Mediator.

**jj.** <u>**Mediation Motion**</u>

The term "**Mediation Motion**" means the Motion for Entry of an Order Referring this Adversary Proceeding to Mediation filed by the DOR in the Insurance Coverage Action.

**kk.** <u>**Mediation Order**</u>

The term "**Mediation Order**" means the Order Directing Mediation and Appointing Mediator filed by the DOR in the Insurance Coverage Action.

**ll.** <u>**Mediator**</u>

The term "**Mediator**" means the Honorable Gregg W. Zive, United States Bankruptcy Judge.

### mm. **Medicare**

The term "**Medicare**" means Title XVIII of the Social Security Act, 42 U.S.C. § 1395, *et seq.*, enacted July 1, 1966, including all subsequent amendments thereto.

### nn. **Medicare Beneficiary**

The term "**Medicare Beneficiary**" means any individual who has received or is eligible to receive benefits under Medicare and is the holder of a Channeled Claim.

### oo. **MSP or Medicare Secondary Payor Act**

The term "**Medicare Secondary Payor Act**" or "**MSP**" means 42 U.S.C. § 1395y *et seq.*, or any other similar statute or regulation, and any related rules, regulations or guidance issued in connection therewith or amendments thereto.

### pp. **MMSEA**

The term "**MMSEA**" means § 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (P.L.110-173), which imposes reporting obligations on those Persons with payment obligations under the MSP.

### qq. **Non-DOR Insurer**

The term "**Non-DOR Insurer**" means an insurer that insures a Person allegedly liable for Claims relating to Abuse, but who does not fall into the definition of Insurer.

### rr. **Non-Settling Insurer**

The term "**Non-Settling Insurer**" means any Person that has, or could be alleged to have, issued or subscribed an insurance policy providing coverage for Tort Claims, which Person has not settled its obligations under such policy.

### ss. **Person**

The term "**Person**" means any individual or entity, including any corporation, limited liability company, partnership, general partnership, limited partnership, limited liability partnership, limited liability limited partnership, proprietorship, association, joint stock company, joint venture, estate, trust, trustee, personal executor or personal representative, unincorporated association, or other entity, including any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency or instrumentality thereof.

### tt. **Petition Date**

The term "**Petition Date**" means September 12, 2019.

14080204.4

### uu.    **Plan**

The term "**Plan**" means a plan of reorganization proposed by DOR, after good-faith consultation with Underwriters, which (a) contains all of the following provisions, but no provision that is contrary to or inconsistent with this Agreement; (b) allows all of the acts and transactions under, and envisioned by, this Agreement to occur with binding legal effect; (c) does not materially and adversely affect the rights, duties, or interests of the DOR Entities or Underwriters, under this Agreement; (d) includes all papers, exhibits, attachments, appendices, or other documents filed with or in support of the Plan and necessary for its implementation, and any documents relating to the establishment and operation of the Trust; and (e) shall include the following provisions:

    (i)    incorporating this Agreement;

    (ii)    specifying the terms of this Agreement shall control in the event of any conflict with the Plan or the Confirmation Order;

    (iii)    prohibiting DOR from continuing to pursue the Insurance Coverage Action against Underwriters, requiring DOR to dismiss its Claims against the Underwriters named as defendants in the Insurance Coverage Action, with prejudice, within fourteen (14) days after the Plan Effective Date, and prohibiting any DOR Entity from asserting any Coverage Claims against Underwriters;

    (iv)    setting forth the Channeling Injunction and the Settling Insurer Supplemental Injunction;

    (v)    establishing the Trust, appointing the Trustee, and binding both of them to perform those requirements imposed upon them by this Agreement;

    (vi)    describing the role of the Future Claims Representative and seeking the continued appointment of the Future Claims Representative to continue in his duties;

    (vii)    channeling all Channeled Claims to the Trust;

    (viii)    denominating each of the Underwriters as Settling Insurers;

    (ix)    requiring each Channeled Claimant receiving a payment from the Trust to sign a release of all Claims against Underwriters and the DOR Entities;

    (x)    providing that none of the DOR Entities, the Trust, or the Settling Insurers will have any reporting obligations in respect of their contributions to the Trust, or in respect of any payments, settlements, resolutions, awards, or other Claim liquidations by the Trust, under the reporting provisions of MSP or MMSEA, and providing further, *verbatim*, unless Underwriters and DOR agree to modified language:

    a.    It is the position of DOR that none of DOR Entities, the Trust, or the Settling Insurers will have any reporting obligations in respect of their contributions

17

to the Trust, or in respect of any payments, settlements, resolutions, awards, or other Claim liquidations by the Trust, under the reporting provisions of MSP or MMSEA. Prior to making any payments to any claimants, the Trust shall seek a statement or ruling from the HHS that none of the Trust, DOR Entities, or Settling Insurers has any reporting obligations under MMSEA with respect to payments to the Trust by the DOR Entities or Settling Insurers or payments by the Trust to Claimants. Unless and until there is definitive regulatory, legislative, or judicial authority (as embodied in a final non-appealable decision from the United States Court of Appeals for the Second Circuit or the United States Supreme Court), or written confirmation from HHS that none of the DOR Entities or the Settling Insurers has any reporting obligations under MMSEA, with respect to any settlements, payments, or other awards made by the Trust or with respect to the contributions the DOR Entities and the Settling Insurers have made or will make to the Trust, the Trust shall, at its sole expense, in connection with the implementation of the Plan, act as a reporting agent for the DOR Entities and Settling Insurers, and shall timely submit all reports that would be required to be made by any DOR Entity or Settling Insurer under MMSEA on account of any Claims settled, resolved, paid, or otherwise liquidated by the Trust or with respect to contributions to the Trust, including reports that would be required if the payments to the Trust by a DOR Entity or Settling Insurer were determined to be made pursuant to "applicable plans" for purposes of MMSEA, or any DOR Entity or Settling Insurer were otherwise found to have MMSEA reporting requirements. The Trust, in its role as reporting agent for the DOR Entities and Settling Insurers, shall follow all applicable guidance published by CMS to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

b. If the Trust is required to act as a reporting agent for any DOR Entity or Settling Insurer, the Trust shall provide a written certification to each DOR Entity and Settling Insurer within twenty-one (21) days following the end of each calendar quarter, confirming that all required reports to CMS have been submitted in a timely fashion, and identifying (a) any reports that were rejected or otherwise identified as noncompliant by CMS, along with the basis for such rejection or noncompliance; and (b) any payments to Medicare Beneficiaries that the Trust did not report to CMS.

c. With respect to any reports rejected or otherwise identified as noncompliant by CMS, the Trust shall, upon request by any DOR Entity or Settling Insurer, promptly provide copies of the original reports submitted to CMS, as well as any response received from CMS with respect to such reports; *provided, however,* that the Trust may redact from such copies the Redacted Information. With respect to any such reports, the Trust shall reasonably undertake to remedy any issues of noncompliance identified by CMS, resubmit such reports to CMS, and, upon request by any DOR Entity or Settling Insurer, provide each DOR Entity and Settling Insurer copies of such resubmissions; *provided, however,* that the Trust may redact the Redacted Information.

14080204.4

d.      If the Trust is required to act as a reporting agent for a DOR Entity or Settling Insurer, with respect to each Channeled Claim of a Medicare Beneficiary paid by the Trust and not disclosed to CMS, the Trust shall, upon request by any DOR Entity or Settling Insurer, promptly provide the last four digits of the claimant's Social Security number, the year of the claimant's birth and any other information in the possession or control of the Trust that may be necessary in the reasonable judgment of any DOR Entity or Settling Insurer to satisfy their obligations, if any, under MMSEA, as well as the basis for the Trust's failure to report the payment.  In the event any DOR Entity or Settling Insurer informs the Trust that it disagrees with the Trust's decision not to report a Claim paid by the Trust, the Trust shall promptly report the payment to CMS.  All documentation relied upon by the Trust in making a determination that a payment did not have to be reported to CMS shall be maintained for a minimum of six (6) years following such determination.

e.      If the Trust is required to act as a reporting agent for any DOR Entity, or Settling Insurer, the Trust shall make the reports and provide the required certifications until such time as such DOR Entity or Settling Insurer determines, in its reasonable judgment, that it has no further legal obligation under MMSEA or otherwise to report any settlements, resolutions, payments, or liquidation determinations made by the Trust or contributions to the Trust.  Furthermore, following any permitted cessation of reporting, or if reporting has not previously commenced,  and if any DOR Entity or Settling Insurer reasonably determines, based on subsequent legislative, administrative, regulatory, or judicial developments, that reporting is required, then the Trust shall promptly perform its reporting obligations. .

f.      The Sections in this Agreement addressing MMSEA are intended to be purely prophylactic in nature, and do not imply, and shall not constitute an admission, that the DOR Entities and/or Settling Insurers have made payments pursuant to "applicable plans" within the meaning of MMSEA, or that they have any legal obligation to report any acts undertaken by the Trust or contributions to the Trust under MMSEA or any other statute or regulation.

g.      If CMS concludes that reporting done by the Trust is or may be deficient in any way, and has not been corrected to the satisfaction of CMS in a timely manner, or if CMS communicates to the Trust, any DOR Entity or Settling Insurer a concern with respect to the sufficiency or timeliness of such reporting, or there appears to any DOR Entity or Settling Insurer a reasonable basis for a concern with respect to the sufficiency or timeliness of such reporting or non-reporting based upon the information received or other credible information, then each DOR Entity and Settling Insurer shall have the right to submit its own reports to CMS under MMSEA, and the Trust shall provide to any Entity that elects to file its own reports such information in its possession or control as the electing party may reasonably require in order to comply with MMSEA, including the full reports filed by the Trust, without any redactions.  The DOR Entities and Settling Insurers shall

keep any information they receive from the Trust confidential and shall not use such information for any purpose other than meeting obligations under MMSEA.

h.  Notwithstanding any other provisions hereof, the Trust shall not be required to report until the Person on whose behalf the Trust is required to report shall have provided its Medicare Reporting Number, if one exists. Moreover, the Trust shall have no indemnification obligation under this Section to such Person for any penalty, interest, or sanction with respect to a Claim that may arise on account of such Person's failure timely to provide its Medicare Reporting Number, if one exists, to the Trust in response to a timely request by the Trust for such Medicare Reporting Number. However, nothing relieves the Trust from its reporting obligations with respect to each Person who provides the Trust with its Medicare Reporting Number. The Trust shall indemnify each DOR Entity and Settling Insurer for any failure to report payments to Medicare eligible Tort Claimants on behalf of Persons who have timely supplied Medicare Reporting Numbers, if any exists.

i.  Prior to remittance of funds to any Channeled Claimant or counsel therefor, the Trustee shall obtain in respect of any Channeled Claim a certification from the Claimant that said Claimant has or will provide for the payment and/or resolution of any obligations owing or potentially owing under MSP relating to such Channeled Claim. If the Trust receives no such certification, the Trust may withhold payment from any Claimant the funds sufficient to assure that all obligations owing or potentially owing under MSP relating to such Tort Claim are paid to CMS. The Trust shall provide a quarterly certification of its compliance with this Section to each DOR Entity and Settling Insurer, and permit reasonable audits by such Persons, no more often than annually, to confirm the Trust's compliance with this Section. For the avoidance of doubt, the Trust shall be obligated to comply with the requirements of this Section regardless of whether any DOR Entity or Settling Insurer elects to file its own reports under MMSEA.

j.  Compliance with the provisions of this Section shall be a material obligation of the Trust under the Plan, in favor of the DOR Entities and Settling Insurers under the Plan.

k.  The Trust shall defend, indemnify, and hold harmless the DOR Entities and Settling Insurers from any Medicare Claims reporting and payment obligations relating to its payment of Channeled Claims, including any obligations owing or potentially owing under MMSEA or MSP, and any Claims related to the Trust's obligations.

vv.  **Plan Effective Date**

The term "**Plan Effective Date**" means the date on which the Plan by its terms becomes effective and binding upon DOR and all Persons asserting Claims against DOR.

### ww. **Redacted Information**

The term "**Redacted Information**" means names, Social Security numbers other than the last four digits, health insurance claim numbers, taxpayer identification numbers, employer identification numbers, mailing addresses, telephone numbers, and dates of birth of the Tort Claimants, and the names of the guardians, conservators, and/or other personal representatives, as applicable.

### xx. **Reorganized Debtor**

The term "**Reorganized Debtor**" means DOR, on and after the Plan Effective Date.

### yy. **Settlement Amount**

The term "**Settlement Amount**" means the net sum of One Million One Hundred Thousand United States Dollars ($1,100,000). The Settlement Amount is the consideration for: the repurchase of the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect though the Effective Date, which are part of the Subject Insurance Policies; the full release of the Subject Insurance Policies with respect to or arising out of the Coverage Claims; and the Channeling and the Settling Insurer Supplemental Injunctions. The Settlement Amount will be allocated to the Subject Insurance Policies as follows: the full $750,000 Sexual Misconduct Liability Coverage sub-limit in Certificate No. 20W2012, $175,000 from the Sexual Misconduct Liability Coverage in Certificate No. 19W2012, and, $175, 000 from the Sexual Misconduct Liability Coverage in Certificate No. 18W2012.

### zz. **Settlement Approval Findings and Conclusions**

The term "**Settlement Approval Findings and Conclusions**" means findings of fact and conclusions of law pursuant to 11 U.S.C. §§ 363(b), (f), and (m) and Bankruptcy Rule 9019, entered concurrently with, but separately from, the Approval Order, as necessary for the Court to approve this Agreement, including the following:

> (i) DOR demonstrated sound business reasons for the settlement of its claims against Underwriters in the Insurance Coverage Action and the implementation of such settlement through: the sale of the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect through the Effective Date, to Underwriters; and, the full release of the Subject Insurance Policies with respect to the Coverage Claims.

> (ii) The Parties mediated their disputes over the Tort Claims and the Coverage Claims pursuant to the Mediation Order, beginning in March 2020;

> (iii) In the Mediation, the Parties negotiated extensively, at arms-length, and in good faith. Underwriters are purchasers in good faith of the Sexual Misconduct Liability Coverages in the Subject Insurance Policies as of the Effective Date, within the meaning of Bankruptcy Code § 363(m), and are entitled to all of the protections of that statute;

14080204.4

(iv)     Underwriters are *bona fide* good faith purchasers of the Sexual Misconduct Liability Coverages in the Subject Insurance Policies as of the Effective Date, for value;

(v)     The terms of the transactions contemplated by this Agreement, as well as the genesis and background of this Agreement, have been adequately disclosed to the Court;

(vi)     The terms and conditions of this Agreement (including the consideration to be realized by DOR's bankruptcy estate) are fair and reasonable;

(vii)     The transactions contemplated by this Agreement will benefit DOR's bankruptcy estate, its creditors and other stakeholders;

(viii)     The only potential holders of Interests in or against the Subject Insurance Policies are the DOR Entities and Persons who hold Claims against the DOR Entities, whose Claims might be covered by the Subject Insurance Policies;

(ix)     The DOR Entities are Parties, and hence are deemed to have consented to the sale within the meaning of Bankruptcy Code § 363(f)(2);

(x)     The Barred Claims are subject to *bona fide* dispute, hence the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect through the Effective Date, may be sold free and clear of such Claims pursuant to § 363(f)(4);

(xi)     All holders of Claims against the Subject Insurance Policies could be compelled, in a legal or equitable Action, to accept a money satisfaction of such Claims, therefore the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect through the Effective Date, may be sold free and clear of such Claims pursuant to § 363(f)(5);

(xii)     The compromises and settlements embodied in the Agreement have been negotiated in good faith, and are reasonable, fair, and equitable;

(xiii)     In light of:

a.     the balance between the possible litigation success and the settlement's future benefits;

b.     the likelihood of complex and protracted litigation and the consequent inconvenience, expense, and delay;

c.     the interests of creditors, including the relative benefits to each class of creditors;

d.     whether other parties in interest support the settlement;

e. the competency and experience of counsel supporting the settlement;

f. the experience and knowledge of the bankruptcy judge reviewing the settlement;

g. the nature and breadth of releases to be obtained by officers and directors; and

h. the extent to which the settlement is the product of arm's length bargaining,

this Agreement is fair and equitable and within the range of reasonable settlement terms;

(xiv) The Settlement Amount is fair, adequate, and reasonable consideration for: (a) the sale by the DOR Entities and the buy-back by Underwriters of the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect through the Effective Date; (b) a full release of the Subject Insurance Policies with respect to Coverage Claims; and (c) the Entities' Release;

(xv) DOR provided due and adequate notice of the: (a) sale of the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect through the Effective Date, and full release of the Subject Insurance Policies with respect to Coverage Claims; (b) terms and conditions of this Agreement; and (c) hearing before the Court to approve this Agreement and the above-mentioned sale, in accordance with Bankruptcy Rules 2002 and 6004 to all known and unknown Claimants, including by providing notice by publication to any Future Tort Claimants;

(xvi) It would be impractical to divide the Subject Insurance Policies amongst the DOR Entities and the holders of Tort Claims, therefore, to realize the value of the Subject Insurance Policies for DOR's bankruptcy estate and the Tort Claimants requires both the sale of Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect through the Effective Date, and a full release of the Subject Insurance Policies with respect to the Coverage Claims;

(xvii) The sale of the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect through the Effective Date, outside the ordinary course of business, satisfies the requirements of Bankruptcy Code § 363(b);

(xviii) The sale of the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect through the Effective Date, free and clear of the Interests of all Persons, satisfies the requirements of Bankruptcy Code § 363(f);

(xix)    To the extent any Claimant may have any legal or equitable right to assert a Tort Claim (along with any Contribution, Coverage, Direct Action, Extra-Contractual, Indirect, and Medicare Claims related thereto), either directly against the Subject Insurance Policies that were in effect through the Effective Date, or indirectly by asserting such Claim against any DOR Entity, such Claims are deemed to be (a) "interests" as that term is used in Bankruptcy Code § 363(f); and (b) "Interests" herein; and

(xx)    The Agreement may be approved pursuant to Bankruptcy Rule 9019(a).

### aaa.    Settlement Payment Date

The term "**Settlement Payment Date**" means the day sixty (60) days after the Effective Date, *provided, however,* that if such date is not a Business Day, the Settlement Payment Date shall be the next Business Day.

### bbb.    Settling Insurer Supplemental Injunction

The term "**Settling Insurer Supplemental Injunction**" means an order of the Court enjoining all Enjoined Claims by all Persons who now, or in the future may, hold such Claims against the Settling Insurers, pursuant to Bankruptcy Code § 105 or other provision of the Bankruptcy Code or applicable law stating, *verbatim*, unless Underwriters DOR agree to modified language:

**(a) Supplemental Injunction Preventing Prosecution of Claims Against Settling Insurers. Pursuant to Sections 105(a) and 363 of the Bankruptcy Code and in consideration of the undertakings of the Settling Insurers pursuant to this Agreement, including the DOR Entities' sale of the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect through the Effective Date, to Underwriters free and clear of all interests pursuant to Section 363(f) of the Bankruptcy Code and the full release of the Subject Insurance Policies with respect to the Coverage Claims:**

**1.    Any and all Persons who have held, now hold or who may in the future hold any Interests (including all debt holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, Tort Claimants, perpetrators, and all others holding Interests of any kind or nature whatsoever, including those Claims released or to be released pursuant to the Insurance Settlement Agreements) against any of the Settling Insurers, or any other Person covered or allegedly covered under the Subject Insurance Policies, including (i) Claims relating to the Subject Insurance Policies, including Survivor Claims, Direct Action Claims, Indirect Claims, and Released Claims; (ii) the payment of any of the Claims identified in (i), including Contribution Claims and Medicare Claims; (iii) Extra-Contractual Claims; and (iv) Future Tort Claims, are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly,**

to assert, enforce or attempt to assert or enforce any such Interest against the Settling Insurers or the Subject Insurance Policies:

**2.      Commencing or continuing in any manner any action or other proceeding against the Settling Insurers or the property of the Settling Insurers;**

**3.      Enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, award, decree or order against the Settling Insurers or the property of the Settling Insurers;**

**4.      Creating, perfecting, or enforcing any lien of any kind against the Settling Insurers or the property of the Settling Insurers;**

**5.      Asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due the Settling Insurers or the property of the Settling Insurers; and**

**6.      Taking any action, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan.**

**For the avoidance of doubt, this Settling Insurer Supplemental Injunction bars the above-referenced actions against the Settling Insurers and the Subject Insurance Policies, but against no other Person or thing.  The foregoing injunctive provisions are an integral part of this Plan and are essential to its implementation.**

ccc.    **Settling Insurers**

The term "**Settling Insurers**" means, Underwriters and all other insurers of the DOR Entities, which settle, after the Petition Date, Claims for insurance coverage brought against them by any DOR Entity, and which obtain the protection of the Settling Insurer Supplemental Injunction.

ddd.    **Subject Insurance Policies**

The term "**Subject Insurance Policies**" means the following Certificates subscribed by Underwriters:

- Certificate No. 18W2012, effective for the period from July 1, 2018 to July 1, 2019
- Certificate No. 18XS133, effective for the period from July 1, 2018 to July 1, 2019

- Certificate No. 19W2012, effective for the period from July 1, 2019 to July 1, 2020
- Certificate No. 19XS133, effective for the period from July 1, 2019 to July 1, 2020

- Certificate No. 20W2012, effective for the period from July 1, 2020 to July 1, 2021
- Certificate No. 20XS133, effective for the period from July 1, 2020 to July 1, 2021
      (both with Sexual Misconduct Liability Coverage extended to September 1, 2021)

14080204.4

- Certificate No. 21W2012, effective for the period from July 1, 2021 to July 1, 2022
- Certificate No. 21XS133, effective for the period from July 1, 2021 to July 1, 2022
  (both with Sexual Misconduct Liability Coverage incepting on September 1, 2021)

### eee.  Termination Event

The term "**Termination Event**" means that (i) the Court has entered an order that (A) is contrary to or inconsistent with the Approval Order, or that denies approval of this Agreement; (B) is contrary to or inconsistent with the Confirmation Order, or that denies confirmation of the Plan; or (C) confirms a plan of reorganization other than the Plan (hereafter "Inconsistent Order"), and either (X) the Inconsistent Order has become a Final Order or (Y) there was an appeal of the Inconsistent Order and eighteen months have elapsed from the date of the appeal and the Inconsistent Order has not been reversed or overturned by the appellate court; or (ii) any appellate court whose decisions are binding upon the Court issued a decision or order, before the Confirmation Order became a Final Order, that would prevent the entry or effectiveness of the Channeling Injunction or the Settling Insurer Supplemental Injunction. If the Parties disagree as to whether any such decision or order would prevent the entry or effectiveness of the said injunctions, the Parties shall ask the Court to decide the issue.

### fff.  Trust

The term "**Trust**" means the trust to be established under the Plan, which will assume liability for, and be established, pursuant to the Plan and, if applicable, Bankruptcy Code § 105, to pay, in whole or in part, Channeled Claims.

### ggg.  Trust Agreement

The term "**Trust Agreement**" means, collectively, any agreement establishing the Trust and the requirements for its administration, and any agreement setting forth procedures for the Trust to pay Channeled Claims, filed as exhibits to the Plan, as may be amended, together with such additional documents as may be executed in connection with the Trust Agreement.

### hhh.  Trustee

The term "**Trustee**" means the Person appointed to administer the Trust, in accordance with the terms of the Plan.

### iii.  Underwriters

The term "**Underwriters**" means:

(i)    All underwriters, members, or Names at Lloyds, London (including former underwriters, members, or Names) who through their participation in syndicates that severally subscribed, each in his, her or its own proportionate share, to one or more of the Subject Insurance Policies. Further, it is expressly understood that the aforementioned are Underwriters only in their capacity as subscribers of the Subject Insurance Policies;

(ii)     All Insurance Companies that severally subscribed, each in its own proportionate share, to one or more of the Subject Insurance Policies, including without limitation, HDI Global Specialty SE and Convex Insurance UK Limited. It is expressly understood that the Insurance Companies are Underwriters only in their capacity as subscribers of the Subject Insurance Policies;

(iii)     All of the Affiliates and Agents of the Persons set forth in Sections 1.iii(i) and (ii) above; and

(iv)     Each of the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, though, or in concert with them, in their capacities as such.

### jjj.     Underwriters Bill of Sale

The term "**Underwriters Bill of Sale**" means a fully-executed bill of sale evidencing the sale, assignment, and transfer of the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect through the Effective Date, to Underwriters free and clear of all Interests of all Persons, including the Tort Claimants and the DOR Entities.

## 2.     Payment of the Settlement Amount

**a.**     On or prior to the Settlement Payment Date, Underwriters agree to transfer to the Trust their respective, several, allocated shares of the Settlement Amount.

**b.**     The Settlement Amount is net of, and not subject to, any deductibles or retentions.

**c.**     The payment shall be made by an electronic funds transfer, or as otherwise agreed upon, payable in accordance with DOR's prior written instruction.

## 3.     Several Liability

The obligations of each Underwriter are several and not joint. The DOR Entities agree that no Underwriters shall not be liable for any settlement amount allocable to any other Person. No DOR Entity shall seek to recover from Underwriters any amount in excess of the Settlement Amount.

## 4.     Mutual Releases

### a.     By DOR Entities

(i)     Upon the Trust's receipt of the Settlement Amount, the Entities' Release shall become immediately effective without further acts by any Person.

(ii)     It is the intention of the DOR Entities to: (a) reserve no rights or benefits whatsoever under or in connection with the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect through the

27

Effective Date; and (b) reserve no rights or benefits under or in connection with the Subject Insurance Policies in connection with the Coverage Claims, other than the right to receive the Settlement Amount under this Agreement and to assure Underwriters their peace and freedom from such Interests and from all assertions of rights in connection with such Interests, *provided, however,* the Entities' Release does not release, and nothing in this Agreement shall affect the right of the DOR Entities, or the Trust, as applicable, to assert and pursue, Claims against and to collect from insurers other than those released under the Entities Release, and no Claims are released with respect to such Persons.

(iii)     Upon the DOR's receipt of the Settlement Amount: (a) any and all rights, duties, responsibilities, and obligations of Underwriters created by or in connection with the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect through the Effective Date are terminated; and (b) any and all rights, duties, responsibilities, and obligations of Underwriters created by or in connection with the Subject Insurance Policies with respect to or arising out of the Coverage Claims, are terminated.

(iv)     Each DOR Entity signing this Agreement, is, among other things, (a) releasing all Released Claims, including Claims that it does not know or suspect to exist in its favor, which, if known by such DOR Entity, might have materially affected its settlement with Underwriters, and (b) expressly waiving all rights it might have under any federal, state, local, or other law or statute that would in any way limit, restrict, or prohibit such general release.

(v)     Except with respect to any material breach of any representation, warranty or covenant by Underwriters set forth in this Agreement, each DOR Entity expressly assumes the risk that acts, omissions, matters, causes, or things may have occurred, which it does not know or does not suspect to exist.  To the fullest extent permitted by applicable law, each DOR Entity hereby waives the terms and provisions of any statute, rule or doctrine of common law which either: (a) narrowly construes releases purporting by their terms to release claims in whole or in part based upon, arising from, or related to such acts, omissions, matters, causes or things; or (b) which restricts or prohibits the releasing of such Claims.

(vi)     Nothing in the foregoing shall release Underwriters (or any of them) from their obligations under this Agreement including the obligation to pay the Settlement Amount.

**b.     By Underwriters**

(i)     Upon the DOR's receipt of the Settlement Amount, Underwriters and any subsequently appointed trustee or representative acting for Underwriters shall be deemed to remise, release, covenant not to sue, and forever discharge each DOR Entity from and against all Tort Claims relating to the Subject Insurance Policies as they apply to the Tort Claims.

(ii)     Each Person released under the Entities' Release shall reserve no rights or benefits whatsoever under or in connection with: the Sexual Misconduct Liability Coverages in the Subject Insurance Policies that were in effect through the Effective Date; and (b) the Subject Insurance Policies with respect to or arising out of the Coverage Claims.

(iii)    Except with respect to any material breach of any representation, warranty or covenant by any DOR Entity set forth in this Agreement, each Underwriter expressly assumes the risk that acts, omissions, matters, causes, or things may have occurred, which it does not know or does not suspect to exist.  To the fullest extent permitted by applicable law, each Underwriter hereby waives the terms and provisions of any statute, rule or doctrine of common law which either: (a) narrowly construes releases purporting by their terms to release Claims in whole or in part based upon, arising from, or related to such acts, omissions, matters, causes or things; or (b) which restricts or prohibits the releasing of such Claims.

## 5.     Indemnification

**a.**     From and after the DOR's receipt of the Settlement Amount, the Trust shall indemnify and hold harmless Underwriters in respect of any and all Channeled and Enjoined Claims.  This indemnification includes Claims made by Persons over whom the Trust does not have control, including the DOR Entities, former subsidiaries, predecessors in interest, sellers or purchasers of assets, or any other Person who asserts Claims against or under, or Interests in or to, the Subject Insurance Policies.

**b.**     Underwriters shall have the right to defend, with counsel of their choice, all Claims identified under Section 5.a.  Underwriters may begin the defense of any Claim upon receipt of such a Claim.  Underwriters agree to notify the Trust as soon as practicable of Claims identified under Section 5.a. and of its choice of counsel.

**c.**     The Trust shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by Underwriters in defending such Claims. Underwriters shall defend any such Claim in good faith.  In defense of any such Claim, Underwriters may settle or otherwise resolve a Claim with the prior consent of the Trust, which consent shall not be unreasonably withheld.

## 6.     Bankruptcy Obligations

**a.**     DOR shall file a motion under Bankruptcy Rule 9019 and section 363 of the Bankruptcy Code, seeking entry of the Approval Order and the Settlement Approval Findings and Conclusions.  DOR shall provide to Underwriters an initial draft of the proposed form of Approval Order, Settlement Approval Findings and Conclusions, and Bar Order at least seven (7) days before DOR submits the foregoing for approval of this Agreement to the Court, so that Underwriters may provide comments and suggestions.  In the event that DOR makes material revisions to any of the foregoing documents, then, as soon as possible, DOR shall provide a copy of such material revisions to Underwriters.  Underwriters reserve the right to object to, *inter alia*, (i) any proposed order that does not satisfy all of the requirements of the

definition of Approval Order set forth in Section 1.e., or (ii) any proposed findings and conclusions that do not satisfy all of the requirements of the definition of Settlement Approval Findings and Conclusions set forth in Section 1.zz.

**b.** Unless the Court denies entry of the Approval Order or this Agreement is otherwise terminated pursuant to its terms, DOR shall file a Plan and seek entry of a Confirmation Order and the Confirmation Findings and Conclusions. DOR shall provide to Underwriters an initial draft of the proposed form of Confirmation Order, and Confirmation Findings and Conclusions, at least fourteen (14) days before DOR submits the foregoing to the Court, so that Underwriters may provide comments and suggestions. In the event that DOR makes material revisions to any of the foregoing documents, then, as soon as possible, DOR shall provide a copy of such material revisions to Underwriters. Underwriters reserve the right to object to, *inter alia*, (i) any proposed order that does not satisfy all of the requirements of the definition of Confirmation Order set forth in Section 1.s, or the definition of Bar Order set forth in Section 1.k or any proposed findings of fact and conclusions of law that do not satisfy all the requirements of the definition of Confirmation Findings and Conclusions in Section 1.r.; and (ii) any proposed plan of reorganization that does not satisfy all of the requirements of the definition of Plan set forth in Section 1.uu (hereafter "Non-Compliant Plan"). If DOR proposes a Non-Compliant Plan, then Underwriters may contest such plan, and DOR shall not request a hearing date on confirmation of a Non-Compliant Plan less than thirty (30) days after the date such plan is filed in the Court.

**c.** DOR shall serve Bankruptcy Notice of the initial hearing to approve this Agreement and on confirmation of the Plan and the time for filing objections thereto. The proposed form of notice shall be submitted to Underwriters for their review and comment no later than seven (7) days prior to the actual service of notice. If the initial hearing to approve this Agreement or to confirm the Plan is adjourned, DOR shall not be required to provide Bankruptcy Notice of such adjourned hearing and shall only be required to file a notice of such adjournment on the docket in the Bankruptcy Case and provide such other and further notice as the Court may direct.

**d.** Upon the occurrence of the Plan Effective Date, DOR shall file a notice thereof on the docket in the Bankruptcy Case and shall serve a copy of such notice upon counsel for Underwriters.

**e.** In the event that any Person attempts to prosecute a Barred Claim or a Claim that, upon entry of the Approval Order, would be a Barred Claim,

(i) against Underwriters (or any of them), then promptly following notice from Underwriters, DOR shall file a motion and supporting papers seeking an order from the Court, pursuant to Bankruptcy Code §§ 105(a) and/or 362(b), as applicable, staying such Claims until the entry of the Approval Order, or, alternatively, this Agreement is terminated under Section 9. However, if DOR is unable to obtain a stay of such Claim, then Underwriters shall, subject to the terms, conditions and any applicable limits and retentions of the Subject Insurance Policies, defend such Claims, and may either settle them (subject to DOR's prior written consent) or litigate them to judgment, and the applicable DOR Entities shall

assist and cooperate fully with the London Market Insurers in such defense. All amounts expended by Underwriters in settlement or defense of such Claims pursuant to this Section 6.e.(i) shall, if paid before the occurrence of the Settlement Payment Date, reduce and be set off against the obligations of the Underwriters to pay the Settlement Amount set forth in this Agreement; or

(ii)  against any DOR Entity, then promptly following notice from such DOR Entity, DOR shall file a motion and supporting papers seeking an order from the Court, pursuant to Bankruptcy Code §§ 105(a) and/or 362(b), as applicable, staying such Claims until the entry of the Approval Order, or, alternatively, this Agreement is terminated under Section 9. If the motion for the stay is not granted, the defendant DOR Entities shall defend such Claims and use their best efforts to prevent the entry of a default and Underwriters shall assist and cooperate fully in such defense. In such event, the Underwriters' obligations relating to such litigation shall be determined by, and subject to, the terms, conditions and any applicable limits and retentions of the Subject Insurance Policies. All amounts paid by the Underwriters to indemnify a DOR Entity pursuant to this Section 6.e.(ii) shall, if paid before the occurrence of the Settlement Payment Date, reduce and be set off against the obligations of the Underwriters to pay the Settlement Amount set forth in this Agreement. All amounts paid by a DOR Entity to defend against, settle, or otherwise satisfy any liability with respect any such Claim shall, if paid before the occurrence of the Settlement Payment Date, be deducted from the Settlement Amount and paid as reimbursement directly to such DOR Entity.

(iii)  If this Agreement is ultimately terminated, all amounts respectively paid by each Underwriter pursuant to Section 6.e.(i) or (ii) shall be credited against its respective obligations under the Subject Insurance Policies and, if the Settlement Payment Date has occurred, DOR shall reimburse Underwriters the full Settlement Amount.

7.  **Representations and Warranties**

a.  DOR represents and warrants that the notice required under the definition of Bankruptcy Notice includes all Claimants whose names and addresses are known to DOR or are readily ascertainable.

b.  Each DOR Entity represents and warrants that it has the authority to execute this Agreement as its binding and legal obligation, subject in the case of DOR, to receiving Court approval of this Agreement.

c.  Each Underwriter represents and warrants to DOR that (i) it has sufficient assets to pay the Settlement Amount in full and (ii) it is not now, nor have ever been, the subject of any bankruptcy or insolvency proceeding in any jurisdiction.

d.  Each Party represents and warrants that the Persons signing this Agreement on its behalf are authorized to execute this Agreement.

31

**e.** Each individual signing this Agreement on behalf of a Party represents and warrants that he or she has the right, power, legal capacity, and authority to enter into this Agreement on behalf of such Party and bind such Party to perform each of the obligations specified herein.

## 8. Reduction Clause

The Plan shall provide the following, *verbatim*, unless Underwriters and DOR agree to modified language:

**a. Litigation/Settlement Between an Alleged Insured or Tort Claimant and Non-Settling Insurers**

(i) The Channeling Injunction shall channel all Contribution Claims to the Trust.

(ii) If, for any reason any court does not recognize the channeling of the Contribution Claims of Non-Settling Insurers to the Trust, or such Claims are not channeled for any reason, then the following shall apply:

(A) Underwriters (or any one of them) shall retain their Contribution Claims, subject to the following provisions; provided, however, that:

(i) Underwriters shall not pursue any Contribution Claims against any Non-Settling Insurer (A) that asserts a Contribution Claim solely against the Trust; (B) whose Contribution Claim is satisfied and extinguished entirely by the application of this paragraph 8.a.(ii)(A), or (C) that does not assert a Contribution Claim against them;

(ii) If a Non-Settling Insurer asserts its Contribution Claim only against the Trust, then the Underwriters shall assign any Contribution Claims they may hold against such Non-Settling Insurer to the Trust, and the Trust shall be free to assert such Contribution Claims against such Non-Settling Insurer;

(iii) If a Non-Settling Insurer releases its Contribution Claims, if any such exist, that it may have against any of the Underwriters, then such Underwriters shall release their Contribution Claims against such releasing Non-Settling Insurer.

(iv) If a Non-Settling Insurer asserts a Contribution Claim against any of the Underwriters, and

  a. the Trust fully indemnifies such Underwriters, then the Underwriters shall assign their Contribution Claim to the Trust; or

b. the Trust partially, but not fully, indemnifies the Underwriters for such Claim, then the Underwriters shall retain their Contribution Claims and may assert them against the Non-Settling Insurer asserting the Contribution Claim against the Underwriters. Any recovery by the Underwriters exceeding the amount necessary to satisfy the Trust's full indemnity obligation plus litigation costs shall be turned over to the Trust.

(B)     In any Action, including the Insurance Coverage Action, involving a DOR Entity, the Reorganized Debtor, or the Trust (hereafter collectively, "Alleged Insured") or a Tort Claimant, as applicable, and one or more Non-Settling Insurers, where a Non-Settling Insurer has asserted, asserts, or could assert any Contribution Claim against Underwriters, then any judgment or award obtained by such Alleged Insured or Tort Claimant against such Non-Settling Insurer shall be automatically reduced by the amount, if any, Underwriters are liable to pay such Non-Settling Insurer as a result of its Contribution Claim, so that the Contribution Claim is thereby satisfied and extinguished entirely (hereafter "Reduction Amount"). In any Action involving an Alleged Insured or Tort Claimant against a Non-Settling Insurer, where Underwriters are not a party, such Alleged Insured or Tort Claimant shall obtain a finding from that court or arbitrator(s), as applicable, of the Reduction Amount before entry of judgment against such Non-Settling Insurer. In the event that such a reduction is not made as described above, then any Contribution Claim by any Non-Settling Insurer against Underwriters shall be reduced by the Reduction Amount, as determined by the court or arbitrator(s) in which such Contribution Claim is filed. Underwriters shall be required to cooperate in good faith with DOR and/or the Trust to take commercially reasonable steps to defend against any Contribution Claim. In the event that application of the Reduction Amount eliminates the Non-Settling Insurer's Contribution Claim, then such Non-Settling Insurer shall fully reimburse Underwriters their costs and expenses, including legal fees, incurred in responding to the Contribution Claim Action, including all costs, expenses and fees incurred in seeking relief from the Court.

(C)     If an Alleged Insured or Tort Claimant and a Non-Settling Insurer enter into an agreement settling one or more Claims relating to Abuse, such agreement shall include a provision whereby such Non-Settling Insurer releases Contribution Claims against Underwriters so long as Underwriters release their Contribution Claims against such Non-Settling Insurer. If such settlement agreement fails to include such a release provision, and the Non-Settling Insurer has asserted, asserts, or could assert a Contribution Claim against Underwriters, then any settlement amount in such settlement agreement shall be deemed automatically reduced by the Reduction Amount. In such event, the settling parties shall obtain a finding from the applicable court or arbitrator(s) of the Reduction Amount. If (a) the settlement agreement was entered into without litigation or arbitration such that no judge or arbitrator can determine the Reduction Amount, or (b) such a reduction is not otherwise made as described above, then any Contribution Claim by any Non-Settling Insurer against Underwriters shall be reduced by the Reduction Amount,

as determined by the court or arbitrator(s) in which such Contribution Claim is filed. Underwriters shall be required to cooperate in good faith with DOR and/or the Trust to take commercially reasonable steps to defend against any Contribution Claim by a Non-Settling Insurer. In the event that the reduction eliminates the Non-Settling Insurer's Contribution Claim, then such Non-Settling Insurer shall fully reimburse Underwriters their costs and expenses, including legal fees, incurred in responding to the Contribution Claim Action, including all costs, expenses and fees incurred in seeking relief from the Court.

**b.      Application of the Reduction**

(i)      To ensure that the reduction contemplated in this Section 8 is accomplished, Underwriters shall be entitled to: (i) notice, pursuant to Section 21, within a reasonable time of the initiation of any future Action against or future settlement negotiations with any Non-Settling Insurer, and periodic notices thereafter on at least an annual basis of the status of such Action or negotiations; (ii) the opportunity to participate in the Action or settlement negotiations, but only to the extent necessary to accomplish the reduction contemplated in this Section 8; (iii) the reasonable cooperation of the applicable Alleged Insured, at the sole cost and expense of Underwriters, so that Underwriters can assert this Section as a defense in any Action against any of them for any Contribution Claim; and (iv) have the court or appropriate tribunal issue such orders as are necessary to effectuate the judgment, award, or settlement reduction in order to protect Underwriters from any Contribution Claim. The notice required above shall be given by (A) the Alleged Insured that is a party to such Action or settlement negotiations; or (B) if no Alleged Insured is such a party, the Non-Settling Insurer that is a party to such Action or settlement negotiations; or (C) if no Alleged Insured or Non-Settling Insurer is a party to such Action or settlement negotiations, the Tort Claimant bound by the Plan.

**c.**      The Trust shall use commercially reasonable efforts to obtain, from all Settling Insurers, agreements similar to those contained in Section 8(a)(ii)(C).

**d.**      The Trust shall use its best efforts to obtain, from all Settling Insurers, agreements similar to those contained in this Section 8.

## 9.      Termination of Agreement

**a.**      The Parties may terminate this Agreement in writing upon mutual assent.

**b.**      Upon the occurrence of a Termination Event, each of DOR and Underwriters may terminate this Agreement upon thirty (30) days' written notice to the other Parties, *provided, however* (i) such notice must be provided no later than forty-five (45) days following the applicable Termination Event, (ii) any notice terminating this Agreement issued Underwriters as a result of a Termination Event shall, unless DOR agrees otherwise in writing, be effective to terminate this Agreement as to Underwriters, and (iii) no Party shall have the

right to terminate this Agreement on account of the occurrence (or alleged occurrence) of a Termination Event once the DOR has received the Settlement Amount.

In the event of termination pursuant to this Section 9, unless the Parties agree otherwise in writing, this Agreement shall be void *ab initio* and all Parties shall retain all of their Interests relating to the Subject Insurance Policies as if this Agreement never existed; provided, however, that any amounts expended by the Underwriters pursuant to Section 6.e. of this Agreement shall be credited against the obligations of the Underwriters under the Subject Insurance Policies.

## 10.    Treatment of Perpetrators

Nothing in this Agreement overrides the treatment in the Plan of individuals who perpetrated an act of Abuse that forms the basis for a Tort Claim.

## 11.    Exclusion of religious orders, dioceses, and other archdioceses

No religious orders, diocese or archdiocese, or any other Person, other than DOR and the entities listed on Attachment A, is a DOR Entity, except to the extent such Person is insured under the Subject Insurance Policies.

## 12.    Reasonably Equivalent Value

**a.**     This Agreement was bargained for and entered into in good faith and as the result of arms-length negotiations;

**b.**     Based on their respective independent assessments, with the assistance and advice of counsel, of the probability of success, the complexity, the delay in obtaining relief, and the expense of maintaining the Insurance Coverage Action, the payments received by the DOR Entities pursuant to this Agreement constitute a fair and reasonable settlement of the Released Claims;

**c.**     The payments and other benefits received under this Agreement by the DOR Entities constitute reasonably equivalent value for the Entities' Release, indemnity, and other benefits received by Underwriters under this Agreement; and

**d.**     Subject to execution of this Agreement, the entry of the Approval Order and Confirmation Order, and the DOR's receipt of the Settlement Amount, this Agreement constitutes a full and final resolution of all issues in the Insurance Coverage Action.

## 13.    Confidentiality

**a.**     Except as necessary to obtain approval of this Agreement in the Court, the Parties agree that all matters relating to the negotiation of this Agreement shall be confidential and are not to be disclosed except by order of court, or written agreement of the Parties, except that, provided recipients agree to keep such information confidential, this Agreement may be disclosed to: (i) reinsurers of Underwriters directly or through intermediaries; (ii) outside auditors or accountants of any Party; (iii) representatives of a non-party insurer subscribing or

allegedly subscribing one or more of the Subject Policies, which insurer is, has been or may become insolvent in the future, including any liquidators, provisional liquidators, scheme administrators, trustees, or similarly empowered Persons acting for such insurer. This Agreement may also be disclosed, as required, to the Inland Revenue, the Internal Revenue Service or other U.S. or U.K. governmental authority that properly requires disclosure, or as otherwise required by law. The Parties acknowledge and agree that a copy of this Agreement will be publicly filed on the docket and provided to parties in interest in the Bankruptcy Case, without obligation of confidentiality or restrictions on further disclosure.

      **b.** In the event a private litigant, by way of document request, interrogatory, subpoena, or questioning at deposition or trial, attempts to compel disclosure of anything protected by this section from a Party, such Party shall decline to provide the requested information on the ground that this Agreement restricts such disclosure. In the event such private litigant seeks an order from any court or governmental body to compel such disclosure, or in the event that a court, government official, or governmental body (other than the Inland Revenue or Internal Revenue Service) requests or requires disclosure of anything protected by this paragraph, the Party from whom disclosure is sought shall promptly give written notice to the other Parties, and shall promptly provide copies of all notice papers, orders, requests, or other documents in order to allow each Party to take such protective steps as may be appropriate. Notice shall be made under this paragraph to the persons identified in Section 21.

      **c.** Material protected by this section shall be deemed to fall within the protection afforded compromises and offers to compromise by Rule 408 of the Federal Rules of Evidence and similar provisions of state law or state rules of court.

## 14.    <u>Third-Party Beneficiaries</u>

The Trust and the Trustee are intended third-party beneficiaries of this Agreement. Except as set forth in the preceding sentence, there are no other third-party beneficiaries of this Agreement.

## 15.    <u>Co-operation</u>

For a period of three (3) years following the Effective Date, the DOR Entities will undertake commercially reasonable acts, at the sole cost and expense of Underwriters, to co-operate with Underwriters in connection with their respective reinsurers, including responding to reasonable requests for information and meeting with representatives of reinsurers, *provided, however*, that the foregoing shall not require the DOR Entities to disclose any information which is subject to the attorney-client or other legally recognized privilege. Furthermore, the Parties shall use their reasonable best efforts and cooperate as necessary or appropriate to effect the transactions contemplated by this Agreement.

## 16.    <u>Non-Prejudice and Construction of Agreement</u>

      **a.** This Agreement is intended to be and is a compromise between the Parties and shall not be construed as an admission of coverage under the Subject Insurance Policies nor shall this Agreement or any provision hereof be construed as a waiver, modification, or retraction of the positions of the Parties with respect to the interpretation and application of the Subject Insurance Policies.

**b.** This Agreement is the product of informed negotiations and involves compromises of the Parties' previously stated legal positions. Accordingly, this Agreement does not reflect upon the Parties' views as to rights and obligations with respect to matters or Persons outside the scope of this Agreement. This Agreement is without prejudice to positions taken by Underwriters with regard to other insureds, and without prejudice with regard to positions taken by any DOR Entity with regard to other insurers. Except for the express references to the Third-Party Beneficiaries, the Parties specifically disavow any intention to create rights in third parties under or in relation to this Agreement.

**c.** This Agreement is the jointly drafted product of arms'-length negotiations between the Parties with the benefit of advice from counsel, and the Parties agree that it shall be so construed. As such, no Party will assert that any ambiguity in this Agreement shall be construed against another Party.

**d.** If any provision of the Plan, the Trust Agreement, or trust distribution procedures proposed thereunder conflicts with or is inconsistent with this Agreement in any way whatsoever, then the provisions of this Agreement shall control and take precedence. Neither the Plan nor the Trust Agreement shall be construed or interpreted to modify or affect any rights or obligations of Underwriters under this Agreement.

## 17. <u>No Modification</u>

No change or modification of this Agreement shall be valid unless it is made in writing and signed by the Parties. Any attempted change or modification in violation of this Section shall be void *ab initio*.

## 18. <u>Execution</u>

There will be three signed originals of this Agreement.

## 19. <u>Governing Law</u>

This Agreement shall be governed by and shall be construed in accordance with the laws of New York.

## 20. <u>Notices</u>

Unless another person is designated, in writing, for receipt of notices hereunder, notices to the respective Parties shall be sent to the Persons listed on Attachment B.

## 21. <u>Integration</u>

This Agreement, including the attachments, constitutes the entire Agreement amongst Underwriters and the DOR Entities, with respect to the subject matter hereof, and supersedes all discussions, agreements and understandings, both written and oral, amongst the Parties with respect thereto.

14080204.4

**IN WITNESS WHEREOF**, the Parties have executed this Agreement by their duly authorized representatives.

The Underwriters have respectively designated Clyde & Co US LLP, as their attorneys-in-fact for the limited purpose of executing this Agreement on their behalf with express authority to do so.

[Signature Pages Follow]

14080204.4

Signed: _____

The Diocese of Rochester

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Lloyd's Underwriters

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

HDI Global Specialty SE

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Convex Insurance UK Limited

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Cathedral Community of Rochester NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Roman Catholic Parish of St. Frances Xavier Cabrini

Name Printed: _____

Title: _____

Date: _____ 2022

Signed:  _____

Peace of Christ Roman Catholic Parish of Rochester,
NY

Name Printed: _____

Title:  _____

Date:  _____ 2022

Signed: _____

The Church of the Holy Apostles, Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Monica Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Anne's Church of Rochester

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Church of the Blessed Sacrament, Rochester,
N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Boniface Church, Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Stanislaus Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Immaculate Conception/St. Bridget, Rochester

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Kateri Tekakwitha Roman Catholic Parish

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of St. Charles Borromeo

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Emmanuel Church of the Deaf of the Diocese of
Rochester

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. George Roman Catholic Lithuanian Church, Inc.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Parish of the Holy Family, Gates, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Holy Cross Church of Rochester, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. John the Evangelist Church Corp.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Lawrence Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Mark's Church of Rochester, New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Mary's Church Society, Inc.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Our Lady of Lourdes Church of Brighton

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Our Mother of Sorrows Church

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Mary's French Church Society (a/k/a Our Lady of
Victory)

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of Our Lady Queen of Peace of Rochester,
N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Pius Tenth Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Theodore's Church of Gates, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Thomas More Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Catholic Parish of Saints Isidore and Maria
Torriba

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Alphonsus Catholic German Church

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Aloysius Church, Auburn, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Catholic Church of the Holy Family, Auburn,
N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Mary's Catholic Church, Auburn, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Saints Mary and Martha Roman Catholic Parish
Cayuga County, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Sacred Heart Church of Auburn, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Ann's Church, Owasco, Cayuga County, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Good Shepherd Catholic Community, Aurora

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Agnes Church Society, Avon, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. John Vianney Roman Catholic Parish, Steuben
County, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of the Nativity of the Blessed Virgin Mary,
Brockport, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Martin De Porres

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Benedict Roman Catholic Parish Ontario County, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Peter's Roman Catholic Parish, Ontario County

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Joseph the Worker Roman Catholic Parish, Wayne
County

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Margaret's Church of Conesus Lake, Livonia, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

All Saints, Corning

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Church of St. John Fisher of the Town of Huron,
New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of St. Jerome, East Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Saint Cecilia's Roman Catholic Church Society

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. John the Baptist Catholic Church, Elmira, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Parish of the Most Holy Name of Jesus

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of the Assumption, Fairport, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of the Resurrection, Perinton, New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of St. John of Rochester of Perinton, New
York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Church of the Holy Cross of Dryden, New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Luke the Evangelist Roman Catholic Church
Society of Livingston County

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Our Lady of Peace Roman Catholic Church of
Geneva, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Hilary's Catholic Church, Genoa, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Anthony's Catholic Church of Groton, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of the Holy Name, Groveland, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Church of St. Elizabeth Ann Seton, The Diocese
of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Marianne Cope Roman Catholic Parish, Monroe
County NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of St. Leo, Hilton, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Mary's Church of Honeoye Flats, N.Y (St. Mary - Our Lady of the Hills)

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Paul of the Cross Church, Honeoye Falls, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Our Lady of the Valley

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of St. Mary Our Mother, Horseheads, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Catherine of Siena Church

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Immaculate Conception Church, Ithaca, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

All Saints Church Corporation, Ludlowville, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Rose Roman Catholic Church

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Matthew Catholic Church Society

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Michael's Church Society, Livonia Center, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Parish of St. Katharine Drexel, Palmyra

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Catherine's Roman Catholic Church, Mendon, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Michael's Church, Montezuma, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Michael's Church, Newark, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Christopher of Chili, New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Benedict's Mission Church of Odessa, New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Maximilian Kolbe Catholic Church Society of
Wayne County

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Parish of Mary, Mother of Mercy, Tompkins
County, New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Blessed Trinity, Owego

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Patrick's Roman Catholic Church Society of
Owego, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Joseph's Catholic Church of Penfield, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Our Lady of the Lakes Catholic Community

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Raphael's Church, Piffard, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of the Transfiguration, Diocese of Rochester,
New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Louis Church of Pittsford, N.Y

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. John the Evangelist Church Society, Spencerport, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Patrick's Church of Victor, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

**St. Frances & St. Clare Roman Catholic Parish, Seneca County, NY**

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Mary's of the Lake Roman Catholic Church
Society

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Holy Family Catholic Community

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Roman Catholic Church of the Most Holy Trinity
at Webster, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Paul's Roman Catholic Church of Webster, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of the Holy Spirit of Penfield, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Our Lady of the Snow, Weedsport

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Joseph's Church of West Bloomfield

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Rita's Church of West Webster, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Catholic Community of the Blessed Trinity of Wolcott, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Catholic Charities of the Diocese of Rochester

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Rochester Catholic Press Association, Inc.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

DePaul Community Services, Inc., the successor to DePaul
Mental Health Services, Inc. (f/k/a DePaul Clinic)

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Corporate Board of Education, Diocese of Rochester

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Bishop Sheen Ecumenical Housing Foundation, Inc.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Charles Settlement House, Inc.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Bernard's School of Theology and Ministry

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Camp Stella Maris of Livonia, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Name Printed: _____

Title: _____

Date: _____ 2022

## SCHEDULE OF ATTACHMENTS TO

## SETTLEMENT AGREEMENT AND RELEASE

| Attachment A | List of DOR Entities |
|---|---|
| Attachment B | Notice Names and Addresses |

**ATTACHMENT A**

**LIST OF DOR ENTITIES**

| CATHOLIC ENTITY: | ADDRESS: |
|---|---|
| **The Cathedral Community of Rochester NY**; *successor in interest to the insurance rights of*:<br>• Sacred Heart Cathedral, Rochester, N.Y.<br>• The Holy Rosary Church of the City of Rochester, Monroe County, N.Y.<br>• Church of the Most Precious Blood | 296 Flower City Park, Rochester, NY 14615 |
| **Roman Catholic Parish of St. Frances Xavier Cabrini**; *successor in interest to the insurance rights of*:<br>• Our Lady of the Americas (*successor in interest to the insurance rights of* St. Francis Xavier Church; Church of the Most Holy Redeemer of Irondequoit, N.Y.; Our Lady of Mount Carmel Church, Rochester, N.Y.; Corpus Christi Church of Rochester, N.Y.)<br>• Light of Christ Roman Catholic Parish (*successor in interest to the insurance rights of* St. Philip Neri Church of Rochester, N.Y.; St. Andrews Roman Catholic Church of Rochester, N.Y.; Church of the Annunciation, Rochester, N.Y.)<br>• Church of Our Lady of Perpetual Help of Rochester<br>• St. Michael's Church of Rochester, N.Y. | 124 Evergreen St., Rochester, NY 14605 |
| **Peace of Christ Roman Catholic Parish of Rochester**, NY; *successor in interest to the insurance rights of*:<br>• St. Ambrose Church of Rochester;<br>• St. James Church of Rochester, N.Y.;<br>• St. John the Evangelist Church of Rochester, N.Y. | 25 Empire Blvd., Rochester, NY 14096 |
| **The Church of the Holy Apostles, Rochester, N.Y.**; *successor in interest to the insurance rights of*:<br>• St. Francis of Assisi Church of Rochester, N.Y.<br>• Church of the Holy Family, Inc.<br>• The Church of St. Anthony of Padua | 7 Austin St., Rochester, NY 14606 |
| **St. Monica Church of Rochester, N.Y.**; *successor in interest to the insurance rights of*:<br>• The Church of Our Lady of Good Counsel<br>• St. Augustine Church Corporation | 34 Monica St., Rochester, NY 14619 |

2

| | |
|---|---|
| • SS. Peter and Paul's Roman Catholic Church, Rochester, N.Y. | |
| **St. Anne's Church of Rochester** | 1600 Mount Hope Ave., Rochester NY 14620 |
| **The Church of the Blessed Sacrament, Rochester, N.Y.** | 259 Rutgers St., Rochester, NY 14607 |
| **St. Boniface Church, Rochester, N.Y.** | 330 Gregory St., Rochester, NY 14620 |
| **St. Stanislaus Church of Rochester, N.Y.**; *successor in interest to the insurance rights of*:<br><br>• St. Theresa of the Child Jesus Church, Bishop of Rochester | 34 Saint Stanislaus St., Rochester, NY 14621 |
| **Immaculate Conception/St. Bridget, Rochester**; *successor in interest to the insurance rights of*:<br>• The Immaculate Conception Church Society<br>• St. Bridget's Church | 445 Frederick Douglass St., Rochester, NY 14608 |
| **Kateri Tekakwitha Roman Catholic Parish**; *successor in interest to the insurance rights of*:<br>• Church of Christ the King, Rochester, N.Y.<br>• St. Cecilia Church, Irondequoit, N.Y.<br>• Church of St. Margaret Mary<br>• Church of St. Salome<br>• St. Thomas Roman Catholic Church | 445 Kings Highway S., Rochester, 14617 |
| **Church of St. Charles Borromeo**; *successor in interest to the insurance rights of*:<br><br>• Church of the Holy Name of Jesus of Rochester, New York | 3003 Dewey Ave., Rochester, NY 14616 |
| **Emmanuel Church of the Deaf of the Diocese of Rochester** | 34 Monica St., Rochester, NY 14619 |
| **St. George Roman Catholic Lithuanian Church, Inc.** | 150 Varinna Dr., Rochester, NY 14618 |
| **The Parish of the Holy Family, Gates, NY**; *successor in interest to the insurance rights of*:<br>• Church of the Holy Ghost<br>• St. Helen's Church of Gates, N.Y.<br>• Church of St. Jude of the Town of Gates. | 4100 Lyell Rd., Rochester, NY 14606 |
| **Holy Cross Church of Rochester, NY** | 4492 Lake Ave., Rochester, NY 14612 |
| **St. John the Evangelist Church Corp.** | 2400 Ridge Rd. W., Rochester, NY 14625 |
| **St. Lawrence Church of Rochester, N.Y.** | 1000 N. Greece Rd., Rochester, NY 14626 |
| **St. Mark's Church of Rochester, New York** | 54 Kuhn Rd., Rochester, NY 14612 |
| **St. Mary's Church Society, Inc.** | 15 South St., Rochester, NY 14607 |

| | |
|---|---|
| **Our Lady of Lourdes Church of Brighton** | 150 Varinna Dr., Rochester, NY 14618 |
| **Our Mother of Sorrows Church**; *successor in interest to the insurance rights of:* <br> • Our Lady of Mercy Church of Rochester, N.Y. | 5000 Mt. Read Blvd., Rochester, NY 14612 |
| **St. Mary's French Church Society** (a/k/a Our Lady of Victory) | 210 Pleasant St., Rochester, NY 14604 |
| **Church of Our Lady Queen of Peace of Rochester, N.Y.** | 601 Edgewood Ave., Rochester, NY 14618 |
| **St. Pius Tenth Church of Rochester, N.Y.** | 3032 Chili Ave, Rochester, NY 14624 |
| **St. Theodore's Church of Gates, N.Y.** | 168 Spencerport Rd., Rochester, NY 14606 |
| **St. Thomas More Church of Rochester, N.Y.** | 2617 East Ave., Rochester, NY 14610 |
| **The Catholic Parish of Saints Isidore and Maria Torriba**; *successor in interest to the insurance rights of:* <br> • St. Catherine Roman Catholic Church Society, Addison, N.Y. <br> • St. Stanislaus Church of Bradford, N.Y. <br> • St. Joseph's Roman Catholic Church of Campbell, N.Y. | 51 Maple St., Addison, NY 14801 |
| **St. Alphonsus Catholic German Church** | 10 S. Lewis Street, Auburn, NY 13021 |
| **St. Aloysius Church, Auburn, NY** | 85 N. St., Auburn, NY 13021 |
| **The Catholic Church of the Holy Family, Auburn, N.Y.** | 85 N. St., Auburn, NY 13021 |
| **St. Mary's Catholic Church, Auburn, N.Y.** | 15 Clark St., Auburn, NY 13021 |
| **Saints Mary and Martha Roman Catholic Parish Cayuga County, NY**; *successor in interest to the insurance rights of:* <br> • St. Francis of Assisi Italian Roman Catholic Church <br> • St. Hyacinth's Polish Roman Catholic Society Church | 299 Clark St., Auburn, NY 13021 |
| **Sacred Heart Church of Auburn, N.Y.** | 90 Melrose Rd., Auburn, NY 13021 |
| **St. Ann's Church, Owasco, Cayuga County, N.Y.** | Main St., Owasco, NY 13130 |
| **Good Shepherd Catholic Community, Aurora**; *successor in interest to the insurance rights of:* <br> • St. Patrick's Church of Aurora, N.Y. <br> • St. Joseph's Catholic Church of Cayuga, N.Y. <br> • Our Lady of the Lake Church Corporation, King Ferry <br> • St. Patrick's Catholic Church of Moravia, Cayuga County, N.Y. <br> • St. Bernard's Catholic Church <br> • St. Michael's Church of Union Springs, N.Y. | 299 Main St., Aurora, NY 13026 |

4

| | |
|---|---|
| • St. Isaac Jogues' Chapel | |
| **St. Agnes Church Society, Avon, N.Y.** | 108 Prospect St., Avon, NY 14414 |
| **St. John Vianney Roman Catholic Parish, Steuben County, NY**; *successor in interest to the insurance rights of:*<br>• St. Mary's Catholic Church Society of Bath, N.Y.<br>• St. Gabriel's Catholic Church Society of Hammondsport, N.Y. | 32 E Morris St., Bath, NY 14810 |
| **Church of the Nativity of the Blessed Virgin Mary, Brockport, N.Y.**; *successor in interest to the insurance rights of:*<br>• Newman Oratory of Brockport, New York | 152 Main St., Brockport, NY 14420 |
| **St. Martin De Porres**; *successor in interest to the insurance rights of:*<br>• Catholic Church of St. Vincent DePaul of Churchville, N.Y.<br>• St. Columba's Church, Caledonia, N.Y.<br>• St. Mary of the Assumption Church, Scottsville, N.Y.<br>• St. Patrick's Church, Mumford, N.Y. | 198 North St., Caledonia, NY 14423 |
| **St. Benedict Roman Catholic Parish Ontario County, NY**; *successor in interest to the insurance rights of:*<br>• St. Mary's Church Corp., Canandaigua, N.Y.<br>• St. Bridget's Church of East Bloomfield, N.Y. | 95 N. Main St., Canandaigua, NY 14424 |
| **St. Peter's Roman Catholic Parish, Ontario County**; *successor in interest to the insurance rights of:*<br>• St. Felix's Church, Inc.<br>• St. Francis Church<br>• St. Dominic Roman Catholic Church Society | 12 Hibbard Ave., Clifton Springs, NY 14432 |
| **St. Joseph the Worker Roman Catholic Parish, Wayne County**; *successor in interest to the insurance rights of:*<br>• St. John the Evangelist Roman Catholic Church<br>• St. Michael's Church Society, Inc., Lyons, N.Y.<br>• St. Patrick's Roman Catholic Church, Savannah, N.Y. | 43 W. DeZeng St., Clyde, NY 14433 |
| **St. Margaret's Church of Conesus Lake, Livonia, N.Y.** | P.O. Box 77, Livonia, NY 14487 |
| **All Saints, Corning**; *successor in interest to the insurance rights of:*<br>• The Church of St. Mary's of Corning, N.Y. | 222 Dodge Ave., Corning, NY 14830 |

5

| | |
|---|---|
| • St. Patrick's Catholic Church, Corning, N.Y.<br>• St. Vincent De Paul's Roman Catholic Church Society Inc., Corning, N.Y.<br>• Church of the Immaculate Heart of Mary of Painted Post | |
| **The Church of St. John Fisher of the Town of Huron, New York** | 11956 Washington St., Wolcott, NY 14590 |
| **Church of St. Jerome, East Rochester, N.Y.** | 207 S. Garfield St., East Rochester, NY 14445 |
| **Saint Cecilia's Roman Catholic Church Society** | 1010 Davis St., Elmira, NY 14901 |
| **St. John the Baptist Catholic Church, Elmira, N.Y.** | 1010 Davis St., Elmira, NY 14901 |
| **Parish of the Most Holy Name of Jesus**; *successor in interest to the insurance rights of:*<br>• St. Mary's Roman Catholic Church Society<br>• Blessed Sacrament Roman Catholic Church of Elmira, NY ( *successor in interest to the insurance rights of* St. Anthony's Church of Elmira, N.Y.; St. Patrick's Roman Catholic Church of Elmira, N.Y.; Saint Peter and Paul's Church, Inc.)<br>• Christ the Redeemer Roman Catholic Parish of Elmira, NY (*successor in interest to the insurance rights of* Our Lady of Lourdes Church of Elmira, New York; St. Casimir's Roman Catholic Church Society, Elmira, N.Y.; Saint Charles Borromeo Roman Catholic Church, Elmira Heights, N.Y.) | 1010 Davis St., Elmira, NY 14901 |
| **Church of the Assumption, Fairport, N.Y.** | 20 East Ave., Fairport, NY 14450 |
| **Church of the Resurrection, Perinton, New York** | 283 Hamilton Rd., Fairport, NY 14450 |
| **Church of St. John of Rochester of Perinton, New York** | 8 Wickford Way, Fairport, NY 14450 |
| **The Church of the Holy Cross of Dryden, New York** | 375 George Rd., Freeville, NY 13068 |
| **St. Luke the Evangelist Roman Catholic Church Society of Livingston County**; *successor in interest to the insurance rights of:*<br>• St. Mary's Roman Catholic Church, Geneseo, N.Y., Livingston County<br>• Thomas Aquinas Roman Catholic Church of Moscow, Livingston County, N.Y. | 13 North St., Geneseo, NY 14454 |

14080204.4

| | |
|---|---|
| • St. Patrick's Church Society of Mt. Morris, New York<br>• Church of the Holy Angels of Nunda, N.Y.<br>• St. Lucy's Church, Retsof, N.Y | |
| **Our Lady of Peace Roman Catholic Church of Geneva, NY**; *successor in interest to the insurance rights of:*<br>• Church of St. Francis DeSales<br>• St. Stephen's Roman Catholic Church, Inc. of Geneva, N.Y. | 130 Exchange St., Geneva, NY 14456 |
| **St. Hilary's Catholic Church, Genoa, N.Y.** | 299 Main St., Aurora, NY 13026 |
| **St. Anthony's Catholic Church of Groton, N.Y.** | 312 Locke Rd., Groton, NY 13073 |
| **Church of the Holy Name, Groveland, N.Y.** | 13 North St., Geneseo, NY 14454 |
| **The Church of St. Elizabeth Ann Seton, The Diocese of Rochester, N.Y.** | P.O. Box 149, Hamlin, NY 14464 |
| **Marianne Cope Roman Catholic Parish, Monroe County NY**; *successor in interest to the insurance rights of:*<br>• Guardian Angels Church of Rochester, New York<br>• Church of the Good Shepherd, Henrietta, N.Y.<br>• St. Joseph's Catholic Society of Rush, N.Y. | 3318 E. Henrietta Rd., Henrietta, NY 14467 |
| **Church of St. Leo, Hilton, N.Y.** | 167 Lake Ave., Hilton, NY 14468 |
| **St. Mary's Church of Honeoye Flats, N.Y (St. Mary - Our Lady of the Hills)** | 8961 Main St., Honeoye, NY 14471 |
| **St. Paul of the Cross Church, Honeoye Falls, N.Y.** | 31 Monroe St., Honeoye Falls, NY 14472 |
| **Our Lady of the Valley**; *successor in interest to the insurance rights of:*<br>• St. Joachim's Roman Catholic Church<br>• St. Ann's Roman Catholic Church<br>• St. Ignatius Loyola Church of Hornell, N.Y.<br>• St. Mary's Roman Catholic Church | 27 Erie Ave., Hornell, NY 14843 |
| **Church of St. Mary Our Mother, Horseheads, N.Y.** | 816 W. Broad St., Horseheads, NY 14845 |
| **St. Catherine of Siena Church** | 302 Saint Catherine Circle, Ithaca, NY 14850 |
| **The Immaculate Conception Church, Ithaca, N.Y.** | 113 N. Geneva St., Ithaca, NY 14850 |
| **All Saints Church Corporation, Ludlowville, NY** | 347 Ridge Rd., Lansing, NY 14882 |
| **St. Rose Roman Catholic Church** | 1985 Lake Ave., Lima, NY 14485 |
| **St. Matthew Catholic Church Society**; *successor in interest to the insurance rights of:* | P.O. Box 77, Livonia, NY 14487 |

| | |
|---|---|
| • St. William's Church Society, Conesus, N.Y.<br>• St. Joseph's Catholic Church Society of Livonia, N.Y. | |
| **St. Michael's Church Society, Livonia Center, N.Y.** | 8961 Main St., Honeoye, NY 14471 |
| **Parish of St. Katharine Drexel, Palmyra**; *successor in interest to the insurance rights of:*<br>• St. Patrick's Church of Macedon, N.Y.<br>• St. Gregory's Roman Catholic Church of Marion, N.Y.<br>• Roman Catholic Church of St. Anne, Palmyra, N.Y. 14522 | 52 Main St., Macedon, NY 14502 |
| **St. Catherine's Roman Catholic Church, Mendon, NY** | 26 Mendon-Ionia Rd., Mendon, NY 14506 |
| **St. Michael's Church, Montezuma, N.Y.** | 2667 Hamilton St., Weedsport, NY 13166 |
| **St. Michael's Church, Newark, N.Y.** | 401 S. Main St., Newark, NY 14513 |
| **St. Christopher of Chili, New York** | 3350 Union St., North Chili, NY 14514 |
| **St. Benedict's Mission Church of Odessa, New York** | 169 Speedway, Odessa, NY 14869 |
| **St. Maximilian Kolbe Catholic Church Society of Wayne County**; *successor in interest to the insurance rights of:*<br>• St. Mary's of the Lake Roman Catholic Church Society<br>• Church of the Epiphany, Sodus, N.Y.<br>• Church of St. Rose of Lima, Sodus Point, N.Y. | 5823 Walworth Rd., Ontario, NY 14519 |
| **The Parish of Mary, Mother of Mercy, Tompkins County, New York**; *successor in interest to the insurance rights of:*<br>• St. Francis Solanus Church, Interlaken, N.Y.<br>• Holy Cross Church<br>• St. James the Apostle Church of Trumansburg, N.Y. | PO Box 337, Ovid, NY 14521 |
| **Blessed Trinity, Owego**, *successor in interest to the insurance rights of:*<br>• St. Margaret Mary's Roman Catholic Church of Apalachin, N.Y.<br>• St. Francis Roman Catholic Church<br>• St. John the Evangelist Roman Catholic Church<br>• St. Pius the Tenth Church, Van Etten, N.Y.<br>• St. James the Apostle, Roman Catholic Church Society of Waverly, N.Y. | 300 Main St., Owego, NY 13827 |

14080204.4

| | |
|---|---|
| **St. Patrick's Roman Catholic Church Society of Owego, N.Y.** | 300 Main St., Owego, NY 13827 |
| **St. Joseph's Catholic Church of Penfield, NY** | 43 Gebhardt Rd., Penfield, NY 14526 |
| **Our Lady of the Lakes Catholic Community**; *successor in interest to the insurance rights of:*<br>• St. Andrew's Church of Dundee<br>• St. Januarius Roman Catholic Church<br>• St. Michael's Church of Penn Yan, N.Y.<br>• St. Patrick's Catholic Church, Prattsburg, N.Y.<br>• St. Mary's Church, Rushville, N.Y.<br>• St. Theresa's Church, Stanley, N.Y. | 210 Keuka St., Penn Yan, NY 14527 |
| **St. Raphael's Church, Piffard, N.Y.** | 13 North St., Geneseo, NY 14454 |
| **Church of the Transfiguration, Diocese of Rochester, New York** | 50 W Bloomfield Rd., Pittsford, NY 14534 |
| **St. Louis Church of Pittsford, N.Y.** | 60 S. Main St., Pittsford, NY 14534 |
| **St. John the Evangelist Church Society, Spencerport, N.Y.** | 55 Martha St., Spencerport, NY 14559 |
| **St. Patrick's Church of Victor, N.Y.** | 115 Maple Ave., Victor, NY 14564 |
| **St. Frances & St. Clare Roman Catholic Parish, Seneca County, NY**; *successor in interest to the insurance rights of:*<br>• St. Mary's Church, Waterloo, N.Y.<br>• St. Patrick's Church of Seneca Falls, N.Y. | 25 Center St., Waterloo, NY 13165 |
| **St. Mary's of the Lake Roman Catholic Church Society** | P.O. Box 289, Watkins Glen, NY 14891 |
| **Holy Family Catholic Community**; *successor in interest to the insurance rights of:*<br>• St. Pius V Church Society, Cohocton, N.Y.<br>• St. Mary's Church<br>• The Church of the Sacred Heart of Jesus, Perkinsville, N.Y.<br>• St. Joseph's Roman Catholic Church Corp., Wayland, N.Y. | 206 Fremont St., Wayland, NY 14572 |
| **The Roman Catholic Church of the Most Holy Trinity at Webster, N.Y.** | 1460 Ridge Rd., Webster, NY 14580 |
| **St. Paul's Roman Catholic Church of Webster, N.Y.** | 783 Hard Rd., Webster, NY 14580 |
| **Church of the Holy Spirit of Penfield, N.Y.** | 1355 Hatch Rd., Webster, NY 14580 |
| **Our Lady of the Snow, Weedsport**; *successor in interest to the insurance rights of:*<br>• St. Patrick's Roman Catholic Church of Cato, N.Y.<br>• St. John's Church, Port Byron, N.Y. 13140 | 2667 Hamilton St., Weedsport, NY 13166 |

14080204.4

| | |
|---|---|
| • St. Joseph's Catholic Church of Weedsport, N.Y. | |
| **St. Joseph's Church of West Bloomfield** | 95 N. Main St., Canandaigua, NY 14424 |
| **St. Rita's Church of West Webster, N.Y.** | 1008 Maple Dr., West Webster, NY 14580 |
| **Catholic Community of the Blessed Trinity of Wolcott, NY**; *successor in interest to the insurance rights of:*<br>• St. Mary Magdalen Church, Wolcott, N.Y.<br>• St. Thomas the Apostle Roman Catholic Church of Red Creek<br>• St. Jude | 11956 Washington St., Wolcott, NY 14590 |
| **Catholic Charities of the Diocese of Rochester** | 1150 Buffalo Rd., Rochester, NY 14624 |
| **Rochester Catholic Press Association, Inc.** | 1150 Buffalo Rd., Rochester, NY 14624 |
| **DePaul Mental Health Services, Inc. f/k/a DePaul Clinic** | 1931 Buffalo Rd., Rochester, NY 14624 |
| **The Corporate Board of Education, Diocese of Rochester** | 1150 Buffalo Rd., Rochester, NY 14624 |
| **Bishop Sheen Ecumenical Housing Foundation, Inc.** | 150 French Rd., Rochester, NY 14618 |
| **Charles Settlement House, Inc.** | 445 Jay St., Rochester, NY 14611 |
| **St. Bernard's School of Theology and Ministry** | 120 French Rd., Rochester, NY 14618 |
| **Camp Stella Maris of Livonia, N.Y.** | 4395 East Lake Rd., Livonia, NY 14487 |

14080204.4

# ATTACHMENT B

## NOTICE NAMES AND ADDRESSES

For DOR:                              The Diocese of Rochester
                                      1150 Buffalo Road
                                      Rochester, New York 14624
                                      Attention:  Lisa M. Passero, Chief Financial Officer

With copies to:                       Bond, Schoeneck & King, PLLC
                                      One Lincoln Center
                                      Syracuse, New York 13202
                                      Attn:   Stephen A. Donato
                                              Charles J. Sullivan
                                              Grayson T. Walter

                                      -and-

                                      Blank Rome LLP
                                      1825 Eye Street NW
                                      Washington, D.C. 20006
                                      Attn:   James R. Murray
                                              James S. Carter

For DOR Parishes:                     Woods Oviatt Gillman, LLP
                                      1900 Bausch & Lomb Place
                                      Rochester, NY 14604
                                      Attention:  Timothy P. Lyster

For Certain Underwriters at           Joanne Yardley
Lloyd's, London:                      Senior Claims Adjuster – US Casualty
                                      MS Amlin Managing Agency Ltd.
                                      The Leadenhall Building
                                      122 Leadenhall Street
                                      London EC3V 4AG
                                      joanne.yardley@msamlin.com

For HDI Global Specialty SE:          Ms. Corinna Smidtmann
                                      Senior Claims Manager  - Casualty Claims
                                      HDI Global Specialty SE
                                      Podbielskistrasse 396
                                      30659 Hannover Germany
                                      corinna.schmidtmann@hdi-specialty.com

For Convex Insurance UK Ltd.:    Laura Gaweda
Senior Casualty Claims Adjuster
Convex
Scalpel, 52 Lime Street,
London, EC3M 7AF
laura.gaweda@convexin.com
claims@convexin.com


With copies to:    Catalina J. Sugayan, Esq.
Clyde & Co US LLP
55 West Monroe Street
Suite 3000
Chicago, IL 60603
Tel: 312.635.6917
catalina.sugayan@clydeco.us