## **Exhibit C**

Interstate Settlement Agreement

# SETTLEMENT AGREEMENT, RELEASE, AND POLICY BUYBACK

This Settlement Agreement, Release, and Policy Buyback ("Settlement Agreement") is hereby made by, and between, and among The Diocese of Rochester, New York (the "Diocese" as further defined in Section 1.1.18 below), the other Diocese Parties (as defined in Section 1.1.19 below), and Interstate Fire & Casualty Company and National Surety Corporation (collectively, "Interstate," as more fully defined in Section 1.1.15 below, and together with the Diocese and the other Diocese Parties, the "Parties" and each a "Party" to this Settlement Agreement).

## RECITALS:

WHEREAS, on September 12, 2019 (the "Petition Date"), the Diocese filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of New York (the "Bankruptcy Court") pending under Case No. 19-20905 (the "Bankruptcy Case");

WHEREAS, certain Persons have asserted or may hold Tort Claims (as defined in Section 1.1.46) against the Diocese Parties;

WHEREAS, Interstate issued, allegedly issued, or may have issued the Diocese Policies (as defined in Section 1.1.20 below) providing certain coverage to the Diocese Parties;

WHEREAS, certain disputes between the Diocese Parties and Interstate have arisen and may arise in the future concerning the scope and nature of Interstate's responsibilities, if any, to provide coverage to the Diocese Parties for Tort Claims under the Diocese Policies (the "Coverage Disputes");

WHEREAS, on November 14, 2019, the Diocese filed Adversary Proceeding No. 19-02021 (the "Adversary Proceeding") against Interstate and certain of the other Settling Insurers seeking a declaratory judgment regarding the insurers' obligations under the Diocese Policies;

WHEREAS, the Diocese Parties and Interstate, without any admission of liability or concession of the validity of the positions or arguments advanced by each other, now wish to compromise and resolve fully and finally any and all Coverage Disputes and all other disputes between and among them and to release Interstate from any further obligations under the Diocese Policies;

WHEREAS, through this Settlement Agreement, the Diocese Parties intend to provide Interstate with the broadest possible release of all Tort Claims, including all Unknown Tort Claims (as defined in Section 1.1.52) that occurred or may have arisen prior to the Bankruptcy Plan Effective Date (as defined in Section 1.1.8); and

WHEREAS, through this Settlement Agreement, as part of the compromise and resolution of the Coverage Disputes, the Diocese Parties and Interstate also wish to effect a sale, pursuant to § 363(b), (f), and (m) of the Bankruptcy Code of the Diocese Policies issued or allegedly issued to any of the Diocese Parties to provide Interstate with the broadest possible release and buyback with respect to the Diocese Policies, resulting in Interstate having no obligations now or in the future to the Diocese Parties or any of their creditors;

1

NOW, THEREFORE, in consideration of the foregoing recitals and of the mutual covenants contained in this Settlement Agreement, the sufficiency of which is hereby acknowledged, and intending to be legally bound subject to the approval of the Bankruptcy Court pursuant to Section 2 below, the Parties hereby agree as follows:

## 1.    DEFINITIONS

1.1    As used in this Settlement Agreement (as defined above), the following terms shall have the meanings set forth below.

1.1.1    "Abuse" includes any actual or alleged (a) act of sexual conduct, misconduct, abuse, or molestation; any other sexually related act, contact, or interaction; indecent assault and/or battery; rape; lascivious behavior; undue familiarity; pedophilia; hebephilia; or ephebophilia; (b) act that causes or allegedly causes sexually-related physical, psychological, or emotional harm, or any other contacts or interactions of a sexual nature, including any such contacts or interactions between a child and an adult, or a nonconsenting adult and another adult; (c) assault; battery; corporal punishment; or any other act of physical, psychological, mental, or emotional abuse, humiliation, or intimidation; or (d) fraud, fraud in the inducement, misrepresentation, concealment, unfair practice, or any other tort relating to the acts and/or omissions listed in subparts (a)-(c) of this sentence. Abuse may occur whether or not this activity involves explicit force, whether or not it involves genital or other physical contact, and whether or not there is physical, psychological, or emotional harm to the person.

1.1.2    "Adversary Proceeding" has the meaning set forth in the recitals.

1.1.3    "Approval Motion" means the motion filed in the Bankruptcy Court seeking approval of this Settlement Agreement as described in Section 2 of this Settlement Agreement.

1.1.4    "Approval Order" means the order granting the Approval Motion described in Section 2 of this Settlement Agreement and providing the relief described in Section 4 of this Settlement Agreement.

1.1.5    "Bankruptcy Case" shall have the meaning set forth in the Recitals.

1.1.6    "Bankruptcy Court" shall have the meaning set forth in the Recitals, *provided*, *however*, that to the extent that the Standing Order of Reference Re: Title 11 entered by the District Court on February 29, 2012 is withdrawn with respect to any proceeding arising from or related to the Bankruptcy Case or the Adversary Proceeding, any reference in this Agreement to the Bankruptcy Court shall also include said District Court.

1.1.7    "Bankruptcy Plan" or "Plan" refers to the Chapter 11 Plan of Reorganization for the Diocese (and all exhibits annexed thereto) and any and all modifications or amendments thereto, as approved and confirmed by Final Order of the Bankruptcy Court, that resolves the Tort Claims and is consistent with this Settlement Agreement, containing such language and provisions as are acceptable to Interstate.

1.1.8  "Bankruptcy Plan Effective Date" means the date upon which a Bankruptcy Plan approved by the Bankruptcy Court that contains terms and conditions consistent with those required by this Settlement Agreement becomes effective.

1.1.9  "Channeled Claim" means any Tort Claim against any of the Protected Parties (or any Entity covered by Interstate to the extent such Tort Claim arises from the same injury or damages asserted as a Tort Claim against the Protected Parties) and any Claim that, directly or indirectly, arises out of, relates to, or is in connection with the same facts and circumstances giving rise to a Tort Claim, including any Medicare Claim, Related Insurance Claim, and all Tort Claims that relate to the Diocese Policies, but excluding, however, Claims against (a) an individual who perpetrated an act of Abuse that forms the basis of a Tort Claim with respect to that Tort Claim, (b) a diocese or archdiocese other than the Diocese itself, or (c) a religious order.

1.1.10  "Channeling Injunction" shall have the meaning set forth in Section 2.2.2.

1.1.11  "Claim" means any past, present, or future claim, demand, action, request, cause of action, suit, proceeding, or liability of any kind or nature whatsoever, whether at law or equity, known or unknown, actual or alleged, asserted or not asserted, suspected or not suspected, anticipated or unanticipated, accrued or not accrued, fixed or contingent, which has been or may be asserted by or on behalf of any Person, whether seeking damages (including compensatory, punitive, or exemplary damages) or equitable, mandatory, injunctive, or any other type of relief, including cross-claims, counterclaims, third-party claims, suits, lawsuits, administrative proceedings, notices of liability or potential liability, arbitrations, actions, rights, causes of action, or orders, and any other claim with the definition of claim in section 101(5) of the Bankruptcy Code.

1.1.12  "Claims Bar Date" means August 13, 2020, which was the last date for filing Claims against the Diocese pursuant to the Bankruptcy Court's Order entered on February 25, 2020 [Docket No. 425].

1.1.13  "Committee" means the Official Committee of Unsecured Creditors appointed by the United States Trustee in the Bankruptcy Case, as such committee may be reconstituted from time to time.

1.1.14  "Conditional Payment" means any payment made to a Tort Claimant under the MMSEA, including any payment by a Medicare Advantage Organization (as defined in the MSPA).

1.1.15  "Interstate" means, in addition to the Parties identified in the first paragraph of this Settlement Agreement, each of their past, present, and future parents, subsidiaries, affiliates, and divisions, including but not limited to Fireman's Fund Insurance Company; each of the foregoing Persons' respective past, present, and future parents, subsidiaries, affiliates, holding companies, merged companies, related companies, divisions, and acquired companies; each of the foregoing Persons' respective past, present, and future directors, officers, shareholders, employees, partners, principals, agents, attorneys, joint ventures, joint venturers, representatives, and claims handling administrators; and each of

the foregoing Persons' respective predecessors, successors, assignors, and assigns, whether known or unknown, and all Persons acting on behalf of, by, through, or in concert with them.

1.1.16 "Coverage Disputes" shall have the meaning set forth in the Recitals.

1.1.17 "Defense and Indemnity Costs" shall have the meaning set forth in Section 2.3.4

1.1.18 "Diocese" means The Diocese of Rochester, which is the diocesan corporation formed pursuant to N.Y. Religious Corporation Law § 90, and its bankruptcy estate pursuant to section 541 of the Bankruptcy Code, together with the public juridic person of the Roman Catholic Diocese of Rochester, as now constituted or as it may have been constituted, and their respective predecessors, successors, and assigns.

1.1.19 "Diocese Parties" means collectively (i) the Reorganized Debtor; (ii) the Diocese; (iii) the Diocese Participating Parties, including all of its Parishes (as defined in section 1.1.32 below); (iv) any and all named insureds, additional insureds, insureds, and any Entity alleged to be covered under the Diocese Policies with respect to which the Diocese has authority to release Claims by a Final Order pursuant to sections 105(a) or 363(f) of the Bankruptcy Code or confirming a chapter 11 plan; and (v) each of the past, present, and future holding companies, merged companies, related companies, divisions, and acquired companies of the Diocese Parties, and each of their respective predecessors, successors, and assigns, each in their capacity as such, but excluding, however, (a) any individual who perpetrated an act of Abuse that forms the basis of a Tort Claim with respect to that Tort Claim solely in his capacity as an individual abuser, (b) any archdiocese or diocese other than the Diocese itself, or (c) any religious order.

1.1.20 "Diocese Policies" means any and all known and unknown contracts, binders, certificates, or policies of insurance, in effect on or before the Settlement Agreement Effective Date, that were issued, allegedly issued, or may have been issued by Interstate to or for the benefit of, or that otherwise actually, allegedly, or potentially insure one or more of the Diocese Parties.

1.1.21 "Diocese Participating Parties" means the Entities listed on Exhibit 2 hereto.

1.1.22 "Direct Action Claim" means any Claim by any Entity against Interstate identical or similar to, or relating to, any Tort Claim, whether arising by contract, in tort or under the laws of any jurisdiction, including any statute that gives a third party a direct cause of action against an insurer.

1.1.23 "District Court" means the United States District Court for the Western District of New York.

1.1.24 "Entity" means an individual, any corporation, corporation sole, partnership, association, limited liability company, joint stock company, proprietorship, unincorporated organization, joint venture, trust, estate, executor, legal representative, or

any other entity or organization, as well as any federal, international, foreign, state, or local governmental or quasi-governmental entity, body, or political subdivision or any agency, department, board or instrumentality thereof, any other Person, and any successor in interest, heir executor, administrator, trustee, trustee in bankruptcy, or receiver of any Entity and also has the meaning set forth in section 101(15) of the Bankruptcy Code.

1.1.25 "Extra-Contractual Claim" means any Claim against Interstate relating to (a) allegations that Interstate acted in bad faith or in breach of any express or implied duty, obligation, or covenant, contractual, statutory or otherwise, including any Claim on account of alleged bad faith; (b) failure to act in good faith; (c) failure to provide insurance coverage under any policy; (d) violation or breach of any covenant or duty of good faith and fair dealing, whether express, implied, or otherwise; (e) violation of any statute, regulation, or code governing unlawful, unfair, or fraudulent competition, business, or trade practices, and/or untrue or misleading advertising, including any violation of any unfair claims practices act or similar statute, regulation, or code; failure to investigate or provide a defense or an adequate defense; any type of alleged misconduct; or (f) any other act or omission of Interstate of any type for which the Tort Claimant seeks relief other than coverage or benefits under a policy of insurance. Extra-Contractual Claims include: (i) any Claim that relates to Interstate's handling of any Claim or any request for insurance coverage, including any request for coverage for, or defense of, any claim, including any Tort Claim; (ii) any Claim that directly or indirectly relates to any of the Diocese Policies and any contractual duties arising therefrom, including any contractual duty to defend any of the Diocese Parties against any Tort Claims; and (iii) the conduct of the Parties with respect to the negotiation of this Settlement Agreement.

1.1.26 "Final Order" means an order, judgment, or other decree (including any modification or amendment thereof) that remains in effect and has not been reversed, withdrawn, vacated, or stayed, and as to which the time to appeal or seek review, rehearing, or writ of certiorari has expired or, if such appeal, review, or petition for a writ has been taken, (i) it has been resolved and no longer remains pending, or (ii) an appeal or review has been taken timely but such order has not been stayed and the Parties have mutually agreed in writing that the order from which such appeal or review is taken should be deemed to be a Final Order within the meaning of this Settlement Agreement.

1.1.27 "Interests" means all Claims, liens, encumbrances, interests, and other rights of any nature, whether at law or in equity, including any rights of contribution, indemnity, defense, subrogation, or similar relief.

1.1.28 "Late-Filed Tort Claim" means a Tort Claim for which the Tort Claimant filed a proof of Claim after the Claims Bar Date.

1.1.29 "Medicare Claims" means any and all Claims relating to Tort Claims by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor Person charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA and pursuing Claims under MSPA, including Claims for reimbursement of payments made to Tort Claimants

who recover or receive any distribution from the Trust and Claims relating to reporting obligations.

1.1.30 "MMSEA" means §111 of the Medicare, Medicaid, SCHIP Extension Act of 2007 (P.L. 110-173).

1.1.31 "MSPA" means 42 U.S.C. §1395y et seq., or any other similar statute or regulation, and any related rules, regulations, or guidance issued in connection therewith or amendments thereto, including the regulations promulgated thereunder, found at 42 C.F.R. §411.1 et seq.

1.1.32 "Parishes" means all past and present parishes, schools, or missions of or in the Diocese, or under the authority of the Bishop of the Diocese, in their capacity as public juridic persons, including any current parish, school, or mission of or in any other diocese or archdiocese, or under the authority of another diocesan or archdiocesan bishop that was previously a parish, school, or mission of or in the Diocese, or under the authority of the Bishop of the Diocese, together with each corresponding parish corporation formed pursuant to N.Y. Religious Corporations Law § 90 and their respective predecessors, successors, or assigns.

1.1.33 "Parties" has the meaning set forth in the recitals above.

1.1.34 "Person" shall have the meaning ascribed in section 101(41) of the Bankruptcy Code.

1.1.35 "Petition Date" shall have the meaning set forth in the Recitals.

1.1.36 "Plan Confirmation Order" shall have the meaning set forth in Section 2.3.

1.1.37 "Protected Parties" means Interstate, all other Settling Insurers, and the Diocese Parties, but excluding, however, (a) an individual who perpetrated an act of Abuse that forms the basis of a Tort Claim with respect to that Tort claim, (b) a diocese or archdiocese other than the Diocese itself, or (c) a religious order.

1.1.38 "Related Insurance Claim" means (i) any Claim against Interstate for defense, indemnity, reimbursement, contribution, subrogation, or similar relief that, directly or indirectly, relates to a Tort Claim; (ii) any Extra Contractual Claim that, directly or indirectly, relates to any Tort Claim, including any Claim that, directly or indirectly, relates to Interstate's handling of any Tort Claim; (iii) any Direct Action Claim; and (iv) any other derivative or indirect claim of any kind whatsoever.

1.1.39 "Reorganized Debtor" means the Diocese on and after the Bankruptcy Plan Effective Date, provided that any successor to the Diocese through a merger or suppression of the Diocese shall not have any rights or remedies by virtue of the Plan or any order confirming the Plan on account of Tort Claims for which the successor was independently liable.

1.1.40 "Settlement Amount" means the sum of Twenty-Six Million Dollars ($26,000,000) to be paid by Interstate to the Diocese or any Trust established by the Plan, as applicable, for the benefit of Tort Claimants after satisfaction of all conditions precedent.

1.1.41 "Settlement Agreement Effective Date" means the day following the date on which all of the following have occurred: (i) all Parties have executed this Settlement Agreement; (ii) the Approval Order shall have become a Final Order; (iii) the Plan Confirmation Order shall have become a Final Order; (iv) the Trust shall have been created pursuant to the Plan; and (v) solely in the event Interstate elects to set off more than Seven Hundred Eighty Thousand Dollars ($780,000) in Defense and Indemnity Costs against the Settlement Amount pursuant to Section 2.3.4, (x) Interstate shall have provided written notice to the Diocese of the amount of such setoff, (y) the Diocese shall not have exercised its right pursuant to Section 5.2 to terminate this Settlement Agreement on account of such proposed setoff, and (z) ten (10) days shall have elapsed from the date of Interstate's delivery of notice to the Diocese.

1.1.42 "Settling Insurer" means each insurance company that has entered into a settlement agreement and insurance policy buy-back with Diocese.

1.1.43 "Settling Insurer Policies" means any and all insurance policies that were issued or allegedly issued by any of the Settling Insurers, including the Diocese Policies and all other known and unknown insurance policies to the extent issued or allegedly issued by any of the Settling Insurers and providing or allegedly providing insurance to any of the Diocese Parties.

1.1.44 "Sexual Abuse Exclusion" means the insurance policy exclusion in substantially the form set forth in Exhibit 3.

1.1.45 "Supplemental Injunction" shall have the meaning set forth in Section 2.3.2.

1.1.46 "Tort Claim" means any Claim against any of the Protected Parties that arises out of, relates to, results from, or is in connection with, in whole or in part, directly or indirectly, Abuse that took place in whole or in part prior to the Bankruptcy Plan Effective Date, including any such Claim that seeks monetary damages or any other relief, under any theory of liability, including vicarious liability; respondeat superior; any fraud-based theory, including fraud in the inducement; any negligence-based or employment-based theory, including inadequate or negligent hiring, supervision, or retention practices, or misrepresentation; any other theory based on misrepresentation, concealment, or unfair practice; premise or statutory liability; contribution; indemnity; public or private nuisance; or any other theory, including any theory based on public policy or any acts or failures to act by any of the Protected Parties or any other Person for whom any of the Protected Parties are allegedly responsible, including any such Claim asserted against any of the Protected Parties in connection with the Bankruptcy Case. "Tort Claim" includes any Related Insurance Claims, Extra-Contractual Claims, Direct Action Claims, Late-Filed Tort Claims, and Unknown Tort Claims.

1.1.47 "Tort Claimant" means the holder of a Tort Claim, the estate of a deceased individual who held a Tort Claim, the personal executor or personal representative of the estate of a deceased individual who held a Tort Claim, or the assignee of any of the foregoing, as the case may be. "Tort Claimant" includes a holder of any Unknown Tort Claim.

1.1.48 "Trust" means any trust to be established pursuant to the Plan to which the Channeled Claims are channeled.

1.1.49 "Trust Documents" means the agreement establishing the Trust and its exhibits and attachments, any trust distribution or claims resolution procedures or protocols, instruments, and other documents that are reasonably necessary or desirable in order to implement the provisions of the Plan that relate to the creation, administration, and funding of the Trust.

1.1.50 "Trustee" shall have the meaning ascribed in the Plan and means the trustee of the Trust appointed by the Bankruptcy Court or any duly appointed successor.

1.1.51 "Unknown Claims Representative" means a Person appointed in connection with the Bankruptcy Case as the legal representative of Entities holding Unknown Tort Claims, or any duly appointed successor.

1.1.52 "Unknown Tort Claim" means a Claim relating to Abuse that occurred on or before the Bankruptcy Plan Effective Date (i) for which no proof of Claim is filed or deemed filed on or before the Claims Bar Date or which is not otherwise allowed by the Bankruptcy Court by the Bankruptcy Plan Effective Date, and (ii) which is held by a Person who at the time of the Claims Bar Date was under a disability or other condition recognized by New York law, or other applicable law suspending the running of the statute of limitations period, that would toll the statute of limitations for such Claim.

1.2    Capitalized terms not defined in this section or elsewhere in this Settlement Agreement shall have the meanings given to them in the Bankruptcy Code.

## 2.    THE BANKRUPTCY CASE AND PLAN OF REORGANIZATION

2.1    Not later than the date on which the Diocese files the Bankruptcy Plan as set forth in Section 2.2 below, the Diocese shall file a motion in the Bankruptcy Court (the "Approval Motion") that seeks the entry of an order in substantially the form attached as Exhibit 1 to this Settlement Agreement approving this Settlement Agreement and authorizing the Parties to undertake the settlement and the transactions contemplated by this Settlement Agreement (the "Approval Order").

2.1.1    The Diocese shall provide written notice of the Approval Motion in form and substance acceptable to Interstate to (a) all Tort Claimants known to, or reasonably ascertainable by, the Diocese, (b) the other Diocese Parties, (c) the Committee, (d) the Unknown Claims Representative (if appointed), (e) all Persons who have filed notices of appearance in the Bankruptcy Case, and (f) all Persons known or believed by the Diocese to have provided general or professional liability insurance to the Diocese Parties. The

Diocese shall serve all Tort Claimants identified above at the address shown on their proofs of claim or to their counsel of record or, if no proof of claim was filed, then at the address on the Diocese's schedules or other files and records of the Diocese.

2.1.2    The Diocese shall publish notice of the Approval Motion at least once in either *The New York Times* or *USA Today* and at least once in the Rochester *Democrat and Chronicle* and as the Bankruptcy Court may additionally direct.

2.1.3    If any Entity files an objection to the Approval Motion, the Diocese shall consult with Interstate in connection with filing any written response thereto. The Diocese shall take commercially reasonable steps to defend against any objection, appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of the Approval Order. Interstate will cooperate with the Diocese, including making commercially reasonable submissions.

2.2    The Diocese shall file the Bankruptcy Plan, including all exhibits, schedules, and related documents, which shall be in all respects consistent with this Settlement Agreement and shall not deprive Interstate of any right or benefit under this Settlement Agreement or otherwise adversely affect the Interests of Interstate under this Settlement Agreement.

2.2.1    The Plan shall create a Trust which shall be responsible for making any and all payments to the Tort Claimants entitled to receive payment under the Plan and which shall assume all liability, if any, of the Protected Parties for Channeled Claims.

2.2.2    The Plan shall include an injunction (the "Channeling Injunction") in substantially the form attached as Schedule A to this Settlement Agreement, with only such modifications as are acceptable to the Settling Insurers and the Diocese Parties, pursuant to sections 105 and 1123 of the Bankruptcy Code, barring and permanently enjoining all Entities who have held or asserted, or may in the future hold or assert, Claims from taking any action, directly or indirectly for purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claim and channeling such Channeled Claims to the Trust as the sole and exclusive source of payment of any such Channeled Claims.

2.2.3    The Plan shall include an injunction (the "Supplemental Injunction") in substantially the form attached as Schedule B to this Settlement Agreement, with only such modifications as are acceptable to the Settling Insurers, pursuant to sections 105(a), 363(b), (f), and (m), and 1123 of the Bankruptcy Code.

2.2.4    The Plan shall include an exculpation of liability as to Settling Insurers in form acceptable to the Settling Insurers.

2.2.5    The Plan shall incorporate this Settlement Agreement and the releases contained herein by reference and make the Settlement Agreement part of the Plan as if set forth fully within the Plan.

2.2.6    The Plan shall provide that as a condition to receiving payment from the Trust, all Tort Claimants shall provide a release in favor of the Protected Parties from all Tort Claims, which release shall be in form and substance acceptable to the Parties.

2.2.7    The Plan shall provide that the Trust shall defend, indemnify, and hold harmless Interstate with respect to all Channeled Claims, subject to the limitations set forth in Section 7.2 of this Settlement Agreement.

2.3    In the Bankruptcy Case, the Diocese shall seek and obtain entry of an order in form and substance acceptable to the Settling Insurers that: (i) approves the Plan pursuant to section 1129 of the Bankruptcy Code and any other applicable provision of the Bankruptcy Code; (ii) contains the Channeling Injunction; (iii) contains the Supplemental Injunction; (iv) provides that this Settlement Agreement is binding on any Trust created in this case, the Reorganized Debtor, and any successors of the Trust or Reorganized Debtor, and all of the Diocese Parties; and (v) provides all protections to Interstate against Tort Claims that are afforded to other Settling Insurers under the Plan (the "Plan Confirmation Order").

2.3.1    The Plan and Plan Confirmation Order must be in all respects consistent with this Settlement Agreement and contain no provisions that diminish or impair the benefit of this Settlement Agreement to Interstate.

2.3.2    In seeking to obtain the Plan Confirmation Order, the Diocese must: (i) seek a confirmation hearing on an appropriately timely basis; (ii) urge the Bankruptcy Court to overrule any objections and confirm the Plan; and (iii) take all reasonable steps to defend against any objection, appeal, petition, motion, or other challenge to the Bankruptcy Court's entry of the Plan Confirmation Order.

2.3.3    The form and manner of notice of the hearing to confirm the Plan and the form and manner of notice of the hearing as to the adequacy of the disclosure statement pertaining thereto are subject to advance approval by the Settling Insurers, which approval cannot be unreasonably withheld.  The Diocese shall publish notice of the Plan, balloting on the Plan, and a disclosure statement approved by the Bankruptcy Court under section 1125(b) of the Bankruptcy Code relating to the Plan at least once in *The New York Times* or *USA Today* and once the Rochester *Democrat and Chronicle* and as the Bankruptcy Court may additionally direct.

2.3.4    Prior to entry of the Plan Confirmation Order, the Diocese shall oppose any motion to lift any stay pursuant to section 362 of the Bankruptcy Code as to any Tort Claim asserted against the Diocese, and shall use commercially reasonable efforts to seek an order of the Bankruptcy Court, pursuant to sections 105 and 362 of the Bankruptcy Code, staying the prosecution of any Tort Claim asserted against any Diocese Parties that would, following the entry of the Plan Confirmation Order, be a Channeled Claim.  If, prior to the Plan Confirmation Order becoming a Final Order, the Bankruptcy Court allows any Person to prosecute any such Tort Claim, the Diocese Parties shall defend themselves against such Tort Claims and comply with the terms of any order of the Bankruptcy Court, and Interstate's rights and obligations relating to such litigation shall be determined by, and subject to, the terms and conditions of the Diocese Policies, this Settlement Agreement, and any applicable orders of the Bankruptcy Court.  Any amounts paid by Interstate to defend against, settle, or indemnify any liability of the Diocese Parties for such Tort Claims ("Defense and Indemnity Costs") may, at Interstate's election and upon written notice to the Diocese prior to the Settlement Agreement Effective Date, be set off against the

10

Settlement Amount. Not later than the last day of each month, Interstate shall provide the Diocese with written notice of the amount of any Defense and Indemnity Costs incurred through the end of the prior month.

2.4     The Trust Documents shall require the Trust to register as a Responsible Reporting Entity ("RRE") under the reporting provisions of §111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 (Pub. L. 110- 173) ("MMSEA").

2.5     The Trust Documents shall require the Trust, at its sole expense, to timely submit all reports that are required under MMSEA on account of any claims settled, resolved, paid, or otherwise liquidated and to follow all applicable guidance published by the Centers for Medicare & Medicaid Services of the United States Department of Health and Human Services and/or any other agent or successor entity charged with responsibility for monitoring, assessing, or receiving reports made under MMSEA (collectively, "CMS") to determine whether or not, and, if so, how, to report to CMS pursuant to MMSEA.

2.6     The Trust Documents shall require the Trust to obtain, prior to remittance of funds to claimants' counsel, or to the claimant, if pro se, in respect of any Tort Claim, a certification from the claimant to be paid that said claimant has or will provide for the payment and/or resolution of any obligations owing or potentially owing under 42 U.S.C. §1395y(b), or any related rules, regulations, or guidance, in connection with, or relating to, such Tort Claim.

2.7     The Diocese Parties will undertake commercially reasonable actions to cooperate with Interstate in connection with responding to any inquiry from Interstate's regulators, auditors, reinsurers, or retrocessionaires.

2.8     From and after the execution date of this Settlement Agreement, the Diocese and Interstate shall cease all litigation activities against each other in the Bankruptcy Case, including that Interstate will not object to any proposed Plan consistent with this Settlement Agreement, nor serve or compel any discovery in connection with the Bankruptcy Case, the Adversary Proceeding, or any other potential adversary proceedings and contested matters; provided that: (i) the Diocese shall not include any provision in any Plan that adversely affects the rights or benefits of Interstate under this Settlement Agreement, or that otherwise violates, or is contrary to, the agreements and covenants contained in this Settlement Agreement; and (ii) the Diocese shall not act, or fail to act, in such a way that otherwise violates, or is contrary to, the agreements and covenants contained in this Settlement Agreement. Notwithstanding the foregoing, Interstate may participate in the Bankruptcy Case for the purpose of supporting or enforcing any of the terms of this Settlement Agreement and protecting its rights.

2.9     The Parties shall each bear, as to each other only, their own costs, expenses, and counsel and professional fees in the Bankruptcy Case.

2.10    The Parties covenant not to sue each other until (a) the Settlement Agreement Effective Date has occurred and Interstate has made the Settlement Payment, at which time this covenant is superseded by the releases provided in Section 4, or (b) the date on which this Settlement Agreement is terminated.

14079750.4

2.11    Upon the occurrence of the Settlement Agreement Effective Date and Interstate's payment of the Settlement Amount, Interstate shall have no obligation to pay, handle, object, or otherwise respond to any Claim against the Diocese Parties, and the Diocese Parties (i) will withdraw all outstanding tenders of Claims to Interstate for defense and indemnity; (ii) will not tender any Claims to Interstate; and (iii) will not request Interstate to fund any judgments, settlements, or defense costs.

2.12    Within seven (7) days following the occurrence of the Settlement Agreement Effective Date and Interstate's payment of the Settlement Amount, the Diocese shall dismiss Interstate from the Adversary Proceeding with prejudice.

## 3.    PAYMENT OF THE SETTLEMENT AMOUNTS

3.1    Within thirty (30) days of the Settlement Agreement Effective Date, Interstate shall pay the Settlement Amount to the Trust.

3.2    The delivery of the Settlement Amount to the Trust shall be in full and final settlement of all responsibilities under and arising out of the Diocese Policies that were issued or allegedly issued to the Diocese Parties or under which the Diocese Parties are an insured, and in consideration of the amendment of the Diocese Policies as set forth in Section 3.3 below, the sale of the Diocese Policies back to Interstate free and clear of all Interests of any Entity, and the other releases provided herein.

3.3    Subject to the occurrence of the Settlement Agreement Effective Date, the Parties agree:  (a) the Settlement Amount is the total amount that Interstate is obligated to pay on account of any and all Claims or Tort Claims under, arising out of, relating to, or in connection with the Diocese Policies (including Channeled Claims and any reimbursement obligations for Conditional Payments under the MSPA); (b) under no circumstance will Interstate ever be obligated to make any additional payments to or on behalf of anyone in connection with the Diocese Policies, including any payments in connection with amounts allegedly owed under the MSPA or in connection with any Claims or Tort Claims, including any Channeled Claims; (c) under no circumstance will Interstate ever be obligated to make any additional payments to or on behalf of the Diocese Parties or any Tort Claimants in connection with the Diocese Policies with respect to any Claims that, directly or indirectly, arise out of, relate to, or are in connection with any Tort Claims, including any Channeled Claims; (d) all limits of liability of the Diocese Policies, regardless of how the Diocese Policies identify or describe those limits, including all per person, per occurrence, per claim, "each professional incident," per event, per accident, total, and aggregate limits, shall be deemed fully and properly exhausted; and (e) immediately prior to Interstate's buyback of the Diocese Policies as further described in Section 4.4 below, the Diocese Policies shall be amended by endorsement to include a Sexual Abuse Exclusion applicable to all Unknown Tort Claims.  The Parties further agree that the Settlement Amount includes the full purchase price of the Diocese Policies and consideration for the releases and other protections afforded by this Settlement Agreement.

3.4    The Parties agree and represent that (a) the consideration to be provided by Interstate pursuant to this Settlement Agreement constitutes a fair and reasonable compromise and exchange for the consideration granted to Interstate in this Settlement Agreement (including the

releases set forth below), and (b) the consideration to be provided by the Diocese Parties to Interstate pursuant to this Settlement Agreement (including the releases set forth below) constitutes a fair and reasonable compromise and exchange for the consideration granted to the Diocese Parties in this Settlement Agreement. Interstate is not acting as volunteer, and the Settlement Amount reflects potential liabilities and obligations to the Diocese Parties of the amount Interstate allegedly is obligated to pay on account of all Claims or Tort Claims.

## 4. RELEASES AND SALE FREE AND CLEAR

4.1     Upon the occurrence of the Settlement Agreement Effective Date and Interstate's payment of the Settlement Amount, with no further action being required, the Diocese Parties shall be deemed to have fully, finally, and completely remised, released, acquitted, and forever discharged Interstate and any of its reinsurers or retrocessionaires solely in their capacity as such, from any and all past, present, and future Claims that, directly or indirectly, arise out of, relate to, or are in connection with the Diocese Policies or Claims that are covered or alleged to be covered under the Diocese Policies, including any Channeled Claims, reimbursement obligations for Conditional Payments under the MSPA, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Tort Claims or the Bankruptcy Case. The releases in this Section 4.1 specifically include all Unknown Tort Claims or demands that are based in whole or in part on the Tort Claims.

4.2     Upon the occurrence of the Settlement Agreement Effective Date and Interstate's payment of the Settlement Amount, and with no further action being required, Interstate shall be deemed to have hereby fully, finally, and completely remised, released, acquitted, and forever discharged the Diocese Parties from any and all past, present, and future Claims that, directly or indirectly, arise out of, relate to, or are in connection with the Tort Claims and the Diocese Policies, including any Channeled Claims, reimbursement obligations for Conditional Payments under the MSPA, and all Claims that, directly or indirectly, arise from, relate to, or are in connection with the Tort Claims or the Bankruptcy Case.

4.3     Upon the occurrence of the Settlement Agreement Effective Date and Interstate's payment of the Settlement Amount, none of the Diocese Parties shall assert against Interstate any Claim with respect to any matter, conduct, transaction, occurrence, fact, or other circumstance that, directly or indirectly, arises out of, relates to, or is in connection with any of the Diocese Policies, any Channeled Claim, or any other matter released pursuant to Sections 4.1 and 4.2 above.

4.4     Upon the occurrence of the Settlement Agreement Effective Date and Interstate's payment of the Settlement Amount, and following the amendment of the Diocese Policies as set forth in Section 3.3 above, Interstate hereby buys back the Diocese Policies, free and clear of all Interests of all Entities, including all Interests of the Diocese Parties and any other Entity claiming coverage by, through, or on behalf of any of the Diocese Parties, any other insurer, and any Tort Claimant. This sale is pursuant to § 363(b), (f), and (m) of the Bankruptcy Code. The Parties acknowledge and agree, and the Approval Order shall find and conclude, that upon the occurrence of the Settlement Agreement Effective Date and Interstate's payment of the Settlement Amount: (a) Interstate is a good faith purchaser of the Diocese Policies and Interests therein within the meaning of §363(m) of the Bankruptcy Code; (b) the consideration exchanged constitutes a fair and reasonable settlement and compromise of the Parties' disputes and of their respective rights

and obligations relating to the foregoing Diocese Policies and Interests therein and constitutes reasonably equivalent value; (c) the releases in this Settlement Agreement and the policy buyback comply with the Bankruptcy Code and applicable nonbankruptcy law; (d) the Diocese Policies and Interests therein shall be terminated and of no further force and effect; (e) Interstate's payment of the Settlement Amount constitutes Interstate's full and complete performance of any and all obligations under the Diocese Policies, including any performance owed to the Diocese Parties, and exhausts all limits of liability of the Diocese Policies; (f) all Interests the Diocese Parties may have had, may presently have, or in the future may have in the Diocese Policies are released pursuant to the terms of this Settlement Agreement; and (g) the Diocese Parties accept the Settlement Amount in full and complete compromise and satisfaction of all Interstate's past, present, and future obligations, including any obligations to any of the Diocese Parties under such Diocese Policies or arising therefrom, as to any and all Claims for insurance coverage or policy benefits of any nature whatsoever arising out of or related in any way to such Diocese Policies, whether legal or equitable, known or unknown, suspected or unsuspected, fixed or contingent, and regardless of whether or not such Claims arise from, relate to, or are in connection with the Tort Claims, Channeled Claims, the Bankruptcy Case, or otherwise.

4.5     The Diocese Parties represent and warrant that all of the releases and other benefits provided in this Settlement Agreement by the Diocese Parties to Interstate are at least as favorable as the releases and other benefits that the Diocese Parties have provided to any other one of the Settling Insurers in the Bankruptcy Case.  If the Diocese Parties enter into any agreement with any other one of the Settling Insurers in the Bankruptcy Case that provides that insurer with releases or other benefits that are more favorable than those contained in this Settlement Agreement, then this Settlement Agreement shall be deemed to be modified to provide Interstate with those more favorable releases or benefits.  However, Section 7.2 shall not be modified.  The Diocese or Reorganized Debtor, as applicable, shall notify Interstate promptly of the existence of such more favorable releases or benefits.

4.6     Notwithstanding anything in this Settlement Agreement, nothing in this Settlement Agreement is intended to or shall be construed to apply to or have any effect on Interstate's right to reinsurance recoveries under any reinsurance treaties, certificates, or contracts that cover losses arising under or in connection with the Diocese Policies or any other binder, certificate, or policy of insurance issued by Interstate.

4.7     Notwithstanding anything in this Settlement Agreement, nothing in this Settlement Agreement is intended to or shall be construed to release any Claims that Interstate has or might have against any insurer that is not a Settling Insurer except that, to the extent such other insurers have agreed or in the future agree to release any Claims against Interstate arising out of or related in any way to the Tort Claims, then Interstate also releases such Claims against such other insurers to the same extent.

4.8     This Section 4 is not intended to, and shall not be construed to, release, waive, relinquish, or otherwise affect the Parties' rights and obligations under this Settlement Agreement.

## 5.     TERMINATION OF AGREEMENT

5.1     The Parties may terminate this Settlement Agreement by mutual agreement in writing.

5.2     Each of the Diocese or Interstate may terminate this Settlement Agreement upon thirty (30) days written notice to the other Party in the event of any of the following occurs prior to the Settlement Agreement Effective Date: (i) the Approval Order and the Plan Confirmation Order are not entered within eighteen (18) months from the date on which the Settlement Agreement is executed by all the Parties; (ii) the Bankruptcy Court enters an order that becomes a Final Order inconsistent with the Approval Order or the Plan Confirmation Order; (iii) a plan that is inconsistent with the terms of this Settlement Agreement is confirmed; (iv) the Bankruptcy Case is dismissed or converted to a case under chapter 7 of the Bankruptcy Code; or (v) the United States Court of Appeals for the Second Circuit or the Supreme Court of the United States issues a precedential decision, or the District Court issues a decision in the Bankruptcy Case, that is not subject to further review holding that the federal courts lack the subject matter jurisdiction, the statutory authority, or the Constitutional ability to issue the Channeling Injunction or the Supplemental Injunction. Additionally, (x) Interstate may terminate this Settlement Agreement upon thirty (30) days written notice to the Diocese if the Diocese files a plan inconsistent with this Settlement Agreement, and (y) in the event that Interstate elects pursuant to Section 2.3.4 above to set off against the Settlement Amount more than Seven Hundred Eighty Thousand Dollars ($780,000) in Defense and Indemnity Costs, the Diocese may terminate this Settlement Agreement by written notice to Interstate delivered no later than ten (10) days following receipt by the Diocese of Interstate's notice of its intent to exercise such setoff.

5.3     In the event of termination pursuant to this Section 5, unless the Parties agree otherwise in writing, all Parties shall retain all of their Interests, rights, and obligations relating to the Diocese Policies as if this Agreement never existed.

## 6.     REPRESENTATIONS AND WARRANTIES OF THE PARTIES

6.1     The Parties separately represent and warrant as follows:

6.1.1   To the extent it is a corporation, including a non-profit, religious, or charitable corporation, or other legal entity, each Party has the requisite power and authority to enter into this Settlement Agreement and to perform the obligations contemplated by this Settlement Agreement, subject only to approval of the Bankruptcy Court;

6.1.2   This Settlement Agreement has been thoroughly negotiated and analyzed by counsel to the Parties and executed and delivered in good faith pursuant to arm's length negotiations and for value and valuable consideration.

6.1.3   The Parties make the agreements and compromises set forth in this Settlement Agreement, agree to the valuable consideration provided by, and to be provided under, this Settlement Agreement, and make the representations and warranties contained in this Settlement Agreement with the knowledge and understanding that the Committee has not indicated its support or consent to this Settlement Agreement and that the

Committee and Tort Claimants may object to approval of this Settlement Agreement or confirmation of the Plan.

6.2     The Diocese Parties represent and warrant that they have not assigned, and will not assign, any Interests in the Diocese Policies to any Entity.

6.3     The Diocese Parties represent and warrant that, to the best of their knowledge, they are the owners of the Diocese Policies, and that no other Entity has legal title to the Diocese Policies.

6.4     The Diocese Parties represent and warrant that, except with respect to any actions they may have previously undertaken in connection with the Bankruptcy Case, the Adversary Proceeding, or their participation in mediation ordered by the Bankruptcy Court, they have not in any way assisted, and shall not in any way assist, any Person in the establishment or pursuit of any Claim or Tort Claim against Interstate.

6.5     The Diocese represents and warrants that actual notice of the Approval Motion will be sent to all Tort Claimants or their counsel, whose names and addresses are known to the Diocese or can be reasonably ascertained by it, the other Diocese Parties, the Committee, the Unknown Claims Representative (if appointed), all Persons who have filed notices of appearance in the Bankruptcy Case, and all Persons known or believed by the Diocese to have provided general or professional liability insurance to the Diocese, all in accordance with Section 2.1.1 hereof, and as otherwise ordered by the Bankruptcy Court.  The Diocese further represents and warrants that it will use commercially reasonable efforts to comply with any other requirements imposed by the Bankruptcy Court with respect to the Approval Motion.

6.6     The Diocese Parties and Interstate, respectively, represent and warrant that they have completed a reasonable search for evidence of any policy of insurance issued by Interstate to the Diocese that would afford coverage with respect to any Tort Claim.  Other than the policies or alleged policies identified in Exhibit 1, no such policies have been identified.  Notwithstanding the foregoing, nothing in this Settlement Agreement, including the Exhibits hereto, shall be construed as or deemed to be an admission or evidence that any binder, certificate, or policy of insurance was in fact issued or affords coverage in connection with any Tort Claims.

7.     **ACTIONS INVOLVING THIRD PARTIES**

7.1     For purposes of supporting the releases granted in Section 4 and the extinguishment of any and all rights under the Diocese Policies resulting from the purchase and sale thereof contemplated by this Settlement Agreement, the Diocese hereby agrees as follows:

7.1.1     From and after (i) the occurrence of the Settlement Agreement Effective Date, and (ii) Interstate's payment of the Settlement Amount, if any other insurer of the Diocese obtains a judicial determination or binding arbitration award that it is entitled to obtain a sum certain from Interstate as a result of a claim for contribution, subrogation, indemnification, or other similar Claim for any of Interstate's alleged share or equitable share, or to enforce subrogation rights, if any, with respect to the defense or indemnity obligation of any of Interstate for any Claims or reimbursement obligations for Conditional Payments released or resolved pursuant to this Settlement Agreement, the Diocese shall

voluntarily reduce any judgment or Claim against, or settlement with, such other insurers to the extent necessary to satisfy such contribution, subrogation, indemnification, or other Claims against Interstate.  To ensure that such a reduction is accomplished, Interstate shall be entitled to assert this Section 7 as a defense to any action against it brought by any other insurer for any such portion of the judgment or Claim and shall be entitled to request that the court or appropriate tribunal issue such orders as are necessary to effectuate the reduction to protect Interstate from any liability for the judgment or Claim.  Moreover, if a non-settling insurer asserts that it has a Claim for contribution, indemnity, subrogation, or similar relief against Interstate, such Claim may be asserted as a defense against a Claim by the Diocese or the Trust in any coverage litigation (and the Diocese or the Trust may assert the legal and equitable rights of Interstate in response thereto); and to the extent such a Claim is determined to be valid by the court presiding over such action, the liability of such non-settling insurer to the Diocese or the Trust shall be reduced dollar for dollar by the amount so determined.

7.1.2    Unless this Settlement Agreement is terminated, Interstate shall not seek reimbursement for any payments it makes under this Settlement Agreement under theories of contribution, subrogation, indemnification, or similar relief from any other Settling Insurer unless that other insurer first seeks contribution, subrogation, indemnification, or similar relief from Interstate.  Notwithstanding the foregoing, nothing herein shall be construed as prohibiting Interstate from seeking recovery (including with respect to the Settlement Amount or otherwise) from its reinsurers or retrocessionaires in their capacity as such. The Diocese shall use commercially reasonable efforts to obtain from all Settling Insurers agreements substantially identical to those contained in this Section 7 and shall use commercially reasonable efforts to obtain similar agreements from any other insurer with which it settles in the future; provided, however, that the failure of the Diocese, despite its commercially reasonable efforts, to obtain such an agreement from any insurer with which it settles will not be a basis to terminate this Settlement Agreement or excuse Interstate from performing its respective obligations hereunder.

7.2    Subject to the occurrence of the Settlement Agreement Effective Date and Interstate's payment of the Settlement Amount, and pursuant to the terms of the Plan, the Trust shall defend, indemnify, and hold harmless Interstate with respect to any and all Channeled Claims and, any and all other Claims which relate to the Diocese Policies, including all such Claims made by (i) any Person claiming to be insured (as a named insured, additional insured, or otherwise) under any of the Diocese Policies; (ii) any Person who has made, will make, or can make a Tort Claim or Related Insurance Claim; and (iii) any Person who has actually or allegedly acquired or been assigned the right to make a Claim under any of the Diocese Policies.

7.2.1    Interstate shall have the right to defend any Claims identified in this Section 7.2 and shall do so in good faith.  Interstate may undertake the defense of any such Claim on receipt of such Claim.  Interstate agrees to notify the Trust as soon as practicable of any Claims identified in this Section 7.2 and of its choice of counsel.

7.2.2    The Trust shall reimburse all reasonable and necessary attorneys' fees, expenses, costs, and amounts incurred by Interstate in defending such Claims.  Interstate may settle or otherwise resolve a Claim only with the prior consent of the Trust, which

consent shall not be unreasonably withheld. Interstate's defense, settlement, or other resolution of any Claims pursuant to this Section 7.2 shall not diminish the obligations of the Trust to indemnify Interstate for such Claims, as set forth in this Section 7.2.

7.3     If any Person attempts to prosecute a Channeled Claim against Interstate before the Approval Order and Plan Confirmation Order become Final Orders, then promptly following notice to do so from Interstate, the Diocese will file a motion and supporting papers to obtain an order from the Bankruptcy Court pursuant to sections 362 and 105(a) of the Bankruptcy Code protecting Interstate from any such Claims until the Plan Confirmation Order has become a Final Order, the Bankruptcy Case is dismissed, or this Settlement Agreement is terminated under Section 5 hereof.

## 8.     MISCELLANEOUS

8.1     If any action or proceeding of any type whatsoever is commenced or prosecuted by any Entity not a Party to this Settlement Agreement to invalidate, interpret, or prevent the validation or enforcement, or carrying out, of all or any of the provisions of this Settlement Agreement, the Parties mutually agree to cooperate fully in opposing such action or proceeding.

8.2     The Parties will take such steps and execute any documents as may be reasonably necessary or proper to effectuate the purpose and intent of this Settlement Agreement and to preserve its validity and enforceability.

8.3     The Parties shall cooperate with each other in connection with the Approval Motion, the Approval Order, the Plan, the Plan Confirmation Order, and the Bankruptcy Case. Such cooperation shall include consulting with each other upon reasonable request concerning the status of proceedings and providing each other with copies of reasonably requested pleadings, notices, proposed orders, and other documents relating to such proceedings as soon as reasonably practicable prior to any submission thereof.

8.4     Notwithstanding any language to the contrary in this Settlement Agreement, under no circumstance will the Diocese be obligated to take any action that violates any obligation or duty owed by the Diocese to any other insurer, and if a court of competent jurisdiction determines that a term or condition in this Settlement Agreement does violate any obligation or duty owed by any of the Diocese to any other insurer, the Diocese shall be relieved of such term or condition, but the scope and finality of the releases set forth in this Settlement Agreement shall not be affected or modified.

8.5     This Settlement Agreement constitutes a single integrated written contract that expresses the entire agreement and understanding between and among the Parties.

8.6     This Settlement Agreement may be modified only by a written amendment signed by all of the Parties, and no waiver of any provision of this Settlement Agreement or of a breach thereof shall be effective unless expressed in a writing signed by the waiving Party. The waiver by any Party of any of the provisions of this Settlement Agreement or of the breach thereof shall not operate or be construed as a waiver of any other provision or breach.

8.7     By entering into this Settlement Agreement, none of the Parties has waived or shall be deemed to have waived any rights, obligations, or positions they have asserted or may in the future assert in connection with any matter outside the scope of this Settlement Agreement.  No part of this Settlement Agreement, its negotiation, or its performance may be used in any manner in any action, suit, or proceeding as evidence of the rights, duties, or obligations of the Parties with respect to matters outside the scope of this Settlement Agreement.  All actions taken and statements made by the Parties or by their representatives relating to this Settlement Agreement or participation in this Settlement Agreement, including its development and implementation, shall be without prejudice or value as precedent.

8.8     This Settlement Agreement represents a compromise of disputed Claims and shall not be deemed an admission or concession regarding liability, culpability, wrongdoing, or insurance coverage.  All related discussions, negotiations, and all prior drafts of this Settlement Agreement shall be deemed to fall within the protection afforded to compromises and to offers to compromise by Rule 408 of the Federal Rules of Evidence and any parallel state law provisions. Any evidence of the negotiations or discussions associated with this Settlement Agreement shall be inadmissible in any action or proceeding for purposes of establishing any rights, duties, or obligations of the Parties, except that they shall be admissible to the extent they would have otherwise been admissible, absent this Section 8.8, in (i) an action or proceeding to enforce the terms of this Settlement Agreement, including any use as set forth in Section 7.1.1, or (ii) any possible action or proceeding between Interstate and any reinsurers.  This Settlement Agreement shall not be used as evidence or in any other manner, in any court or dispute resolution proceeding, to create, prove, or interpret Interstate's obligations under the Diocese Policies or any other binder, certificate, or policy of insurance issued by Interstate.

8.9     None of the Parties shall make any public statements or disclosures (i) regarding another Party's rationale or motivation for negotiating or entering into this Settlement Agreement, or (ii) asserting or implying in any way that the Parties acted improperly or in violation of any duty or obligation, express or implied, in connection with any matter arising out of, relating to, or in connection with the Diocese Policies or any other binder, certificate, or policy of insurance issued or allegedly issued by Interstate, including handling of or involvement in connection with the Tort Claims or the resolution of the Tort Claims.

8.10     Neither this Settlement Agreement nor the rights and obligations set forth in this Settlement Agreement shall be assigned without the prior written consent of the other Parties.

8.11     This Settlement Agreement was jointly drafted by the Parties, and the wording of this Settlement Agreement was reviewed by legal counsel for each of the Parties, and each of them had sufficient opportunity to propose and negotiate changes prior to its execution.  The language of all parts of this Settlement Agreement shall in all cases be construed as a whole according to its meaning and not strictly for or against any Party.

8.12     Section titles and headings contained in this Settlement Agreement are included only for ease of reference and shall have no substantive effect.

8.13     All notices, demands, or other communication to be provided pursuant to this Settlement Agreement shall be in writing and sent by e-mail and Federal Express or other overnight

14079750.4

delivery service, costs prepaid, to the Parties at the addresses set forth below, or to such other Person or address as any of them may designate in writing from time to time:

If to the Diocese:

> The Diocese of Rochester
> 1150 Buffalo Road
> Rochester, New York 14624
> Attention: Lisa M. Passero, Chief Financial Officer

> with copies to:

> Bond, Schoeneck & King, PLLC
> One Lincoln Center
> Syracuse, New York 13202
> Attn: Stephen A. Donato
> Charles J. Sullivan
> Grayson T. Walter

> -and-

> Blank Rome LLP
> 1825 Eye Street NW
> Washington, D.C. 20006
> Attn: James R. Murray
> James S. Carter

If to Interstate:

> Marc Orloff
> Allianz Resolution Management
> 1465 North McDowell Boulevard, Suite 100
> Petaluma, CA 94954

> with a copy to:
> Rivkin Radler LLP
> 926 RXR Plaza
> Uniondale, NY 11556-0926
> Attn: Siobhain Minarovich

> and

> Parker Hudson Rainer & Dobbs LLP
> 303 Peachtree Street, Suite 3600
> Atlanta, Ga. 30308
> Attn: Harris Winsberg

and

Bradley Riley Jacobs PC
500 West Madison Street, Suite 1000
Chicago, IL 60661
Attn: Todd C. Jacobs

8.14    This Settlement Agreement may be executed in multiple counterparts, all of which together shall constitute one and the same instrument.  This Settlement Agreement may be executed and delivered by facsimile, e-mail, or other electronic image, which facsimile, e-mail, or other electronic image counterparts shall be deemed to be originals.

8.15    Nothing contained in this Settlement Agreement shall be deemed or construed to constitute (i) an admission by Interstate that the Diocese Parties or any other Entity was or is entitled to any insurance coverage under the Diocese Policies or any other binder, certificate, or policy of insurance issued by Interstate or as to the validity of any of the positions that have been or could have been asserted by the Diocese Parties, (ii) an admission by the Diocese Parties as to the validity of any of the positions or defenses to coverage that have been or could have been asserted by Interstate or any Claims that have been or could have been asserted by the Diocese Parties against Interstate, or (iii) an admission by the Diocese Parties or Interstate of any liability whatsoever with respect to any of the Tort Claims.

8.16    All of the Persons included in the definition of Interstate, all of the Parties to this Agreement, and the Trust are intended beneficiaries of this Settlement Agreement.  Except as set forth in the preceding sentence or otherwise set forth in this Settlement Agreement, there are no third-party beneficiaries of this Settlement Agreement.

8.17    The Diocese Parties and Interstate shall each be responsible for their own fees and costs incurred in connection with the Bankruptcy Case, this Settlement Agreement, and the implementation of this Settlement Agreement.

8.18    The following rules of construction shall apply to this Settlement Agreement:

8.18.1  Unless the context of this Settlement Agreement otherwise requires:  (i) words of any gender include each other gender; (ii) words using the singular or plural number also include the plural or singular number, respectively; (iii) the terms "hereof," "herein," "hereby," and derivative or similar words refer to this entire Settlement Agreement; and (iv) the words "include," "includes," or "including" shall be deemed to be followed by the words "without limitation."

8.18.2  References to statutes shall include all regulations promulgated thereunder and references to statutes or regulations shall be construed as including all statutory and regulatory provisions regardless of whether specifically referenced in this Settlement Agreement.

8.18.3  The use of the terms "intend," "intended," or "intent," when describing the intention of the Parties, as the case may be, shall not be construed to create a breach of this Settlement Agreement when the stated intent is not achieved.

8.19    The Bankruptcy Court in the Bankruptcy Case shall retain jurisdiction to interpret and enforce the provisions of this Settlement Agreement, which shall be construed in accordance with New York law without regard to conflicts of law principles thereof.  Interstate does not, by virtue of this Section 8.19 or any other provision in this Settlement Agreement, consent to the Bankruptcy Court's jurisdiction as to any other matter.

8.20    This Settlement Agreement and the Diocese's obligations under this Settlement Agreement shall be binding on the Diocese and the Reorganized Debtor and shall survive the entry of the Plan Confirmation Order.

8.21    This Settlement Agreement shall be effective on the Settlement Agreement Effective Date.

8.22    Nothing in this Settlement Agreement will prevent Interstate from allocating the Settlement Amount among the Diocese Policies at Interstate's discretion.

8.23    If any provision of this Settlement Agreement, or the application thereof, shall for any reason or to any extent, be construed to be invalid or unenforceable, the remainder of this Settlement Agreement, and the application of such provision to other circumstances, shall be interpreted so as to best effect the intent of the Parties, unless such determination of invalidity or unenforceability deprives any Party of the substantial benefit of its bargain.

8.24    Except as necessary to obtain approval of this Settlement Agreement in the Bankruptcy Court, which requires that a copy of this Settlement Agreement be publicly filed on the docket and provided to the parties in interest in the Bankruptcy Case, the Parties agree that all matters relating to the negotiation and terms of this Settlement Agreement shall be confidential and are not to be disclosed except by order of court or consent of the Parties in writing, except that, provided recipients agree to keep such information confidential, this Settlement Agreement may be disclosed to (1) Interstate's respective reinsurers, reinsurance intermediaries, or retrocessionaires; (2) where required by subpoena, court order, discovery request, or otherwise as required by law, or in any action concerning the interpretation, validity, breach of enforcement of this Settlement Agreement; and (3) Interstate's employees who have a business need to know, parent companies, auditors, accountants, tax advisors, attorneys, retained experts and consultants, lenders, regulators, claims handling administrators, underwriters or any member company with a business need to know.  The consent required under this paragraph shall not be unreasonably withheld.

14079750.4

**IN WITNESS WHEREOF**, the Parties have executed this Agreement by their duly authorized representatives.

Signed: _____

The Diocese of Rochester

Name Printed: _____

Title: _____

Date: _____ 2022


Signed: _____

Interstate Fire & Casualty Company

Name Printed: _____

Title: _____

Date: _____ 2022


Signed: _____

National Surety Corporation

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

The Cathedral Community of Rochester NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Roman Catholic Parish of St. Frances Xavier Cabrini

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Peace of Christ Roman Catholic Parish of Rochester, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Church of the Holy Apostles, Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

St. Monica Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

St. Anne's Church of Rochester

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Church of the Blessed Sacrament, Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Boniface Church, Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Stanislaus Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

Immaculate Conception/St. Bridget, Rochester

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

Kateri Tekakwitha Roman Catholic Parish

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

Church of St. Charles Borromeo

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

Emmanuel Church of the Deaf of the Diocese of
Rochester

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. George Roman Catholic Lithuanian Church, Inc.

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

The Parish of the Holy Family, Gates, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Holy Cross Church of Rochester, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. John the Evangelist Church Corp.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Lawrence Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

St. Mark's Church of Rochester, New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Mary's Church Society, Inc.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Our Lady of Lourdes Church of Brighton

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Our Mother of Sorrows Church

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Mary's French Church Society (a/k/a Our Lady of Victory)

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of Our Lady Queen of Peace of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Pius Tenth Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Theodore's Church of Gates, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Thomas More Church of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

The Catholic Parish of Saints Isidore and Maria
Torriba

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Alphonsus Catholic German Church

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Aloysius Church, Auburn, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Catholic Church of the Holy Family, Auburn,
N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Mary's Catholic Church, Auburn, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Saints Mary and Martha Roman Catholic Parish
Cayuga County, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Sacred Heart Church of Auburn, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Ann's Church, Owasco, Cayuga County, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Good Shepherd Catholic Community, Aurora

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Agnes Church Society, Avon, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

**St. John Vianney Roman Catholic Parish, Steuben County, NY**

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of the Nativity of the Blessed Virgin Mary,
Brockport, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Martin De Porres

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Benedict Roman Catholic Parish Ontario County, NY

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

St. Peter's Roman Catholic Parish, Ontario County

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Joseph the Worker Roman Catholic Parish, Wayne
County

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Margaret's Church of Conesus Lake, Livonia, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

All Saints, Corning

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Church of St. John Fisher of the Town of Huron,
New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of St. Jerome, East Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

Saint Cecilia's Roman Catholic Church Society

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

St. John the Baptist Catholic Church, Elmira, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Parish of the Most Holy Name of Jesus

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

Church of the Assumption, Fairport, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of the Resurrection, Perinton, New York

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

Church of St. John of Rochester of Perinton, New York

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

The Church of the Holy Cross of Dryden, New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Luke the Evangelist Roman Catholic Church
Society of Livingston County

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Our Lady of Peace Roman Catholic Church of
Geneva, NY

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

St. Hilary's Catholic Church, Genoa, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Anthony's Catholic Church of Groton, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of the Holy Name, Groveland, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Church of St. Elizabeth Ann Seton, The Diocese
of Rochester, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Marianne Cope Roman Catholic Parish, Monroe
County NY

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

Church of St. Leo, Hilton, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Mary's Church of Honeoye Flats, N.Y (St. Mary -
Our Lady of the Hills)

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Paul of the Cross Church, Honeoye Falls, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

Our Lady of the Valley

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Church of St. Mary Our Mother, Horseheads, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

St. Catherine of Siena Church

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Immaculate Conception Church, Ithaca, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

All Saints Church Corporation, Ludlowville, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Rose Roman Catholic Church

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Matthew Catholic Church Society

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

St. Michael's Church Society, Livonia Center, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Parish of St. Katharine Drexel, Palmyra

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

St. Catherine's Roman Catholic Church, Mendon, NY

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Michael's Church, Montezuma, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

St. Michael's Church, Newark, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Christopher of Chili, New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Benedict's Mission Church of Odessa, New York

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

St. Maximilian Kolbe Catholic Church Society of
Wayne County

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

The Parish of Mary, Mother of Mercy, Tompkins
County, New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Blessed Trinity, Owego

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Patrick's Roman Catholic Church Society of
Owego, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Joseph's Catholic Church of Penfield, NY

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

Our Lady of the Lakes Catholic Community

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Raphael's Church, Piffard, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

Church of the Transfiguration, Diocese of Rochester, New York

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Louis Church of Pittsford, N.Y

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

St. John the Evangelist Church Society, Spencerport, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Patrick's Church of Victor, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

**St. Frances & St. Clare Roman Catholic Parish, Seneca County, NY**

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

St. Mary's of the Lake Roman Catholic Church
Society

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Holy Family Catholic Community

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Roman Catholic Church of the Most Holy Trinity
at Webster, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Paul's Roman Catholic Church of Webster, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

Church of the Holy Spirit of Penfield, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

Our Lady of the Snow, Weedsport

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

St. Joseph's Church of West Bloomfield

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

St. Rita's Church of West Webster, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Catholic Community of the Blessed Trinity of Wolcott, NY

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

Catholic Charities of the Diocese of Rochester

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Rochester Catholic Press Association, Inc.

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

DePaul Community Services, Inc., the successor to DePaul
Mental Health Services, Inc. (f/k/a DePaul Clinic)

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

The Corporate Board of Education, Diocese of Rochester

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Bishop Sheen Ecumenical Housing Foundation, Inc.

Name Printed: _____

Title: _____

Date: _____ 2022

Signed: _____

Charles Settlement House, Inc.

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

St. Bernard's School of Theology and Ministry

Name Printed: _____

Title: _____

Date: _____ 2022

14079750.4

Signed: _____

Camp Stella Maris of Livonia, N.Y.

Name Printed: _____

Title: _____

Date: _____ 2022

## SCHEDULE A
## Channeling Injunction

Channeling Injunction.  In consideration of the undertakings of the Protected Parties pursuant to their respective settlements with the Diocese Parties, the funding of the Trust, and other consideration, and to further preserve and promote the agreements between and among the Protected Parties and the protections afforded the Protected Parties and pursuant to § 105 of the Bankruptcy Code:

a. any and all Channeled Claims, are channeled into the Trust and shall be treated, administered, determined, and resolved under the procedures and protocols and in the amounts as established under the Plan and the Trust Documents as the sole and exclusive remedy for all holders of Channeled Claims; and

b. all Entities who have held or asserted, hold or assert, or may in the future hold or assert, any Channeled Claim are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, for the purposes of asserting, enforcing, or attempting to assert or enforce any Channeled Claims against any of the Protected Parties, including:

    i. commencing or continuing in any manner any action or other proceeding of any kind with respect to any Channeled Claim against any of the Protected Parties or against the property of any of the Protected Parties;

    ii. enforcing, attaching, collecting, or recovering, by any manner or means, from any Protected Parties, or from the property of any Protected Parties, with respect to any such Channeled Claim, any judgment, award, decree, or order against any Protected Parties;

    iii. creating, perfecting, or enforcing any lien of any kind against any Protected Parties, or the property of any Protected Parties with respect to any such Channeled Claim; and

    iv. asserting, implementing, or effectuating any Channeled Claim of any kind against:

        1. any obligation due any Protected Parties;

        2. any Protected Parties; or

        3. the property of any Protected Parties.

    v. taking any act, in any manner, in any place whatsoever that does not conform to, or comply with, the provisions of the Plan; and

14079750.4

vi.    asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due any of the Protected Parties or the property of the Protected Parties.

# SCHEDULE B
## Supplemental Injunction
## Preventing Prosecution of Claims Against the Settling Insurer Entities

Pursuant to §§ 105(a) and 363 of the Bankruptcy Code and in consideration of the undertaking of the Settling Insurers pursuant to their Settlement Agreements and the Plan, including the buyback of the Diocese Policies free and clear of all interests pursuant to §363(f) of the Bankruptcy Code, any and all Entities who have held, now hold, or who may in the future hold any Interests (including all debt holders, all equity holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, Tort Claimants, Unknown Tort Claimants, Diocese Parties, perpetrators, non-settling insurers, and all others holding Interest of any kind or nature whatsoever, including those Claims released or to be released pursuant to the Settlement Agreement) against any of the Protected Parties, or other Person covered or allegedly covered under the Diocese Policies, which, directly or indirectly, relate to, any of the Diocese Policies, any Tort Claims, or any Related Insurance Claims, are hereby permanently stayed, enjoined, barred, and restrained from taking any action, directly or indirectly, to assert, enforce, or attempt to assert or enforce any such Interest against the Settling Insurers, including:

    a. Commencing or continuing in any manner any action or other proceeding, including but not limited to a Direct Action, against the Settling Insurers or the property of the Settling Insurers;

    b. Enforcing, attaching, collecting, or recovering, by any manner or means, any judgment, award, decree, or order against the Settling Insurers or the property of the Settling Insurers;

    c. Creating, perfecting, or enforcing any lien of any kind against the Settling Insurers or the property of the Settling Insurers;

    d. Asserting or accomplishing any setoff, right of indemnity, subrogation, contribution, or recoupment of any kind against any obligation due the Settling Insurers or the property of the Settling Insurers; and

    e. Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with the provisions of the Plan.

Any and all Persons holding Interest or Claims of any kind arising under the Diocese Policies shall be permanently enjoined from pursuing such Interests or Claims against the Settling Insurers.

This injunction does not enjoin, or operate as a release of, any Claim against any Person other than the Settling Insurer Entities.

14079750.4

**EXHIBIT 1**
**Approval Order**

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NEW YORK**

In re:

                                   Case No.:  19-20905

The Diocese of Rochester,                 Chapter 11 Case

                     Debtor,

## ORDER APPROVING SETTLEMENT AGREEMENT WITH INTERSTATE

This case is before the Court on the Debtor's motion [Docket No. ___] (the "Motion")[1] for an order approving the settlement agreement, releases, and insurance policy buyback by and between the Debtor, the other Diocese Parties, and Interstate Fire & Casualty Company and National Surety Corporation (collectively, "Interstate").  Having considered the Motion and any responses thereto; having reviewed the files and records in this case; being fully advised in the premises; and determining that good cause exists to grant the Motion,

THE COURT HEREBY FINDS AND DETERMINES AS FOLLOWS:

A.       The Court has jurisdiction over the Motion pursuant to 11 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.       Adequate and sufficient notice of the relief sought in the Motion was provided, and no other or further notice need be provided in order to bind all Entities.

C.       A reasonable opportunity to object or be heard regarding the relief requested in the motion has been afforded to all interested Entities.

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings assigned to them in the Interstate Settlement Agreement attached to this Order as Exhibit A.

D.     The approval of the Interstate Settlement Agreement in this Order is in the best interest of the bankruptcy estate, the Debtor's creditors, and other Entities.

E.     The Debtor has good and sufficient business justifications supporting its entry into the Settlement Agreement with Interstate.  It is a reasonable exercise of the Debtor's business judgment to enter into, perform under, and consummate the Interstate Settlement Agreement, including the sale of the Diocese Policies to Interstate free and clear of liens, Claims (including, but not limited to, Tort Claims), and Interests pursuant to 11 U.S.C. §§ 363(b), (f), and (m) as provided for in the Interstate Settlement Agreement.

F.     The Interstate Settlement Agreement was negotiated and proposed without collusion and in good faith, from arm's length bargaining positions by the Debtor, the other Diocese Parties, and Interstate.  For purposes of the Debtor's sale of the Diocese Policies to Interstate, Interstate is a good faith purchaser within the meaning of 11 U.S.C. § 363(m).

G.     The consideration exchanged, including the Settlement Amount to be paid by Interstate, constitutes a fair and reasonable settlement of the disputes and of their respective rights and obligations relating to the Diocese Policies.

H.     The Debtor, the other Diocese Parties, and Interstate have agreed that, upon the occurrence of the Settlement Agreement Effective Date and payment of the Settlement Amount by Interstate, this Order shall satisfy and extinguish in full all of the obligations of Interstate under, arising out of, or relating to the Diocese Policies.

THE COURT MAKES THE FOLLOWING CONCLUSIONS OF LAW, AND IT IS ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:

1.     The Motion is granted and the Interstate Settlement Agreement is approved in all respects.  The omission in this Order of specific reference to any provision of the Interstate

6

Settlement Agreement shall not impair or diminish the efficacy, propriety, or approval of the provision.

2.     Any and all objections to the Motion or to the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections, are hereby overruled and denied.

3.     The Debtor is authorized to enter into and perform the terms of the Interstate Settlement Agreement and undertake any transactions contemplated by the Interstate Settlement Agreement.

4.     The sale of the Diocese Policies to Interstate is authorized and shall be free and clear of all liens, Claims (including, but not limited to, Tort Claims), and Interests pursuant to 11 U.S.C. §§ 105, 363(b), (f), and (m).  Upon occurrence of the Settlement Agreement Effective Date, in exchange for the Settlement Amount, and upon payment of the same to the Debtor or the Trust (as applicable), and without any further action being required, Interstate shall be deemed to have bought back the Diocese Policies free and clear of all liens, Claims (including, but not limited to, Tort Claims), and Interests of all Entities, including all interests of the Debtor, the other Diocese Parties, and other Persons claiming coverage by, through, or on behalf of the Debtor, the other Diocese Parties, any other insurer, and any Entity holding a Claim (including, but not limited to, a Tort Claim) against any of the Debtor or Other Diocese Party.

5.     The form of injunctions, the releases, and the indemnifications set forth in the Interstate Settlement Agreement comply with the Bankruptcy Code and applicable nonbankruptcy law and are approved and enforceable.

6.     Pursuant to the terms of the Interstate Settlement Agreement, immediately upon the sale of the Diocese Policies to Interstate becoming effective, the Diocese Policies shall be

terminated and no longer in force or effect and shall be exhausted in retrospect as to all coverages, and all Interests the Debtor or any other Entity may have had, may presently have, or in the future may have, in such Diocese Policies are released.

7. Interstate's payment of the Settlement Amount constitutes its full and complete performance of any and all obligations under the Diocese Policies, including any performance owed to the Diocese Parties, and exhausts all limits of liability of the Diocese Policies.

8. Upon the occurrence of the Settlement Agreement Effective Date, all Interests the Diocese Parties may have had, may presently have, or in the future may have in the Diocese Policies are released pursuant to the terms of the Interstate Settlement Agreement.

9. Upon the occurrence of the Settlement Agreement Effective Date, the Diocese Parties accept the Settlement Amount in full and complete satisfaction of all Interstate's past, present, and future obligations, including obligations to any of the Diocese Parties under such Diocese Policies or arising therefrom, as to any and all Claims for insurance coverage or policy benefits of any nature whatsoever arising out of or related in any way to such Diocese Policies, whether legal or equitable, known or unknown, suspected or unsuspected, fixed or contingent, and regardless of whether or not such Claims arise from, related to, or are in connection with the Tort Claims, Channeled Claims, the Bankruptcy Case, or otherwise.

10. This Order shall not limit or preclude the entry or effectiveness of any injunctions that may be granted protecting Interstate in connection with, or as a part of, any order confirming a chapter 11 plan. Interstate shall be entitled to the benefit of any Channeling Injunction and Supplemental Injunction, and any similar injunctions, contained in any such plan.

11. The Interstate Settlement Agreement and this Order are binding upon the parties to the Interstate Settlement Agreement, the reorganized debtor, any trust or trustee for the debtor, its

assets, or its liabilities, and shall survive the confirmation of any plan of reorganization for the Debtor.

12.     The Court shall retain jurisdiction to enforce the provisions of this Order and the Interstate Settlement Agreement and to resolve any issue or dispute concerning the interpretation, implementation or enforcement of this Order and the Interstate Settlement Agreement, or the rights and duties of the Parties hereunder or thereunder, including without limitation, (a) interpretation of the terms, conditions and provisions thereof, and (b) all issues and disputes arising in connection with the relief authorized herein.

Dated:

_____
HON. PAUL WARREN
UNITED STATES BANKRUPTCY JUDGE

## **EXHIBIT 2**
## **Diocese Participating Parties**

| CATHOLIC ENTITY: | ADDRESS: |
|---|---|
| **The Cathedral Community of Rochester NY**; *successor in interest to the insurance rights of*:<br>• Sacred Heart Cathedral, Rochester, N.Y.<br>• The Holy Rosary Church of the City of Rochester, Monroe County, N.Y.<br>• Church of the Most Precious Blood | 296 Flower City Park, Rochester, NY 14615 |
| **Roman Catholic Parish of St. Frances Xavier Cabrini**; *successor in interest to the insurance rights of*:<br>• Our Lady of the Americas (*successor in interest to the insurance rights of* St. Francis Xavier Church; Church of the Most Holy Redeemer of Irondequoit, N.Y.; Our Lady of Mount Carmel Church, Rochester, N.Y.; Corpus Christi Church of Rochester, N.Y.)<br>• Light of Christ Roman Catholic Parish (*successor in interest to the insurance rights of* St. Philip Neri Church of Rochester, N.Y.; St. Andrews Roman Catholic Church of Rochester, N.Y.; Church of the Annunciation, Rochester, N.Y.)<br>• Church of Our Lady of Perpetual Help of Rochester<br>• St. Michael's Church of Rochester, N.Y. | 124 Evergreen St., Rochester, NY 14605 |
| **Peace of Christ Roman Catholic Parish of Rochester**, NY; *successor in interest to the insurance rights of*:<br>• St. Ambrose Church of Rochester;<br>• St. James Church of Rochester, N.Y.;<br>• St. John the Evangelist Church of Rochester, N.Y. | 25 Empire Blvd., Rochester, NY 14096 |
| **The Church of the Holy Apostles, Rochester, N.Y.**; *successor in interest to the insurance rights of*:<br>• St. Francis of Assisi Church of Rochester, N.Y.<br>• Church of the Holy Family, Inc.<br>• The Church of St. Anthony of Padua | 7 Austin St., Rochester, NY 14606 |
| **St. Monica Church of Rochester, N.Y.**; *successor in interest to the insurance rights of*:<br>• The Church of Our Lady of Good Counsel<br>• St. Augustine Church Corporation | 34 Monica St., Rochester, NY 14619 |

| | |
|---|---|
| • SS. Peter and Paul's Roman Catholic Church, Rochester, N.Y. | |
| **St. Anne's Church of Rochester** | 1600 Mount Hope Ave., Rochester NY 14620 |
| **The Church of the Blessed Sacrament, Rochester, N.Y.** | 259 Rutgers St., Rochester, NY 14607 |
| **St. Boniface Church, Rochester, N.Y.** | 330 Gregory St., Rochester, NY 14620 |
| **St. Stanislaus Church of Rochester, N.Y.**; *successor in interest to the insurance rights of*: <br> • St. Theresa of the Child Jesus Church, Bishop of Rochester | 34 Saint Stanislaus St., Rochester, NY 14621 |
| **Immaculate Conception/St. Bridget, Rochester**; *successor in interest to the insurance rights of*: <br> • The Immaculate Conception Church Society <br> • St. Bridget's Church | 445 Frederick Douglass St., Rochester, NY 14608 |
| **Kateri Tekakwitha Roman Catholic Parish**; *successor in interest to the insurance rights of*: <br> • Church of Christ the King, Rochester, N.Y. <br> • St. Cecilia Church, Irondequoit, N.Y. <br> • Church of St. Margaret Mary <br> • Church of St. Salome <br> • St. Thomas Roman Catholic Church | 445 Kings Highway S., Rochester, 14617 |
| **Church of St. Charles Borromeo**; *successor in interest to the insurance rights of*: <br> • Church of the Holy Name of Jesus of Rochester, New York | 3003 Dewey Ave., Rochester, NY 14616 |
| **Emmanuel Church of the Deaf of the Diocese of Rochester** | 34 Monica St., Rochester, NY 14619 |
| **St. George Roman Catholic Lithuanian Church, Inc.** | 150 Varinna Dr., Rochester, NY 14618 |
| **The Parish of the Holy Family, Gates, NY**; *successor in interest to the insurance rights of*: <br> • Church of the Holy Ghost <br> • St. Helen's Church of Gates, N.Y. <br> • Church of St. Jude of the Town of Gates. | 4100 Lyell Rd., Rochester, NY 14606 |
| **Holy Cross Church of Rochester, NY** | 4492 Lake Ave., Rochester, NY 14612 |
| **St. John the Evangelist Church Corp.** | 2400 Ridge Rd. W., Rochester, NY 14625 |
| **St. Lawrence Church of Rochester, N.Y.** | 1000 N. Greece Rd., Rochester, NY 14626 |
| **St. Mark's Church of Rochester, New York** | 54 Kuhn Rd., Rochester, NY 14612 |
| **St. Mary's Church Society, Inc.** | 15 South St., Rochester, NY 14607 |

| | |
|---|---|
| **Our Lady of Lourdes Church of Brighton** | 150 Varinna Dr., Rochester, NY 14618 |
| **Our Mother of Sorrows Church**; *successor in interest to the insurance rights of:*<br>• Our Lady of Mercy Church of Rochester, N.Y. | 5000 Mt. Read Blvd., Rochester, NY 14612 |
| **St. Mary's French Church Society** (a/k/a Our Lady of Victory) | 210 Pleasant St., Rochester, NY 14604 |
| **Church of Our Lady Queen of Peace of Rochester, N.Y.** | 601 Edgewood Ave., Rochester, NY 14618 |
| **St. Pius Tenth Church of Rochester, N.Y.** | 3032 Chili Ave, Rochester, NY 14624 |
| **St. Theodore's Church of Gates, N.Y.** | 168 Spencerport Rd., Rochester, NY 14606 |
| **St. Thomas More Church of Rochester, N.Y.** | 2617 East Ave., Rochester, NY 14610 |
| **The Catholic Parish of Saints Isidore and Maria Torriba**; *successor in interest to the insurance rights of:*<br>• St. Catherine Roman Catholic Church Society, Addison, N.Y.<br>• St. Stanislaus Church of Bradford, N.Y.<br>• St. Joseph's Roman Catholic Church of Campbell, N.Y. | 51 Maple St., Addison, NY 14801 |
| **St. Alphonsus Catholic German Church** | 10 S. Lewis Street, Auburn, NY 13021 |
| **St. Aloysius Church, Auburn, NY** | 85 N. St., Auburn, NY 13021 |
| **The Catholic Church of the Holy Family, Auburn, N.Y.** | 85 N. St., Auburn, NY 13021 |
| **St. Mary's Catholic Church, Auburn, N.Y.** | 15 Clark St., Auburn, NY 13021 |
| **Saints Mary and Martha Roman Catholic Parish Cayuga County, NY**; *successor in interest to the insurance rights of:*<br>• St. Francis of Assisi Italian Roman Catholic Church<br>• St. Hyacinth's Polish Roman Catholic Society Church | 299 Clark St., Auburn, NY 13021 |
| **Sacred Heart Church of Auburn, N.Y.** | 90 Melrose Rd., Auburn, NY 13021 |
| **St. Ann's Church, Owasco, Cayuga County, N.Y.** | Main St., Owasco, NY 13130 |
| **Good Shepherd Catholic Community, Aurora**; *successor in interest to the insurance rights of:*<br>• St. Patrick's Church of Aurora, N.Y.<br>• St. Joseph's Catholic Church of Cayuga, N.Y.<br>• Our Lady of the Lake Church Corporation, King Ferry<br>• St. Patrick's Catholic Church of Moravia, Cayuga County, N.Y.<br>• St. Bernard's Catholic Church<br>• St. Michael's Church of Union Springs, N.Y. | 299 Main St., Aurora, NY 13026 |

| | |
|---|---|
| • St. Isaac Jogues' Chapel | |
| **St. Agnes Church Society, Avon, N.Y.** | 108 Prospect St., Avon, NY 14414 |
| **St. John Vianney Roman Catholic Parish, Steuben County, NY**; *successor in interest to the insurance rights of:*<br>• St. Mary's Catholic Church Society of Bath, N.Y.<br>• St. Gabriel's Catholic Church Society of Hammondsport, N.Y. | 32 E Morris St., Bath, NY 14810 |
| **Church of the Nativity of the Blessed Virgin Mary, Brockport, N.Y.**; *successor in interest to the insurance rights of:*<br>• Newman Oratory of Brockport, New York | 152 Main St., Brockport, NY 14420 |
| **St. Martin De Porres**; *successor in interest to the insurance rights of:*<br>• Catholic Church of St. Vincent DePaul of Churchville, N.Y.<br>• St. Columba's Church, Caledonia, N.Y.<br>• St. Mary of the Assumption Church, Scottsville, N.Y.<br>• St. Patrick's Church, Mumford, N.Y. | 198 North St., Caledonia, NY 14423 |
| **St. Benedict Roman Catholic Parish Ontario County, NY**; *successor in interest to the insurance rights of:*<br>• St. Mary's Church Corp., Canandaigua, N.Y.<br>• St. Bridget's Church of East Bloomfield, N.Y. | 95 N. Main St., Canandaigua, NY 14424 |
| **St. Peter's Roman Catholic Parish, Ontario County**; *successor in interest to the insurance rights of:*<br>• St. Felix's Church, Inc.<br>• St. Francis Church<br>• St. Dominic Roman Catholic Church Society | 12 Hibbard Ave., Clifton Springs, NY 14432 |
| **St. Joseph the Worker Roman Catholic Parish, Wayne County**; *successor in interest to the insurance rights of:*<br>• St. John the Evangelist Roman Catholic Church<br>• St. Michael's Church Society, Inc., Lyons, N.Y.<br>• St. Patrick's Roman Catholic Church, Savannah, N.Y. | 43 W. DeZeng St., Clyde, NY 14433 |
| **St. Margaret's Church of Conesus Lake, Livonia, N.Y.** | P.O. Box 77, Livonia, NY 14487 |
| **All Saints, Corning**; *successor in interest to the insurance rights of:*<br>• The Church of St. Mary's of Corning, N.Y. | 222 Dodge Ave., Corning, NY 14830 |

| | |
|---|---|
| • St. Patrick's Catholic Church, Corning, N.Y.<br>• St. Vincent De Paul's Roman Catholic Church Society Inc., Corning, N.Y.<br>• Church of the Immaculate Heart of Mary of Painted Post | |
| **The Church of St. John Fisher of the Town of Huron, New York** | 11956 Washington St., Wolcott, NY 14590 |
| **Church of St. Jerome, East Rochester, N.Y.** | 207 S. Garfield St., East Rochester, NY 14445 |
| **Saint Cecilia's Roman Catholic Church Society** | 1010 Davis St., Elmira, NY 14901 |
| **St. John the Baptist Catholic Church, Elmira, N.Y.** | 1010 Davis St., Elmira, NY 14901 |
| **Parish of the Most Holy Name of Jesus**; *successor in interest to the insurance rights of:*<br>• St. Mary's Roman Catholic Church Society<br>• Blessed Sacrament Roman Catholic Church of Elmira, NY ( *successor in interest to the insurance rights of* St. Anthony's Church of Elmira, N.Y.; St. Patrick's Roman Catholic Church of Elmira, N.Y.; Saint Peter and Paul's Church, Inc.)<br>• Christ the Redeemer Roman Catholic Parish of Elmira, NY (*successor in interest to the insurance rights of* Our Lady of Lourdes Church of Elmira, New York; St. Casimir's Roman Catholic Church Society, Elmira, N.Y.; Saint Charles Borromeo Roman Catholic Church, Elmira Heights, N.Y.) | 1010 Davis St., Elmira, NY 14901 |
| **Church of the Assumption, Fairport, N.Y.** | 20 East Ave., Fairport, NY 14450 |
| **Church of the Resurrection, Perinton, New York** | 283 Hamilton Rd., Fairport, NY 14450 |
| **Church of St. John of Rochester of Perinton, New York** | 8 Wickford Way, Fairport, NY 14450 |
| **The Church of the Holy Cross of Dryden, New York** | 375 George Rd., Freeville, NY 13068 |
| **St. Luke the Evangelist Roman Catholic Church Society of Livingston County**; *successor in interest to the insurance rights of:*<br>• St. Mary's Roman Catholic Church, Geneseo, N.Y., Livingston County<br>• Thomas Aquinas Roman Catholic Church of Moscow, Livingston County, N.Y. | 13 North St., Geneseo, NY 14454 |

| | |
|---|---|
| • St. Patrick's Church Society of Mt. Morris, New York<br>• Church of the Holy Angels of Nunda, N.Y.<br>• St. Lucy's Church, Retsof, N.Y | |
| **Our Lady of Peace Roman Catholic Church of Geneva, NY**; *successor in interest to the insurance rights of:*<br>• Church of St. Francis DeSales<br>• St. Stephen's Roman Catholic Church, Inc. of Geneva, N.Y. | 130 Exchange St., Geneva, NY 14456 |
| **St. Hilary's Catholic Church, Genoa, N.Y.** | 299 Main St., Aurora, NY 13026 |
| **St. Anthony's Catholic Church of Groton, N.Y.** | 312 Locke Rd., Groton, NY 13073 |
| **Church of the Holy Name, Groveland, N.Y.** | 13 North St., Geneseo, NY 14454 |
| **The Church of St. Elizabeth Ann Seton, The Diocese of Rochester, N.Y.** | P.O. Box 149, Hamlin, NY 14464 |
| **Marianne Cope Roman Catholic Parish, Monroe County NY**; *successor in interest to the insurance rights of:*<br>• Guardian Angels Church of Rochester, New York<br>• Church of the Good Shepherd, Henrietta, N.Y.<br>• St. Joseph's Catholic Society of Rush, N.Y. | 3318 E. Henrietta Rd., Henrietta, NY 14467 |
| **Church of St. Leo, Hilton, N.Y.** | 167 Lake Ave., Hilton, NY 14468 |
| **St. Mary's Church of Honeoye Flats, N.Y (St. Mary - Our Lady of the Hills)** | 8961 Main St., Honeoye, NY 14471 |
| **St. Paul of the Cross Church, Honeoye Falls, N.Y.** | 31 Monroe St., Honeoye Falls, NY 14472 |
| **Our Lady of the Valley**; *successor in interest to the insurance rights of:*<br>• St. Joachim's Roman Catholic Church<br>• St. Ann's Roman Catholic Church<br>• St. Ignatius Loyola Church of Hornell, N.Y.<br>• St. Mary's Roman Catholic Church | 27 Erie Ave., Hornell, NY 14843 |
| **Church of St. Mary Our Mother, Horseheads, N.Y.** | 816 W. Broad St., Horseheads, NY 14845 |
| **St. Catherine of Siena Church** | 302 Saint Catherine Circle, Ithaca, NY 14850 |
| **The Immaculate Conception Church, Ithaca, N.Y.** | 113 N. Geneva St., Ithaca, NY 14850 |
| **All Saints Church Corporation, Ludlowville, NY** | 347 Ridge Rd., Lansing, NY 14882 |
| **St. Rose Roman Catholic Church** | 1985 Lake Ave., Lima, NY 14485 |
| **St. Matthew Catholic Church Society**; *successor in interest to the insurance rights of:* | P.O. Box 77, Livonia, NY 14487 |

| | |
|---|---|
| • St. William's Church Society, Conesus, N.Y.<br>• St. Joseph's Catholic Church Society of Livonia, N.Y. | |
| **St. Michael's Church Society, Livonia Center, N.Y.** | 8961 Main St., Honeoye, NY 14471 |
| **Parish of St. Katharine Drexel, Palmyra**; *successor in interest to the insurance rights of:*<br>• St. Patrick's Church of Macedon, N.Y.<br>• St. Gregory's Roman Catholic Church of Marion, N.Y.<br>• Roman Catholic Church of St. Anne, Palmyra, N.Y. 14522 | 52 Main St., Macedon, NY 14502 |
| **St. Catherine's Roman Catholic Church, Mendon, NY** | 26 Mendon-Ionia Rd., Mendon, NY 14506 |
| **St. Michael's Church, Montezuma, N.Y.** | 2667 Hamilton St., Weedsport, NY 13166 |
| **St. Michael's Church, Newark, N.Y.** | 401 S. Main St., Newark, NY 14513 |
| **St. Christopher of Chili, New York** | 3350 Union St., North Chili, NY 14514 |
| **St. Benedict's Mission Church of Odessa, New York** | 169 Speedway, Odessa, NY 14869 |
| **St. Maximilian Kolbe Catholic Church Society of Wayne County**; *successor in interest to the insurance rights of:*<br>• St. Mary's of the Lake Roman Catholic Church Society<br>• Church of the Epiphany, Sodus, N.Y.<br>• Church of St. Rose of Lima, Sodus Point, N.Y. | 5823 Walworth Rd., Ontario, NY 14519 |
| **The Parish of Mary, Mother of Mercy, Tompkins County, New York**; *successor in interest to the insurance rights of:*<br>• St. Francis Solanus Church, Interlaken, N.Y.<br>• Holy Cross Church<br>• St. James the Apostle Church of Trumansburg, N.Y. | PO Box 337, Ovid, NY 14521 |
| **Blessed Trinity, Owego**, *successor in interest to the insurance rights of:*<br>• St. Margaret Mary's Roman Catholic Church of Apalachin, N.Y.<br>• St. Francis Roman Catholic Church<br>• St. John the Evangelist Roman Catholic Church<br>• St. Pius the Tenth Church, Van Etten, N.Y.<br>• St. James the Apostle, Roman Catholic Church Society of Waverly, N.Y. | 300 Main St., Owego, NY 13827 |

| | |
|---|---|
| **St. Patrick's Roman Catholic Church Society of Owego, N.Y.** | 300 Main St., Owego, NY 13827 |
| **St. Joseph's Catholic Church of Penfield, NY** | 43 Gebhardt Rd., Penfield, NY 14526 |
| **Our Lady of the Lakes Catholic Community**; *successor in interest to the insurance rights of:*<br>• St. Andrew's Church of Dundee<br>• St. Januarius Roman Catholic Church<br>• St. Michael's Church of Penn Yan, N.Y.<br>• St. Patrick's Catholic Church, Prattsburg, N.Y.<br>• St. Mary's Church, Rushville, N.Y.<br>• St. Theresa's Church, Stanley, N.Y. | 210 Keuka St., Penn Yan, NY 14527 |
| **St. Raphael's Church, Piffard, N.Y.** | 13 North St., Geneseo, NY 14454 |
| **Church of the Transfiguration, Diocese of Rochester, New York** | 50 W Bloomfield Rd., Pittsford, NY 14534 |
| **St. Louis Church of Pittsford, N.Y.** | 60 S. Main St., Pittsford, NY 14534 |
| **St. John the Evangelist Church Society, Spencerport, N.Y.** | 55 Martha St., Spencerport, NY 14559 |
| **St. Patrick's Church of Victor, N.Y.** | 115 Maple Ave., Victor, NY 14564 |
| **St. Frances & St. Clare Roman Catholic Parish, Seneca County, NY**; *successor in interest to the insurance rights of:*<br>• St. Mary's Church, Waterloo, N.Y.<br>• St. Patrick's Church of Seneca Falls, N.Y. | 25 Center St., Waterloo, NY 13165 |
| **St. Mary's of the Lake Roman Catholic Church Society** | P.O. Box 289, Watkins Glen, NY 14891 |
| **Holy Family Catholic Community**; *successor in interest to the insurance rights of:*<br>• St. Pius V Church Society, Cohocton, N.Y.<br>• St. Mary's Church<br>• The Church of the Sacred Heart of Jesus, Perkinsville, N.Y.<br>• St. Joseph's Roman Catholic Church Corp., Wayland, N.Y. | 206 Fremont St., Wayland, NY 14572 |
| **The Roman Catholic Church of the Most Holy Trinity at Webster, N.Y.** | 1460 Ridge Rd., Webster, NY 14580 |
| **St. Paul's Roman Catholic Church of Webster, N.Y.** | 783 Hard Rd., Webster, NY 14580 |
| **Church of the Holy Spirit of Penfield, N.Y.** | 1355 Hatch Rd., Webster, NY 14580 |
| **Our Lady of the Snow, Weedsport**; *successor in interest to the insurance rights of:*<br>• St. Patrick's Roman Catholic Church of Cato, N.Y.<br>• St. John's Church, Port Byron, N.Y. 13140 | 2667 Hamilton St., Weedsport, NY 13166 |

| | |
|---|---|
| • St. Joseph's Catholic Church of Weedsport, N.Y. | |
| **St. Joseph's Church of West Bloomfield** | 95 N. Main St., Canandaigua, NY 14424 |
| **St. Rita's Church of West Webster, N.Y.** | 1008 Maple Dr., West Webster, NY 14580 |
| **Catholic Community of the Blessed Trinity of Wolcott, NY**; *successor in interest to the insurance rights of:*<br>• St. Mary Magdalen Church, Wolcott, N.Y.<br>• St. Thomas the Apostle Roman Catholic Church of Red Creek<br>• St. Jude | 11956 Washington St., Wolcott, NY 14590 |
| **Catholic Charities of the Diocese of Rochester** | 1150 Buffalo Rd., Rochester, NY 14624 |
| **Rochester Catholic Press Association, Inc.** | 1150 Buffalo Rd., Rochester, NY 14624 |
| **DePaul Mental Health Services, Inc. f/k/a DePaul Clinic** | 1931 Buffalo Rd., Rochester, NY 14624 |
| **The Corporate Board of Education, Diocese of Rochester** | 1150 Buffalo Rd., Rochester, NY 14624 |
| **Bishop Sheen Ecumenical Housing Foundation, Inc.** | 150 French Rd., Rochester, NY 14618 |
| **Charles Settlement House, Inc.** | 445 Jay St., Rochester, NY 14611 |
| **St. Bernard's School of Theology and Ministry** | 120 French Rd., Rochester, NY 14618 |
| **Camp Stella Maris of Livonia, N.Y.** | 4395 East Lake Rd., Livonia, NY 14487 |

**EXHIBIT 3**
**Sexual Abuse Exclusion**

## SEXUAL OR PHYSICAL ABUSE EXCLUSION ENDORSEMENT

It is agreed that this policy does not apply to claims arising out of the sexual or physical abuse or molestation of any person by the Insured, any employee of the Insured or any volunteer worker.

The company shall not have any duty to defend any suit against the Insured seeking damages on account of such injury.