# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Case No.: 19-20905 |
| The Diocese of Rochester, | Chapter 11 |
| Debtor. | |

| | |
|---|---|
| The Diocese of Rochester, | |
| Plaintiff, | |
| | Adversary Proceeding |
| v. | No.: 19-ap-02021 |
| The Continental Insurance Company, Certain Underwriters at Lloyd's, London, Certain London Market Companies, The Dominion Insurance Company Limited, Stronghold Insurance Company Limited, CX Reinsurance Company Limited, Markel International Insurance Company Limited, Tenecom Limited, National Surety Corporation, Interstate Fire & Casualty Company, Colonial Penn Insurance Company, and HDI Global Specialty SE, | |
| Defendants. | |

### DECLARATION OF LISA M. PASSERO IN SUPPORT OF THE DIOCESE'S MOTION TO APPROVE PROPOSED INSURANCE SETTLEMENTS TO FUND SURVIVOR COMPENSATION TRUST

Lisa M. Passero, declares and states as follows:

1. I am a Certified Public Accountant and the Chief Financial Officer ("CFO") for the Diocese of Rochester (the "Diocese"). I have served as CFO of the Diocese since 2007. Prior to working for the Diocese, I was the CFO and/or Director of Finance for several other national and international corporations. I am familiar with the assets, liabilities, and sources of income for the Diocese.

14067720.6

2. I make this Declaration based upon: (a) my personal knowledge of certain facts stated herein, (b) information supplied to me by others associated with the Diocese, (c) my review of relevant documents, (d) consultation with professionals engaged by the Diocese, and (e) my experience and knowledge of Diocesan operations. If I were called to testify, I would testify to the facts as set forth herein.

3. I am authorized by the Diocese to submit this Declaration in support of the *Motion to Approve Proposed Insurance Settlements to Fund Survivor Compensation Trust* (the "<u>Motion</u>")[1] which provides funding and support for an upcoming plan of reorganization in the amount of $147,750,000 to be placed into a trust for the benefit of survivors.

## **BACKGROUND**

4. On May 26, 2021, the Diocese executed the First Settlement Agreement with LMI/Interstate. Pursuant to the terms of the First Settlement Agreement, LMI agreed to pay $15 million, and Interstate agreed to pay $20 million, for a total of $35 million in order to resolve all claims and causes of action asserted by the Diocese against LMI and Interstate in the above-captioned Insurance Coverage Action. The First Settlement Agreement was terminated according to its terms after the Court denied the motion of the Diocese for approval of same.

5. At the Court's direction, the Diocese returned to mediation following the Court's July 9, 2021 denial of the First Settlement Agreement motion with a clean slate in an attempt to settle all outstanding issues with the Settling Insurers and the Committee. The Diocese has negotiated extensively with all parties to the mediation since that time. I have personally participated in that mediation, which included multiple mediation sessions and many conversations and meetings between and among the parties to the mediation. Notwithstanding the efforts, a

---

[1] Capitalized terms that are used herein but not defined shall have the meanings assigned to such terms in the Motion.

consensual plan of reorganization has not been achieved. Meanwhile, assets of the Diocese that could be used toward payments of survivor's claims are being used to pay large administrative claims of the Diocese's bankruptcy estate, including professional fees. As a result, the funds in the Diocese's estate are declining.

6. While a consensual plan has not been achieved, as a direct result of these additional mediation sessions and the hard work of the parties, the Diocese was able to improve the settlement result with LMI and Interstate, and to obtain additional settlements with CNA and Underwriters. As a result, the Diocese has entered into Settlement Agreements with the Settling Insurers which will provide $107,250,000 to fund survivor compensation under a plan of reorganization.

7. The settlements with the Settling Insurers were negotiated by the Diocese and the Settling Insurers at arm's length, with the assistance of each party's counsel and other professionals, after nearly a year of additional negotiation through mediation. I was a direct participant in the negotiations. It is my belief that the Settlement Agreement is the result of hard-fought, good faith negotiations between the Diocese and the Settling Insurers.

8. In addition to the funding provided by the Settling Insurers, the Diocese, together with the Parishes and other DOR Entities, intend to provide funding in the amount of $40,500,000. Together, these sources will provide $147,750,000 to fund a survivor trust under a chapter 11 plan of reorganization that the Diocese will file in the near future.

## SETTLEMENT WITH THE SETTLING INSURERS

9. The Settlement Agreements provide for settlement payments of $16,650,000 from LMI, $1,100,000 from Underwriters, $26,000,000 from Interstate, and $63,500,000 from CNA in exchange for a buy-back of the Subject Insurance Policies. The negotiated settlements also contemplate that, in exchange for the payment of the Settlement Amounts, the Settling Insurers

3

will receive releases from the DOR Entities and any abuse claims that could otherwise have been asserted against the DOR Entities or their collective insurance policies will be channeled to a trust for the benefit of survivors. If approved, the payments made by the Settling Insurers pursuant to the Settlement Agreements will represent a significant increase from the First Settlement Agreement.

10. In evaluating the Settlement Agreements, the Diocese consulted with its professionals including lead bankruptcy counsel Bond Schoeneck & King, PLLC, special insurance counsel Blank Rome, LLP, special litigation counsel Harris Beach, PLLC, and claim valuation expert Gnarus Advisors, LLC ("Gnarus") in order to evaluate the Settlement Agreements with LMI, Interstate, Underwriters, and CNA. Litigation risks, insurance defense strengths and weaknesses, the Committee's position in mediation, and the strengths, weaknesses, and potential settlement value of various claims asserted against the Diocese and DOR Entities were all factors that the Diocese considered in connection with its analysis.

11. As part of its evaluation of the proposed settlement with the Settling Insurers, the Diocese considered the potential liability of the Diocese and DOR Entities for Survivor Claims. In addition, the Diocese considered the option of attempting to prosecute the Insurance Coverage Action to obtain a declaratory judgment as to the availability of coverage under relevant insurance policies, and the delay, costs, and risks associated with such litigation, including, but not limited to, incurring professional and administrative fees while such action is pending (potentially for years), the possibility of adverse decisions which would leave the Diocese and DOR Entities with little or no coverage, and the impact upon survivors of prolonged litigation. The Diocese considered other potential ways to resolve its disputes with the Settling Insurers and to monetize the value of its insurance policies. Ultimately, however, the Diocese determined it would be most

14067720.6

advantageous to survivors, and to the Diocese's prospects of successfully reorganizing and exiting bankruptcy, to pursue the certainty of a negotiated settlement.

12. Gnarus has completed an initial valuation of the Survivor Claims. I have consulted with Gnarus regarding their initial opinion as to claim valuation, and understand that their analysis supports a range of values consistent with what the Diocese intends to propose in its plan, thus indicating that the Diocese is exercising sound business judgment by entering into the Settlement Agreements as a key component of funding its chapter 11 plan.

13. After conferring with the professionals employed by the Diocese, I believe that the Settlement Agreement represents a fair and reasonable compromise and that it is in the best interest of the Diocese's estate and all of its creditors, but specifically the survivors. More specifically, entering into the Settlement Agreements will result in a cash infusion of $107,250,000 into the Diocese's estate to fund a survivor compensation trust and will eliminate the risk of unfavorable litigation outcomes and additional litigation expenses in the Coverage Action. Furthermore, resolving the amount of insurance available to fund a plan of reorganization will narrow the issues that must be addressed before a plan of reorganization can be confirmed in this Chapter 11 Case. Further, the Settling Insurers' ability to pay claims could decrease over time. Litigation regarding coverage for the Survivor Claims carries significant risk and would involve significant additional professional and administrative costs, with an uncertainty of success. Even if successful, such litigation could take many years to resolve. Reviewing all of these factors, lead me to conclude that entering into the proposed settlements is in the best interest of the Diocese, its estate, creditors, and other parties in interest.

I swear, under penalty of perjury under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: May 20, 2022                              /s/ Lisa M. Passero

                                                 Lisa M. Passero
                                                 Chief Financial Officer