UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
_____

In re:

    The Diocese of Rochester,                            Bankruptcy Case No. 19-20905-PRW
        aka the Roman Catholic                     Chapter 11
        Diocese of Rochester,

                Debtor.
_____

    The Diocese of Rochester,

                Plaintiff,

           v.                                            Adversary Proceeding No. 19-2021-PRW

    The Continental Insurance Company,
    Certain Underwriters at Lloyd's, London,
    The Dominion Insurance Company Limited,
    Stronghold Insurance Company Limited,
    CX Reinsurance Company Limited,
    Markel International Insurance Company Limited,
    Tenecom Limited,
    National Surely Corporation,
    Interstate Fire & Casualty Company,
    Colonial Penn Insurance Company,
    HDI Global Specialty SE,

                Defendants.
_____

## DECISION AND ORDER
## DISSOLVING JUDICIAL STAY OF DEADLINES
## IN ADVERSARY PROCEEDING AND
## TERMINATING MEDIATION ORDER

PAUL R. WARREN, U.S.B.J.

    Interstate Fire & Casualty Company ("Interstate") has moved for an order terminating the judicial stay of this Adversary Proceeding, so that litigation of the insurance coverage action can go forward. The question presented is whether the Court should exercise its discretion and dissolve the judicial stay of this litigation and terminate its Mediation Order. The answer is yes.

Shortly after the Diocese filed for protection under Chapter 11 of the Bankruptcy Code, Continental Insurance ("CNA") requested that the automatic stay be lifted to allow CNA (and other interested insurance carriers—including Interstate) to commence a declaratory judgment action against the Diocese to obtain a determination of whether the carriers were liable under their insurance policies for the sexual abuse claims made against the Diocese. (ECF BK No. 136). Not only did the Diocese oppose the request of the carriers, it filed an Adversary Proceeding in this Court, seeking a declaratory judgment that the insurance policies issued by Continental, Interstate, and other named carriers did provide coverage to the Diocese for sexual abuse claims. (ECF BK Nos. 217, 218).

The Court declined to lift the automatic stay as requested by the insurance carriers, and instead strongly encouraged the parties to attempt the resolve the coverage issues—and seek a global resolution—through mediation (as had been successful in achieving settlements in nearly all prior Diocesan bankruptcy cases). To preserve the *status quo* in this Adversary Proceeding while mediation proceeded, the Court entered a "Case Management Order Temporarily Suspending Deadlines" for the parties to act under Rules 12-37 FRCP and Rule 7012-7037 FRBP, "until further order of this Court." (ECF AP No. 5). Shortly afterwards, the Court entered an "Order Directing Mediation and Appointing Mediator." (ECF AP No. 39). The Mediation Order echoed the Case Management Order, suspending all litigation deadlines in this Adversary Proceeding "until further Order of the Court." (*Id.*).

It was the Court's expectation that this Diocesan Chapter 11 case would promptly proceed toward a consensual global settlement, as had occurred in prior Diocesan bankruptcy cases over the past two decades where mediation was successful. Here, despite the herculean efforts of the mediator, Judge Zive, (joined two years later by Paul Van Osselaer (*see* ECF AP No. 200)), mediation failed to achieve a global settlement. Mediation did result in an initial proposed settlement between the Diocese and several of its insurance carriers. (ECF BK No. 1101; ECF AP No. 99). However, the Court declined to approve that settlement agreement over the objection of the

Creditors' Committee. (*See* ECF BK Nos. 1162, 1204, 1213; ECF AP Nos. 136, 151, 153). The parties returned to the mediation table and a second settlement agreement was reached between the Diocese and all of its insurance carriers in June 2022, subject to this Court's approval. (ECF BK No. 1538; ECF AP No. 190). The second settlement agreement provided for a fund of $147,750,000 for the abuse victims. While the motion to approve the second settlement agreement was pending, the Diocese announced, in November 2022, that it had reached a "restructuring support agreement" with the Creditors' Committee, by which the Diocese and the Committee would seek approval of a Joint Plan of Reorganization. (ECF BK No. 1790). That Joint Plan was filed by the Diocese and the Committee on March 24, 2023, mirroring the earlier "restructuring support agreement." (ECF BK No. 2047).

While the Joint Plan includes funding from the Diocese, its parishes/schools, and several of its insurance carriers, it does not include funding from Interstate (or CNA). Instead, the Joint Plan proposes to assign the Diocese's claims against Interstate (and CNA) to a trust, which would then step into the shoes of the Diocese to pursue claims against those insurance carriers. Both the Diocese and the Committee loudly assert that the Joint Plan is "insurance neutral" and "does not affect Interstate's rights under its policies." (ECF AP No. 230 ¶ 12). Those assurances are belied by a more unvarnished statement by Jeff Anderson (a personal injury attorney representing the largest group of abuse victims in this Chapter 11 case): "The Plan provides for an assignment of insurance claims for non-settling insurers, including CNA [and Interstate] to a Trust, **including the right to enter stipulated judgments that are enforceable against CNA [and Interstate].**" (ECF BK No. 2072 ¶ 9 (emphasis added)). That seems to be a rather odd application of the concept of "neutrality."

And, so, after three and a half years of attempting to find a pathway to a consensual global resolution, according to the Diocese "[t]he Committee [perhaps at the behest of the personal injury attorneys] has indicated a strong . . . inclination to accept the risks of litigation in exchange for the potential for a greater recovery." (ECF AP No. 229 ¶ 18). "To the Diocese's knowledge, **no**

3

**survivor has opposed the calculated risk that the Committee has approved in choosing to litigate, rather than settle, the Insurance Claims.**" (*Id.* (emphasis added)). And, here is the rub. Both the Diocese and Committee insist that any litigation to test the merits of the coverage defenses potentially available to Interstate (and CNA) be held in abeyance until after confirmation of the Joint Plan. Why? Because "adverse determinations on certain issues could establish defenses to coverage resulting in a partial (or total) defeat of the Insurance Claims." (*Id.*). So, while the Committee and the personal injury attorneys are willing (on behalf of the abuse victims) to assume the risks of litigation, they take that calculated risk only as long as the confirmation process of the Joint Plan (with its various proposed procedural tools promoting so-called "insurance neutrality") controls the manner in which the critical issues concerning insurance coverage defenses are ultimately decided. The Committee insists that the stay of litigation, concerning the merits of the defenses asserted by Interstate, be stayed until after plan confirmation. But that date could be months (or years) in the future. Meanwhile, the question of whether Interstate, CNA and other carriers have valid defenses to the Diocese's declaratory judgment action remains unanswered. And, answering the coverage question is critically important because if the Diocese and the Committee are wrong, the massive insurance recovery that has been predicted by the Committee and the personal injury attorneys, vanishes.

The judicial stay imposed by this Court concerning the insurance coverage litigation at issue in this Adversary Proceeding, an exercise of the Court's discretion, was intended to permit the parties to pursue settlement without the costs and animosity kindled by litigation. That purpose is no longer served by continuation of the Court's litigation stay Orders. Settlement efforts have ended. The harm to Interstate (and other non-settling insurers) by continuation of the Court's stay of litigation in the Adversary Proceeding now substantially and manifestly outweighs any harm to the Diocese or the abuse victims who, through their attorneys, have announced their intention to accept the considerable risks of litigation. Moving forward with that litigation, with its associated costs, risks,

and plodding progress, is the necessary order of the day. It is now time for the insurance coverage issues to be fully and fairly adjudicated in this Adversary Proceeding, and not as a backdoor adjunct to the plan confirmation process. In the exercise of the Court's discretion under 11 U.S.C. § 105(a), it is **ORDERED**, that:

1. The motion of Interstate (ECF AP No. 216) is **GRANTED**;

2. The judicial stay imposed by the Court under the Case Management Order (ECF AP No. 5) is dissolved and terminated in all respects;

3. The judicial stay echoed in the Court's Mediation Order (ECF AP No. 39) is dissolved and terminated in all respects, and the mediation is terminated as having reached an impasse;

4. All defendants named in the Adversary Proceeding are granted 30 days from entry of this Decision and Order to answer, move, or otherwise appear in response to the Complaint.

**IT IS SO ORDERED.**

Dated: April 25, 2023　　　　　　　　＿＿＿＿＿＿＿＿＿＿/s/＿＿＿＿＿＿＿＿＿＿＿
　　　　Rochester, New York　　　　　　　**HON. PAUL R. WARREN**
　　　　　　　　　　　　　　　　　　　　United States Bankruptcy Judge